1  Michael Gerard Fletcher (State Bar No. 070849)
       mfletcher@frandzel.com
2  Reed S. Waddell, (State Bar No. 106644)
       rwaddell@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard, Nineteenth Floor
4  Los Angeles, California 90017-2427
   Telephone: (323) 852-1000
5  Facsimile: (323) 651-2577

6  Attorneys for party in interest ZIONS
   BANCORPORATION, N.A. dba California
7  Bank & Trust

8              **UNITED STATES BANKRUPTCY COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                      **SAN JOSE DIVISION**

| | |
|---|---|
| 11  In re | Case No. 21-50028 |
| 12  Evander Frank Kane, | Chapter 7 |
| 13            Debtor. | The Hon. Stephen L. Johnson |
| 14 | **DECLARATION OF MICHAEL TOAL IN SUPPORT OF ZIONS BANK'S MOTION TO CONVERT THE CASE TO CHAPTER 11 AND APPOINT A CHAPTER 11 TRUSTEE** |
| 15 | |
| 16 | |
| 17 | Date:    [To be set]<br>Time:    [To be set]<br>Place:   Courtroom 9<br>         San Jose, California<br>         (hearing via video or phone) |
| 18 | |
| 19 | |

20        Michael Toal declares:

21        1.        I am a Vice President for Zions Bancorporation, N.A., a national banking

22  association dba California Bank & Trust ("Bank"), and I am in the Bank's Special Assets

23  Department located in Irvine, California.  I have personal knowledge of the matters set forth in this

24  declaration and, if called upon as a witness, I could and would testify competently thereto.  I have

25  been employed by the Bank for a total of seventeen (17) years and I have been employed as a

26  banker in various capacities since 1988.  Among my duties at the Bank, I have primary, day-to-

27  day responsibility for the administration, monitoring, and collection of the approximately $4

28  million in defaulted loan obligations due to the Bank from its borrower Evander Kane ("Kane").

---

4127706.3 | 031205-0132                           1

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

2.      A true and correct copy of Kane's National Hockey League player contract delivered to the Bank concerning Kane's employment as a professional hockey player is attached as Exhibit 1.

3.      The Bank is currently investigating and reviewing the written financial and other information concerning Kane delivered to the Bank as part of the origination of the Bank's loan to him.  The Bank also is evaluating whether and to what extent Kane made promises to the Bank in the original loan documentation without any intention of performing those promises.  The Bank believes that there may be significant irregularities in how Kane received the Bank's loan to him, including in what was relied upon by the Bank in extending credit to Kane. The Bank is contemplating suing Kane to have the debt owed to the Bank deemed to be non-dischargeable.

4.      I am required to know, and, in fact, am familiar with the jobs of the various employees of the Bank who are involved in the handling of the Bank's records, files, and documents ("Records") pertaining to the Bank's loans, and other information about the Bank's loans and the Bank's borrowers and customers.  I am one of the custodians of the Bank's Records as those Records pertain to the loans and extensions of credit to Kane, and in particular, the documentation executed by and provided concerning Kane.  The Records maintained by the Bank contain entries by Bank personnel who have personal knowledge of the matters so recorded, and a business duty to record such information into the Bank's Records, at or about the time of the events recorded.  This has proven to be, and is, an accurate and trustworthy means for recording and maintaining information by the Bank as to its loans and customers, so that Bank personnel, including me, could have access to such information and Records when needed to conduct Bank business.

I declare under penalty of perjury under the laws of the United States of America and of the State of California that the foregoing is true and correct and that this declaration was executed on this __24th__ day of February, 2021, at Irvine, California

*Michael Toal*

Michael Toal

4127706.3 | 031205-0132

2

# EXHIBIT 1

# EXHIBIT 1
## STANDARD PLAYER'S CONTRACT

### IMPORTANT NOTICE TO PLAYER

Before signing this Standard Player's Contract ("SPC") you should carefully examine it to be sure that all terms and conditions agreed upon have been incorporated herein, and if any has been omitted, you should insist upon having it inserted in the SPC before you sign.

---

## NATIONAL HOCKEY LEAGUE
## STANDARD PLAYER'S CONTRACT
### (2013 FORM)

BETWEEN    San Jose Sharks

Hereinafter called the "Club," a member of the National Hockey League, hereinafter called the "League"

AND    Evander Kane

hereinafter called the "Player"

State/Province/Country

of  Vancouver  in  BC  of  CANADA

In consideration of the respective obligations herein and hereby assumed, the parties to this SPC severally agree as follows:

1.    The Club hereby employs the Player as a skilled hockey Player for the term of eight (7) League Year(s) commencing the later of July 1, 2018 or upon execution of this SPC and agrees, subject to the terms and conditions hereof, to pay the Player a salary of _____ US Dollars ($ _____ ).

| Season | | |
|---|---|---|
| 2018/19: | Six Million Dollars | $6,000,000 |
| 2019/20: | Six Million Dollars | $6,000,000 |
| 2020/21: | Three Million Dollars | $3,000,000 |
| 2021/22: | Seven Million Dollars | $7,000,000 |
| 2022/23: | Five Million Dollars | $5,000,000 |
| 2023/24: | Six Million Dollars | $6,000,000 |
| 2024/25: | Four Million Dollars | $4,000,000 |

Payment of such Paragraph 1 Salary shall be in consecutive semi-monthly installments on the 15th and 30th day of each month following the commencement of the NHL Regular Season or

following the dates of reporting, whichever is later (provided that the pay period shall not close more than three (3) days prior to payroll dates); provided, however, that if the Player is not in the employ of the Club for the whole period of the Club's NHL Regular Season Games, then he shall receive only part of such Paragraph 1 Salary in the ratio of the number of days of actual employment to the number of days of the NHL Regular Season.

