Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:   (415) 616-0466
Fax:   (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Debtor,
Evander Frank Kane

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028-SLJ<br>Chapter 7<br><br>**DEBTOR'S OBJECTION TO CENTENNIAL'S *EX PARTE* APPLICATION FOR BANKRUPTCY RULE 2004 EXAMINATION**[1] |

Debtor Evander Frank Kane (the "Debtor") objects to *Centennial's Ex Parte Application for Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Directing the Examination of the Debtor Evander Frank Kane and for the Production of Documents* (the "Application") filed by Centennial Bank ("Centennial") on March 2, 2021. ECF 40. This objection is supported by the concurrently filed declaration of Stephen D. Finestone ("Finestone Decl.").

For the reasons stated below, the Debtor requests that the Court deny Centennial's Application in its entirety.

---

[1] Unless specified otherwise, chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned case.

OBJECTION TO APPLICATION FOR 2004 EXAMINATION     1

## I. INTRODUCTORY STATEMENT

The Debtor filed his voluntary Chapter 7 petition on January 9, 2021. Finestone Decl. at ¶ 2. Since the filing date, the Debtor has been fulfilling his obligations under § 521. *See id.* His first meeting of creditors lasted approximately 2.5 hours and his second and final meeting was another 35 minutes. *Id.* at ¶ 3. The Debtor has responded to voluminous document requests from the Chapter 7 trustee, Fred Hjelmeset (the "Trustee"), and his counsel, Gregg Kleiner. *Id.* at ¶ 2. He has similarly responded to a number of additional requests from the Office of the U.S. Trustee ("UST") and has had positive and cooperative engagement with the UST, the Trustee, and the Trustee's counsel. *Id.* Despite the COVID-19 pandemic and his family circumstances (the Debtor and his wife have a child less than one year old), he provided the Trustee's agent with access to his residence and has arranged for the Trustee's agents to access his real property assets in Vancouver. *Id.* He has also amended his Schedules and Statement of Financial Affairs ("SOFA") to ensure that interested parties have accurate and complete information. *See* ECF 17–19. The Trustee has now filed a motion seeking court approval of an agreement with the Debtor resolving the estate's claims in the Debtor's real property interests and funds on account as of the petition date.

As background, Centennial initially filed suit against the Debtor in Santa Clara County Superior Court in February 2020. *Id.* at ¶ 4. It dismissed its case in January 2021 and then immediately sued both the Debtor and his employer, the San Jose Sharks (the "Sharks"), in the United States District Court for the Southern District of Florida (the "District Court Action"). *Id.* The District Court Action sought collection of the debt to Centennial and sought specific performance of Centennial's alleged security interest in the Debtor's salary by requiring the Sharks to pay his entire salary to Centennial until its debt was paid in full. *Id.* at ¶ 4, Exhibit A.

Now, Centennial, whose persistent litigation was one of the factors forcing the Debtor to file bankruptcy, requests that the Debtor submit to a Bankruptcy Rule 2004 examination and, in connection with the examination, respond to a demand for documents that is far beyond the pale. The document demand attached to the Application includes 36 definitions and 44 categories of

documents, and seeks an order requiring the Debtor to produce all documents by March 19, 2021 and appear for examination on March 22, 2021.

The substance of the Application asserts that Centennial may have seek to dismiss the case or object to discharge. As "support" for this the potential dismissal, the Application repeatedly states that the Debtor indicated that his income was $0. Application at 3:14, 28, 26. This is misleading. Debtor's Schedule I includes a lengthy explanation of his income for the upcoming season. Finestone Decl. at ¶ 6, Exhibit B. Centennial also raises the issue of whether the Debtor's filing is properly listed as a "non-consumer" filing, and oddly notes that it may seek to dismiss under § 707(b). *Id.* at ¶ 7. It also suggests that it may object to the Debtor's discharge under § 727(a), but as shown below, Centennial's Application's requests do not seem connected to these concerns, in terms of both time and category. *Id.* at ¶ 8.

A more specific objection follows below, but the Debtor requests that the Court deny Centennial's Application in its entirety.

## II. LEGAL STANDARD FOR BANKRUPTCY RULE 2004 EXAMINATIONS

Pursuant to Bankruptcy Rule 2004, the Court may order the examination of any entity, including the Debtor, relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Bankruptcy Rule 2004(b). Section 101 of the Bankruptcy Code defines an "entity" as any "person, estate, trust, governmental unit, and the United States trustee." § 101(15).

Courts generally interpret the scope of examination allowed under Bankruptcy Rule 2004 more broadly than discovery allowed under the Federal Rules of Civil Procedure, and Courts have described discovery under Bankruptcy Rule 2004 as a "fishing expedition." *See, e.g., In re Duratech Industries, Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999). There are, however, limits to Bankruptcy Rule 2004 examinations, which may not be used for the purposes of abuse or harassment. *Id.*

## III. CENTENNIAL'S APPLICATION SHOULD BE DENIED

Centennial's Application is overly broad, unduly burdensome, and seeks discovery far outside the allowable scope of a Bankruptcy Rule 2004 examination. To call the Application abusive and harassing would be an understatement. The Debtor has objections to nearly every request. However, in the interest of expediency and because Centennial's request is made *ex parte*, the Debtor sets forth some of the most egregious examples below.

