Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.: (415) 616-0466
Fax: (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Debtor,
Evander Frank Kane

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028-SLJ<br>Chapter 7<br><br>**DECLARATION OF EVANDER KANE IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO CONVERT AND FOR APPOINTMENT OF CHAPTER 11 TRUSTEE**<br><br>**Date:** March 30, 2021<br>**Time:** 11:00 a.m.<br>Via Zoom |

I, Evander Kane, declare as follows:

1. I am 29 years old. I am a professional hockey player, having started playing professional hockey at the age of 18. I currently am under contract with the San Jose Sharks (the "Sharks"). I have played for the Sharks since 2018. I live in San Jose, California with my wife and our nine-month-old daughter. I make this declaration in support of my opposition to the Motion to Convert to Chapter 11 and for Appointment of a Chapter 11 Trustee (the "Motion"). I could and would testify competently to the matters set forth below.

///

///

KANE DEC RE MOTION TO CONVERT                                                                                                          1

**Background to My Bankruptcy Filing:**

2. Over several years I borrowed large sums from various lenders. With respect to Zions Bancorporation ("Zions"), which is the creditor bringing the Motion, on or about August 9, 2018, I signed several documents in connection with the loan. I executed a Business Loan Agreement with Zions providing for its making of the loan. Attached as Exhibit A is a true and correct copy of the Business Loan Agreement. I signed promissory notes and other documents related to the payment of the Zions' loan. I executed similar documents with other lenders and provided them with UCC-1 financing statements and other document related to their security for the loans. The loan documents did not contain any consumer disclosures or protections.

3. These loans were arranged by Sure Sports, LLC ("Sure Sports") and its principal, Leon McKenzie ("McKenzie"). I believed at the time that Sure Sports/McKenzie were acting as a broker on my behalf and acting in my best interests. I paid large fees to Sure Sports for each loan, with the fees based upon the amount of a loan. By way of example, in connection with the $4.25 million loan from Zions, I paid Sure Sports approximately $67,000 as a fee.

4. I later learned that at the same time as I was paying fees to Sure Sports for arranging various loans, the lenders were separately paying Sure Sports a fee for directing the loans their way. In fact, I am informed and believe, that after some of the loans went into default, Sure Sports and Mr. McKenzie provided advice to the lenders on how to collect on the loans, including recommending California counsel and suggested that all the lenders agree on a global approach to collecting, including contacting the Sharks and garnishing my wages. Sure Sports' conduct forms the basis of a cross-claim I filed against it in litigation pending in Miami, Florida.

5. Because of concern over my ability to meet my debt obligations, I hired John Fiero of Pachulski Stang Ziehl & Jones in October 2019. The goal was to work with Mr. Fiero to come to an agreement with my primary creditors to provide for restructuring of my debts. The primary creditors/lenders were Zions, Centennial Bank, Professional Bank and South River Capital (collectively the "Lenders"). I also retained a Certified Public Accountant recommended

by Mr. Fiero to assist me and Mr. Fiero in figuring out what might be feasible in terms of a payment plan.

6. As discussed in Mr. Fiero's accompanying declaration, the effort to resolve things with the Lenders was unsuccessful. They filed suit against me and pursued aggressive collection efforts, including asserting that they had a security interest in my salary and were entitled to direct receipt of my paychecks.

7. On top of which, due to the Covid-19 pandemic, a portion of the National Hockey League season for 2019-2020 was canceled, which decreased my income for the season. I only receive salary for games played by the Sharks, and approximately 14 games were canceled in the 2019-2021 season.

8. Based on the ongoing litigation by the Lenders, including a lawsuit naming the Sharks as an additional defendant filed by Centennial in District Court in Miami, Florida, and the failure to make any progress in resolving things with the Lenders, I retained Finestone Hayes LLP to file the current bankruptcy case for me.

**Events Since Filing Bankruptcy:**

9. Since filing this case, I have worked diligently in responding to numerous requests for information from the Chapter 7 trustee, Fred Hjelmsted (the "Trustee") and the Office of the United States Trustee ("UST"). Among other things, I provided: bank statements for all bank accounts going back to January 2020, credit card statements, prior years' federal and state tax returns, mortgage statements, insurance information, information regarding various business entities and business ventures, a breakdown of the use of loan proceeds, an explanation of transactions reflected in bank statements and credit card statements, lease agreements, loan agreements and various other miscellaneous documents reflecting my debts or financial history.

10. I also provided access to my home in San Jose and real property in Vancouver, British Columbia to realtors selected by the Trustee to opine as to the current value of the real property assets.

11. I accepted the valuations provided by the Trustee's realtors in reaching the settlement with the Trustee regarding the real estate and funds on account. The Trustee has filed

a motion seeking approval of that settlement and I have already made the first installment payment of $55,000 to the Trustee consistent with the terms of the settlement.

