1  Michael Gerard Fletcher (State Bar No. 070849)
   mfletcher@frandzel.com
2  Gerrick M. Warrington (State Bar No. 294890)
   gwarrington@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard, Nineteenth Floor
4  Los Angeles, California 90017-2427
   Telephone: (323) 852-1000
5  Facsimile: (323) 651-2577

6  Attorneys for creditor ZIONS
   BANCORPORATION, N.A., dba
7  California Bank & Trust

8
               UNITED STATES BANKRUPTCY COURT
9
               NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN JOSE DIVISION
11

12  In re                          Case No. 21-50028-SLJ
13  EVANDER FRANK KANE,            Chapter 7
14         Debtor.                 **OBJECTION BY CREDITOR ZIONS
15                                 BANCORPORATION, N.A. TO DEBTOR
                                   EVANDER FRANK KANE'S
16                                 HOMESTEAD EXEMPTION**

17                                 Date:    May 4, 2021
                                   Time:    2:00 p.m. PDT
18                                 Place:   Courtroom 9
                                            San Jose, California*
19
                                   **\*(Pursuant to Fifth Amended General
20                                 Order 38, The Hearing Will be Held by
                                   Zoom as a Video Hearing.)**
21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# Table of Contents

**Page**

I. Introduction ...................................................................................................6

II. Jurisdiction ...................................................................................................6

III. Relevant Facts ..............................................................................................7

    A. Zions Sues Kane, and Kane Hires Bankruptcy Counsel After Becoming Concerned Over His Ability to Meet his Debt Obligations. ........................7

    B. Kane Forms Florida Limited Liability Company. .........................................7

    C. Kane Siphons $600,000.00 in Non-Exempt Equity from the Canadian Properties and Uses it for a Partial Down Payment on Residence, Transferring Title to the Florida LLC. .........................................................7

    D. Kane Transfers the Residence from the LLC to Himself and his Wife on the Eve of Filing Chapter 7. ................................................................................9

    E. Kane Files Chapter 7. ...................................................................................9

    F. At Kane's Meeting of Creditors, He Answers Some, but not All, Questions About the Pre-Bankruptcy Exemption Planning Scheme. .............................9

    G. Kane Invokes California's Newly-Enhanced Homestead Exemption, While Disclosing Massive Gambling Losses and Balance Sheet Insolvency While Being Sued by Numerous Creditors. ............................................................9

IV. Argument.....................................................................................................10

    A. Standards Governing Exemptions Generally. .............................................10

    B. Standards Governing the Burden of Proof. ................................................10

    C. Standards Governing § 522(*o*). ..................................................................11

    D. Applying the *Corbett* Test. .........................................................................12

        1. The debtor disposed of the property during the ten (10) years preceding the petition date. ...............................................................12

        2. The property was not exempt. .........................................................13

        3. Some of the proceeds from the sale of the property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead.................................14

        4. The debtor disposed of the property with the intent to hinder, delay, or defraud a creditor. .......................................................................15

    E. Alternative Analysis Under § 522(p). ........................................................20

V. Conclusion...................................................................................................22

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**<u>Table of Authorities</u>**

**Page(s)**

**Federal Cases**

*In re Anderson*,
　　386 B.R. 315 (Bankr. D. Kan. 2008), *aff'd sub nom. Parks v. Anderson*, 406
　　B.R. 79 (D. Kan. 2009) ............................................................................................ 11

*Carter v. Anderson (In re Carter)*,
　　182 F.3d 1027 (9th Cir. 1999) .................................................................................. 10

*In re Corbett*,
　　478 B.R. 62 (Bankr. D. Mass. 2012)..................................................................*passim*

*Danussi v. Kaska*,
　　424 B.R. 616 (N.D.N.Y. 2010) ................................................................................ 12

*In re Diaz*,
　　547 B.R. 329 (B.A.P. 9th Cir. 2016)........................................................................ 10

*In re Halinga*,
　　2013 WL 6199152 (Bankr. D. Idaho 2013) ............................................................. 15

*In re Keck*,
　　363 B.R. 193 (Bankr. D. Kan. 2007)........................................................................ 13

*In re Lacounte*,
　　342 B.R. 809 (Bankr. D. Mont. 2005)................................................................ 15, 19

*In re Longview Aluminum, LLC*,
　　657 F.3d 507 (7th Cir. 2011).................................................................................... 18

*In re McNabb*,
　　326 B.R. 785 (Bankr. D. Ariz. 2005) ....................................................................... 20

*In re Nolan*,
　　618 B.R. 860 (Bankr. C.D. Cal. 2020), *aff'd*, No. 5:20-CV-01496-MCS, 2021
　　WL 528679 (C.D. Cal. Feb. 12, 2021)..................................................................... 10

*Raleigh v. Illinois Dep't of Revenue*,
　　530 U.S. 15 (2000) ................................................................................................... 10

*In re Rasmussen*,
　　349 B.R. 747 (Bankr. M.D. Fla. 2006)..................................................................... 20

*Retz v. Samson (In re Retz)*,
　　606 F.3d 1189 (9th Cir. 2010).................................................................................. 15

