Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:  (415) 616-0466
Fax:   (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Debtor,
Evander Frank Kane

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028-SLJ<br>Chapter 7<br><br>**DECLARATION OF EVANDER KANE IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO DISMISS**<br><br>**Date:** May 18, 2021<br>**Time:** 2:00 p.m.<br>Via Zoom |

I, Evander Kane, declare as follows:

1. I am 29 years old and I am the debtor in this case. I make this declaration in support of my opposition to the Motion to Dismiss (the "Motion"). I could and would testify competently to the matters set forth below.

2. I provided a lot of background information about my personal and financial situation in my declaration filed in opposition to the Motion to Convert previously heard by this Court and I do not repeat it here.

3. The following information is relevant to the Court's consideration of the Motion and the nature of my debts.

KANE DEC RE MOTION TO DISMISS                                                                                               1

**Secured Debt Information:**

4. First, with respect to the secured debt listed in my Bankruptcy Schedules, as of the time I filed this case, my wife and I owed approximately $2,320,000 as a mortgage on our San Jose Home. In addition, I owed debts secured by two properties in Vancouver, British Columbia.

5. I purchased the property know as 8447 Isabel Place (the "Isabel Property") in approximately 2011. I purchased this property as an investment and I have not lived in it. As of the time I filed this case, the Isabel Property had secured debt against it of approximately $2,000,000 (USD) owed on a first deed of trust to Scotia Bank. The amount is based on a conversion of 1 Canadian dollar as equivalent to .81 USD.

6. The other Vancouver property is located at 3457 W. 35th Ave (the "35th Avenue Property"). I acquired this property in 2016 or 2017 as an investment. I have not lived in this property and it has been rented from time to time since it was acquired. As of the time I filed this case, the 35th Avenue Property had secured debt against it of approximately $2,439,000 (USD) owed on a first deed of trust to Scotia Bank. The amount is based on a conversion of 1 Canadian dollar as equivalent to .81 USD.

7. There is a second deed of trust secured against both the Isabel Property and the 35th Ave. Property. The amount of this debt is approximately $486,000 based on the same conversion rate noted above. I used the proceeds from this loan along with some of my salary to make the down payment on our San Jose home.

8. There is an additional secured debt owed to Lone Shark Holdings, LLC. This debt was incurred in relation to my investment in a Tax Conservation easement with Asher Capital. The amount of this debt is $715,000 and I understand it is secured against my potential tax refund.

**Unsecured or Under Secured Debt Information:**

9. There are loans from other creditors that are listed and filed as secured debt, though I do not know if those creditors have any security for their loans. The creditors are Zions Bancorporation, N.A. ("Zions"), Centennial Bank ("Centennial"), Professional Bank

("Professional") and South River Capital, LLC ("South River"). Zions, Centennial, Professional and South River are referred to collectively as the "Lenders". The loans from the Lenders were all arranged and underwritten by Sure Sports, LLC ("Sure Sports") pursuant to an Underwriting Fee Payment Agreement I entered into with Sure Sports in August 2018. Sure Sports describes itself as a "full service company that offers customized underwriting, banking and financing solutions for professional athletes." (See Sure Sport Proof of Claim (Claim 8 – Part 2 at page 8).

10. Each of the Lenders had me enter into loan agreements with them in relation to the loans. Attached as Exhibit A is a true and correct copy of the Business Loan Agreement with Zions. Attached as Exhibit B is a true and correct copy of the Secured Financial Transaction and Security Agreement with Professional. Attached as Exhibit C is a true and correct copy of the Loan and Security Agreement with South River. The Lenders all required that I sign additional documents, such as UCC-1 financing statements to purportedly secure their loans against the salary due me in the future from the San Jose Sharks. The claims filed by Zions, South River and Professional list their respective claims as: Zions - $3,740,305, South River - $1,101,429, Professional - $1,354,541.

11. With respect to Centennial, I entered into several loan agreements as the amount of the loan was increased over time. Attached as Exhibit D is a true and correct copy the Secured Financial Transaction and Security Agreement with Centennial for the first loan. I am informed and believe that an agreement that was essentially the same as Exhibit D was signed in connection with the additional loans from Centennial. As of the date I filed bankruptcy, the approximate debt to Centennial was $8,340,000.

12. I paid Sure Sports hundreds of thousands of dollars in connection with the underwriting and arranging of these loans. The vast majority of these loans were used to pay off existing lenders and proceeds were disbursed directly from loan escrows to the existing lenders. An example of a closing statement, which was in connection with one of the Centennial loans, is attached as Exhibit E.

13. The proceeds from the South River loan did not go from escrow directly to existing lenders. The loan proceeds of approximately $520,000 (after deducting almost $80,000

for origination fees, interest reserve, insurance and legal fees) were deposited into my bank account. I used the proceeds for various obligations, such as paying the mortgage debt on the Canadian properties, paying credit card bills, and paying off individual loans.

**Other Unsecured Debt**

14. In additional to the claims by the Lenders, the various claims were filed in this case and are discussed briefly below:

    a. Michigan Dept. of Revenue - $12,978 which is tax debt.

    b. Sure Sports - $1,187,950, which it alleges is due under the Underwriting Fee Payment Agreement.

    c. Wells Fargo - $79,791 for a revolving credit account.

    d. Raj Bhangu - $100,000 for a personal loan.

    e. Pachulski Stang Ziehl & Jones LLP - $80,390 for attorneys' fees and costs incurred in attempting to assist me in restructuring my finances and defending litigation filed by the Lenders.

    f. Lipsitz Green Scime Cambria LLP - $85,300 for attorneys' fees and costs incurred in litigation in New York and California.

    g. Newport Sports Management, Inc - $534,400 for fees incurred as my sports' agent.

    h. Genovese Joblove & Batista, P.A. - $6,947 for attorneys' fees and costs incurred in the litigation with Sure Sports.

15. Regarding my decision to file this bankruptcy, it was not made in bad faith. As discussed in my previous declaration, after considerable effort with John Fiero and the restructuring advisor/CPA, Ben Cary, and facing litigation in multiple courts, including Centennial's lawsuit in District Court in Florida that also named the San Jose Sharks as a defendant, I determined that bankruptcy was my best remaining option.

16. I continue to cooperate with the Chapter 7 trustee and have now made three payments totaling $155,000 out of the five payments due him under our settlement agreement. I also continue to provide requested documents and information.

1      I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of May 2021 in San Jose, California.

                                      *Evander F. Kane*
                                      Evander F. Kane