# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Jose)
## Bankruptcy Petition #: 21−50028

|  |  |
|---|---|
| *Assigned to:* Judge Stephen L. Johnson | *Date filed:* 01/09/2021 |
| Chapter 7 | *341 meeting:* 02/23/2021 |
| Voluntary | *Deadline for filing claims:* 04/15/2021 |
| Asset | *Deadline for objecting to discharge:* 04/05/2021 |
|  | *Deadline for financial mgmt. course:* 02/23/2021 |

| | |
|---|---|
| ***Debtor*** | represented by **Stephen D. Finestone** |
| **Evander Frank Kane** | Finestone Hayes LLP |
| 2301 Richland Ave. | 456 Montgomery St. 20th Fl. |
| San Jose, CA 95125 | San Francisco, CA 94104 |
| SANTA CLARA−CA | (415) 421−2624 |
| SSN / ITIN: xxx−xx−7617 | Email: sfinestone@fhlawllp.com |
| | |
| | **Ryan A. Witthans** |
| | Finestone Hayes LLP |
| | 456 Montgomery St. Fl. 20 |
| | San Francisco, CA 94104 |
| | (415) 481−5481 |
| | Email: rwitthans@fhlawllp.com |
| | |
| ***Trustee*** | represented by **Gregg S. Kleiner** |
| **Fred Hjelmeset** | Rincon Law LLP |
| P.O.Box 4188 | 268 Bush St. #3335 |
| Mountain View, CA 94040 | San Francisco, CA 94104 |
| (650)386−5634 | (415) 996−8180 |
| | Fax : (415) 680−1712 |
| | Email: gkleiner@rinconlawllp.com |
| | |
| ***U.S. Trustee*** | represented by **Marta Villacorta** |
| **Office of the U.S. Trustee / SJ** | Office of the U. S. Trustee |
| U.S. Federal Bldg. | 280 South 1st Street, Suite 268 |
| 280 S 1st St. #268 | San Jose, CA 95113 |
| San Jose, CA 95113−3004 | 408−535−5525 |
| ( ) | Email: marta.villacorta@usdoj.gov |

| Filing Date | # | Docket Text |
|---|---|---|
| 01/09/2021 | 1 | Chapter 7 Voluntary Petition for Individuals. Fee Amount $338. Financial Management Certificate Due Prior to Discharge. Filed by Evander Frank Kane. Order Meeting of Creditors due by 01/25/2021. (Finestone, Stephen) (Entered: 01/09/2021) |
| 01/09/2021 | 2 | Statement of Social Security Number. Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 01/09/2021) |
| 01/09/2021 | 3 | Certificate of Credit Counseling Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 01/09/2021) |

| | | | |
|---|---|---|---|
| 01/09/2021 | | | Receipt of filing fee for Voluntary Petition (Chapter 7)(21−50028) [misc,volp7] ( 338.00). Receipt number 31000791, amount $ 338.00 (re: Doc# 1 Voluntary Petition (Chapter 7)) (U.S. Treasury) (Entered: 01/09/2021) |
| 01/09/2021 | | | First Meeting of Creditors with 341(a) meeting to be held on 02/03/2021 at 10:30 AM via Tele/Videoconference − www.canb.uscourts.gov/calendars. Objections for Discharge due by 04/05/2021. (Finestone, Stephen) (Entered: 01/09/2021) |
| 01/11/2021 | | 4 | Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (ka) (Entered: 01/11/2021) |
| 01/12/2021 | | 5 | Request for Notice *(Request for Special Notice, Notice of Appearance, and Request for Inclusion in Master Mailing List)* Filed by Creditor Professional Bank (Opperwall, Stephen). DEFECTIVE ENTRY: Incorrect docket event selected. Modified on 1/13/2021 (klr). (Entered: 01/12/2021) |
| 01/13/2021 | | 6 | Notice of Appearance and Request for Notice by Gerrick Warrington. Filed by Creditor Zions Bancorporation, N.A. (Warrington, Gerrick) (Entered: 01/13/2021) |
| 01/13/2021 | | 7 | BNC Certificate of Mailing − Meeting of Creditors. (RE: related document(s) 4 Generate 341 Notices). Notice Date 01/13/2021. (Admin.) (Entered: 01/13/2021) |
| 01/13/2021 | | 8 | Request for Notice Filed by Creditor Professional Bank (Opperwall, Stephen) CORRECTIVE ENTRY: Clerk modified docket text to remove Amended. DEFECTIVE ENTRY: Additional event code(s) not selected. Modified on 1/14/2021 (ka). (Entered: 01/13/2021) |
| 01/14/2021 | | 9 | Notice of Appearance and Request for Notice by Michael Gerard Fletcher. Filed by Requestor Zions Bancorporation, N.A. (Fletcher, Michael) (Entered: 01/14/2021) |
| 01/14/2021 | | 10 | Notice of Appearance and Request for Notice by Reed S. Waddell. Filed by Requestor Zions Bancorporation, N.A. (Waddell, Reed) (Entered: 01/14/2021) |
| 01/15/2021 | | 11 | Trustee's Request for Notice of Possible Dividends . (Hjelmeset, Fred) (Entered: 01/15/2021) |
| 01/15/2021 | | 12 | Application to Employ Gregg S. Kleiner of Rincon Law LLP as Attorneys for Trustee Filed by Trustee Fred Hjelmeset (Attachments: # 1 Declaration of Gregg S. Kleiner (with copy of proposed order attached)) (Kleiner, Gregg) (Entered: 01/15/2021) |
| 01/15/2021 | | 13 | Notice of Possible Dividends Proofs of Claims due by 04/15/2021(admin) (Entered: 01/15/2021) |
| 01/20/2021 | | 14 | Order Authorizing Employment of Counsel (Rincon Law LLP) (Related Doc # 12) (al) (Entered: 01/20/2021) |
| 01/21/2021 | | 15 | BNC Certificate of Mailing − Notice of Possible Dividend. (RE: related document(s) 13 Notice of Possible Dividends). Notice Date 01/21/2021. (Admin.) (Entered: 01/21/2021) |

| | | | |
|---|---|---|---|
| 01/29/2021 | | <u>16</u> | Notice of Change of Address Filed by Requestor Zions Bancorporation, N.A. (Warrington, Gerrick) (Entered: 01/30/2021) |
| 01/31/2021 | | <u>17</u> | Amended Schedule A/B,. Filed by Debtor Evander Frank Kane (Finestone, Stephen)NOTE: Additional event code not selected. Modified on 2/1/2021 (aw). (Entered: 01/31/2021) |
| 01/31/2021 | | <u>18</u> | Amended Schedule D Schedule E/F . Fee Amount $32. Filed by Debtor Evander Frank Kane (Finestone, Stephen)NOTE: Additional event code not selected. Modified on 2/1/2021 (aw). (Entered: 01/31/2021) |
| 01/31/2021 | | | Receipt of filing fee for Amended Schedules (D, E, and F − Fee Required)(21−50028) [misc,amdsch] ( 32.00). Receipt number 31042408, amount $ 32.00 (re: Doc# <u>18</u> Amended Schedules (D, E, and F − Fee Required)) (U.S. Treasury) (Entered: 01/31/2021) |
| 01/31/2021 | | <u>19</u> | Amended Statement of Financial Affairs for Individual Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 01/31/2021) |
| 02/02/2021 | | <u>20</u> | Application to Employ Richard Pierotti of Kokjer, Pierotti, Maiocco & Duck, LLP as Accountants for Trustee Filed by Trustee Fred Hjelmeset (Attachments: # <u>1</u> Declaration of Richard L. Pierotti) (Kleiner, Gregg) (Entered: 02/02/2021) |
| 02/02/2021 | | <u>21</u> | Request for Notice Filed by Creditor South River Capital LLC (Rao, David) (Entered: 02/02/2021) |
| 02/03/2021 | | <u>22</u> | Application for Admission of Attorney Pro Hac Vice *of John A. Anthony*. Fee Amount $317 (Anthony, John) (Entered: 02/03/2021) |
| 02/03/2021 | | | Receipt of filing fee for Application for Admission of Attorney Pro Hac Vice(21−50028) [motion,mprohac] ( 317.00). Receipt number 31051302, amount $ 317.00 (re: Doc# <u>22</u> Application for Admission of Attorney Pro Hac Vice *of John A. Anthony*. Fee Amount $317) (U.S. Treasury) (Entered: 02/03/2021) |
| 02/03/2021 | | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued. Next Meeting of Creditors to be Held on 2/23/2021 at 11:00 AM at San Jose Room 130. Debtor appeared. (Hjelmeset, Fred) (Entered: 02/03/2021) |
| 02/04/2021 | | <u>23</u> | Certificate of Service (RE: related document(s)<u>20</u> Application to Employ Richard Pierotti of Kokjer, Pierotti, Maiocco & Duck, LLP as Accountants for Trustee ). Filed by Trustee Accountant Richard L. Pierotti (Pierotti, Richard) (Entered: 02/04/2021) |
| 02/05/2021 | | <u>24</u> | Application for Admission of Attorney Pro Hac Vice . Fee Amount $317 (Ghekas, Andrew) DEFECTIVE ENTRY: Party Filer to pay required fee due. Modified on 2/5/2021 (dts). (Entered: 02/05/2021) |
| 02/05/2021 | | | Receipt of filing fee for Application for Admission of Attorney Pro Hac Vice(21−50028) [motion,mprohac] ( 317.00). Receipt number 31085245, amount $ 317.00 (re: Doc# <u>24</u> Application for Admission of Attorney Pro Hac Vice . Fee Amount $317) (U.S. Treasury) (Entered: 02/05/2021) |
| 02/08/2021 | | <u>25</u> | Notice of Appearance and Request for Notice *Special Notice* by Peter C. Califano. Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 02/08/2021) |

| | | | |
|---|---|---|---|
| 02/08/2021 | | [26](#) | Order Authorizing Employment of Accountant (Related Doc # [20](#)) (al) (Entered: 02/08/2021) |
| 02/08/2021 | | [27](#) | Order Granting Application for Admission of Attorney Pro Hac Vice (Related Doc # [22](#)). (al) (Entered: 02/08/2021) |
| 02/08/2021 | | [28](#) | Order Granting Application for Admission of Attorney Pro Hac Vice (Related Doc # [24](#)). (al) (Entered: 02/08/2021) |
| 02/17/2021 | | [29](#) | Amended Statement of Financial Affairs for Individual Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 02/17/2021) |
| 02/19/2021 | | [30](#) | Amended Schedule A/B, Schedule J. Filed by Debtor Evander Frank Kane (Finestone, Stephen) DEFECTIVE ENTRY: Additional event code(s) not selected. Modified on 2/19/2021 (dts). (Entered: 02/19/2021) |
| 02/23/2021 | | | Meeting of Creditors Held and Concluded Debtor appeared. (Hjelmeset, Fred) (Entered: 02/23/2021) |
| 02/24/2021 | | [31](#) | Notice of Deficiency of Financial Management Course Certificate Due Before Discharge (admin) (Entered: 02/24/2021) |
| 02/25/2021 | | [32](#) | Personal Financial Management Course Certificate. Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 02/25/2021) |
| 02/26/2021 | | [33](#) | Motion to Convert Case to Chapter 11 , Fee Amount $922 Filed by Creditor Zions Bancorporation, N.A. (Attachments: # [1](#) Declaration # [2](#) Declaration) (Fletcher, Michael) (Entered: 02/26/2021) |
| 02/26/2021 | | | Receipt of filing fee for Motion to Convert Case to Chapter 11 ( [21−50028](#)) [motion,mcnv11] ( 922.00). Receipt number A31132073, amount $ 922.00 (re: Doc# [33](#) Motion to Convert Case to Chapter 11 , Fee Amount $922) (U.S. Treasury) (Entered: 02/26/2021) |
| 02/26/2021 | | [34](#) | Motion to Shorten Time *on Hearing on Motion to Convert to Chapter 11* (RE: related document(s)[33](#) Motion to Convert Case to Chapter 11 filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). Filed by Creditor Zions Bancorporation, N.A. (Attachments: # [1](#) Declaration) (Fletcher, Michael) (Entered: 02/26/2021) |
| 02/26/2021 | | [35](#) | Certificate of Service (RE: related document(s)[33](#) Motion to Convert Case to Chapter 11, [34](#) Motion to Shorten Time). Filed by Creditor Zions Bancorporation, N.A. (Fletcher, Michael) (Entered: 02/26/2021) |
| 02/26/2021 | | [36](#) | Order Granting Motion to Shorten Time (Related Doc # [34](#)) (al) (Entered: 02/26/2021) |
| 02/26/2021 | | | Hearing Set On Order Shortening Time(RE: related document(s)[33](#) Motion to Convert Case to Chapter 11 , Fee Amount $922). **Hearing scheduled for 3/30/2021 at 11:00 AM via Tele/Videoconference − www.canb.uscourts.gov/calendars.** (al) (Entered: 02/26/2021) |
| 02/26/2021 | | [37](#) | Amended Schedule A/B, Schedule C,. Filed by Debtor Evander Frank Kane (Finestone, Stephen)NOTE: Additional event code(s) not selected. Modified on 2/26/2021 (pw). (Entered: 02/26/2021) |
| 02/26/2021 | | [38](#) | |