And it is further mutually agreed that if the SPC and rights to the services of the Player are Loaned or otherwise transferred to a club in another league, the Player shall only be paid at an annual salary rate of

| | | | |
|---|---|---|---|
| 2018/19: | N/A | Dollars-------------------------------in the AHL |
| 2019/20: | N/A | Dollars-------------------------------in the AHL |
| 2020/21: | N/A | Dollars-------------------------------in the AHL |
| 2021/22: | N/A | Dollars-------------------------------in the AHL |
| 2022/23: | N/A | Dollars-------------------------------in the AHL |
| 2023/24: | N/A | Dollars-------------------------------in the AHL |
| 2024/25: | N/A | Dollars-------------------------------in the AHL |

2.     The Player agrees to give his services and to play hockey in all NHL Games, All Star Games, International Hockey Games and Exhibition Games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.

The Player further agrees,

(a)     to report to his Club's Training Camp at the time and place fixed by the Club, in good physical condition,

(b)     to keep himself in good physical condition at all times during the season,

(c)     to give his best services to the Club and to play hockey only for the Club unless his SPC is Assigned, Loaned or terminated by the Club,

(d)     to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally,

(e)     to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

3.     In order that the Player shall be fit and in proper condition for the performance of his duties as required by this SPC and the Agreement, the Player agrees to report for practice at such time and place as the Club may reasonably designate and participate in such Exhibition Games as may be arranged by the Club.

4.     The Club may from time to time during the continuance of this SPC establish reasonable rules governing the conduct and conditioning of the Player, and such reasonable rules shall form part of this SPC and the Agreement as fully as if herein written. For violation of any such rules

or for any conduct impairing the thorough and faithful discharge of the duties incumbent upon the Player, the Club may impose a reasonable fine upon the Player and deduct the amount thereof from any money due or to become due to the Player. The Club may also suspend the Player for violation of any such rules. When the Player is fined or suspended, he shall be given notice in writing stating the amount of the fine and/or the duration of the suspension and the reason therefor. Copies of the rules referred to herein shall be filed at the main offices of the League and the National Hockey League Players' Association ("NHLPA").

5. (a) Should the Player be disabled or unable to perform his duties under this SPC he shall submit himself for medical examination and treatment by a physician selected by the Club, and such examination and treatment, when made at the request of the Club, shall be at its expense unless made necessary by some act or conduct of the Player contrary to the terms and provisions of this SPC or the rules established under Paragraph 4. At any time a physician selected by a Club makes a determination as to whether or not a Player is disabled and unable to perform his duties as a hockey Player for purposes of this Paragraph 5 of this SPC, such physician shall evidence such determination by fully completing the form attached to the CBA as Exhibit 25-A, which shall be provided to the Player at the time such determination is made and immediately provided to the Club as well. Upon receipt of such fully completed form, the Club shall send an electronic copy forthwith to the Player, his Certified Agent, the NHL, and the NHLPA (the "Recipients"), which shall contain the language from CBA Exhibit 25-A contained in the "Message to Player", provided, however, that the Club's failure to include such language shall not affect the time frames set out in this Paragraph 5, or otherwise prejudice the Club.

(b) If the Player, in the judgment of the Club's physician, is disabled or is not in good physical condition at the commencement of the season or at any subsequent time during the season (unless such condition is the direct result of any injury sustained during the course of his employment as a hockey Player with the Club, including travel with his team or on business requested by the Club) so as to render him unfit to play skilled hockey, then it is mutually agreed that the Club shall have the right to suspend the Player for such period of disability or unfitness, and no compensation shall be payable for that period under this SPC.

(c) If the Player is injured during the course of his employment as a hockey Player with the Club, including travel with his team or on business requested by the Club, the Club will pay the Player's reasonable hospitalization until discharged from the hospital, and his medical expenses and doctor's bills, provided that the hospital and doctor are approved by the Club. This approval will not be unreasonably withheld.

(d) It is also agreed that if the Player, in the sole judgment of the Club's physician, is disabled and unable to perform his duties as a hockey Player by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall be entitled to receive his remaining Paragraph 1 Salary and Signing Bonuses due in accordance with the terms of this SPC for the remaining stated term of this SPC as long as the said disability and inability to perform continue but in no event beyond the expiration date of the fixed term of this SPC. In consideration of the payment of such Paragraph 1 Salary, as well as payments made by the Club to fund the Hospital, Major Medical, Visioncare and Dental Plan, career ending disability policy and serious disability policy and other consideration (including the payment of salary referenced herein, where applicable), the

Player does hereby covenant that in the event he receives full payment of a claim under such career ending disability policy or serious disability policy, he personally releases and will release, and will cause his corporation if a corporate contract is involved to release, the Club, the League, the NHLPA, all other Clubs, the insurance carrier, and the servants, employees, officers and agents of each of the above from any and every additional obligation, liability, claim or demand for any additional salary or other payments, arising out of or relating to such injury or the treatment thereof, including without limitation liability in tort, and extending to all damages, whenever arising.

(e)     In the event that the Player wishes to seek a second opinion in respect of the Club Physician's determination regarding the Player's fitness or unfitness to play, the Player shall provide electronic notice to the Club (unless the Player provides notice by any other means to the General Manager, Assistant General Manager or the Head Athletic Trainer) that he is seeking a second opinion pursuant to Paragraph 5 of the SPC by no later than 5:00 pm New York time on the third day after the electronic notice referred to in Paragraph 5(a) above is sent, except that, if the notice referred to in Paragraph 5(a) above is sent after 5:00 pm New York time the Player shall have until 5:00 pm New York time on the fourth day to provide such notice. Upon receiving notice that the Player is seeking a second opinion, the Club shall promptly provide the Player its complete medical file on the Player in respect of the Player's condition that is the subject of the Club Physician's determination. The Player must obtain a second opinion within five (5) days (or later only upon showing of good cause) of the electronic notice from the Club.