### A. Overbroad and Nonsensical Definitions

As a preliminary matter, the 36 definitions set forth in the Application are overbroad and nonsensical. For example, Centennial defines the term "Debtor" to include "Evander Frank Kane, together with any managing members, members, employees, accountants, attorneys, or other agents of the Debtor." This presents three issues. The first is confusion, as the singular "Debtor" refers to a large group of individuals. And because the Debtor is an individual (rather than, say, a limited liability company), the Debtor does not have managing members, members, etc. Second, the inclusion of other parties in the definition of "Debtor" exponentially expands the scope of document requests. This will be illustrated with an example below. Third, the inclusion of attorneys results in the Application seeking materials protected by the attorney-client privilege and the work product doctrine.

### B. Overly Broad, Unduly Burdensome, and Irrelevant Requests Without Reasonable Time Limitations

The Application seeks production of several classes of overly broad, unduly burdensome, and irrelevant documents without any reasonable time limitations. For example, Centennial seeks *seven* years' of (1) all prepetition bank records; (2) financial statements; (3) tax returns and related documents and communications; (4) evidence of the value of all property, real or personal owned during that period; and (5) evidence of gambling. Application at 11–16 ("Document Requests") at ¶¶ 5–6, 9, 12, 37. There is no plausible reason why an individual Chapter 7 debtor should produce all these documents, let alone seven years' of them. The Debtor, as an individual, does not possess "balance sheets, income statements, financial statements," etc., that are more typically associated with corporate entities, and even if he did,

OBJECTION TO APPLICATION FOR 2004 EXAMINATION 4

seven years would be an unreasonable timespan. *See id.* at ¶ 6. As for tax returns, the Bankruptcy Code only requires the Debtor to provide the return (or transcript) for the most recent taxing year. § 521(e). Evidence of the value of all property owned within seven years is irrelevant to the case, and the Debtor has listed his current property on his Schedules. Evidence of gambling for the past seven years is also irrelevant, and the Debtor has listed his gambling losses in his SOFA. *Id.*

Centennial then seeks production of *twelve* years of documents, many of which overlap with the above requests. These include (1) all account statements on which the Debtor is a signatory, owner, or beneficiary; (2) documents regarding transfers to or from those accounts; (3) bank account statements; (4) evidence of any personal or real property purchases, sales, or transfers; and evidence of the use of all the Debtor's income from playing hockey. Document Requests at ¶¶ 32–34, 36, 44. These are overly broad, unduly burdensome, and irrelevant for the same reasons listed above. Twelve years of account statements and transfers is an unreasonable timespan, and relevant property and transfers are listed in the Debtor's Schedules and SOFA.

Centennial then seeks production, with no time limitation, of several more requests, many of which overlap with the above requests. These include the following, among others:

1. All "official documents" for any business entity in which "Kane" has a direct or indirect interest, *id.* at ¶ 10;
2. All financial statements, etc. that the Debtor presented to any potential lender with prior to his bankruptcy, *id.* at ¶ 11;
3. All licenses and the passport issued to the Debtor, *id.* at ¶¶ 13–14;
4. All documents evidencing a transfer of ownership of a business to or from the Debtor, *id.* at ¶ 15;
5. All communications between the Debtor and any "financial services provider," *id.* at ¶ 16;

6. All communications between the Debtor and Sure Sports LLC ("Sure Sports"),[2] *id.* at ¶ 17;

7. "All documents that constitute evidence of financial activity on any account of the Debtor," *id.* at ¶ 21;

8. All documents evidencing the contractual relationship between the Debtor and the Sharks and communications and documents regarding payments, *id.* at ¶¶ 24–28, 30;

9. All documents evidencing the liquidation, transfer, or abandonment by the Debtor of real or personal property, *id.* at ¶ 31;

10. Deeds, leases, mortgages, and other written instruments related to the Debtor's direct or indirect ownership in any real property at any time, *id.* at ¶ 35;

11. All documents evidencing any direct or indirect interest in any publicly or non-publicly traded company, *id.* at ¶¶ 38–39,

These requests are overly broad, unduly burdensome, irrelevant to the bankruptcy case, and appear to be intended to abuse and harass the Debtor. Several are completely disconnected from the Debtor's financial past or present by any stretch of the imagination, such as copies of the Debtor's licenses and passport. Those that do bear some connection to the Debtor's financial picture seek information and documents far outside any reasonable scope of relevancy and are inappropriate in their breadth and scope—both in time and subject matter.