12. I appeared for my initial Meeting of Creditors, which lasted approximately 2 ½ hours, and appeared for a continued meeting on February 25, 2021. The continued meeting last approximately 30 minutes, after which time the Trustee concluded the meeting.

13. Even after the meeting I have continued providing documentation to the Trustee and UST as requested. I have also stipulated with the UST and various creditors to extend the deadlines for filing complaints to determine dischargeability or object to my discharge.

**Response to Various Allegations in the Motion**

14. The Motion makes various claims or accusations that are incorrect or baseless and I wish to correct the record for the Court.

15. Regarding my salary with the Sharks, my Schedule I included a lengthy explanation of anticipated salary for the current season. I believe the Lenders all had received copies of my current contract with the Sharks, which Zions filed with the Motion. I have also provided copies of my employment contract to the Trustee and UST shortly after filing my case.

16. The Motion ignores that under the current Collective Bargaining Agreement ("CBA") between the NHL owners and the Players' Association, significant sums are withdrawn from players' paychecks. First, an amount is withheld as an "Escrow". This amount is related to revenue sharing between the owners and players. If the league does not hit certain revenue targets for a season, the escrowed funds go back to the owners. For the year 2020-2021, the escrowed amount is 20% of payroll, which amount is withheld from paychecks. Due primarily to the Covid-19 pandemic, which limited the numbers of games played and has prevented fan attendance, the league did not hit its revenue targets in the 2019-2020 season and will not hit them for the 2020-2021 season.

17. In addition to the Escrow amounts, pursuant to an amendment to the CBA signed shortly before the beginning of the current season, an additional amount of salary is withheld as deferred compensation (the "Deferral"). The Deferral withhold is 10%. The Deferral is to be paid to the players in three equal installments (without interest) in October 2022, 2023 and 2024.

KANE DEC RE MOTION TO CONVERT 4

The Escrow and Deferral deductions have a significant effect on my pay. By way of example, I received my first paycheck for the current season at the end of January 2021. The gross earnings for the pay period were $213,905. After Escrow, Deferral, typical payroll deductions such as state and federal income taxes and other incidental deductions, my net pay was $38,709.

18. Moreover, the players' salary is based upon games played, rather than a simple dividing up of an annual salary into semi-monthly paychecks. The Sharks have played 26 games this season but thus far have had three games postponed due to Covid-19 protocols. The players will not get paid for those games until and unless they are made up in the future.

19. With respect to my gambling, it has been an issue in my past and it would be inaccurate to pretend it has not had a negative effect on my life, financially and otherwise. I have undergone and continue to receive personal therapy to deal with it and other matters and hope that the issue is behind me.

20. The Motion is also critical of my pre-bankruptcy investment in tax reduction planning via a conservation easement. The Motion claims I borrowed $2.55 million for a "gamble". This is incorrect. I borrowed $750,000 to invest in the structure pursuant to various private placement memoranda. I was only required to pay an initial fee of $35,000 in connection with the investment, which I was advised should result in a tax refund of approximately $1.8 million. I made this investment at the time as a way to raise funds to pay back creditors. I have provided all the documents related to this investment to the Trustee and UST. If the investment pays off, the funds (beyond the loan amount) would go to the Trustee.

21. The Motion also claims I was not being truthful by omitting the transfer of two Rolex watches in payment of debt. I did the best job I could in working with my counsel to prepare the initial bankruptcy filings. I did not have a CPA or financial advisor assist in the preparation. I have amended those filings several times to continue to make certain they accurately reflect the required information. At the Meeting of Creditors, I was asked numerous questions about items in my bank statements, which I had provided to the Trustee and UST. Often the entry in question involved payments to various creditors. The questions triggered my memory about repaying debt with the transfer of the watches and that was something I added to

the amended Statement of Financial Affairs. No one asked about any Rolex watches or whether I had ever paid a creditor via transfer of property.

22. The Motion also raised questions about the residence I own with my wife in San Jose (the "San Jose Property"). I provided the Trustee and UST with all documents related to the purchase of the San Jose Property and the debt against it. Lions Properties LLC ("Lions Properties") was the initial purchaser of the San Jose Property. Lions Properties is a limited liability company which my wife and I own. It has no creditors. I also provided the Trustee and UST with documents concerning the formation and ownership of Lions Properties. Lions Properties transferred title to the San Jose Property to me and my wife just before I filed this case. I provided the documents related to the transfer to the Trustee and UST.

23. As noted above, I provided the Trustee's realtor physical access to the San Jose Property during the pandemic despite the fact that I live there with my wife and our young daughter. The Trustee has assessed the value of the San Jose Property, which was not that far off from the value I placed on the Bankruptcy Schedules, and that value formed the basis of my settlement with the Trustee.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of March 2021 in San Jose, California.



Evander F. Kane
Evander F. Kane