*In re Smither*,
   542 B.R. 39 (Bankr. D. Mass. 2015) ...................................................... 14

*Taylor v. Freeland & Kronz*,
   503 U.S. 638 (1992) ...................................................................................... 10

*In re Vill. at Lakeridge, LLC*,
   No. BAP NV-12-1456, 2013 WL 1397447 (B.A.P. 9th Cir. Apr. 5, 2013), *aff'd
   sub nom. In re The Vill. at Lakeridge, LLC*, 814 F.3d 993 (9th Cir. 2016), *aff'd
   sub nom. U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at
   Lakeridge*, LLC, 138 S. Ct. 960, 200 L. Ed. 2d 218 (2018), an*d aff'd sub nom.
   In re The Vill. at Lakeridge, LLC*, 634 F. App'x 619 (9th Cir. 2016) ................ 17

*In re Wallwork*,
   616 B.R. 395 (Bankr. D. Idaho 2020) ...................................................... 15

*Wolfe v. Jacobson (In re Jacobson)*,
   676 F.3d 1193 (9th Cir. 2012) ...................................................................... 10

**Federal Statutes**

11 U.S.C. § 101(9)(A)(4) ................................................................................ 18

11 U.S.C. § 301(b) .............................................................................................. 6

11 U.S.C. § 522(*o*) ..................................................................................... *passim*

11 U.S.C. § 522(*o*)(4) ...................................................................................... 11

11 U.S.C. § 522(p) ...................................................................................... *passim*

11 U.S.C. § 541(a) ............................................................................................ 10

11 U.S.C. § 548(a)(1)(A) ................................................................................ 14

11 U.S.C. § 727(a)(2) ....................................................................................... 14

28 U.S.C. § 157(b)(2)(A) .................................................................................. 6

28 U.S.C. § 157(b)(2)(B) .................................................................................. 6

28 U.S.C. § 157(b)(2)(O) .................................................................................. 6

28 U.S.C. § 1334 ............................................................................................... 6

**State Statutes**

Cal. Civ. Code § 3439.04(b) ............................................................................ 15

Cal. Civ. Proc. Code § 703.130 ...................................................................... 20

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Cal. Civ. Proc. Code § 704.225 ................................................................................... 13

Cal. Civ. Proc. Code § 704.730 ......................................................................... 9, 11, 17, 18

Cal. Civ. Proc. Code § 704.780(a) .............................................................................. 10

**Rules**

Fed. R. Bankr. P. 4003(c) ........................................................................................ 11

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**TO:  THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE, PARTIES IN INTEREST, AND THEIR COUNSEL:**

Zions Bancorporation, N.A., dba California Bank & Trust ("Zions"), hereby objects to the homestead exemption claimed by the chapter 7 debtor Evander Frank Kane ("Kane").  For the reasons set forth in the following memorandum of points and authorities, Zions requests that the Court enter an order disallowing Kane's homestead exemption in its entirety under 11 U.S.C. § 522(*o*) or, alternatively, reducing Kane's homestead significantly under § 522(p).

## I.      Introduction

Just months before filing chapter 7, Kane siphoned $600,000.00 in nonexempt equity from his two properties in Canada and funneled those funds to a Florida shell entity to be used as a partial down payment on a multi-million dollar residence in San Jose.  Then, Kane shielded that value by invoking a $600,000.00 exemption under California's newly-augmented homestead exemption.  This plan was developed while Kane was represented by prominent bankruptcy counsel and while landmark homestead legislation was coursing through the California legislature.  Critically, Kane's actions—shielding of $600,000.00 in otherwise available assets at a time while he was hopelessly insolvent, being sued from all sides, and racking up $1.5 million in gambling losses—meet all the hallmarks to demonstrate his specific intent to hinder, delay, or defraud his creditors.  The Court should enter an order disallowing Kane's $600,000.00 homestead in its entirety under § 522(*o*) or, alternatively, reducing it in accordance with § 522(p) of the Bankruptcy Code.

## II.      Jurisdiction

Kane filed a voluntary chapter 7 petition on January 9, 2021, which filing constituted an order for relief.  11 U.S.C. § 301(b).  This Court has jurisdiction to hear and determine this objection pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O), which this Court has authority to hear and determine by final order.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

### III.   Relevant Facts

The following facts are relevant to this exemption objection.  Additional background facts may be found in Zion's Motion to Convert to Chapter 11 and Appoint Chapter 11 Trustee ("Motion to Convert") (Dkt. 33 at ¶ II.).[1]

### A.   Zions Sues Kane, and Kane Hires Bankruptcy Counsel After Becoming Concerned Over His Ability to Meet his Debt Obligations.

Kane states that in October 2019 he hired Pachulski Stang Ziehl & Jones LLP ("Pachulski Stang") because of his concern over his inability to meet his debt obligations and to provide for restructuring of his debts and a feasible payment plan. Declaration of Evander Kane "Kane Decl." Dkt. 65-1 at 2:23-25.

On December 20, 2019, Zions sued Kane in Santa Clara Superior Court for, among other things, his payment and covenant defaults under the governing loan documents. In February of 2020, Kane, though his counsel at Pachulski Stang, appeared in the Zions action.