| | | | |
|---|---|---|---|
| | | | Notice of Hearing (RE: related document(s)33 Motion to Convert Case to Chapter 11 , Fee Amount $922 Filed by Creditor Zions Bancorporation, N.A. (Attachments: # 1 Declaration # 2 Declaration) **Hearing scheduled for 3/30/2021 at 11:00 AM via Tele/Videoconference − www.canb.uscourts.gov/calendars.** Filed by Creditor Zions Bancorporation, N.A. (Attachments: # 1 Certificate of Service) (Fletcher, Michael) (Entered: 02/26/2021) |
| 02/27/2021 | | 39 | BNC Certificate of Mailing (RE: related document(s) 31 Notice of Deficiency Financial Management Course). Notice Date 02/27/2021. (Admin.) (Entered: 02/27/2021) |
| 03/02/2021 | | 40 | Ex Parte Motion for 2004 Examination *of the Debtor and for Production of Documents* Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 03/02/2021) |
| 03/02/2021 | | 41 | Joinder *(Notice of Joinder and Joinder by Creditor Professional Bank in the Motion by Creditor Zions Bancorporation to Convert the Case to Chapter 11 and to Appoint a Chapter 11 Trustee)* (RE: related document(s)33 Motion to Convert Case to Chapter 11). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/03/2021) |
| 03/04/2021 | | 42 | Application to Compromise Controversy with *(Motion for Authority to Convey Estate's Equity in Real Estate and Resolve Dispute Concerning Bank Accounts)* Filed by Trustee Fred Hjelmeset (Attachments: # 1 Declaration of Fred Hjelmeset) (Kleiner, Gregg) (Entered: 03/04/2021) |
| 03/04/2021 | | 43 | Notice and Opportunity for Hearing *on Motion for Authority to Convey Estate's Equity in Real Estate and Resolve Dispute Concerning Bank Accounts* (RE: related document(s)42 Application to Compromise Controversy with *(Motion for Authority to Convey Estate's Equity in Real Estate and Resolve Dispute Concerning Bank Accounts)* Filed by Trustee Fred Hjelmeset (Attachments: # 1 Declaration of Fred Hjelmeset)). Filed by Trustee Fred Hjelmeset (Kleiner, Gregg) (Entered: 03/04/2021) |
| 03/04/2021 | | 44 | Certificate of Service , Declaration *of Mailing* (RE: related document(s)43 Opportunity for Hearing). Filed by Trustee Fred Hjelmeset (Kleiner, Gregg). Related document(s) 42 Application to Compromise Controversy with *(Motion for Authority to Convey Estate's Equity in Real Estate and Resolve Dispute Concerning Bank Accounts)* filed by Trustee Fred Hjelmeset. DEFECTIVE ENTRY: Additional event code(s) not selected. CORRECTIVE ENTRY: Clerk added linkage to document(s) #42. Modified on 3/4/2021 (dts). (Entered: 03/04/2021) |
| 03/04/2021 | | 45 | Objection (RE: related document(s)40 Motion for Examination). Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 03/04/2021) |
| 03/04/2021 | | 46 | Declaration of Stephen D. Finestone in support of (RE: related document(s)45 Objection). Filed by Debtor Evander Frank Kane (Attachments: # 1 Exhibit A # 2 Exhibit B) (Finestone, Stephen) (Entered: 03/04/2021) |
| 03/05/2021 | | 47 | Notice of Appearance and Request for Notice by Ryan A. Witthans. Filed by Debtor Evander Frank Kane (Witthans, Ryan) (Entered: 03/05/2021) |
| 03/05/2021 | | | Having reviewed the documents, if any, filed by the debtor and any additional documents provided to the United States Trustee, the United States Trustee is currently unable to determine whether the debtor's case would be presumed to be an abuse under Section 707(b) of the Bankruptcy |

| | | | |
|---|---|---|---|
| | | | Code. Filed by U.S. Trustee. (Villacorta, Marta) (Entered: 03/05/2021) |
| 03/05/2021 | | [48](#) | Order Directing Parties to Meet and Confer (RE: related document(s)[40](#) Motion for Examination filed by Creditor Centennial Bank, N.A.). (al) (Entered: 03/05/2021) |
| 03/08/2021 | | [49](#) | Joinder *(South River Capital, LLC's Joinder in Motion by Zions Bancorporation to Convert Case to Chapter 11 and Appoint Chapter 11 Trustee)* (RE: related document(s)[33](#) Motion to Convert Case to Chapter 11). Filed by Requestor South River Capital LLC (Attachments: # [1](#) Exhibit A # [2](#) Exhibit B # [3](#) Exhibit C # [4](#) Exhibit D) (Rao, David) (Entered: 03/08/2021) |
| 03/08/2021 | | [50](#) | Stipulation to Extend Time *to Assume or Reject Contract* Filed by Debtor Evander Frank Kane. (Finestone, Stephen) (Entered: 03/08/2021) |
| 03/09/2021 | | [51](#) | Order Approving Stipulation to Extend Time to Assume or Reject Contract (RE: related document(s)[50](#) Stipulation to Extend Time filed by Debtor Evander Frank Kane). (al) (Entered: 03/09/2021) |
| 03/12/2021 | | [52](#) | Stipulation to Extend Time *Stipulation to Enlarge Time Periods for United States Trustee to File Motion to Dismiss Case under 11 U.S.C. 707(b)(3) and/or Complaint to Deny Discharge under 11 U.S.C. 727 to May 5, 2021.* Filed by U.S. Trustee Office of the U.S. Trustee / SJ. (Villacorta, Marta) (Entered: 03/12/2021) |
| 03/12/2021 | | [53](#) | Order Approving Stipulation To Enlarge Time Periods For United States Trustee To File Motion to Dismiss Case Under 11 U.S.C. § 707(b)(3) And Complaint To Deny Discharge Under 11 U.S.C. § 727 To May 5, 2021 (RE: related document(s)[52](#) Stipulation to Extend Time filed by U.S. Trustee Office of the U.S. Trustee / SJ). (rdr) (Entered: 03/12/2021) |
| 03/15/2021 | | [54](#) | Stipulation to Extend Time *(Stipulation for Order Extending April 5, 2021 Deadline Under Bankruptcy Rules 4004(A) and 4007(C) to File Complaint to Determine Dischargeability of Debt and to Deny Discharge)* Filed by Requestor South River Capital LLC (RE: related document(s)[4](#) Generate 341 Notices). (Rao, David) (Entered: 03/15/2021) |
| 03/16/2021 | | [55](#) | Notice of Appearance and Request for Notice by Robert B. Kaplan. Filed by Creditor Sure Sports, LLC (Kaplan, Robert) (Entered: 03/16/2021) |
| 03/16/2021 | | [56](#) | Notice of Appearance and Request for Notice by Thomas M. Geher. Filed by Creditor Sure Sports, LLC (Geher, Thomas) (Entered: 03/16/2021) |
| 03/16/2021 | | [57](#) | Joinder *of Sure Sports, LLC in Support of Motion by Creditor Zions Bancorporation, N.A., to Convert Case to Chapter 11 and Appoint Chapter 11 Trustee* (RE: related document(s)[33](#) Motion to Convert Case to Chapter 11). Filed by Creditor Sure Sports, LLC (Geher, Thomas) (Entered: 03/16/2021) |
| 03/16/2021 | | [58](#) | Stipulation Filed by Debtor Evander Frank Kane (RE: related document(s)[40](#) Motion for Examination filed by Creditor Centennial Bank, N.A.). (Finestone, Stephen) (Entered: 03/16/2021) |
| 03/17/2021 | | [59](#) | Stipulation to Extend Time *TO ENLARGE TIME PERIODS FOR CENTENNIAL TO FILE MOTION TO DISMISS CASE UNDER 11 U.S.C. § 707(b) AND/OR COMPLAINT TO OBJECT TO DISCHARGE UNDER 11 U.S.C. § 727 TO MAY 5, 2021* Filed by Creditor Centennial Bank, |

| | | | |
|---|---|---|---|
| | | | N.A.. (Califano, Peter) (Entered: 03/17/2021) |
| 03/17/2021 | | 60 | Order Approving Stipulation Extending Last Day to File Complaint to Determine Dischargeability of Debt and to Deny Discharge to May 5, 2021 (RE: related document(s)54 Stipulation to Extend Time filed by Requestor South River Capital LLC). (al) (Entered: 03/17/2021) |
| 03/17/2021 | | 61 | Order Approving Stipulation Regarding Centennial Bank Rule 2004 Examination (RE: related document(s)40 Motion for Examination filed by Creditor Centennial Bank, N.A., 58 Stipulation Referring to Existing Document(s) filed by Debtor Evander Frank Kane). (al) (Entered: 03/17/2021) |
| 03/18/2021 | | 62 | Stipulation to Extend Time *Stipulation For Order Extending April 5, 2021 Deadline Under Bankruptcy Rules 4004(A) And 4007(C) To File Complaint To Determine Dischargeability Of Debt And/Or To Object To Discharge* Filed by Creditor Zions Bancorporation, N.A.. (Waddell, Reed) (Entered: 03/18/2021) |
| 03/18/2021 | | 63 | Joinder *By Creditor Lone Shark Holdings, LLC In The Motion By Creditor Zions Bancorporation To Convert The Case To Chapter 11 And To Appoint Chapter 11 Trustee* (RE: related document(s)33 Motion to Convert Case to Chapter 11). Filed by Creditor Loan Shark Holdings, LLC (Attachments: # 1 Certificate of Service) (Rivas, Christopher) (Entered: 03/18/2021) |
| 03/18/2021 | | 64 | Order Approving Stipulation to Enlarge Time Periods for Centennial to File Motion to Dismiss Case Under 11 U.S.C. § 707(b) and Complaint to Deny Discharge Under 11 U.S.C. § 727 to May 5, 2021 (RE: related document(s)59 Stipulation to Extend Time filed by Creditor Centennial Bank, N.A.). (al) (Entered: 03/18/2021) |
| 03/18/2021 | | 65 | Brief/Memorandum in Opposition to *Motion to Convert Case and Appoint Chapter 11 Trustee* (RE: related document(s)33 Motion to Convert Case to Chapter 11). Filed by Debtor Evander Frank Kane (Attachments: # 1 Kane Declaration # 2 Exhibit A to Kane Declaration # 3 Fiero Declaration) (Witthans, Ryan) (Entered: 03/18/2021) |
| 03/19/2021 | | 66 | Order Approving Stipulation for Order Extending April 5, 2021 Deadline Under Bankruptcy Rules 4004(a) and 4007(c) to File Complaint to Determine Dischargeability of Debt and/or to Object to Discharge (RE: related document(s)62 Stipulation to Extend Time filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). (al) (Entered: 03/19/2021) |
| 03/20/2021 | | 67 | Stipulation to Extend Time *(Stipulation for, and Request for, Order Extending April 5, 2021 Deadline under Bankruptcy Rules 4004(a) and 4007(c) to File Complaint to Determine Dischargeability of Debt and to Deny Discharge)* Filed by Creditor Professional Bank. (Opperwall, Stephen) (Entered: 03/20/2021) |
| 03/22/2021 | | 68 | Stipulation to Extend Time *(Stipulation to Entry of Order Extending Date for Filing Complaint (11 U.S.C. Section 727))* Filed by Trustee Fred Hjelmeset, Debtor Evander Frank Kane. (Kleiner, Gregg) (Entered: 03/22/2021) |
| 03/22/2021 | | 69 | Order Approving Stipulation for, and Request for, Order Extending the April 5, 2021 Deadline under Bankruptcy Rules 4004(a) and 4007(c) to File Complaint to Determine Dischargeability of Debt and to Deny |