(f)     The physician consulted by the Player ("Player's Physician") in accordance with Paragraph 5(e) must make a determination as to whether the Player is disabled and unable to perform his duties as a hockey Player and shall evidence such determination by fully completing the form attached to the CBA as Exhibit 25-A, which shall be provided to the Player at the time of the examination, with an electronic copy sent forthwith to the Club and the Recipients. The Club Physician and the Player's Physician must consult as expeditiously as possible and, in any event, by no later than 5:00 pm New York time on the third day after the Player is sent electronic notice of the determination by the Player's Physician (referenced in this Paragraph 5(f) above) (or later only upon a showing of good cause).

(g)     (i)     If, after consulting as provided for in Paragraph 5(f), the Club Physician and the Player's Physician agree that the Player is either disabled and unable to perform, or not disabled and able to perform, his duties as a hockey Player, their agreed-upon determination shall be evidenced by fully completing the form attached to the CBA as Exhibit 25-B (as set forth in Paragraph 5(g)(i)(iii)). Such determination shall be conclusive, final and binding upon the Club and the Player, absent a showing of improper interference with the procedures set forth in CBA Section 17.7 and Paragraph 5 of the SPC.

(ii)     If after consulting as provided for in Paragraph 5(f), the Club physician and the Player's Physician cannot agree on whether the Player is disabled and unable to perform his duties as a hockey Player, they shall evidence such disagreement by fully completing the form attached to the CBA as Exhibit 25-B (as set forth in Paragraph 5(g)(iii)).

(iii)     Pursuant to either Paragraph 5(g)(i) or 5(g)(ii) above, the Player's Physician shall complete his/her portion of Exhibit 25-B first and then shall send such form to

the Club Physician. The Club Physician shall then complete his/her portion of Exhibit 25-B and then shall send such fully completed form to the Club, the Player's Physician and the Recipients.

(iv)    If the Club Physician and the Player's Physician cannot agree on whether the Player is disabled and unable to perform his duties as a hockey Player pursuant to Paragraph 5(g)(ii) above, they shall confer and agree on an independent physician to examine the Player. The independent physician must be selected as expeditiously as possible and, in any event, within the time frame referred to in Paragraph 5(f) above (or later only upon a showing of good cause). If the Player's Physician and the Club Physician are unable to select the independent physician within such period, the independent physician shall be selected jointly by a medical designee appointed by the NHL and a medical designee appointed by the NHLPA. That selection shall take place as expeditiously as possible, but not later than 5:00 pm New York time on the second day after referral to the NHL and NHLPA medical designees.

(h)    Following the selection of the independent physician pursuant to Paragraph 5(g)(iv), the NHLPA (with a copy sent forthwith to the Club and the Recipients) shall provide the independent physician with a completed form set out in CBA Exhibit 25-C. The Club also shall send to the independent physician a copy of the medical file that it had forwarded to the Player pursuant to Paragraph 5(e). The Player shall direct the Player's Physician to forward to the independent physician a complete copy of his medical file in respect of the condition that is the subject of the Player's Physician's second opinion pursuant to Paragraph 5(h). The Player must submit himself to examination, and the independent physician must examine the Player, within five (5) business days of his selection (or later only upon a showing of good cause). The independent physician shall make a determination of whether the Player is disabled and unable to perform his duties as a hockey Player and evidence such determination by fully completing the form attached as Exhibit 25-A, which shall be provided to the Player at the time of the examination and an electronic copy sent forthwith to the Club and the Recipients.

(i)    The independent physician's determination as to whether the Player is disabled and unable to perform his duties as a hockey Player shall be conclusive, final and binding upon the Club and the Player, absent a showing of improper interference with the procedures set forth in CBA Section 17.7 and Paragraph 5 of the SPC.

(j)    If, pursuant to Paragraph 5(g) or Paragraph 5(h) a Player examined in connection with Paragraph 5(d) is declared to be unfit for play by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall continue to receive the full benefits of this Agreement in accordance with the provisions of Paragraph 5(d). If such Player is declared to be physically able to play and refuses to do so, he shall be liable to immediate suspension without pay. For the avoidance of doubt, if the Player is deemed to have had a separation from service (as defined in Treas. Reg. section 1.409A-1(h)) and, prior to such separation, the Player has not been disabled for purposes of Section 409A(a)(2)(C) of the Internal Revenue Code, any amount payable pursuant to this Paragraph 5(j) shall be paid over the Buy-Out Period prescribed by Paragraph 13(d) (i.e., over twice the remaining term of the SPC).

(k)     If either the Club or the Player fail to timely comply with any of the requirements set forth in Paragraph 5, absent a showing of good cause, then such non-complying party shall be deemed to have acceded to the other party's position in such dispute.

(l)     The Club and Player shall cooperate, and shall cause their respective physicians to cooperate, for the purpose of making medical records available to any physician who examines the Player pursuant to this Paragraph 5.

(m)     For purposes of clarity, the Club physician, the Player's Physician and the independent physician shall be charged only with determining whether the Player is disabled and unable to perform his duties as a hockey Player. Any other determinations, including whether a Player's disability is a hockey related injury, shall be within the jurisdiction of the Impartial Arbitrator.

(n)     In connection with a disability which is not caused by an injury sustained during the course of his employment as a hockey Player including travel with his team or on business requested by his Club, the procedures set forth in this Paragraph 5 shall also apply to the Club doctor's determination regarding the Player's physical fitness to return to play. If the Player is declared to be fit for play, by the Club doctor and Player doctor, or by the independent doctor, he must perform his duties hereunder and shall be entitled to receive the full benefits of this Agreement. If he is declared to be not physically able to play, he shall not be entitled to the benefits of this Agreement until he has been declared to be physically fit to play by the independent medical specialist.

(o)     The reasonable costs incurred by the Player in the course of obtaining a second opinion pursuant to this Paragraph 5 shall be borne equally by the Club and the Player.