As mentioned above, Centennial's overbroad definition of "Debtor" introduces further problems. Centennial's definition includes, among others, the Debtor's accountants and attorneys. As an illustrative example, the plain language of the Application seeks copies of Mr. Kane's accountants' passports, *id.* at ¶ 14, and his attorneys' mortgage documents, *id.* at ¶ 35. To make matters worse, several of Centennial's requests are not even limited to its broad definition

---

[2] Sure Sports was the Debtor's former business advisor that arranged the loan from Centennial to the Debtor. The Debtor subsequently discovered that Centennial paid Sure Sports a fee for setting up the loan.

OBJECTION TO APPLICATION FOR 2004 EXAMINATION 6

of "Debtor," so this illustrative example is in fact a conservative reading of Centennial's Application. *See, e.g., id.* at ¶¶ 38–39.[3]

C. <u>Centennial Already Has Requested Documents in Its Possession</u>

Centennial requests several categories of documents that are already in its possession. These include (1) documents that place the Debtor "in privity" with Centennial, such as the defined "Loan Documents"; (2) documents relating to the negotiation, closing, performance, or breach of the Loan Documents; (3) advances to or from Centennial; (4) the Debtor's payments or "emoluments" to Centennial; and (5) the Debtor's communications with Centennial. Document Requests at ¶¶ 1–4, 7, 18.

Because these are already in Centennial's possession, there is no point to duplicate production of the same documents by the Debtor. Nor are the documents relevant to the matter. The Debtor listed Centennial as a creditor without a qualification such as "disputed." The Trustee requested and the Court issued the *Notice of Possible Dividend*, ECF 13, and Centennial can file a proof of claim. This suggests that either (1) Centennial is using its Application to abuse and harass the Debtor, who will bear the effort and expense of such duplicative production; or (2) Centennial has neglected to reasonably narrow the scope of its Application as to reduce pointless discovery. Under either explanation, the Application is improper and should be denied.

D. <u>The Debtor Has Already Produced Requested Information and Documents</u>

Centennial requests several categories of information and documents that have either been produced or addressed by the Debtor's filings. These include (1) documents related to creditors' effort to collect debts; (2) documents related to ownership in corporate entities; (3) documents reflecting litigation during the past five years; (4) valuation of the Scheduled assets; (5) evidence of "fixed assets"; (6) all pending mediation and arbitration agreements; and (7) copies of titles and registration statements of all vehicles, aircraft, boats, etc. Document Requests at ¶¶ 8, 10, 19–20, 22, 38–39, 42–43.

---

[3] By its plain language, these requests seek all documents evidencing any direct or indirect interest in any publicly or non-publicly traded company. Given no limitation by identity or time, this request literally requests all stock certificates, transfers, valuations, etc. from all time—i.e., the entire universe of company ownership information ever to exist.

OBJECTION TO APPLICATION FOR 2004 EXAMINATION 7

The Debtor has provided adequate information concerning the subject of these requests in his Schedules and SOFA, which include the Debtor's known debts, assets, ownership interests, and a listing of all legal actions (including two arbitration proceedings) within the year prior to the petition date, among other things. The additional documents requested by Centennial are overly broad, unduly burdensome, and the Application should be denied.

### E. Requests Related to the Debtor's Employment and Compensation Are Overbroad and Redundant

As noted above, Centennial's Application also asks for documents related to (1) the Debtor's contract with the Sharks; (2) the Debtor's past and projected future compensation from the Sharks, including any future compensation in which Centennial claims a security interest; (3) the Debtor's use of such compensation; and (4) communications with the Sharks. *Id.* at ¶¶ 24–28, 30, 41, 44.

Setting aside, for the moment, the matter of Centennial's alleged security interest in the future compensation of the Debtor, these requests are overbroad and redundant. Centennial already possesses a copy of the Debtor's employment contract with the Sharks, which is filed by Centennial as an attachment to its own complaint. (See Exhibit A to Finestone Declaration). Communications between the Debtor and his employer are outside the scope of a Bankruptcy Rule 2004 examination.

### F. Other Objections

The above objections are not exhaustive but are merely examples of the overreaching and abusive nature of Centennial's Application. The Debtor reserves the right to supplement and/or amend these objections.

### IV. CONCLUSION

For the reasons stated above, the Debtor requests that the Court deny Centennial's Application in its entirety. While an Application for a Rule 2004 is ordinarily an appropriate mechanism for creditor inquiry, Centennial's Application is not. The Application should be denied and Centennial file a new application with appropriate purpose and requests.

///

OBJECTION TO APPLICATION FOR 2004 EXAMINATION                                    8

Case: 21-50028    Doc# 45    Filed: 03/04/21    Entered: 03/04/21 16:54:40    Page 8 of 9

| | | |
|---|---|---|
| Dated March 4, 2021 | | F<small>INESTONE</small> H<small>AYES</small> LLP |
| | | */s/ Stephen D. Finestone* |
| | | Stephen D. Finestone
Attorneys for Debtor,
Evander Frank Kane |

OBJECTION TO APPLICATION FOR 2004 EXAMINATION 9