### B.   Kane Forms Florida Limited Liability Company.

On May 26, 2020, Evander Kane ("Kane") formed a Florida limited liability company named Lions Properties, LLC ("Lions Properties") in which he and his wife, Deanna Kane, were managers and 100% interest-holders. *See* Declaration of Gerrick M. Warrington ("Warrington Decl.") Exh. 1, Florida SOS Corporate Filing; Schedule B (Dkt. 1 at 14 of 73).

### C.   Kane Siphons $600,000.00 in Non-Exempt Equity from the Canadian Properties and Uses it for a Partial Down Payment on Residence, Transferring Title to the Florida LLC.

In August 2020, Kane states that he purchased his residence located at 2301 Richland Avenue, in San Jose, CA 95125 ("Residence"). *See* Warrington Decl., Exh. 2, Meeting of Creditors Transcript ("MOC") at 25:12-15. He states, however, that Lions Properties took title to

---

[1] Zions requests that the Court take judicial notice of the bankruptcy court filings referenced herein per Fed. R. Evid. 201, including the Motion to Convert (Dkt. 33), the Petition, Schedules, Amended Schedules, and Statement of Financial Affairs (Dkts. 1, 17, 18, 19, and 37), the Motion to Approve Settlement (Dkt. 42), and the Kane Decl. (Dkt. 65-1).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   the Residence at that time. Warrington Decl., Exh. 2, MOC at 25:16-18. A grant deed dated March

2   8, 2020, and recorded on August 21, 2020, reflects that the Residence was transferred to Lions

3   Properties. *See* Warrington Decl., Exh. 3. Kane admits that he formed Lions Properties "for the

4   sole purpose of taking title to the [Residence]." Warrington Decl., Exh. 5, Recital B to Settlement

5   Agreement, Dkt. 42-1 at 5 of 10 (highlighted).

6          Kane states that he made a $600,000.00 partial down payment on the Residence from loan

7   proceeds sourced from a $600,000.00 loan he obtained, apparently in August 2020, from 1000568

8   B.C. Ltd. ("Loan"). *See* Sch. D Dkt. 18 (reflecting $600,000.00 loan in U.S. dollars); *cf.*

9   Warrington Decl., Exh. 6, MOC at 24:13-24 (stating that the Loan was in "Canadian funds").

10         Kane states the Loan was cross-collateralized and secured by junior liens (which Kane

11  describes as "second mortgages") on Kane's two real properties in Canada, namely, the property

12  located at 3457 West 35th Avenue, Vancouver, BC Canada ("35th Avenue Property") and 8447

13  Isabel Place, Vancouver, BC Canada ("Isabel Place Property" and together with 35th Avenue

14  Property, the "Canadian Properties"). Sch. A/B, D Dkt. 18; Warrington Decl., Exh. 6, MOC at

15  24:16-18. Schedule D reflects that Kane is an obligor on the Loan along with another entity or

16  person.

17         Kane states that he is the sole owner of the Isabel Place Property and that he jointly owns

18  the 35th Avenue Property jointly with his mom, Sherri Lynn Kane. Warrington Decl., Exh. 7,

19  MOC at 29:16-22; 30:14-18; *see also* Sch. D Dkt. 18. Kane states that his parents reside at the

20  Isabel Place Property, that the 35th Avenue Property is vacant, and Kane pays the mortgages and

21  neither Canadian Property produces income. Warrington Decl., Exh. 8, MOC at 18:3-7; 18:18-20;

22  62:25-63:7. Kane states that the 35th Avenue Property was previously rented out (before it became

23  vacant); MOC at 18:22.

24         Kane states that he used the Loan proceeds as a partial down payment on his Residence.

25  Warrington Decl., Exh. 6, MOC at 24:24 (stating that the $600,000 loan proceeds were used "as

26  part of the down payment on my home here in San Jose"); *see also* Sch. D Dkt. 18.

27         Kane states that he lived at the Residence before he bought it in August of 2020 and that he

28  rented his prior address at 334 Santa Row. Warrington Decl., Exh. 9, MOC at 46:15-47:2.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**D.** **Kane Transfers the Residence from the LLC to Himself and his Wife on the Eve of Filing Chapter 7.**

On January 8, 2021, Kane recorded a quitclaim deed transferring the Residence from Lions Properties to Kane and his wife "as husband and wife as community property with right of survivorship." Warrington Decl., Exh. 4, at 10-12.

**E.** **Kane Files Chapter 7.**

On January 9, 2021, Kane filed a voluntary chapter 7 bankruptcy petition. Kane states that Lions Properties has no assets and it is no longer operating. Sch. A/B Dkt. 37 at 6 of 11; Warrington Decl., Exh. 10, MOC at 20:7-10.

**F.** **At Kane's Meeting of Creditors, He Answers Some, but not All, Questions About the Pre-Bankruptcy Exemption Planning Scheme.**

When asked by the Trustee about the transfer—"why did Lions Properties transfer title to you just before you filed for bankruptcy?"—Kane's counsel objected on the basis of attorney-client privilege and instructed Kane not to answer. MOC at 26:3-9. The meeting of creditors concluded on February 23, 2021. *See* 2/23/2021 Unnumbered Docket Entry.