| | | | |
|---|---|---|---|
| | | | Discharge to May 5, 2021 (RE: related document(s)67 Stipulation to Extend Time filed by Creditor Professional Bank). (al) (Entered: 03/22/2021) |
| 03/22/2021 | | 70 | Order Extending Date for Filing Complaint Objecting to Discharge (11 U.S.C. § 727) (RE: related document(s)68 Stipulation to Extend Time filed by Trustee Fred Hjelmeset, Debtor Evander Frank Kane. (al) (Entered: 03/22/2021) |
| 03/23/2021 | | 71 | Application for Admission of Attorney Pro Hac Vice . NOTE:Please disregard document and see document #72 (klr) (Entered: 03/23/2021) |
| 03/23/2021 | | 72 | Application for Admission of Attorney Pro Hac Vice . Fee Amount $317 (klr) (Entered: 03/23/2021) |
| 03/23/2021 | | | Receipt of Pro Hac Vice Fee. Amount 317.00 from Northern California Legal Supp. Receipt Number 50102393. (admin) (Entered: 03/23/2021) |
| 03/24/2021 | | 73 | Order Granting Application for Admission of Attorney Pro Hac Vice (Related Doc # 72). (al) (Entered: 03/24/2021) |
| 03/25/2021 | | 74 | Objection to Homestead Exemption Filed by Creditor Zions Bancorporation, N.A. (Attachments: # 1 Declaration # 2 Certificate of Service) (Fletcher, Michael) (Entered: 03/25/2021) |
| 03/25/2021 | | 75 | Notice of Hearing (RE: related document(s)74 Objection to Homestead Exemption Filed by Creditor Zions Bancorporation, N.A. (Attachments: # 1 Declaration # 2 Certificate of Service)). **Hearing scheduled for 5/4/2021 at 02:00 PM via Tele/Videoconference − www.canb.uscourts.gov/calendars.** Filed by Creditor Zions Bancorporation, N.A. (Fletcher, Michael) (Entered: 03/25/2021) |
| 03/25/2021 | | 76 | Objection (RE: related document(s)42 Application to Compromise Controversy). Filed by Creditor Zions Bancorporation, N.A. (Attachments: # 1 Declaration # 2 Certificate of Service) (Fletcher, Michael) (Entered: 03/25/2021) |
| 03/25/2021 | | 77 | Reply (RE: related document(s)33 Motion to Convert Case to Chapter 11). Filed by Creditor Zions Bancorporation, N.A. (Attachments: # 1 Declaration # 2 Certificate of Service) (Fletcher, Michael) (Entered: 03/25/2021) |
| 03/25/2021 | | 78 | Reply *(Reply by Creditor Professional Bank in Support of the Motion by Creditor Zions Bancorporation to Convert the Case to Chapter 11 and to Appoint a Chapter 11 Trustee)* (RE: related document(s)33 Motion to Convert Case to Chapter 11). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/25/2021) |
| 03/25/2021 | | 79 | Objection to Homestead Exemption *(Objections by Professional Bank to Debtor's claimed homestead exemption)* Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/25/2021) |
| 03/25/2021 | | 80 | Objection to Debtor's Claim of Exemptions *(Objections by Professional Bank to Debtor's purported claimed exemption for money owed to Debtor by the San Jose Sharks)* Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/25/2021) |
| 03/25/2021 | | 81 | |

| | | | |
|---|---|---|---|
| | | | Brief/Memorandum in Opposition to *(Opposition by Professional Bank to Trustee's Motion to Convey Equity in Real Property [ECF #43])* (RE: related document(s)43 Opportunity for Hearing). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/25/2021) |
| 03/29/2021 | | 82 | Joinder *By Creditor Centennial Bank To Objection By Professional Bank To Debtor's Claimed Homestead Exemption* Filed by Creditor Centennial Bank, N.A. (Califano, Peter). Related document(s) 79 Objection to Homestead Exemption filed by Creditor Professional Bank. CORRECTIVE ENTRY: Clerk added linkage to document(s) #79. DEFECTIVE ENTRY: Additional event code(s) not selected. Modified on 3/30/2021 (dts). (Entered: 03/29/2021) |
| 03/29/2021 | | 83 | Motion to Dismiss Case *Centennial Bank's Motion to Dismiss Liquidation* Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 03/29/2021) |
| 03/29/2021 | | 84 | Joinder *(Joinder by Creditor Professional Bank in Creditor Centennial Bank's motion to dismiss the Chapter 7 case [Doc # 83])* (RE: related document(s)83 Motion to Dismiss Case). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/29/2021) |
| 03/29/2021 | | 85 | Joinder *(Joinder by Creditor Professional Bank in Creditor Zions Bancorporation's objection to Debtor's homestead exemption [Doc # 74])* (RE: related document(s)74 Objection to Homestead Exemption). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/29/2021) |
| 03/29/2021 | | 86 | Joinder *(Joinder by Creditor Professional Bank in Creditor Zions Bancorporation's notice of hearing on objection to Debtor's homestead exemption [Doc # 75])* (RE: related document(s)75 Notice of Hearing). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/29/2021) |
| 03/29/2021 | | 87 | Joinder *(Joinder by Creditor Professional Bank in Creditor Zions Bancorporation's objection [Doc # 76] to trustee's motion for authority to convey equity [Doc # 42])* (RE: related document(s)76 Objection). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/29/2021) |
| 03/29/2021 | | 88 | Joinder *(Joinder by Creditor Professional Bank in Creditor Zions Bancorporation's reply in support of motion to convert to Chapter 11 [Doc # 77])* (RE: related document(s)77 Reply). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 03/29/2021) |
| 03/30/2021 | | | Hearing Held (RE: related document(s) 33 Motion to Convert Case to Chapter 11 , Fee Amount $922). Stephen Finestone appearing on behalf of the Debtor, Michael Fletcher appearing on behalf of Zions Bancorporation, Gregg Kleiner appearing on behalf of the Ch 7 Trustee, Stephen Opperwall appearing on behalf of Professional Bank, David Rao appearing on behalf of the South River Capital, Thomas Geher appearing on behalf of Sure Sports, Christopher Rivas appearing on behalf of Loan Shark Holdings and Peter Califano, John Anthony and Andrew Ghekas appearing for Centennial Bank. Matter is taken under submission. (al) (Entered: 03/30/2021) |
| 03/30/2021 | | 89 | Joinder *(South River Capital, LLC's Joinder in Creditor Zions Bancorporation's Objection to Debtor's Homestead Exemption)* (RE: related document(s)74 Objection to Homestead Exemption). Filed by Requestor South River Capital LLC (Rao, David) (Entered: 03/30/2021) |

| | | | |
|---|---|---|---|
| 04/01/2021 | | 90 | Adversary case 21−05008. 62 (Dischargeability − 523(a)(2), false pretenses, false representation, actual fraud), 41 (Objection / revocation of discharge − 727(c),(d),(e)) Complaint by Hope Parker against Evander Frank Kane. Fee Amount $350. (Attachments: # 1 AP Cover Sheet) (Lewis, Jonathan) (Entered: 04/01/2021) |
| 04/05/2021 | | 91 | Adversary case 21−05010. 62 (Dischargeability − 523(a)(2), false pretenses, false representation, actual fraud) Complaint by Lone Shark Holdings, LLC against Evander Frank Kane. Fee Amount $350. (Attachments: # 1 AP Cover Sheet) (Rivas, Christopher) (Entered: 04/05/2021) |
| 04/08/2021 | | 92 | Ex Parte Motion to Shorten Time *FOR HEARING ON CENTENNIAL'S MOTION TO DISMISS LIQUIDATION* (RE: related document(s)83 Motion to Dismiss Case filed by Creditor Centennial Bank, N.A.). Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 04/08/2021) |
| 04/08/2021 | | 93 | Declaration of ANDREW J. GHEKAS in support of *EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON CENTENNIAL'S MOTION TO DISMISS LIQUIDATION* (RE: related document(s)92 Motion to Shorten Time). Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 04/08/2021) |
| 04/09/2021 | | 94 | Joinder *(Joinder by Creditor Professional Bank in Creditor Centennial Bank's Ex Parte Application for Order Shortening Time for Hearing on Centennial Bank's Motion to Dismiss Liquidation [Doc # 92])* (RE: related document(s)92 Motion to Shorten Time). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 04/09/2021) |
| 04/09/2021 | | 95 | Order Denying Application to Shorten Time (Related Doc # 92) (al) (Entered: 04/09/2021) |
| 04/15/2021 | | 96 | Second Stipulation to Extend Time *Second Stipulation to Enlarge Time Periods for United States Trustee to File Motion to Dismiss Case Under 11 U.S.C.§ 707(b)(3) and/or Complaint to Deny Discharge Under 11 U.S.C. §727 to June 11, 2021* Filed by U.S. Trustee Office of the U.S. Trustee / SJ (RE: related document(s)53 Order on Stipulation). (Villacorta, Marta) (Entered: 04/15/2021) |
| 04/16/2021 | | 97 | Order Approving Second Stipulation to Enlarge Time Periods for the United States Trustee to File a Motion to Dismiss Case Under 11 U.S.C. § 707(b)(3) and a Complaint to Deny Discharge Under 11 U.S.C. § 727 to June 11, 2021 (RE: related document(s)96 Stipulation to Extend Time filed by U.S. Trustee Office of the U.S. Trustee / SJ). (al) (Entered: 04/16/2021) |
| 04/16/2021 | | 98 | Notice of Hearing *ON CENTENNIAL BANK'S MOTION TO DISMISS LIQUIDATION* (RE: related document(s)83 Motion to Dismiss Case *Centennial Bank's Motion to Dismiss Liquidation* Filed by Creditor Centennial Bank, N.A.). **Hearing scheduled for 5/18/2021 at 02:00 PM via Tele/Videoconference − www.canb.uscourts.gov/calendars.** Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 04/16/2021) |
| 04/16/2021 | | 99 | Declaration of ANDREW J. GHEKAS in SUPPORT of *CENTENNIAL BANKS MOTION TO DISMISS LIQUIDATION* (RE: related document(s)83 Motion to Dismiss Case). Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 04/16/2021) |

| | | | |
|---|---|---|---|
| 04/17/2021 | | <u>100</u> | Joinder *(Joinder by Creditor Professional Bank in Creditor Centennial Bank's motion to dismiss liquidation [Doc # 83, Doc # 98])* (RE: related document(s)<u>83</u> Motion to Dismiss Case). Filed by Creditor Professional Bank (Opperwall, Stephen) (Entered: 04/17/2021) |
| 04/19/2021 | | <u>101</u> | Order Denying Motion To Convert (Related Doc # <u>33</u>) (al) (Entered: 04/19/2021) |
| 04/20/2021 | | <u>102</u> | Certificate of Service *FOR NOTICE OF MOTION AND MOTION TO DISMISS LIQUIDATION* (RE: related document(s)<u>83</u> Motion to Dismiss Case). Filed by Creditor Centennial Bank, N.A. (Califano, Peter). Related document(s) <u>98</u> Notice of Hearing filed by Creditor Centennial Bank, N.A.., <u>99</u> Declaratio) CORRECTIVE ENTRY: Clerk added linkage to documents #93 and 98. Modified on 4/20/2021 (lm). CORRECTIVE ENTRY: Clerk added linkage to document #99 and removed linkage to document #93. Modified on 4/21/2021 (lm). (Entered: 04/20/2021) |
| 04/21/2021 | | <u>103</u> | First Amended Joinder *BY CREDITOR CENTENNIAL BANK TO OBJECTION BY PROFESSIONAL BANK TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION* (RE: related document(s)<u>79</u> Objection to Homestead Exemption). Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 04/21/2021) |
| 04/22/2021 | | <u>104</u> | Second Stipulation to Extend Time *for Filing Complaint (11 U.S.C. Section 727)* Filed by Trustee Fred Hjelmeset, Debtor Evander Frank Kane. (Kleiner, Gregg) (Entered: 04/22/2021) |
| 04/23/2021 | | <u>105</u> | Second Order Extending Date for Filing Complaint Objecting to Discharge (11 U.S.C. Section 727) (RE: related document(s)<u>104</u> Stipulation to Extend Time filed by Trustee Fred Hjelmeset, Debtor Evander Frank Kane). (al) (Entered: 04/23/2021) |
| 04/27/2021 | | <u>106</u> | Response (RE: related document(s)<u>74</u> Objection to Homestead Exemption). Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 04/27/2021) |
| 04/28/2021 | | <u>107</u> | Second Stipulation to Extend Time *Second Stipulation For Order Extending Deadlines Under Bankruptcy Rules 4004(a) and 4007(c) to File Complaint to Determine Dischargeability of Debt and/or to Object to Discharge* Filed by Creditor Zions Bancorporation, N.A.. (Waddell, Reed) (Entered: 04/28/2021) |
| 04/28/2021 | | <u>108</u> | Order Approving Second Stipulation Deadline Under Bankruptcy Rules 4004(a) and 4007(c) to File Complaint to Determine Dischargeability of Debt and/or to Deny Discharge (RE: related document(s)<u>107</u> Stipulation to Extend Time filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). (al) (Entered: 04/28/2021) |
| 04/28/2021 | | <u>109</u> | Motion to Continue Hearing On *Homestead Exemption Objection Per B.L.R. 9006−1* (RE: related document(s)<u>74</u> Objection to Homestead Exemption filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). Filed by Creditor Zions Bancorporation, N.A. (Attachments: # <u>1</u> Declaration # <u>2</u> Certificate of Service) (Warrington, Gerrick) (Entered: 04/28/2021) |
| 04/29/2021 | | <u>110</u> | Order Granting Motion to Continue Hearing on Objection to Homestead Exemption (RE: related document(s)<u>74</u> Objection to Homestead Exemption filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A., <u>109</u> Motion to Continue/Reschedule Hearing filed |