6.     The Player represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey Player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages. The Player therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunctive proceedings without first exhausting any other remedy which may be available to the Club, from playing hockey for any other team and/or for any breach of any of the other provisions of this SPC.

7.     The Player and the Club recognize and agree that the Player's participation in other sports may impair or destroy his ability and skill as a hockey Player. Accordingly the Player agrees that he will not during the period of this SPC or during any period when he is obligated under this SPC to enter into a further SPC with the Club engage or participate in football, baseball, softball, hockey, lacrosse, boxing, wrestling or other athletic sport without the written consent of the Club, which consent will not be unreasonably withheld.

8.     (a)     The Club recognizes that the Player owns exclusive rights to his individual personality, including his likeness. The Player recognizes that the Club owns exclusive rights to its name, emblems and uniform, which the Player wears as a hockey Player for the Club.

The Player hereby irrevocably grants to the Club during the period of this SPC and during any period when he is obligated under this SPC to enter into a further SPC with the Club

the right to permit or authorize any firm, person or corporation to take and make use of any still photographs, motion pictures or electronic (including television) images of himself in uniform and agrees that thereafter all rights in such photographs, pictures and images (including the right to identify him by name) shall belong to the Club exclusively for the purposes of telecasts, film or video documentaries or features, advertisements and promotions of the Club's games, use by the media for reportorial purposes, game programs, yearbooks, magazines and the like, and purposes in which the focus is on the Club or game and not the individual Player.

The Club hereby irrevocably grants to the Player during the period of this SPC and thereafter the right to use the name of the Club (but not the emblem or uniform unless otherwise agreed) to identify himself, truthfully, as a Player of the Club, past or present.

All obligations and rights set forth in this Paragraph 8(a) shall be subject to modification from time to time by the provisions of the CBA.

(b)     The Player further agrees that during the period of this SPC and during any period when he is obligated under this contract to enter into a further contract with the Club, he will not make public appearances, participate in radio or television programs, or permit his picture to be taken, or write or sponsor newspaper or magazine articles, or sponsor commercial products without the written consent of the Club which consent shall not be unreasonably withheld.

9.     It is mutually agreed that the Club will not pay, and the Player will not accept from any person, any bonus or anything of value for winning or otherwise attempting to affect the outcome of any particular game or series of games except as authorized by the League By-Laws.

10.     The Player agrees he will not tamper with or enter into negotiations with any Player under SPC or reservation to any Club of the League for or regarding such Player's current or future services, without the written consent of the Club with which such Player is connected under penalty of a fine to be imposed by the Commissioner of the League.

11.     It is mutually agreed that the Club shall have the right to Assign or to Loan this SPC, and the Player agrees to accept and be bound by such Assignment or Loan, and will faithfully perform and carry out this SPC with the same purpose and effect as if it had been entered into by the Player and such other club.

It is further mutually agreed that in the event that this SPC is Assigned, or the Player's services are Loaned, to another club, the club shall by notice in writing delivered to the Player advise the Player of the name and address of the club to which he has been Assigned or Loaned, and specify the time and place of reporting. If the Player fails to report to such other club, he may be suspended by such other club and no Paragraph 1 Salary shall be payable to him during the period of such suspension.

12.     *Default.* If a Club defaults in the payment of any compensation to the Player provided for in his SPC or fails to perform any other obligation under his SPC, the Player may, by notice in writing to the Club and to the League and the NHLPA, specify the nature of any and all defaults and thereafter:

(a)     If the Club fails to remedy the default within fourteen (14) days from receipt of such notice, except as hereinafter provided in Paragraphs 12(b), (c) and (d), the SPC shall be terminated, and, upon the date of such termination, all obligations of both parties shall cease, except the obligation of the Club to pay the Player's compensation to that date, provided, however, that;

(b)     the player hereby irrevocably offers the League an option to cure said default within the seven (7) days next succeeding the fourteen (14) days within which the Club may cure the default upon the condition that, in the event the League may accept this offer, the League would then guarantee payment of that portion of the Player's compensation, as set forth in the Player's SPC, as may become due for a period of twenty-one (21) days from receipt by the League of any notice of default. The League may accept this offer by notification to the Player and the NHLPA in writing of such acceptance and of its guarantee of said twenty-one (21) day compensation period as soon as possible following receipt of notice of default from Player but in no event later than fourteen (14) days following receipt of such notice. This offer will be deemed rejected if not accepted as set forth above;

(c)     said option may be assigned by the League to any other Club and, upon such assignment, the assignee Club shall inure to all of the rights of and assume all obligations of the League under this Paragraph 12;

(d)     the Player further agrees that, if the League has given due notice as set forth in Paragraph 12 (b), he will continue to perform all of his obligations under his SPC for the full twenty-one (21) day period and, in the event the Club does not cure the default within the fourteen (14) day period, as set forth in subsection (a), the League, or any Club to which its option has been assigned, may cure the default within the seven (7) days following the first fourteen (14) days next succeeding receipt of notice of default; and

(e)     the Club agrees if it does not cure the default within the fourteen (14) day period, as set forth in Paragraph 12 (a) above, and the League, or an assignee Club, cures said default in accordance with Paragraph 12 (b), (c) and (d) then, in such event, all rights and obligations of the Club under this SPC shall be transferred to the League, or such assignee Club, provided, however, that no obligation with respect to a default or defaults claimed to exist at the time of notice of default, as provided above, but not specifically included and set forth in said notice shall be assumed by the League or such assignee Club and the League or such assignee Club shall have no liability with respect thereto.

(f)     The Club and/or the League may dispute the Player's assertion of a default through an expedited arbitration proceeding in which case the Arbitrator shall be directed both to hear and decide such case within fourteen (14) days of receipt of notice from the Player pursuant to this Paragraph 12 absent a showing of good cause by the League and/or the Club as to why it requires additional time in order to adequately investigate and try such case. In such event, it is nonetheless the intention of the parties that the case be heard and decided as expeditiously as possible. During the pendency of the Grievance concerning the existence of a default, the Player's SPC shall remain in full force and effect.