**G.** **Kane Invokes California's Newly-Enhanced Homestead Exemption, While Disclosing Massive Gambling Losses and Balance Sheet Insolvency While Being Sued by Numerous Creditors.**

Kane's schedules reflect that his Residence is worth $3,000,000.00 and is encumbered by a $2,320,000.00 first mortgage, leaving $680,000.00 in equity as of the petition date. Sch. D Dkt. 18. In the Schedule C filed on January 9, 2021 (Dkt. 1), Kane claims a $600,000.00 homestead exemption in the Residence pursuant to California Code of Civil Procedure ("CCP") § 704.730.

Kane's statement of financial affairs reflects $1.5 million in gambling losses within 1 year of the petition date as well as 9 different lawsuits for breach of contract and fraud, among other things, pending within the 1 year preceding his bankruptcy filing. *See* Statement of Financial Affairs Dkt. 19 at 4 and 6 of 9.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Kane's summary of assets and liabilities reflects that Kane is balance sheet insolvent, with total assets of $10,224,743.65 and total liabilities of $26,837,340.00. *See* Summary of Assets and Liabilities Dkt. 1 at 8 of 73.

## IV.  Argument

As analyzed below, Kane's invocation of California's newly-enacted homestead exemption comes squarely within the ambit of 11 U.S.C. § 522(*o*) and, alternatively, § 522(p). As discussed below, the Could should enter an order disallowing Kane's homestead exemption in its entirety, reducing it from $600,000.00 to $0.00 under § 522(*o*) or, alternatively, reducing it significantly under § 522(p).

### A.  Standards Governing Exemptions Generally.

Under 11 U.S.C. § 541(a),[2] the commencement of a bankruptcy case creates a bankruptcy estate comprising of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case."  The Bankruptcy Code generally allows a debtor to exempt certain property from the bankruptcy estate in order to avoid distribution to the estate's creditors. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992).

A debtor's exemptions are fixed as of the petition date pursuant to the "snapshot rule." *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012) (citing *White v. Stump*, 266 U.S. 310, 313 (1924)). Under § 522(b)(3)(A), exemptions are to be determined in accordance with the state law applicable on the date of filing. *In re Jacobson*, 676 F.3d at 1199. The entire state law applicable on the petition date determines whether an exemption applies. *Id.*

### B.  Standards Governing the Burden of Proof.

Generally, the burden of proof is a substantive element of state law applicable in federal cases when state law is applied.  *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20-21 (2000).  Accordingly, debtors claiming California exemptions, generally carry the burden to prove

---

[2] Unless otherwise specified, references to "§" refer to the Bankruptcy Code at Title 11 of the United States Code.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

his or her entitlement to the exemption in a bankruptcy case. *In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016) (citing *In re Tallerico*, 532 B.R. 774, 788 (Bankr. E.D. Cal. 2015); *In re Pashenee*, 531 B.R. 834, 837 (Bankr. E.D. Cal. 2015)); *but see* Fed. R. Bankr. P. 4003(c); *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999), *overruled on this point by Raleigh v. Illinois Dep't of Revenue*, 530 U.S. at 20-21 *as noted in In re Diaz*, 547 B.R. at 337.

In the context of a California homestead exemption, under CCP § 704.780(a), the burden to show a debtor's entitlement to a homestead exemption rests with the debtor, unless a declared homestead has been recorded. *In re Nolan*, 618 B.R. 860, 865 (Bankr. C.D. Cal. 2020), *aff'd*, No. 5:20-CV-01496-MCS, 2021 WL 528679 (C.D. Cal. Feb. 12, 2021). Where a debtor cites CCP § 704.730 in his schedules and relies on the automatic homestead exemption, under CCP § 704.780(a), the burden of proving entitlement to the automatic homestead rests on the debtor. *Id.*

Here, Kane's amended schedules reflect that he is claiming a $600,000.00 homestead exemption in the Residence pursuant to the automatic homestead exemption under CCP § 704.730. *See* Amended Sch. C Dkt. 37 at 10 of 11. And, the records of the Santa Clara tax assessor do not indicate any declared homestead exemption. *See* Tax Assessor Printout, Warrington Decl., Exh. 12. Therefore, Kane carries the burden of proof to establish his entitlement to the claimed homestead exemption.

**C.      Standards Governing § 522(*o*).**

Section 522(*o*) provides, in pertinent part, as follows:

(*o*) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—

….

(4) real …property that the debtor … claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor held the property so disposed of.

11 U.S.C. § 522(*o*)(4).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Under § 522(*o*), the Court "shall" enter an order reducing the value of a debtor's interest in property claimed as a homestead to the extent such value can be (1) attributed to property disposed of in the ten years preceding filing; (2) with intent to hinder, delay, or defraud a creditor; (3) that the debtor could not otherwise exempt under § 522(b) as of the petition date. *In re Anderson*, 386 B.R. 315, 328 (Bankr. D. Kan. 2008), *aff'd sub nom. Parks v. Anderson*, 406 B.R. 79 (D. Kan. 2009).