| | | | |
|---|---|---|---|
| | | | by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). **Hearing scheduled for 6/9/2021 at 02:00 PM via Tele/Videoconference − www.canb.uscourts.gov/calendars.** (al) (Entered: 04/29/2021) |
| 04/29/2021 | | 111 | Supplemental Certificate of Service *RE: CENTENNIAL BANK'S MOTION TO DISMISS LIQUIDATION* (RE: related document(s)83 Motion to Dismiss Case, 98 Notice of Hearing, 99 Declaration). Filed by Creditor Centennial Bank, N.A. (Califano, Peter) (Entered: 04/29/2021) |
| 05/03/2021 | | 112 | Adversary case 21−05013. 62 (Dischargeability − 523(a)(2), false pretenses, false representation, actual fraud), 91 (Declaratory judgment), 41 (Objection / revocation of discharge − 727(c),(d),(e)),21 (Validity, priority or extent of lien or other interest in property), 72 (Injunctive relief − other) Complaint by Professional Bank against Evander Frank Kane. Fee Amount $350. (Attachments: # 1 AP Cover Sheet AP Cover Sheet) (Opperwall, Stephen) (Entered: 05/03/2021) |
| 05/03/2021 | | 113 | Notice Regarding *Appeal* (RE: related document(s)101 Order Denying Motion To Convert (Related Doc 33) (al)). Filed by Requestor South River Capital LLC (Attachments: # 1 Certificate of Service) (Smith, Wendy) DEFECTIVE ENTRY: Incorrect event code selected and incorrect PDF attached. DEFECTIVE ENTRY: Party Filer to pay required fee due. Modified on 5/4/2021 (rs). (Entered: 05/03/2021) |
| 05/03/2021 | | 114 | Statement of Statement of Election (RE: related document(s)113 Notice). Filed by Requestor South River Capital LLC (Attachments: # 1 Certificate of Service) (Smith, Wendy) DEFECTIVE ENTRY: Incorrect event code selected and incorrect PDF attached. Modified on 5/4/2021 (rs). (Entered: 05/03/2021) |
| 05/03/2021 | | 115 | Notice of Appeal and Statement of Election *to Have Appeal Heard by District Court*, Fee Amount $ 298. (RE: related document(s)101 Order on Motion to Convert Case to Chapter 11). Appellant Designation due by 05/19/2021. Transmission of Record to District Court due by 06/2/2021. Statement of Issues due by 05/19/2021. (Attachments: # 1 Certificate of Service) Filed by Creditor Zions Bancorporation, N.A. (Fletcher, Michael) (Entered: 05/03/2021) |
| 05/03/2021 | | | Receipt of filing fee for Notice of Appeal and Statement of Election( 21−50028) [appeal,ntcaplel] ( 298.00). Receipt number A31274677, amount $ 298.00 (re: Doc# 115 Notice of Appeal and Statement of Election) (U.S. Treasury) (Entered: 05/03/2021) |
| 05/04/2021 | | 116 | Adversary case 21−05014. 62 (Dischargeability − 523(a)(2), false pretenses, false representation, actual fraud) Complaint by South River Capital LLC against Evander Frank Kane. Fee Amount $350. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G−1 & G−2 # 8 Exhibit H # 9 Exhibit I # 10 AP Cover Sheet) (Rao, David) (Entered: 05/04/2021) |
| 05/04/2021 | | | Fee Due Notice of Appeal $ 298 (RE: related document(s)113 Notice). (rs) (Entered: 05/04/2021) |
| 05/04/2021 | | | Receipt of filing fee for Notice of Appeal( 21−50028) ( 298.00). Receipt number A31276547, amount $ 298.00 (re: Doc# 113 Notice) (U.S. Treasury) (Entered: 05/04/2021) |
| 05/04/2021 | | 117 | |

| | | | |
|---|---|---|---|
| | | | Service of Notice of Appeal to Stephen D. Finestone, Ryan A. Witthans, Michael Gerard Fletcher, Stephen G. Opperwall, Christopher O. Rivas, Robert B. Kaplan, Thomas M. Geher: Attorney for Appellee(s) Wendy W. Smith, David B. Rao: Attorney for Appellant(s), and United States Trustee via the Bankruptcy Noticing Center. Related document(s) 113 Notice of Appeal filed by Requestor South River Capital LLC. CORRECTIVE ENTRY: Clerk modified docket text. Modified on 5/5/2021 (rs). (Entered: 05/04/2021) |
| 05/04/2021 | | 118 | Service of Notice of Appeal to Stephen D. Finestone, Ryan A. Witthans: Attorney for Appellee(s) Michael Gerard Fletcher, Gerrick Warrington: Attorney for Appellant(s), and United States Trustee via the Bankruptcy Noticing Center. (RE: related document(s)115 Notice of Appeal and Statement of Election). (rs) (Entered: 05/04/2021) |
| 05/04/2021 | | 119 | *Joinder* by Creditor Zions Bancorporation to Motion to Dismiss *Liquidation by Centennial Bank* (RE: related document(s)83 Motion to Dismiss Case). Filed by Creditor Zions Bancorporation, N.A. (Fletcher, Michael) (Entered: 05/04/2021) |
| 05/04/2021 | | 120 | Brief/Memorandum in Opposition to (RE: related document(s)83 Motion to Dismiss Case). Filed by Debtor Evander Frank Kane (Finestone, Stephen) (Entered: 05/04/2021) |
| 05/04/2021 | | 121 | Declaration of Evander Kane in support of (RE: related document(s)120 Opposition Brief/Memorandum). Filed by Debtor Evander Frank Kane (Attachments: # 1 Exhibit A through E) (Finestone, Stephen). Related document(s) 83 Motion to Dismiss Case *Centennial Bank's Motion to Dismiss Liquidation* filed by Creditor Centennial Bank, N.A.. DEFECTIVE ENTRY: PDF is blank on page(s) #24 and 26. CORRECTIVE ENTRY: Clerk added linkage to document(s) #83. Modified on 5/5/2021 (rs). (Entered: 05/04/2021) |
| 05/04/2021 | | 122 | Objection (RE: related document(s)99 Declaration). Filed by Debtor Evander Frank Kane (Finestone, Stephen). Related document(s) 83 Motion to Dismiss Case *Centennial Bank's Motion to Dismiss Liquidation* filed by Creditor Centennial Bank, N.A.. CORRECTIVE ENTRY: Clerk added linkage to document(s) #83. Modified on 5/5/2021 (rs). (Entered: 05/04/2021) |
| 05/05/2021 | | 123 | Adversary case 21−05016. 424 Obj/Revocation Discharge 727, 66 (Dischargeability − 523(a)(1),(14),(14A) priority tax claims), 65 (Dischargeability − other), 41 Objection/revocation of discharge − 727(c),(d),(e) Complaint by Centennial Bank against Evander Frank Kane. Fee Amount $350. (Attachments: # 1 AP Cover Sheet) (Califano, Peter) DEFECTIVE ENTRY: PDF is illegible on page(s) 63. Modified on 5/5/2021 (rs). CORRECTIVE ENTRY: (1) Clerk added of suit(s) to reflect PDF for both Main Case and AP Case; (2) Clerk added 727 Nature of Suit to Main Case and AP Case and updated the case data; (3) Clerk added 727 Flag to Main Case and AP Case. Modified on 5/5/2021 (tp). (Entered: 05/05/2021) |
| 05/05/2021 | | 124 | Transcript Order Form on an Appeal, regarding Hearing Date 3/30/2021 (RE: related document(s)101 Order on Motion to Convert Case to Chapter 11). Filed by Requestor South River Capital LLC (Smith, Wendy). Related document(s) 33 Motion to Convert Case to Chapter 11 , Fee Amount $922 filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.. CORRECTIVE ENTRY: Clerk added linkage to document #33. Modified on 5/6/2021 (lb). (Entered: 05/05/2021) |

| | | | |
|---|---|---|---|
| 05/06/2021 | | | Transcript Record Transmittal (Court transcript records have been uploaded) for Order Number: 21−50028−124 Regarding Hearing Date: 3/30/2021. Transcription Service Provider: Palmer Reporting Services, Contact Information: palmerrptg@aol.com (RE: related document(s)124 Transcript Order Form (Public Request)). (lb) (Entered: 05/06/2021) |
| 05/06/2021 | | 125 | Acknowledgment of Request for Transcript Received on 5/6/2021. (RE: related document(s)124 Transcript Order Form (Public Request)). (Palmer, Susan) (Entered: 05/06/2021) |
| 05/06/2021 | | 126 | BNC Certificate of Mailing (RE: related document(s) 117 Service of Notice of Appeal). Notice Date 05/06/2021. (Admin.) (Entered: 05/06/2021) |

**Entered on Docket**
**April 19, 2021**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: April 19, 2021

_Stephen Johnson_

**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **EVANDER FRANK KANE**,

                  Debtor.

Case No. 21-50028 SLJ
Chapter 7

## ORDER DENYING MOTION TO CONVERT

Certain creditors[1] request I convert this Chapter 7[2] bankruptcy case to Chapter 11 and appoint a Chapter 11 trustee. Their reasoning is simple. In Chapter 7, a debtor retains post-petition income. In Chapter 11, by contrast, post-petition income belongs to the

---

[1] The original movant is Zions Bancorporation, N.A. ("Zions"), and joinders were filed by Professional Bank, Long Shark Holdings, LLC ("Lone Shark"), Sure Sports, LLC ("Sure Sports"), South River Capital, LLC ("South River"); collectively I will refer to this group as "Creditors."

[2] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

bankruptcy estate. Because Evander Kane ("Debtor") plays professional sports and makes a substantial income, they reckon their chances of recovering on their claims would be improved substantially if he were moved to Chapter 11. They further request that a trustee be appointed because they contend Debtor cannot be trusted to run a bankruptcy case.

Debtor elected to file a voluntary Chapter 7 case, not a Chapter 11. He is willing, as the Bankruptcy Code requires, to turn over his assets to the Chapter 7 trustee for payment of creditor claims. He is willing to take his chances with any non-dischargeable claims that are brought. At the end of the case, he hopes for the fresh start every successful Chapter 7 debtor receives: the discharge of his debts while retaining exempt property.

I conclude that Creditors have not carried their burden of proof and deny the motion. Creditors may feel aggrieved that Debtor has chosen to file under Chapter 7 because his post-petition income will not flow into the bankruptcy estate. But they have not shown that he is disqualified from Chapter 7. And on the record presented, I cannot find that denying Debtor the fresh start he sought by filing Chapter 7 is in the best interests of Creditors and Debtor.