13.    The Club, in addition to other rights hereunder, at its option, by written notice delivered to the Player in accordance with Exhibit 3, may terminate this SPC on the following conditions:

(a)    The Club shall offer the Player on Unconditional Waivers, either before or promptly after the notice of intention to exercise the Ordinary Course Buy-Out option (herein called "notice of termination") is given.

(b)    Termination pursuant to this Paragraph shall be effective upon receipt by the Player of the notice of termination and the Player clearing Unconditional Waivers pursuant to Paragraph 13(a) above.

(c)    The notice of termination shall be effective if given in the form attached as CBA Exhibit 20, with a copy to the NHLPA and Central Registry as follows:

(i)    beginning the later of June 15 or forty-eight (48) hours after the conclusion of the Stanley Cup Finals and ending at 5:00 p.m. New York time on June 30; and

(ii)    For Clubs who have Club or Player elected Salary Arbitration filings pursuant to Article 12, within the forty-eight (48) hour period beginning on the third day following the later of: (i) the Club's receipt of its last salary arbitration award; or (ii) settlement of its last case (provided such award was received or such settlement occurred prior to 7:00 p.m. New York time; awards or settlements that occurred or were received after 7:00 p.m. New York time will be deemed to have occurred or received the following business day for purposes of this provision).

(d)    If the Club elects to terminate this SPC pursuant to this Paragraph 13, it shall be obligated to pay to the Player, in equal semi-monthly installments, to be paid in accordance with the payroll payment schedule applicable to the Club's Active Roster, over twice the remaining term of the SPC (the "Buy-Out Period"):

(i)    if the Player is under 26 years of age at the time the termination is effective, an amount equal to 1/3 of, or

(ii)    if the Player is 26 years of age or older at the time the termination is effective, an amount equal to 2/3 of the total fixed amount of the Player's Paragraph 1 NHL Salary, for the unexpired fixed-term of this SPC, reduced by any advance payment of Paragraph 1 Salary received by the Player prior to the date the termination is effective.

(e)    Upon termination, the Player shall immediately be an Unrestricted Free Agent and shall no longer be obligated to perform under this SPC.

(f)    Waiver claim of Player by another Club shall pre-empt and relinquish Club's Buy-Out obligation, due to failure to clear Waivers.

(g)    Clubs shall file their Buy-Out agreements, the form of which is attached hereto as Exhibit 21, with Central Registry and the NHLPA within 24 hours of such agreements becoming effective.

14.     The Club may also terminate this SPC upon written notice to the Player (but only after obtaining Waivers from all other Clubs) if the Player shall at anytime:

(a)     fail, refuse, or neglect to obey the Club's rules governing training and conduct of Players, if such failure, refusal or neglect should constitute a material breach of this SPC.

(b)     fail, refuse or neglect to render his services hereunder or in any other manner materially breach this SPC.

In the event of termination under Paragraph 14 (a) or (b) the Player shall only be entitled to compensation due to him to the earlier of the date such notice is personally delivered to him or the date such notice is e-mailed to him.

In the event this SPC is terminated by the Club while the Player is "away" with the Club for the purpose of playing games the installment then falling due shall be paid on the first week-day after the return "home" of the Club.

15.     The Player further agrees that the Club may carry out and put into effect any order or ruling of the League or its Commissioner for his suspension or expulsion and that in the event of suspension his Paragraph 1 Salary shall cease for the duration thereof and that in the event of expulsion this SPC shall terminate forthwith.

16.     Except as otherwise provided in CBA Article 18, the Player agrees that, in the event of his suspension without pay pursuant to any of the provisions of this SPC, there shall be deducted from the Paragraph 1 Salary an amount equal to the exact proportion of such salary as the number of days' suspension bears to the total number of days of the Regular Season Games.

17.     If because of any condition arising from a state of war or other cause beyond the control of the League or of the Club, it shall be deemed advisable by the League or the Club to suspend or cease or reduce operations, then:

(a)     in the event of suspension of operations, the Player shall be entitled only to the proportion of Paragraph 1 Salary due at the date of suspension,

(b)     in the event of cessation of operations, the Paragraph 1 Salary shall be automatically canceled on the date of cessation, and

(c)     in the event of reduction of operations, the Paragraph 1 Salary shall be replaced by that mutually agreed upon between the Club and the Player, or, in the absence of mutual agreement, by that determined by neutral arbitration.

18.     The Club and the Player severally and mutually promise and agree to be legally bound by the League Rules that affect any terms or conditions of employment of any Player and by any Collective Bargaining Agreement that has been or may be entered into between the member Clubs of the League and the NHLPA, and by all of the terms and provisions thereof. This SPC is entered into subject to the CBA between the NHL and the NHLPA and any provisions of this SPC inconsistent with such CBA are superseded by the provisions of the CBA.

The Club and the Player further agree that in case of dispute between them, except as to the compensation to be paid to the Player on a new SPC, the dispute shall be referred within one year from the date it arose to the Commissioner of the League, as an arbitrator and his decision shall be accepted as final by both parties, unless, and to extent that, other arbitration procedures are provided in any Collective Bargaining Agreement between the member Clubs of the League and the NHLPA to cover such dispute.

The Club and the Player further agree that all fines imposed upon the Player under the Playing Rules, or under the provisions of the League By-Laws, shall be deducted from the Paragraph 1 Salary of the Player and be remitted by the Club to the NHL Players' Emergency Assistance Fund.

19. The Club and the Player represent and warrant that there are no undisclosed agreements of any kind, express or implied, oral or written and that there are no promises, undertakings, representations, commitments, inducements, assurances of intent, supplements or understandings of any kind between the Player or his Certified Agent and the Club that have not been disclosed to the NHL, with regard to: (i) any consideration of any kind to be paid, furnished or made available during the term of the SPC or thereafter; and/or (ii) and future renegotiation, extension, amendment or termination of this SPC.