Courts have parsed § 522(*o*) into the following four elements—the so-called "*Corbett* test"—which elements, if met, require a reduction in the value of the homestead:

(1) the debtor disposed of the property during the ten (10) years preceding the petition date;

(2) the property was not exempt;

(3) some of the proceeds from the sale of the property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and

(4) the debtor disposed of the property with the intent to hinder, delay, or defraud a creditor.

*In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012); *see also Danussi v. Kaska*, 424 B.R. 616, 619-20 (N.D.N.Y. 2010).

**D.     Applying the *Corbett* Test.**

The following is an analysis of each of the four prongs of the *Corbett* test. As analyzed below, each prong of the *Corbett* test has been met, and the Court should reduce Kane's $600,000.00 homestead exemption to $0.00 pursuant to § 522(*o*).

**1.     The debtor disposed of the property during the ten (10) years preceding the petition date.**

Here, Kane obtained the $600,000.00 Loan in August of 2020. *See* Sch. D (reflecting $600,000.00 loan in USD); Warrington Decl., Exh. 6, MOC at 24:13-21. The equity in the Canadian Properties that Kane encumbered with junior liens, as well as the Loan proceeds, themselves, constitute "property" that Kane "disposed of" in August of 2020 (within 10 years of the petition date), when he used the Loan proceeds as a partial down-payment to purchase the

Residence and allowed Lions Properties to take ownership of the Residence via grant deed. This prong of the *Corbett* test has, therefore, been met.

### 2. The property was not exempt.

Here, the "property" in question is the encumbered equity in the Canadian Properties and the resultant $600,000.00 Loan proceeds.[3] Per Kane's schedules, his obligation to repay the Loan was supported by junior liens ("second mortgages"), which were cross-collateralized, against both of the Canadian Properties. Sch. A/B, D; Warrington Decl., Exh. 6, MOC at 24:16-18. At the time of the Loan, and as of the petition date, the equity in the Canadian Properties was not exempt and neither was the $600,000.00 in Loan proceeds. And, as of the petition date, Kane has not exempted any portion of the Canadian Properties or the Loan proceeds on Schedule C. *See* Schedule C, Dkt. 37 at 10 of 11. In short, Kane would have no available exemption for the equity or the Loan proceeds as of the petition date. Indeed, as demonstrated by Kane's own schedules, Kane could not exempt any portion of the $600,000.00 Loan as of the petition date because the Canadian Properties were not homesteads of Kane and the Loan proceeds themselves could not be covered by any other available exemption under California law. For example, the deposit account exemption under CCP § 704.225 could not shield the Loan proceeds because, among other things, the Trustee's Motion for Authority to Convey Estate's Equity in Real Estate and Resolve Dispute concerning Bank Accounts (Dkt. 42) already provides that Kane may only retain 50% of the approximate $38,000.00 in existing funds on deposit as of the petition date (these funds, of course, do not include the $600,000.00). In short, neither the equity in the Canadian Properties nor the Loan proceeds themselves were exempt at any relevant point in time. This prong has been met.

---

[3] Per Kane's schedules the $600,000.00 Loan was denominated in U.S. dollars; however, in Kane's meeting of creditors testimony, he stated that the $600,000.00 Loan was in Canadian dollars. *See* Sch. D Dkt. 18 at 2-3 (reflecting $600,000.00 loan in U.S. dollars); *cf.* Warrington Decl., Exh. 6, MOC at 24:13-24 (stating that the Loan was in "Canadian funds"). As of the filing of this objection, Kane's schedules reflect that the Loan was $600,000.00 in U.S. dollars, not Canadian dollars. And, even if Kane were to demonstrate with credible evidence that the Loan was for $600,000.00 in Canadian dollars, the analysis in this objection would still remain the same, although the exemption reduction may be altered to some extent by application of an exchange rate.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

### 3. Some of the proceeds from the sale of the property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead.

Although the third prong of the *Corbett* test speaks in terms of a "sale" of property, section 522(*o*) applies more broadly to the "disposition" of non-exempt property, which could include sales, transfers, advances against, and/or hypothecation of non-exempt property to increase the value of a homestead with the actual intent to hinder, delay, or defraud creditors. *See In re Keck*, 363 B.R. 193, 208 (Bankr. D. Kan. 2007) (finding that § 522(*o*) applies where debtor improved his homestead with the proceeds of credit card advances). Courts analyzing the third prong of the *Corbett* test compare whether the disposition of non-exempt property resulted in an increase in value of the homestead exemption as of the petition date. *See, e.g.*, *In re Smither*, 542 B.R. 39, 49 (Bankr. D. Mass. 2015) ("In determining whether there is a value increase one looks to the value of the home as of the bankruptcy filing date."). If, as of the petition date, there is no equity or "value" in the homestead, then § 522(*o*) would not apply even if there were actually fraudulent transfers. Conversely, if as of the petition date there is equity in the homestead which is attributable to the conversion of non-exempt assets, then the third prong of the *Corbett* test is met.