## I. BACKGROUND

### A. Debtor Evander Kane

Debtor has played professional hockey for more than 11 years, currently for the San Jose Sharks ("Sharks"). He filed this Chapter 7 petition on January 9, 2021. Debtor's summary of assets and liabilities states he owns $10,224,743.65 in property and owes $30,191,340 in liabilities. ECF 1, p. 8–9; ECF 18. Debtor states his debts are primarily business-related. ECF 1, p. 6. Debtor is married and has a newborn child.

### B. Assets and Liabilities

Debtor's primary assets include three residential properties: (1) 2301 Richland Avenue, San Jose, California 95125, valued at $3,000,000 ("San Jose Property"); (2) 3457 West 35th Avenue, Vancouver, British Columbia, valued at $2,860,000; and (3) 8447 Isabel Place, Vancouver, British Columbia, valued at $2,400,000. ECF 30, p. 2–3. Debtor also owns $40,000 in household goods and furnishings, $12,000 in electronics, $8,000 in firearms, and

1   $20,000 in clothing. Debtor also schedules $2,500 in cash and $48,895.65 in deposits spread

2   among multiple bank accounts. *Id.* at 4–6. Debtor then schedules his interest in four

3   companies: (1) Ascher Capital II and III LLC, purchased through a loan of $750,000, with

4   his percentage of ownership unknown; (2) Lions Properties LLC, which holds no assets after

5   Debtor transferred the San Jose Property from it to himself, wholly owned by Debtor and

6   his wife; and (3) EK9 Marketing, LLC, wholly owned by Debtor. Debtor also expects a

7   $1,800,000 federal tax refund from an investment related to the Ascher Capital companies –

8   which may or may not be encumbered – and a $37,147 transfer tax refund for the transfer of

9   the San Jose Property, which Debtor asserts is exempt. *Id.* at 7. Finally, Debtor has a life

10  insurance policy with a refund value of $9,304, as well as claims against Leon McKenzie,

11  Sure Sports LLC, and Rachel Kuehle. *Id.* at 7–8.

12          Debtor has significant debts. Debtor lists ten secured claims, totaling $23,538,494.87:

13  (1) $600,000 to 1000568 B.C. Ltd., secured by the 3457 West 35th property; (2) $600,000 to

14  1000568 B.C. Ltd., secured by the 8447 Isabel Place property; (3) $8,360,000 to Centennial

15  Bank, secured by "various collateral," including a disputed interest in future wages;

16  (4) $750,000 to Lone Shark Holdings, LLC, secured by potential tax refunds estimated at

17  $1,800,000; (5) $2,320,000 to Pacific Private Money, a first mortgage secured by the San Jose

18  Property; (6) $1,354,000 to Professional Bank, secured by collateral including a disputed

19  interest in future wages; (7) $2,330,000 to Scotia Bank, a first mortgage secured by the 3457

20  West 35th property; (8) $1,900,000 to Scotia Bank, secured by the 8447 Isabel Place

21  property; (9) $1,074,494.87 to South River Capital LLC, secured by a disputed interest in

22  collateral including future wages; and (10) $4,250,000[3] to Zions, secured by Debtor's deposit

23  accounts and future wages. ECF 18, p. 2–7.

24

25

26

27

28          [3] Debtor states this amount reflects only the principal amount of the loan.

Debtor schedules a total of $4,396,525 in unsecured claims. Those debts arise from loans, credit card balances, or fees for services. Sure Sports LLC filed a claim for $1,282,302 claim by for unspecified fees.[4]

C.    Debtor's Income

Debtor's income is identified in Schedule I to his schedules. At the time he filed his schedules, Debtor's NHL season had not commenced. He lists monthly income of $2,083.33 from work on a podcast. ECF 1, p. 40. He discloses his pay from the Sharks on an attachment to Schedule I. He indicates that his salary for the 2020–2021 season is $3,000,000. But he is only paid if the Sharks actually play games. And while a regular season generally includes 82 non-playoff games, due to the Covid-19 crisis, the current season only has 56 games scheduled. His salary will be reduced accordingly. He also states the ongoing pandemic could mean the number of games played this year will be further reduced. Debtor identifies a further source of potential reduction to his salary. The NHL players' collective bargaining agreement requires 20% of his salary be withheld, to be released to the owners under a profit-sharing agreement, in light of the likely reduction of team revenues. Debtor states that an additional 10% of his salary is withheld as deferred compensation, paid in equal installments without interest over three years. Finally, Debtor states his salary is contingent on him opting to play this season, which he may not do in light of unstated health concerns related to the birth of his first child. *Id.* at 41.

Debtor's main expenses per month are: $17,990.63 for home ownership expenses; $4,083 for real estate taxes, property insurance, and home maintenance; $1,770 in utilities; $8,000 for food and housekeeping; $12,000 in childcare and education costs; $8,910.83 for two vehicle leases; $15,000 for support payments to Debtor's mother, father, grandmother, and uncles; and $20,000 for mortgages. The remaining $4,760 is made up of miscellaneous costs like entertainment and pet care.

---

[4] Debtor takes issue with this claim in his opposition, alleging that after paying Sure Sports a fee for arranging several loans, Sure Sports may have colluded with his lenders to assist them with collection efforts.

### D. NHL Contract

Debtor's contract with the Sharks is worthy of mention.[5] The NHL Contract takes the form of a Standard Player's Contract. The document includes an addendum which recites a "Modified No-Trade Clause". Under this provision, the Sharks cannot trade Debtor to another NHL team during the life of the NHL Contract. However, Debtor is required to supply the team with the name of three other teams that he would agree to be traded to in advance of each season. Addendum ¶ 2.

The NHL Contract has detailed terms addressing Debtor's health and ability to work for the team. At paragraph 5, if Debtor is "disabled or unable" to perform his duties under the agreement, he must submit to medical examination (*and* treatment) by a club-designated medical doctor. Should the physician determine that Debtor is (or, is not) able to work, the Sharks must notify Debtor. If the club determines that Debtor is disabled or "not in good physical condition" at the commencement of the season or at any time thereafter, it may suspend Debtor without pay. ¶ 5(b). In that situation, Debtor will only receive a salary if his injury or disability occurred within the course of his employment. ¶ 5(d). The NHL Contract has extensive and complicated provisions that control disputes between Debtor and the club about his ability to work. Among other things, Debtor can request a "second opinion". And if there is still a dispute, an independent physician is retained.

The NHL Contract permits the Sharks to terminate Debtor's services. If terminated without cause, Debtor is entitled to a reduced salary payment extended over twice the length of the original agreement. Ex. 1. In other words, Debtor is paid some of what he would otherwise be due under the agreement, but it is paid over a longer period of time. He is then an "Unrestricted Free Agent" and no longer attached to the Sharks. On the other hand, if Debtor is terminated for cause, he loses his right to compensation. Debtor may also be suspended without pay for a variety of infractions.

---

[5] The document was attached as Exhibit 1 to Michael Toal's declaration in support of the Motion. ECF 33-1.

Case: 21-50028   Doc# 127-2   Filed: 05/07/21   Entered: 05/07/21 13:46:39   Page 19 of 41

Finally, the NHL Contract provides Debtor with substantial bonuses. He is expected to receive $2 million in both 2022 and 2023.

E. The Motion

Creditor Zions Bancorporation ("Zions") filed this motion to convert Debtor's case from Chapter 7 to Chapter 11 on February 26, 2021. ECF 33. Zions first points to aspects of Debtor's finances it finds offensive, such as: (1) Debtor admitting to owing over $18,000,000 in non-priority unsecured claims; (2) Debtor only scheduling $2,038 in monthly income from his podcast; (3) Debtor intending to pay unsecured creditors nothing; (4) Debtor having substantial assets and income, including the potential to earn up to $29,000,000 in salary and bonuses through 2025; (5) Debtor inflating his expenses; and (6) Debtor's issues with spending and gambling, including transferring Rolex watches to a creditor for a gambling debt and speculating on tax attributes with a $750,000 loan to an entity called Lone Shark Holdings, LLC. *Id.* at 11.

Zions then alleges that Debtor timed the filing of his bankruptcy case to cause maximum harm to creditors. Zions points to Debtor purchasing the San Jose Property in August of 2020, through a wholly owned entity Lions Property, LLC. But on January 8, 2021 – the day before filing this petition – Debtor transferred the San Jose Property by quitclaim deed from Lions Property to himself. Zions argues originally having Lions Property hold title was an effort to shield assets from creditors. Zion then argues the quitclaim to Debtor was: (1) a waste of $37,169.19 in transfer taxes and fees; (2) an effort to claim the newly increased California homestead exemption caused by AB 1885; and (3) a fraudulent transfer.

Finally, Zions makes unspecified allegations that there are significant irregularities in the financial statements Debtor made to Zions and other creditors. Zions states it is considering filing a non-dischargeability adversary complaint under §§ 523 and/or 727.

F. The Joinders

Four creditors filed joinders to Zions' motion: (1) Professional Bank, ECF 41; (2) South River Capital, LLC, ECF 49; (3) Sure Sports, LLC, ECF 57; and (4) Lone Shark Holdings, LLC, ECF 63. The joinders all largely reiterate points already made in the motion.

Professional Bank notes Debtor owes it approximately $1,500,000, and that such debt is secured by Debtor's salary. ECF 41, p. 4.

As for South River Capital, it states it has a November 9, 2020 judgment against Debtor from the Baltimore Circuit Court for $1,074,494.87, arising from Debtor's default on a May 11, 2019 loan, secured by the NHL Contract and other property. ECF 49.

Sure Sports simply joints the motion. ECF 57.

Finally, Lone Shark supports the motion, but takes issue with Zions implicitly characterizing Debtor's loan to it as illegitimate; Lone Shark argues instead that its name relates to Debtor's team's name, and that Debtor's loan was an investment in tax credits estimated to result in a refund of $1,800,000 to Debtor. ECF 63, p. 2–3.

G.    Debtor's Opposition

Debtor filed his opposition to the motion on March 18, 2021. ECF 65. He first states that the loans he entered into with movant and the joining parties were incurred through the arrangement of Sure Sports, who acted as Debtor's agent or broker. He notes that, just for the Zions loan, Debtor paid Sure Sports a fee of $67,000 for arranging that loan. Debtor further states that, when he defaulted on these loans, Sure Sports provided those lenders with recommendations on litigation strategy, including garnishing Debtor's salary.

After defaulting on those loans, Debtor retained attorney John Fiero of Pachulski Stang Ziehl & Jones to restructure his finances. Mr. Fiero concluded that the lenders' assertion of security interests in Debtor's future salary were ineffective under the Uniform Commercial Code. Mr. Fiero apparently spent significant time trying to reach a resolution with the lenders, but such efforts eventually failed, resulting in the lenders filing actions against Debtor in Santa Clara County and Baltimore, Maryland. The Santa Clara action was later dismissed, but that lender filed another action against Debtor and the Sharks in Miami District Court. These multi-jurisdiction actions caused Debtor to file this case.

Debtor states he has fully complied with the Chapter 7 Trustee and U.S. Trustee in this case, including appearing at two § 341(a) meetings; providing financial documents; and settling with the Trustee regarding his claims of exemption in real property equity and bank

accounts, resulting in a settlement of $255,000 to the estate, paid across $55,000 installment payments. Debtor has also stipulated with numerous parties to extending the deadline to file non-dischargeability actions. Debtor believes these facts show he is a responsible debtor.

Debtor's income under the NHL Contract was described above. Debtor alleges in his opposition that his income is subject to reduction based on the number of games played, Shark's revenue, and other factors. Debtor states the effect of these deductions are significant, noting that of the $213,905 gross earnings in his first paycheck in January 2021, he received $38,709 in net pay. In sum, Debtor argues his future income is far less than Zion's contends.

Debtor admits he has had a gambling problem, but states he continues to receive personal therapy to deal with such issues and put them in the past. *Id.* at 9.

Debtor then objects to Zions characterizing his tax investment with Lone Shark as a gamble. He states he has disclosed the investment with the Chapter 7 Trustee and U.S. Trustee, that he was only required to pay $35,000 initially, and that he was advised his return should be approximately $1,800,000, which he intends to use to repay creditors. *Id.* at 10.

Debtor also objects to Zions attacking his truthfulness by pointing to Debtor having to amend his Statement of Financial Affairs to include two pre-petition transfer of Rolex watches. It is worth noting that no one disputes that these transactions were not uncovered by creditors. Rather, Debtor states he was reminded of the transfers during examinations under oath and promptly amended his schedules to reflect them accurately. Debtor explains that he did not have the assistance of a CPA or financial advisor in preparing his bankruptcy filings. Debtor argues this shows an ongoing effort to comply with the Code, not dishonesty.