20. Capitalized terms shall have the meaning set forth in the CBA, to the extent not otherwise defined in this SPC.

21. Unless otherwise specified, the service of all notices pursuant to the provisions of the SPC shall be effected in accordance with Exhibit 3 of the CBA.

22. The parties agree that the rights provided herein and in the CBA and in any addendum hereto and the promise of the Player to play hockey only with the Club, or such other club as provided in Paragraphs 2, 11 and 12, and the Club's right to take pictures of and to televise the Player as provided in Paragraph 8 of this SPC have all been taken into consideration in determining the Paragraph 1 Salary payable to the Player.

23. It is severally and mutually agreed that this SPC and the CBA contain the entire agreement between the parties and there are no oral or written inducements, promises or agreements except as provided herein.

**In Witness Whereof,** the parties have signed this _____ day of _____ A.D.20____.

Witnesses:

<u>San Jose Sharks</u>
Club

<u>525 W. Santa Clara St., San Jose, CA 95113</u>
Address of Club

By:

<u>                                        </u>
Doug Wilson, EVP and General Manager

<u>                                        </u>
Evander Kane

<u>8447 Isabel Place, Vancouver, BC  V6P 6R8</u>
Home Address of Player

I hereby certify that I have, at this date, received, examined and noted of record the within SPC, and that it is in regular form.

Dated _____ , 20 ____   <u>                                        </u>
for the National Hockey League

Les parties ont par les présentes exprimé leur volonté expresse que ce contrat soit rédigé en anglais.

The parties hereby state their expressed wish that this SPC be drafted in the English language.

This Addendum A is attached to and made part of that certain National Hockey League Standard Player's Contract ("SPC") entered into by and between **SAN JOSE SHARKS, LLC** ("Club") and **EVANDER KANE** ("Player"). The SPC together with this Addendum constitute the "Contract". Any capitalized terms not defined herein shall have the meaning(s) as defined in the SPC, the current Collective Bargaining Agreement between NHL and NHLPA, and/or the League Rules.

## 1. SIGNING BONUS:

In consideration of the Player entering into and fully performing his obligations under this Contract, the Club agrees to pay the Player the total sum of $12,000,000 (the "Signing Bonus") payable in installments (each an "Installment") and on the dates as specified in the following table:

| Season | Installment | Date |
|---------|-------------|------|
| 2018-19 | $3,000,000 | July 1, 2018 |
| 2019-20 | $2,000,000 | July 1, 2019 |
| 2020-21 | $3,000,000 | July 1, 2020 |
| 2022-23 | $2,000,000 | July 1, 2022 |
| 2024-25 | $2,000,000 | July 1, 2024 |

Notwithstanding the foregoing, if at any time during the term of this Contract, Player refuses to perform or otherwise withholds his services from Club, or Player elects to voluntarily retire, or Player materially breaches the Contract in any way, including by being injured in a contractually prohibited endeavor, the Club shall immediately and automatically be relieved of any obligations whatsoever with respect to any unpaid portion of the Signing Bonus, but only during the period of his refusal to perform, material breach, and/or voluntary retirement. Any retirement as a result of illness or injury, with the exception of an injury sustained in the course of Player's participation in an inherently dangerous activity (including without limitation, an injury sustained in violation of Section 7 of the SPC), shall not be deemed refusal to perform, voluntary retirement, or material breach of the Contract for purposes of calculating the Signing Bonus. Furthermore, any withholding of Player's services in the course of a work-stoppage between the NHL and the NHLPA shall not be considered a refusal to perform, voluntary retirement, or material breach of the Contract for purposes of this section.

If, during the term of the Contract, Player returns to play for Club after a period of refusal to perform, material breach, or voluntary retirement, Player will be entitled to begin receiving Installment payments in accordance with the table above, based on the League Year of Player's return to play and, in the event that no Installment payment has been made in the League Year of the Player's return to play, the Player shall be entitled to payment of a portion of the scheduled Installment for the League Year in which he returns to play pro rated on the basis of the formula set out in the paragraph below. The Club shall make any such payment within 15 days of the Player's return to play.

In the event that Club has already paid any Installment to Player for a League Year during which he refuses to perform or withholds his services from Club, or elects to retire, or materially breaches the Contract, Player agrees he will be entitled to keep only a portion of the applicable Installment equal to the product of multiplying the applicable Installment by the ratio of number of days of performing services during the Regular Season

prior to withholding services, retiring, or breaching the Contract to the total number of days of the Regular Season for that League Year. Player shall immediately pay to Club any remaining Installment funds.

*For purposes of example only, if Player refused to perform, voluntarily retired, or otherwise materially breached the Contract during the 2018-19 Regular Season and returned to play during that same season after missing 60 days of the 2018-19 Regular Season (assuming 180 day season, Player has 120 days of performance), then the Player would be entitled to $2,000,000.00. [= $3,000,000.00 x (120/180)] of the 2018-19 Installment and shall immediately repay Club $1,000,000.00. The Club would be obligated to make further Installment payments in subsequent League Years.*

*For purposes of further example, if Player is injured while engaging in an inherently dangerous activity on June 15, 2019 and he returns to play 45 days after the commencement of the 2019-2020 Regular Season (assuming 180 day Regular Season, Player has 135 days of performance), the Player would be entitled to $1,500,000.00 [=$2,000,000.00 x (135/180)] of the 2019-2020 Installment, which amount would be paid by the Club within 15 days of his return to play. Player's entitlement to payments made during 2018-2019 League Year would not be affected. The Club would be obligated to make further Installment payments in subsequent League Years.*

## 2. MODIFIED NO-TRADE CLAUSE:

For the period beginning on July 1, 2018 and ending on June 30, 2025, the Club shall not trade the Player; provided that for each of the 2018-19, 2019-20, 2020-21, 2021-22, 2022-23, 2023-24 and 2024-25 League Years, the Player shall provide to the Club a written list of three (3) NHL Member Clubs to which the Club may trade the Player during the applicable League Year (the "Trade List"). For each such League Year, the Player shall provide the Trade List via email, receipt acknowledgment requested, to the Club's then-current General Manager or Assistant General Manager of record no later than 5:00 PM Pacific Time on June 30 of the immediately preceding League Year. In the event the Player fails to provide the Trade List in a timely manner for any such League Year, the most recently submitted Trade List shall remain in effect for such League Year. If the Player never submits a Trade List, the Club shall have the right to trade the player to any NHL Member Club of its choosing.