Here, Kane borrowed against $600,000.00 in non-exempt equity from the Canadian Properties and used those Loan proceeds as a partial down payment for the Residence, against which he now claims a $600,000.00 homestead exemption. These transactions fit neatly within the third *Corbett* prong, as they constitute the acquisition of a "new homestead." And, the $600,000.00 down-payment made in August 2020 is directly attributable to the $600,000.00 + in equity in the Residence against which equity Kane is now claiming a $600,000.00 homestead exemption. In particular, as of the petition date, and according to Kane's schedules, the Residence held $680,000.00 in gross equity. *See* Dkt. 1. *See also* Warrington Decl., Exh. 5, Motion to Approve Settlement (Dkt. 42-1) at 6 of 10 (reflecting $838,750.00 in equity in the Residence). And, $600,000.00 of that equity is directly attributable to the $600,000.00 Loan proceeds used as a partial down-payment on the Residence (i.e., reducing the principal balance of the first mortgage

on the Residence and, as a result, adding dollar-for-dollar to the petition date equity in the Residence).

Thus, the third prong of the Corbett test has been met.

### 4. The debtor disposed of the property with the intent to hinder, delay, or defraud a creditor.

To satisfy the fourth prong of the *Corbett* test, the Court must find that Kane obtained the Loan and applied it as a partial down payment on the Residence "with the intent to hinder, delay, or defraud" a creditor. The phrase "hinder, delay, or defraud" is a term of art, which identical phrase appears in connection with 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2). Accordingly, the phrase is interpreted in the same way—in the disjunctive—to "hinder, delay, *or* defraud." *See Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010) ("Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor.") (citation omitted).

The analysis focuses on the same "badges of fraud" used for finding actual fraud in connection with discharge objections under § 727(a)(2) and dischargeability complaints under § 523(a). *See In re Wallwork*, 616 B.R. 395, 406-07 (Bankr. D. Idaho 2020) (citations omitted).

The relevant "badges of fraud" include:

1) a close relationship between the transferor and the transferee;

2) that the transfer was in anticipation of a pending suit;

3) that the transferor Debtor was insolvent or in poor financial condition at the time;

4) that all or substantially all of the Debtor's property was transferred;

5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and

6) that the Debtor received inadequate consideration for the transfer.

*Id*. (citations omitted). *See also* Cal. Civ. Code § 3439.04(b) (listing "badges of fraud" under California's Uniform Voidable Transactions Act). "Whatever badges of fraud a court uses, no particular badge is necessary, nor is any combination sufficient." *In re Halinga*, 2013 WL 6199152, at *6 (Bankr. D. Idaho 2013) (citation omitted).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

The badges of fraud analysis centers on the debtor's subjective knowledge and intent leading up to the date of the transfers in question, including whether the debtor consulted with legal counsel in planning to invoke the exemption. *See id.* (analyzing whether debtor was aware of or served with complaint or served with judgment at the time of the transfer or was aware of the relevant homestead exemption); *see also In re Lacounte*, 342 B.R. 809, 815-16 (Bankr. D. Mont. 2005) (finding that § 522(*o*) applied when debtors sold assets to insiders after seeking the advice of bankruptcy counsel).

Here, the analysis centers on the facts and circumstances in the time period leading up to the "transfer"—i.e., the August 2020 Loan. The following timeline and observations indicate that Kane (perhaps upon the advice of his bankruptcy counsel, Pachulski Stang, which counsel Kane states he hired in October 2019), converted $600,000.00 in non-exempt assets into putatively exempt assets with the intent to hinder, delay, or defraud his then-known creditors, at a time when Kane was insolvent, being sued by several creditors, and experiencing massive gambling losses.

### *Timeline*

In October 2019, Kane states that "Because of concern over my ability to meet my debt obligations, I hired John Fiero of Pachulski Stang Ziehl & Jones in October 2109." Kane Decl., Dkt. 65-1 at 2:23-24. Per Kane, the goal was to reach an agreement regarding "restructuring of my debts" and "figuring out what might be feasible in terms of a payment plan." Kane Decl., at 2:24-25; 3:1-2.

In December 2019, Zions sued Kane in Santa Clara Superior Court in a breach of contract action captioned *Zions Bancorporation, N.A. v. Kane*, Case No. 19CV360613 ("Zions Action").

In January 2020, assembly bill AB1885—providing for a $600,000.00 homestead exemption based on median sale price of a single family home—was first introduced to the California State Assembly.

At least by February of 2020, Kane had appeared in the Zions Action (he later filed his answer on June 9, 2020).

On May 26, 2020, Kane formed Lions Properties, LLC, designating himself and his wife as 100% interest-holders. *See* Warrington Decl., Exh. 1, FL SOS Corporate Filing; Schedule B

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   (Dkt. 1 at 14 of 73). Kane formed Lions Properties for the "sole purpose of taking title to the

2   [Residence]." Warrington Decl., Exh. 5, Recital B to Settlement Agreement Dkt. 42-1 at 5 of 10.

3        In June 2020, AB1885 passed the State Assembly and crossed over to the Senate where it

4   passed in August of 2020.

5        As of August 2020, Kane was aware that he had numerous lawsuits (at least nine different

6   lawsuits are listed in Kane's Statement of Financial Affairs, Dkt. 1 at 49 of 73) pending against

7   him, including, but not limited to the Zions Action and:

8

9       •  *Parker v. Kane*, Los Angeles Superior Court Case No. 18SMCV00095, contractual

10          fraud action commenced in 2018, Kane filed answer on June 26, 2019.