Finally, Debtor notes the lack of specificity in the allegations by Zions and joining parties that he misrepresented his finances in entering into loans with such parties, and denies any misrepresentation on his part.

Based on these allegations, Debtor argues I should deny the motion for three reasons. First, he argues the facts do not support conversion because his pay is not as great as Zions suggests, he has acted in good faith by complying with his duties as a debtor, and it is

1  unlikely a plan would be confirmed in this case, given that Creditors assert they have non-

2  dischargeable claims, which means they will have little incentive to support a plan.

3    Second, Debtor argues that if I convert this case, I should not appoint a Chapter 11

4  trustee because there is no cause to do so. Debtor points to the absence of specific facts

5  showing he cannot manage his own affairs, as well as the absence of any irreconcilable

6  conflict between himself and his creditors. Debtor also argues appointing a trustee would

7  not be in the best interests of creditors or the estate, as it would only add to the expense and

8  delay in prosecuting this case. Debtor then states that evidence of him fulfilling his duties as

9  a Chapter 7 debtor shows he should at least be given the opportunity to prosecute his own

10  Chapter 11 case, should I order conversion.

11    Finally, Debtor argues converting this case to Chapter 11 and appointing a trustee

12  would violate the Thirteenth Amendment's ban on involuntary servitude. In Debtor's view,

13  conversion would violate that amendment because it would make him a peon, or one

14  compelled to work for a creditor until his debts are paid, especially because he would be

15  barred from reconverting his case to Chapter 7 under § 1112(a)(3). Debtor analogizes to

16  § 1307(a) prohibiting a debtor being involuntarily placed in a Chapter 13 case. Debtor then

17  argues appointing a Chapter 11 trustee would also violate the Thirteenth Amendment by

18  placing a trustee in charge of Debtor's future and personal decisions like accepting or

19  rejecting the NHL Contract.

20    H. <u>Zions' Reply</u>

21    Zions filed a reply on March 25, 2021, which largely reiterates arguments it made in

22  the original motion. <mark>ECF 77</mark>.

23  **II. LEGAL STANDARD**

24    A. <u>§ 706(b) Conversion to Chapter 7</u>

25    Section 706(b) allows parties in interest to request a Chapter 7 case be converted to

26  Chapter 11 without the debtor's consent. "Section 706(b) does not provide guidance on

27  what (or what not) to consider when reaching a decision. Thus, courts have held that the

28  decision whether to convert under § 706(b) is left in the sound discretion of the court, based

ORDER DENYING MOTION TO CONVERT      9/27

on what will most inure to the benefit of all parties in interest. Since there are no specific grounds for conversion, a court should consider anything relevant that would further the goals of the Bankruptcy Code. Courts have considered various factors, including (1) the debtor's ability to repay debt; (2) the absence of immediate grounds for reconversion; (3) the likelihood of confirmation of a Chapter 11 plan; and (4) whether the parties in interest would benefit from conversion." *Decker v. U.S. Trustee*, 548 B.R. 813, 817 (D. Alaska 2015) (cleaned up); *see also In re Takano*, 771 Fed. Appx. 805, 806 (9th Cir. 2019); *In re LaFountaine*, 2016 WL 3344003, at *2–3 (B.A.P. 9th Cir. June 7, 2016); S. Rep. No. 95-989, at 94 (1978). "The burden is on the movant to show that the case should be converted." *In re Parvin*, 538 B.R. 96, 101 (Bankr. W.D. Wash.) (citations omitted).

A fair read of most of the decisions under § 706(b) is that the courts give great weight to the creditors' interest. Because that approach—predominant focus on creditors' interests—appears to be received wisdom, the courts analyzing the provision do not provide law or persuasive reasoning to support it. I do not conclude that the interests of creditors are paramount. Rather, I conclude that the phrase commonly used, "the benefit of all parties in interest" necessarily requires me to weigh both the interests of creditors and Debtor in making this determination and will do so below.

B.    § 1104 Appointment of Chapter 11 Trustee

Section 1104(a) provides for the appointment of a chapter 11 trustee by court order:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

ORDER DENYING MOTION TO CONVERT                                    10/27

§ 1104(a).

The Ninth Circuit has recognized two fundamental grounds for appointment in the statute: for cause, or in the best interests of creditors. *In re Lowenschuss*, 171 F.3d 673, 685 (9th Cir. 1999). In *Lowenschuss*, the court observed that debtor's transfer of pension assets out of Pennsylvania, and his later flight from Pennsylvania to Nevada to secure augmented exemptions constituted cause. And, debtor's history of manipulating estate assets showed that he was not working in his creditors' best interests. Another court found cause where a chapter 11 debtor proposed a kickback scheme for services to the estate rendered by a vendor. *In re Bibo, Inc.*, 76 F.3d 256, 258 (9th Cir. 1996). There, the principal of the debtor was acting in the service of his personal financial gain rather than creditors' best interests. *Id.* The appointment of a trustee is within the discretion of the bankruptcy court. *Lowenschuss*, 171 F.3d at 685 (reviewing on an abuse of discretion standard).

C.     Creditors Seek Interlocking Remedies under §§ 706(b) and 1104(a)

Noted above, the court must exercise its discretion in determining whether to grant either a motion to convert under § 706(b) or a motion to appoint a trustee under § 1104(a). I find one critical difference between these requests: The first requires a much broader inquiry than the second. The § 706(b) analysis is open-ended, as "the decision whether to convert under § 706(b) is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." *In re Schlehuber*, 489 B.R. 570, 573 (B.A.P. 8th Cir. 2013) (quoting *In re Willis*, 345 B.R. 647, 654 (B.A.P. 8th Cir. 2006)). Thus, in determining whether to convert the case, I consider the benefits—and drawbacks—to all creditors, as well as to Debtor. By contrast, the inquiry into whether a trustee ought to be appointed focuses more narrowly on whether I conclude, principally based on Debtor's pre-petition conduct, that he cannot be trusted to manage his estate. If this is true, appointment of a trustee is necessary for a successful Chapter 11 case.

# III. DISCUSSION

## A. Creditors' Interest in Conversion to Chapter 7

### 1. *General Concerns*

Creditors' want the case converted to Chapter 11 because they contend that Debtor's post-petition earnings would inure to the bankruptcy estate in a Chapter 11. § 1115(a)(2). In Chapter 7, by contrast, Debtor's post-petition income does not belong to the estate.

Zions and the joining parties also contend they have an interest in reducing the costs of bringing non-dischargeability actions and other litigation. While it is unclear what the likely cost of a Chapter 11 case and trustee will be, at a minimum those costs will be borne by the estate, and thus all creditors, while the costs of non-dischargeability actions and other litigation will be borne solely by the parties who bring them. Spreading these costs over the creditor body generally seems to be their aim.

Finally, Zions and the joining parties have an interest in seeing a trustee appointed because the trustee would, in their view, safeguard against Debtor's estate and assets being further diminished by his gambling and poor financial decisions post-petition. So while Creditors assert they have security interests in Debtor's salary, and such interests would ride through a Chapter 7 discharge, a trustee is still necessary because after a Chapter 7 Debtor would be free to continue the financially destructive conduct that they assert led to this case.

The cases interpreting § 706(b) have identified a range of factors to consider so I will turn to those now.

### 2. *Factors Identified in Case Law*

#### a. *Ability to Pay*

The first factor is whether a debtor has the ability to pay creditors. It is obvious that Debtor has substantial income. Less obvious, and so far unproved, is whether Debtor will earn sufficient income in the near term to justify conversion. Debtor states that, of the $213,905 in gross earnings for his first paycheck in January 2021, the net income from that paycheck was only $38,709, or 18% of gross earnings. Debtor admits that 10% of this withholding will be repaid to him over three years, and that 20% of this withholding is held

Case: 21-50028    Doc# 127-2   Filed: 04/09/21   Entered: 04/09/21 14:33:39   Page 26
of 41

in escrow pending a determination whether the league meets yearly revenue targets. So 10% of his salary will be recouped in later years, and another 20% could possibly be returned to him later this year.

But contingencies exist. The 10% withholding only becomes part of the estate if it remains open for three years. The 20% withholding depends entirely on whether the NHL meets its revenue targets this year; the COVID-19 pandemic is still ongoing, and the league's failure to meet its target last year is at least some evidence that this year will also present challenges.[6] It is uncertain just how much of Debtor's salary will be available to fund a plan. And the structure of Debtor's salary means significant amounts will only be available to the estate years after it was earned. For reasons discussed below, Debtor's long-term income stream as a player is not assured. So, Debtor's salary – while objectively significant – may not be as impactful as Zions asserts. Obviously, converting the case will mean additional funds for Creditors, but it is not clear just how much.

The costs of Chapter 11 must be weighed as well. In a Chapter 11 case, the trustee Zions requests by this motion is going to cost money. *See* 326(a). A trustee would be entitled to hire professionals, which in light of the allegations Zions makes must be assumed to include lawyers as well as financial professionals. These professionals are also entitled to compensation. § 330(a). Zions does not address the likelihood that administrative costs could consume a material portion of a Chapter 11 estate, which seriously undercuts its arguments regarding Debtor's ability to pay.

*b. Possibility of Immediate Reconversion to Chapter 7*

Zion's arguments here suggest grounds for immediate reconversion to Chapter 7.[7] Zions repeatedly argues Debtor cannot be trusted to manage estate property because of his

---

[6] While not integral to my decision, I take judicial notice of the Vancouver Canucks' ongoing difficulties in playing games due to much of the team being infected with COVID-19. Ian Holliday, *Canuck's Return to Ice Postponed as Another Player Added to COVID-19 List*, CTV NEWS, April 11, 2021, https://bc.ctvnews.ca/canucks-return-to-ice-postponed-as-another-player-added-to-covid-19-list-1.5383142.

[7] Zions argues this factor is not relevant, as under § 1112(a)(3), a debtor cannot reconvert to Chapter 7 a case that was involuntarily converted to Chapter 11. What this

ORDER DENYING MOTION TO CONVERT                                          13/27

1 history of gambling and spending. If I accept this argument and convert the case, those same

2 arguments would apply with equal force towards reconverting the case under § 1112(b)(4)(A)

3 and (B). That is, if Debtor's alleged mismanagement and continuing diminution of the estate

4 through his spending and gambling will continue, meaning a trustee is necessary, then such

5 mismanagement would persist after I convert the case. Those facts would then support

6 reconverting the case. True, Zions seeks to avoid this issue by having a trustee appointed,

7 but I must find conversion proper before I can consider appointing a trustee. To do

8 otherwise would put the cart before the horse.

9                    *c.   Likelihood of Plan Confirmation*

10        Zion's motion suggests a Chapter 11 plan would be confirmed in this case with some

11 speed. Long experience suggests to me this may not be the slam dunk Zions believes. There

12 are both practical and legal issues that I find will make it difficult for anyone in this case to

13 confirm, let alone consummate, a plan.

14        Beginning with practicalities, creditors in this case, including Creditors, assert their

15 claims are non-dischargeable.[8] Setting aside whether such creditors ultimately prevail in their

16 non-dischargeability actions, their belief in the non-dischargeability of their claims means

17 they will have an interest in defeating confirmation if the plan does not provide for their

18 payment in full, and perhaps even if it does, as they would be submitting to payment over an

19 extended period. This is because all estate assets spent in confirming a plan, and any

20 distributions made under such plan, will diminish funds such creditors could collect on

21 outside of bankruptcy. No one can seriously dispute that a creditor has every right to pursue

22 its own best interest in the formulation and choice to oppose a plan. *In re Figter*, 118 F.3d

23 _____

24 argument ignores is that any party in interest could move to reconvert under § 1112(b). For
25 instance, a creditor with a non-dischargeable claim could bring such a motion to prevent a
   plan from being confirmed, preferring to take their chances collecting outside of bankruptcy.
26 It is not relevant to this analysis whether a party in interest would; what matters is that they
   could, so the inquiry turns to whether the record shows grounds for reconversion.

27        [8] Two creditors have already filed adversary proceedings seeking non-dischargeability
   determinations: Lone Shark, *see* Adv. Proc. Case No. 21-5010, and Hope Parker, a non-
28 movant creditor, *see* Adv. Proc. Case No. 21-5008.