## 3. MISCELLANEOUS

a. <u>Governing Law</u>. This Contract will be governed and construed in accordance with the laws of the State of California without regard to conflict of law principles. Subject to the League Rules, any and all actions arising out of this Contract shall be instituted and maintained in a court of competent jurisdiction in Santa Clara County, California.

b. <u>Withholding</u>. All payments made under the Contract shall be in United States Dollars and shall be subject to required withholdings pursuant to federal, state, local, and other applicable income tax laws, regulations, and rulings and such withholdings or source deductions shall be made by the Club in accordance with its then-current payroll policies and practices.

ACCEPTED AND AGREED TO:                    ACCEPTED AND AGREED TO:


By: _____                 By:_____
    Evander Kane                                    Doug Wilson, General Manager
    Player                                              for San Jose Sharks, LLC

## EXHIBIT 1
## STANDARD PLAYER'S CONTRACT

## IMPORTANT NOTICE TO PLAYER

Before signing this Standard Player's Contract ("SPC") you should carefully examine it to be sure that all terms and conditions agreed upon have been incorporated herein, and if any has been omitted, you should insist upon having it inserted in the SPC before you sign.

MAY25'18AM8:38

buy 3672

NHL CENTRAL REGISTRY

### NATIONAL HOCKEY LEAGUE
### STANDARD PLAYER'S CONTRACT
### (2013 FORM)

BETWEEN      San Jose Sharks

Hereinafter called the "Club," a member of the National Hockey League, hereinafter called the "League"

AND      Evander Kane

hereinafter called the "Player"

State/Province/Country

of   Vancouver    in   BC    of   CANADA

In consideration of the respective obligations herein and hereby assumed, the parties to this SPC severally agree as follows:

1.    The Club hereby employs the Player as a skilled hockey Player for the term of seven (7) League Year(s) commencing the later of July 1, 2018 or upon execution of this SPC and agrees, subject to the terms and conditions hereof, to pay the Player a salary of _____ US Dollars ($_____).

| | |
|---|---|
| 2018/19: Six Million Dollars | $6,000,000 |
| 2019/20: Six Million Dollars | $6,000,000 |
| 2020/21: Three Million Dollars | $3,000,000 |
| 2021/22: Seven Million Dollars | $7,000,000 |
| 2022/23: Five Million Dollars | $5,000,000 |
| 2023/24: Six Million Dollars | $6,000,000 |
| 2024/25: Four Million Dollars | $4,000,000 |

following the dates of reporting, whichever is later (provided that the pay period shall not close more than three (3) days prior to payroll dates); provided, however, that if the Player is not in the employ of the Club for the whole period of the Club's NHL Regular Season Games, then he shall receive only part of such Paragraph 1 Salary in the ratio of the number of days of actual employment to the number of days of the NHL Regular Season.

And it is further mutually agreed that if the SPC and rights to the services of the Player are Loaned or otherwise transferred to a club in another league, the Player shall only be paid at an annual salary rate of

| | | | |
|---|---|---|---|
| 2018/19: | N/A | Dollars--------------------------------in the AHL |
| 2019/20: | N/A | Dollars--------------------------------in the AHL |
| 2020/21: | N/A | Dollars--------------------------------in the AHL |
| 2021/22. | N/A | Dollars--------------------------------in the AHL |
| 2022/23: | N/A | Dollars--------------------------------in the AHL |
| 2023/24. | N/A | Dollars--------------------------------in the AHL |
| 2024/25. | N/A | Dollars--------------------------------in the AHL |

2.     The Player agrees to give his services and to play hockey in all NHL Games, All Star Games, International Hockey Games and Exhibition Games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.

The Player further agrees,

(a)     to report to his Club's Training Camp at the time and place fixed by the Club, in good physical condition.

(b)     to keep himself in good physical condition at all times during the season,

(c)     to give his best services to the Club and to play hockey only for the Club unless his SPC is Assigned, Loaned or terminated by the Club,

(d)     to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally.

(e)     to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

3.     In order that the Player shall be fit and in proper condition for the performance of his duties as required by this SPC and the Agreement, the Player agrees to report for practice at such time and place as the Club may reasonably designate and participate in such Exhibition Games as may be arranged by the Club.

4.     The Club may from time to time during the continuance of this SPC establish reasonable rules governing the conduct and conditioning of the Player, and such reasonable rules shall form part of this SPC and the Agreement as fully as if herein written. For violation of any such rules

NHL CENTRAL REGIS

MAY24'18 AM 11:4

In Witness Whereof, the parties have signed this _24_ day of _May_ A.D.20_18_.

Witnesses:

_____
San Jose Sharks
Club

_____
525 W. Santa Clara St., San Jose, CA 95113
Address of Club

By:

_____
Doug Wilson, EVP and General Manager

_____
Evander Kane

_____
8447 Isabel Place, Vancouver, BC  V6P 6R8
Home Address of Player

I hereby certify that I have, at this date, received, examined and noted of record the within SPC, and that it is in regular form.

**MAY 2 5 2018**

Dated _____ , 20 ____

_____
for the National Hockey League

Les parties ont par les présentes exprimé leur volonté expresse que ce contrat soit rédigé en anglais.

The parties hereby state their expressed wish that this SPC be drafted in the English language.