11

12      •  *Centennial Bank v. Kane*, Santa Clara Superior Court Case No. 20CV364167, breach

13          of contract commenced on February 25, 2020, Kane's answer was filed on August 14,

14          2020.

15

16       Per Kane's statements and schedules and testimony at the meeting of creditors, in August

17  2020, Kane obtained a $600,000.00 Loan—the exact amount of the proposed homestead per

18  AB1885 which had passed Stated Assembly in June 2020. *See* Sch. D (reflecting $600,000.00 loan

19  in USD); *cf.* Warrington Decl., Exh. 6, MOC at 24:13-24 (stating that the Loan was in "Canadian

20  funds"). And, per Kane, those proceeds were used as a partial down-payment for the Residence.

21  Warrington Decl., Exh. 6, MOC at 24:13-24.

22       On August 21, 2020, ten days before AB1885 passed California's senate, a Grant Deed

23  was recorded which transferred the Residence to Lions Properties. *See* Warrington Decl., Exh. 3,

24  Grant Deed.

25       On September 15, 2020, AB1885 was signed into law by Governor Newsom, with the

26  $600,000.00 homestead amount being codified at CCP § 704.730, and which became effective on

27  January 1, 2021.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

And, on January 8, 2021, Kane singed a quitclaim deed on behalf of Lions Properties, quitclaiming the Residence to Kane and his wife the day before he filed chapter 7. *See* Warrington Decl., Exh. 4, Quitclaim Deed.

### *Observations*

Lions Properties was a shell entity that Kane used to hide his Residence (i.e., to hinder, delay, and arguably defraud his then-known creditors—many of whom were suing him for, among other things, breach of contract and fraud). Lions Properties is an entity that Kane owned 100% with his wife. Lions Properties is, therefore, a statutory insider of Kane. *See In re Vill. at Lakeridge, LLC*, No. BAP NV-12-1456, 2013 WL 1397447, at *4 n.8 (B.A.P. 9th Cir. Apr. 5, 2013), *aff'd sub nom. In re The Vill. at Lakeridge, LLC*, 814 F.3d 993 (9th Cir. 2016), *aff'd sub nom. U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge*, LLC, 138 S. Ct. 960, 200 L. Ed. 2d 218 (2018), an*d aff'd sub nom. In re The Vill. at Lakeridge, LLC*, 634 F. App'x 619 (9th Cir. 2016) (citing 11 U.S.C. § 101(9)(A)(4); *In re Longview Aluminum, LLC*, 657 F.3d 507, 509 n. 1 (7th Cir. 2011) (holding that the definition of "corporation" in the Bankruptcy Code's insider definition includes limited liability companies). Kane testified that Lions Properties no longer operates and has no assets. Sch. A/B at 14 of 73; Warrington Decl., Exh. 10, MOC at 20:7-10.

Viewing the overall effect of these pre-bankruptcy transactions, Kane ended up siphoning $600,000.00 in nonexempt equity from the Canadian Properties (in which is wife previously had no apparent interest) and then transferring 50% of that equity to his wife (via intermezzo transfer to Lions Properties and then to Kane and his wife, jointly) on the eve of bankruptcy for no consideration. Indeed, Kane's wife did not own any interest in the Canadian Properties, but rather Kane testified that he owned the Isabel Place Property outright and he jointly owned the 35th Avenue Property with his mom, Sherri Lynn Kane. Warrington Decl., Exh. 7, MOC 29:16-22; 30:14-18; *see also* Sch. D Dkt. 18.

And, per Kane's schedules, the Residence has $680,000.00 in equity, $600,000.00 of which Kane is shielding by claiming a homestead exemption under CCP § 704.730. *See also*

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   Motion to Approve Settlement Dkt. 42-1 at 6 of 10 (reflecting $238,750.00 in equity in the

2   Residence above the $600,000.00 homestead exemption).

3          Kane's conversion of $600,000.00 in non-exempt equity and Loan proceeds into a

4   $600,000.00 homestead exemption depleted assets which would have otherwise been available to

5   satisfy creditors—i.e., the transfer unquestionably resulted in the complete hindrance (not to

6   mention delay) of creditor recoveries that would have otherwise been available to satisfy a

7   judgment. This transfer was, effectively, a transfer of substantially all of Kane's available (i.e.,

8   non-exempt) assets.

9          In addition, Kane's own summary of assets and liabilities reflects that Kane is balance

10  sheet insolvent, with total assets of $10,224,743.65 and total liabilities of $26,837,340.00. *See*

11  Dkt. 1 at 8 of 73. In addition, Kane's own testimony indicates that as of October 2019, that he had

12  "concern over my ability to meet my debt obligations" which caused him to hire prominent

13  bankruptcy counsel at Pachulski Stang in October of 2019. Kane Decl., Dkt. 65-1 at 2:23-25.