ORDER DENYING MOTION TO CONVERT                                          14/27

635, 639 (9th Cir. 1997) (concluding that a selfish motive in opposing a reorganization does not constitute bad faith) (*citing In re Pine Hill Collieries Co.*, 46 F. Supp. 669, 671 (E.D. Pa. 1942)). "[W]e do not condemn mere enlightened self interest, even if it appears selfish to those who do not benefit from it." *Figter,* 118 F.3d at 639. Zions and the joining parties make little effort to demonstrate this issue is capable of easy resolution as they contend.

Debtor's career presents another practical problem. I would venture to say that Debtor's highest income-earning years are immediately in front of him. Creditors will fight hard for better treatment in a hypothetical Chapter 11 plan for the simple reason that the likelihood of payment is higher in the near term. Moreover, no one discusses Debtor's ability to perform for years under Zion's hypothetical Chapter 11 plan. But this too, seems worthy of discussion. Debtor is a 29-year-old professional hockey player who has already clocked many years on professional teams. The NHL Contract does not necessarily provide compensation to Debtor if he is not fit to play. One is left to wonder how many more years Debtor can reasonably be expected to play in such a physically demanding environment.

Turning to legal issues, Debtor's income is not, at this stage, free of encumbrance. Creditors assert a security interest in Debtor's future income and it is this same income that is supposed to fund a plan. From a review of the claims docket in this case, secured claims total $23,538,494.87 and at least some of these assert a secured interest in Debtor's income. Whether these interests are valid or enforceable by the creditors is not clear.[9] But if these security interests are valid – a point I do not decide here – they must be paid in a manner that is consistent with § 1129(b) of the Code. Specifically, under § 1129(b)(2)(A)(i)(II) the plan would need to provide secured creditors with deferred payments "totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." The existence of these secured claims itself imperils confirmation of a plan, as it appears substantially all of

---

[9] The Bankruptcy Appellate Panel has held they are not. *See In re Skagit Pac. Corp.*, 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004) ("Revenue generated post-petition solely as a result of a debtor's labor is not subject to a creditor's pre-petition interest."); *see* § 552(b).

Debtor's income – the primary source of funding for a plan – will apparently be devoted to paying purportedly secured creditors. The interests of the unsecured creditors and the secured creditors obviously diverge. Creditors suggest these matters are subject to easy resolution, but cannot guarantee this is so.

The absolute priority rule is also likely to complicate confirmation of a plan. Debtor has scheduled unsecured claims valued at $4,396,525. The record indicates Debtor intends to keep and continue making payments on several parcels of real property, but he only claims an exemption in his San Jose residence. It is not clear if there is equity in the other properties.[10] Under the absolute priority rule, Debtor could only keep non-exempt property if the plan either pays unsecured creditors in full or provides new value should the unsecured creditor class object. § 1129(b)(2)(B)(i)–(ii); *see Zachary v. Cal. Bank & Tr.*, 811 F.3d 1191, 1994 ("The rule 'provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan.'") (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988)). Debtor's future salary would not qualify as new value under the rule, as contributions must be "present contribution[s], taking place on the effective date of the Plan rather than a future contribution." *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 655 (9th Cir. 1997) (citing *In re Yasparro*, 100 B.R. 91, 96–97 (Bankr. M.D. Fla. 1989)). At this stage, it is enough to say I am unsure where such new value would come from, given Debtor's overextended credit. It is not clear how long it a Chapter 11 plan would need to run to accommodate those payments and Zions' motion does not illuminate that point.

Creditors' assertions of non-dischargeability also presents legal issues for confirming a plan here. As discussed above, the existence of such claims is likely to frustrate any effort to propose a plan because creditors with such claims may not support a lengthy repayment

---

[10] The Chapter 7 Trustee has valued the West 35th Avenue property at $3,300,000 in Canadian dollars, which exceeds the scheduled liens on that property. ECF 42, p. 4. This is not a finding that such valuation is correct; rather, I note only that it supports my view that Debtor may have non-exempt equity in his properties.

Case: 21-50028    Doc# 127-2 Filed: 04/07/21 Entered: 04/07/21 14:36:39 Page 30 of 41

1   period if they conclude it would delay or reduce their recoveries. The problem is not

2   unknown in case law. Zions omits any discussion of the Ninth Circuit's decision in *In re*

3   *Hamilton*, 803 F. App'x. 123 (9th Cir. 2020). In that case, Debtors sought to protect

4   distributions to creditors under their Chapter 11 plan from interference by a creditor with a

5   non-dischargeable judgment by enjoining that creditor from collecting its debt during the

6   plan's term. The Bankruptcy Appellate Panel reversed the confirmation order, finding no

7   basis for such an injunction and the Ninth Circuit affirmed. Without proof that *all claims*

8   *would be paid*, such a provision was unlawful. "In fact, it is undisputed that the non-

9   dischargeable debt will significantly increase, to over $3 million, by the end of the Plan

10   period. We know of no case in which our court (or the BAP) has approved a collection

11   injunction in such circumstances." *Id.* at 125. So even if a plan is confirmed, if Creditors are

12   successful in having their claims declared non-dischargeable, nothing in the Code will

13   prevent them from continuing to collect from Debtor outside the plan. Moreover, this fact

14   will generate uncertainty for other creditors, creating further difficulties for confirmation.

15         Finally, even assuming he is in excellent health now, his career is one in which

16   physical injuries are not uncommon. The uncertainty of Debtor's ability to perform as a

17   professional athlete, and the possibility of injury taking him off the ice – temporarily or

18   otherwise – mean the kind of long-term plan implied by Zions' request has serious feasibility

19   concerns that will only grow as the years go by. Under § 1129(a)(11) a plan must be feasible,

20   or "not likely to be followed by the liquidation, or the need for further financial

21   reorganization, of the debtor[.]" "'The feasibility requirement requires courts to scrutinize

22   carefully the plan to determine whether it offers a reasonable prospect of success and is

23   workable." *In re Beyond.com Corp.*, 289 B.R. 138, 145–46 (Bankr. N.D. Cal. 2003) (citing *In re*

24   *Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986)). Zions makes much of Debtor's high

25   income, but ignores the attendant uncertainty and risk his hockey career entails. Whoever

26   would manage this hypothetical Chapter 11, will not have that luxury. On the record

27   provided by Creditors, I am not convinced a plan so dependent on Debtor continuing to

28   play hockey for several years without interruption has a reasonable probability of success.

ORDER DENYING MOTION TO CONVERT                     17/27

### d. Benefit to Creditors

Finally, the benefit of conversion to Creditors is unproven. Conversion would certainly bring Debtor's post-petition salary into the estate. As noted above, uncertainty exists as to the amount of that income. As such, Zions will not, in the near term, receive the full amount alleged. Moreover, significant challenges await in Chapter 11, including challenges to priority and enforceability of security interests, non-dischargeable claims, and the cost and expense of the trustee and professionals. Thus, I cannot say with precision whether the administrative costs of a Chapter 11 would outweigh the costs to an individual creditor of bringing an adversary proceeding to protect their individual debt from discharge.

In sum, each factor weighs at least somewhat against converting this case. There is serious uncertainty regarding how much income to expect from Debtor, how long a plan capable of confirmation will need to last, and whether Debtor's career can be sustained over the lengthy period required to fund a plan in compliance with the Code. While Zions does present real arguments in favor of conversion, I find they fail to meet their burden.

### B. Debtor's Interests under § 706(b)

Next, I must consider the effect that conversion and appointment of a trustee would have on Debtor. The bargain a Chapter 7 debtor strikes is to turn over all of his non-exempt assets to a Chapter 7 trustee for administration and payment of creditors' claims. In Chapter 7, a debtor's postpetition income is not subject to creditors' claims and animates a debtor's discharge following the conclusion of the case. Were it otherwise no debtor would receive a proper fresh start after relinquishing their assets. *See Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015) ("Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate . . . . Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing. Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions.") (internal citations omitted).

ORDER DENYING MOTION TO CONVERT                                                18/27

Debtor's primary, and most obvious interests, are to see that his post-petition income does not become entangled in his bankruptcy estate and that he obtains a timely discharge of his debts. Debtor's choice of filing Chapter 7 is not improper from a statutory standpoint. Chapter 7 is designed to allow every debtor quote a quick discharge of his debts and a fresh start." *In re Takano,* 771 Fed. App'x. 805, 806 (9th Cir. 2019). It is often said that a Chapter 7 debtor quote has no constitutional right to discharge of his debts." *In re Gordon*, 464 B.R. 683, 700) (Bankr. N.D. Ga. 2012) (*citing United States v. Kras*, 409 U.S. 434, 436 (1973). The motion does not challenge Debtor's statutory eligibility to be a debtor under Chapter 7. This being so, debtor has a statutory right to discharge and fresh start and to receive his future income free from financial encumbrances.

Conversion and appointment of a trustee would significantly impair Debtor's right to make central choices in life, such as his professional hockey career. It is obvious that his continued participation must be a matter of personal choice in view of the high level of commitment and the serious risks of playing. Two of the NHL Contract provisions bear this out. One, described above, is the Modified No-Trade Clause, requires that the Debtor make an annual choice about where he would agree to play if traded. Such a decision necessarily depends on circumstances that only Debtor could meaningfully evaluate like the quality of the team, its location, and the other players. Professional sports require a herculean commitment – Debtor must have a role in this important choice. If I appoint a trustee, it would fall to that trustee to decide those three teams. One could speculate about how this might be managed with Debtor's direction or involvement, but without clarity on that point now, this is adverse to Debtor.

The NHL Contract also has detailed provisions about Debtor's medical status and ability to play. Debtor must "be fit and in proper condition for the performance of his duties[.]" In the first instance, the NHL Contract provides that the Sharks make the call on Debtor's ability to play. It is up to Debtor to contest that call. It makes little sense to put a trustee in the position of making this critical decision, particularly if the trustee is balancing creditors' rights to payment against Debtor's health choices. It is no exaggeration to say that

ORDER DENYING MOTION TO CONVERT 19/27

1 granting the motion would impinge very significantly on some of the most central choices in

2 Debtor's life.[11]

3      Debtor's ability to participate in the negotiation of a Chapter 11 plan, and the terms

4 of that plan, would appear to be limited if Zions' motion were granted. Chapter 11 plans are

5 often proposed by debtors, who initially have the exclusive right to propose and confirm a

6 plan. § 1121(a), a right that is often extended. § 1121(d).

7      By contrast, if Zions' motion is granted, a trustee would be appointed. That

8 appointment would terminate Debtor's exclusive control over the case. § 1121(c)(1). The

9 trustee or any creditor or group of creditors would then have the power to propose a plan. It

10 is difficult to envision how Debtor, an individual, could exercise or influence the

11 development of such a plan given the divergent interests of Debtor and his creditors, the

12 claimed nature of his debts, and the complete lack of confidence creditors have in him.

13      As it now stands, Debtor is entitled to a discharge if he meets applicable statutory

14 requirements. Conversion to Chapter 11 would imperil this possibility. If the case is

15 converted to Chapter 11, Debtor will only receive a discharge if a plan is confirmed and then

16 only if payments are complete. § 1141(d)(5). That process can take years in my experience. It

17 seems plain that creditors intend to prepare and confirm a Chapter 11 plan and to do so

18 without the input of Debtor. That process impairs Debtor's interest in a relatively quick and

19 final resolution to his current financial troubles, the reason people file Chapter 7 cases.

20

21

22

     ————————————————

23     [11] In addition to these concerns, I also note unbriefed legal issues regarding the
assumability of the NHL Contract. Depending on which jurisdiction's law applies to the

24 NHL Contract, it may not be assumable as a personal services contract. § 365(c)(1); *In re*

25 *Health Plan of Redwoods*, 286 B.R. 407, 409 (Bankr. N.D. Cal. 2002). And if the contract
cannot be assumed, it will be rejected, causing a breach. §§ 365(d)(1), (g). I decline to decide

26 these issues here, given the absence of briefing. But such issues only add to the uncertainty
regarding the potential benefits, and indeed even the viability, of a trustee-driven Chapter 11.