NHL CENTRAL REGISTRY

MAY24'18AM11:46

This Addendum A is attached to and made part of that certain National Hockey League Standard Player's Contract ("SPC") entered into by and between SAN JOSE SHARKS, LLC ("Club") and EVANDER KANE ("Player"). The SPC together with this Addendum constitute the "Contract". Any capitalized terms not defined herein shall have the meaning(s) as defined in the SPC, the current Collective Bargaining Agreement between NHL and NHLPA, and/or the League Rules.

1. SIGNING BONUS:

In consideration of the Player entering into and fully performing his obligations under this Contract, the Club agrees to pay the Player the total sum of $12,000,000 (the "Signing Bonus") payable in installments (each an "Installment") and on the dates as specified in the following table:

| Season | Installment | Date |
|--------|-------------|------|
| 2018-19 | $3,000,000 | July 1, 2018 |
| 2019-20 | $2,000,000 | July 1, 2019 |
| 2020-21 | $3,000,000 | July 1, 2020 |
| 2022-23 | $2,000,000 | July 1, 2022 |
| 2024-25 | $2,000,000 | July 1, 2024 |

Notwithstanding the foregoing, if at any time during the term of this Contract, Player refuses to perform or otherwise withholds his services from Club, or Player elects to voluntarily retire, or Player materially breaches the Contract in any way, including by being injured in a contractually prohibited endeavor, the Club shall immediately and automatically be relieved of any obligations whatsoever with respect to any unpaid portion of the Signing Bonus, but only during the period of his refusal to perform, material breach, and/or voluntary retirement. Any retirement as a result of illness or injury, with the exception of an injury sustained in the course of Player's participation in an inherently dangerous activity (including without limitation, an injury sustained in violation of Section 7 of the SPC), shall not be deemed refusal to perform, voluntary retirement, or material breach of the Contract for purposes of calculating the Signing Bonus. Furthermore, any withholding of Player's services in the course of a work-stoppage between the NHL and the NHLPA shall not be considered a refusal to perform, voluntary retirement, or material breach of the Contract for purposes of this section.

If, during the term of the Contract, Player returns to play for Club after a period of refusal to perform, material breach, or voluntary retirement, Player will be entitled to begin receiving Installment payments in accordance with the table above, based on the League Year of Player's return to play and, in the event that no Installment payment has been made in the League Year of the Player's return to play, the Player shall be entitled to payment of a portion of the scheduled Installment for the League Year in which he returns to play, pro rated on the basis of the formula set out in the paragraph below. The Club shall make any such payment within 15 days of the Player's return to play.

In the event that Club has already paid any Installment to Player for a League Year during which he refuses to perform or withholds his services from Club, or elects to retire, or materially breaches the Contract, Player agrees he will be entitled to keep only a portion of the applicable Installment equal to the product of multiplying the applicable Installment by the ratio of number of days of performing services during the Regular Season



NHL CENTRAL REGISTRY

MAY24'18AM11:47

prior to withholding services, retiring, or breaching the Contract to the total number of days of the Regular Season for that League Year, Player shall immediately pay to Club any remaining Installment funds.

*For purposes of example only, if Player refused to perform, voluntarily retired, or otherwise materially breached the Contract during the 2018-19 Regular Season and returned to play during that same season after missing 60 days of the 2018-19 Regular Season (assuming 180 day season), Player has 120 days of performance], then the Player would be entitled to $2,000,000.00, [~ $3,000,000.00 x (120/180)] of the 2018-19 Installment and shall immediately repay Club $1,000,000.00. The Club would be obligated to make further Installment payments in subsequent League Years.*

*For purposes of further example, if Player is injured while engaging in an inherently dangerous activity on June 15, 2019 and he returns to play 45 days after the commencement of the 2019-2020 Regular Season (assuming 180 day Regular Season. Player has 135 days of performance), the Player would be entitled to $1,500,000.00 [=$2,000,000.00 x (135/180)] of the 2019-2020 Installment, which amount would be paid by the Club within 15 days of his return to play. Player's entitlement to payments made during 2018-2019 League Year would not be affected. The Club would be obligated to make further Installment payments in subsequent League Years.*

## 2. MODIFIED NO-TRADE CLAUSE:

For the period beginning on July 1, 2018 and ending on June 30, 2025, the Club shall not trade the Player; provided that for each of the 2018-19, 2019-20, 2020-21, 2021-22, 2022-23, 2023-24 and 2024-25 League Years, the Player shall provide to the Club a written list of three (3) NHL Member Clubs to which the Club may trade the Player during the applicable League Year (the "Trade List"). For each such League Year, the Player shall provide the Trade List via email, receipt acknowledgment requested, to the Club's then-current General Manager or Assistant General Manager of record no later than 5:00 PM Pacific Time on June 30 of the immediately preceding League Year. In the event the Player fails to provide the Trade List in a timely manner for any such League Year, the most recently submitted Trade List shall remain in effect for such League Year. If the Player never submits a Trade List, the Club shall have the right to trade the player to any NHL Member Club of its choosing.

## 3. MISCELLANEOUS

a. Governing Law. This Contract will be governed and construed in accordance with the laws of the State of California without regard to conflict of law principles. Subject to the League Rules, any and all actions arising out of this Contract shall be instituted and maintained in a court of competent jurisdiction in Santa Clara County, California.

b. Withholding. All payments made under the Contract shall be in United States Dollars and shall be subject to required withholdings pursuant to federal, state, local, and other applicable income tax laws, regulations, and rulings and such withholdings or source deductions shall be made by the Club in accordance with its then-current payroll policies and practices.

ACCEPTED AND AGREED TO:

By: _____
Evander Kane
Player

ACCEPTED AND AGREED TO:

By: _____
Doug Wilson, General Manager
for San Jose Sharks, LLC

NHL CENTRAL REGISTRY

MAY24'18AM11:47