14         During the same timeframe when Kane was insolvent and siphoning available equity out of

15  his Canadian Properties to take advantage of California's new homestead exemption, he admits

16  that he incurred $1,500,000.00 in gambling losses. SOFA Dkt. 19 at 6 of 9.  Kane's incurring

17  significant gambling losses during a time when he was concurrently effectuating "exemption

18  planning" to hid substantially all of his available assets from creditors comes squarely within the

19  type of "mansion loophole" that § 522(*o*) was designed to curtail. *See, e.g.*, *In re Lacounte*, 342

20  B.R. at 815-16 (finding that § 522(*o*) applied where a debtor concealed assets to prevent collection

21  after insolvency caused by gambling losses).

22         In sum, almost every badge of fraud is present. In particular, the transfers of the Loan

23  proceeds to Lions Properties and then the transfer of the Residence from Lions Properties to Kane

24  were transfers between statutory insiders. The transfers were made while numerous lawsuits were

25  pending against Kane, of which he was fully aware. The transfers were made while Kane was

26  balance sheet insolvent (as inferred from his schedules).

27         The fact that the Loan is $600,000.00 and the timing of the formation of Lions Properties

28  and the transfers of the Loan proceeds makes the inference unavoidable:  Kane was planning to

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   shield non-exempt assets from creditors by invoking the $600,000.00 homestead exemption to

2   cover the $600,000.00 equity infusion into the Residence (which equity would not have otherwise

3   existed).  It is notable that Kane was represented in state court litigation by bankruptcy counsel at

4   Pachulski Stang.  It is also notable that Kane's homestead was a "new" homestead.  He had

5   previously rented, not owned, his residences.

6   In Short, the evidence demonstrates that Kane subjectively intended, indeed planned, to

7   convert the equity in his Canadian Properties into a $600,000.00 homestead exemption as a means

8   to hinder, delay, and defraud his creditors.  By a series of surreptitious and eve-of-bankruptcy

9   transactions, including the use of a shell entity in Florida, Kane actively concealed and converted

10  available assets from his creditors—many of whom were suing him at the time.

11  Kane did all of this while he was insolvent, which insolvency was caused by, among other

12  things, $1.5 million in gambling losses for the year 2020, alone.  Kane has acknowledged prior

13  gambling losses, but could not remember how much those losses were.  Warrington Decl., Exh. 6,

14  MOC 24:4-12.

15  Therefore, the fourth prong of the *Corbett* test has been met.

16  **Conclusion as to § 522(o)**

17  As a result of the foregoing analysis, Kane unquestionably converted every penny of the

18  $600,000.00 Loan into his homestead exemption with the actual intent to hinder, delay, or defraud

19  his creditors. Accordingly, under § 522(*o*), Kane's entire homestead exemption of $600,000.00

20  should be reduced to $0.00, and that equity should be made available to creditors of Kane's estate.

21  **E.   Alternative Analysis Under § 522(p).**

22  Section 522(p) of the Code provides, in pertinent part, as follows:

23  (p)(1) … as a result of electing under subsection (b)(3)(A) to exempt property
    under State or local law, a debtor may not exempt any amount of interest that was
24  acquired by the debtor during the 1215-day period preceding the date of the filing
    of the petition that exceeds in the aggregate $170,350 in value in—

25

26      ….

27      (D) real … property that the debtor …claims as a homestead….

28  11 U.S.C. § 522(p).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

California has opted out of the federal system. Cal. Civ. Proc. Code § 703.130. Although there is some lower-court disagreement as to whether § 522(p) applies in so-called opt-out states, such as California, Zions believes the better reasoned cases would hold that § 522(p) does apply in California. *Compare In re McNabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005) (finding that § 522(p) does not apply in opt-out states because no election is made in opt-out states so the introductory language to § 522(p) "as a result of electing" can apply only in non-opt out states, i.e., those states where such an election is available) *with In re Rasmussen*, 349 B.R. 747, 752 (Bankr. M.D. Fla. 2006) (rejecting *McNabb*'s reasoning).

Unlike § 522(*o*), under § 522(p), the debtor's intent is not relevant. The effect of § 522(p) is to impose a $170,350.00 cap on a newly acquired homestead (i.e., one not rolled-over from a different homestead and which is acquired within 1,215 days of the petition date). Assuming that § 522(p) applies in California, as Zions urges the Court to find, and further assuming that Kane's exemption is not completely disallowed under § 522(*o*), then it should be capped at $170,350.00, per § 522(p) based on the above-listed undisputed facts.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V. <u>Conclusion</u>[4]

For the foregoing reasons, Zions requests that the Court enter an order pursuant to § 522(*o*) disallowing Kane's entire $600,000.00 homestead exemption. In the alternative, Zions requests that the Court enter an order reducing Kane's homestead exemption to $170,350.00 pursuant to § 522(p).

DATED:  March 25, 2021

Respectfully submitted,

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
GERRICK M. WARRINGTON


By:  ___/s/ Michael Gerard Fletcher___
MICHAEL GERARD FLETCHER
Attorneys for creditor Zions Bancorporation, N.A.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

---

[4] Zions expressly reserves the right to object to claims of "exemptions" in Kane's "wages" or "earnings" which assertions have been mentioned informally in court filings, but which are not reflected on Schedule C as being claimed exemptions.