27 They also show how converting this case would result in significant impositions on Debtor's

28 ability to control his own life and career.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

C.     *Gordon* is Distinguishable

Zions and the joining parties rely heavily on *In re Gordon*, 465 B.R. 683 (Bankr. N.D. Ga. 2012). Debtor Gordon was an operational consultant. He worked for a company called Proudfoot Consulting Group, but left to pursue a better opportunity with Highland Consulting Group. Proudfoot promptly sued Gordon for violating a non-compete agreement. It obtained a judgment for $1,659,000 in damages and $335,050.55 in attorney fees, some of which was later set aside on appeal. *Id.* at 687. Proudfoot began garnishing Gordon's wages. With the financial support of Highland, which paid his legal fees, Gordon filed a Chapter 7 case. *Id.* at 688. Gordon's schedules showed secured debts totaling $413,163, and unsecured debts of $450,000, *Id.* at 688, 693, and seemingly little likelihood of a distribution from the Chapter 7 estate. The debtor's monthly net income fluctuated from $3,400 to $10,000. *Id.* at 693.

Proudfoot brought a motion to convert under § 706(b) to Chapter 11. Gordon objected and argued that provision did not apply to individual debtors, and involuntary conversion would violate the Thirteenth Amendment and the Anti-Peonage Act. The bankruptcy court rejected both these arguments, and found cause to convert the case because: (1) the debtor "demonstrated a consistent ability to earn at a high level," and by pledging his income for five years the debtor could pay unsecured creditors 45–100% of their claims; (2) the record showed no grounds for reconversion; (3) a confirmable plan was reasonably likely, as a reasonable plan would either be accepted by the moving creditor, or confirmed over such creditor's objection; and (4) in addition to being in the best interests of creditors, conversion was in the debtor's best interest, notwithstanding his contrary assertion, as the court found he was "a pawn between two companies which have seen fit to manipulate this Debtor and ruin his credit, rather than resolve their issues." *Id.* at 692–94.

*Gordon*'s facts are distinguishable from ours. In *Gordon*, the court noted that the case was really a two-party dispute, between Proudfoot and Highland, Gordon's current and prior employers. It referred to Gordon as a "pawn between two companies which have seen fit to ruin [Gordon's] credit rather than resolve their differences." *Id.* at 694. Debtor's situation is

1   much more complex, involving numerous creditors with a variety of competing claims on

2   both his property and future income

3          The Gordon court found that he had significant ability to pay claims. But Debtor's

4   financial obligations dwarf Gordon's; Debtor scheduled secured debts over 56 times higher,

5   and unsecured debts over 9.5 times higher than Gordon's debts.[12] While it is true that

6   Debtor earns significantly more than Gordon did, his income is subject to significant

7   uncertainties described above, whereas Gordon's income was assured. Debtor's life as a

8   professional hockey player, with its attendant risks and challenges, is simply not comparable

9   to that of a consultant like Gordon. Even if Debtor's income is reliable, no one has shown

10  how Debtor could pay a significant portion of what he owes to creditors.

11         The second factor, the likelihood of reconversion, is also distinguishable. The

12  creditor Proudfoot did not request a trustee be appointed, so it is not surprising the record

13  did not show any basis for immediate reconversion. Here, by contrast, Zions make sweeping

14  assertions about Debtor's pre-petition mismanagement of the estate, and its attendant

15  diminution, as well as his likely prospective conduct, and urge a trustee is the sole logical

16  remedy. So unlike *Gordon*, this motion is explicitly premised on conduct that would support a

17  motion to reconvert, and will allegedly continue in Chapter 11 if I do not appoint a trustee.

18         The *Gordon* court saw a high likelihood that a Chapter 11 plan could be negotiated.

19  The court in fact so no reason to assume the moving party would object to a reasonable

20  plan, and further assumed a plan could be confirmed over that party's objection anyway.

21  Those assumptions are not obvious here for several reasons. Zions argues there are

22  irreconcilable conflicts between it and Debtor. Zions uses this to argue a trustee is required.

23  But if I converted without appointing a trustee, leaving Debtor in possession, Zions has

24  essentially admitted that "there is no likelihood of any cooperation between" it and Debtor

25  "in the near future." *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 472–74 (3d Cir. 1998).

26  _____

27         [12] The *Gordon* debtor apparently did not schedule the judgment creditor's judgment
    against him. Adding that amount to the *Gordon* debtor's unsecured claims, I find Debtor's
28  unsecured debts are still 179% greater than in *Gordon*.

ORDER DENYING MOTION TO CONVERT                                                22/27

1   Furthermore, confirming a plan over Zions' objection will likely be exceedingly difficult.

2   Zions claims to be a secured creditor, so under § 1129(b)(2)(A)(i)(II) it is entitled to full

3   payment if it does not support the proposed plan. Other creditors take the same position.

4   Finally, the facts that led the *Gordon* court to find that debtor's interests best served

5   by conversion simply do not exist here. That appears to arise from the nature of the

6   case: a dispute between the debtor's current and former employer, which was made evident

7   by Gordon's current employer's willingness to pay debtor's legal fees, as well as the

8   potentiality of non-dischargeability litigation. In the *Gordon* court's view, converting to

9   Chapter 11 would make it easier for the debtor to obtain a final resolution and move on.

10  This case is different. Debtor's interests are not so directly served by Chapter 11 as

11  were Gordon's. Debtor filed this case of his own accord to stay multiple cases brought

12  against him by creditors. Debtor is funding his own case. He filed a Chapter 7, not a Chapter

13  11, because he wanted to obtain a discharge of as many debts as possible. He is concerned

14  that if the case is converted, he will lose access to the funds he needs to defend any non-

15  dischargeability litigation brought against him.

16  I cannot find that Chapter 11 serves Debtor's interests in the way that conversion

17  served consultant Gordon in his case. Whatever challenges Chapter 7 presents for Debtor

18  would be mitigated by not having to comply with a years-long payment plan and the lack of

19  funding for his further legal challenges. *Gordon* is an interesting case but its application to the

20  facts of Evander Kane's case are not so obvious that I could be persuaded to follow it.

21      D.      I Would not Appoint a Trustee Even if I Ordered Conversion

22  I also find that, if I were to grant conversion as Zions requests, I would not appoint a

23  Chapter 11 trustee. Section 1104(a) says I must appoint a trustee on a showing of cause,

24  which includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of

25  the debtor by current management, either before or after the commencement of the case," or

26  or where "appointment is in the best interests of creditors . . . and other interests of the

27  estate." Parties seeking the appointment of a Chapter 11 trustee "have the burden of proving

28

Case: 21-50028    Doc# 127-2   Filed: 04/07/21   Entered: 04/07/21 14:36:39   Page 23 of
41

appropriate grounds exist for such appointment by the preponderance of the evidence." *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 384 (Bankr. C.D. Cal. 2015) (citations omitted).

Beginning with fraud or dishonesty, Zions and the joining parties first point to the amendments Debtor has made to his schedules. It is possible Debtor had dishonest or fraudulent motives in omitting information from his schedules. But by filing those amendments Debtor shows at least some evidence of intent to comply with the Code, which is bolstered by his appearance at the § 341(a) meetings and providing the Chapter 7 Trustee and U.S. Trustee with documents. Debtor also provides at least some explanation for omissions like transferring the Rolex watches for a gambling debt. While Zions and other parties may not find such explanations convincing, this is their motion to prove up, and they have given me nothing to show such explanations are false. The parties seeking a trustee also vaguely assert irregularities in the financial statements he provided in obtaining loans from them, but again provide no evidence for such assertions.

Turning to gross mismanagement of the estate, I agree that Debtor's pre-petition financial decisions appear ill-considered. But I also find significant that at some point Debtor appears to have realized the disarray in his financial position and hired outside experts to restructure his affairs. That such efforts proved unsuccessful, resulting in this bankruptcy, is less important than his showing at least some understanding of his mistakes, and the need to correct them. Debtor's compliance with the Code so far shows this diligence may be more than a temporary change. On balance, I find the weight of evidence shows that, even if his prior conduct was gross mismanagement, his recent conduct shows marked improvement. I agree with Debtor that, were this case to be converted to Chapter 11, Debtor has shown he should at least have the opportunity to prosecute it himself.

Creditors also argues a trustee would best serve the interests of creditors and other estate interests because there are acrimonious, irreconcilable conflicts between him and his creditors. First, Zions cites for this argument *In re Thomas*, 596 B.R. 350, 361 (Bankr. W.D. Tenn. 2019), which in turn cites cases which state the standard for finding such conflicts show cause for appointing a trustee as requiring that "there is no likelihood of any

Case: 21-50028 Doc# 127-2 Filed: 04/07/21 Entered: 04/07/21 13:46:39 Page 438 of 441

1   cooperation between the parties in the near future," *In re Marvel Entm't Grp., Inc.,* 140 F.3d

2   463, 472–74 (3d Cir. 1998), or that "the inherent conflicts extend beyond the healthy

3   conflicts that always exist between debtor and creditor or . . . when the parties begin working

4   at cross-purposes," *In re Cajun Elec. Power Coop., Inc.,* 74 F.3d 599, 600 (5th Cir. 1996). Zions

5   and the joining parties give no evidence of such a conflict. What conflict they show appears

6   fairly standard to a debtor-creditor relationship that is in default. Also, Debtor's decision to

7   hire restructuring counsel prior to filing this bankruptcy shows an intent to work with his

8   creditors, meaning Debtor recently believed cooperation was still possible. He may still, at

9   least with regard to individual creditors, seeing as his stated reason for filing this case was

10   that it was not possible for him to defend against the numerous creditor actions filed against

11   him in quick succession.

12        I agree that Debtor has not managed his financial affairs well in the past. But more

13   recent conduct shows he has taken this issue more seriously. His compliance with the Code

14   so far shows that change continues. The evidence presented fails to outweigh Debtor's

15   showing of improved management, so I find Zions fails to meet its burden.

16        E.    Conversion to Chapter 11 and Appointing a Trustee and the Role of the

17               Thirteenth Amendment

18        Debtor argues that converting the case to Chapter 11 and appointing a trustee would

19   violate the Thirteenth Amendment's prohibition on involuntary servitude. Debtor argues

20   that converting this case and appointing a trustee will necessarily lead to the trustee assuming

21   the NHL Contract – his salary with the Sharks being the entire point of Zions' motion and

22   the basis for a reorganization – placing Debtor in the position of a peon, "defined as a status

23   or condition of compulsory service, based upon the indebtedness of the peon to the

24   master." *Clyatt v. United States,* 197 U.S. 207, 215 (1905). The Thirteenth Amendment states:

25   "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the

26   party shall have been duly convicted, shall exist within the United States, or any place subject

27   to their jurisdiction." The Thirteenth Amendment bars "involuntary servitude enforced by

28   the use or threatened use of physical or legal coercion." *United States v. Kozminski,* 487 U.S.

ORDER DENYING MOTION TO CONVERT                      25/27

1   931, 944 (1988). Under 42 U.S.C. § 1994, holding any person under peonage is "abolished

2   and forever prohibited in any Territory or State of the United States;" and all laws which

3   establish, maintain, or enforce "the voluntary or involuntary service or labor of any persons

4   as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void."

5   The Supreme Court distinguished peonage from "the voluntary performance of labor or

6   rendering of services in payment of a debt" this way: "In the latter case the debtor, though

7   contracting to pay his indebtedness by labor or service, and subject, like any other

8   contractor, to an action for damages for breach of that contract, can elect at any time to

9   break it, and no law or force compels performance or a continuance of the service." *Clyatt*,

10  197 U.S. at 215–16.

11          This is an important question, but I need not address it. "A fundamental and

12  longstanding principle of judicial restraint requires that courts avoid reaching constitutional

13  questions in advance of the necessity of deciding them." *Campanelli v. Allstate Life Ins. Co.*,

14  322 F.3d 1086, 1093 (9th Cir. 2003) (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*,

15  485 U.S. 439, 445–46 (1988)). Because I find it appropriate to deny the motion for failure to

16  satisfy the statutory standard, it is not necessary to decide this constitutional issue.

17  **IV.     CONCLUSION**

18          Because Zions and the joining parties fail to show by a preponderance of the

19  evidence that it is appropriate here to convert the case to Chapter 11 or appoint a trustee,

20  Zions' motion must be denied.

21          IT IS SO ORDERED.

22                              **END OF ORDER**

23

24

25

26

27

28

ORDER DENYING MOTION TO CONVERT                                                    26/27

[ECF recipients only]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER DENYING MOTION TO CONVERT