1 | Michael Gerard Fletcher (State Bar No. 070849)
    mfletcher@frandzel.com
2 | Gerrick M. Warrington (State Bar No. 294890)
    gwarrington@frandzel.com
3 | FRANDZEL ROBINS BLOOM & CSATO, L.C.
    1000 Wilshire Boulevard, Nineteenth Floor
4 | Los Angeles, California 90017-2427
    Telephone: (323) 852-1000
5 | Facsimile: (323) 651-2577

6 | Attorneys for creditor ZIONS BANCORPORATION, N.A., dba
7 | California Bank & Trust

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>    Debtor. | Case No. 21-50028-SLJ<br><br>Chapter 7<br><br>**REPLY OF ZIONS BANCORPORATION, N.A. IN SUPPORT OF ITS OBJECTION TO HOMESTEAD EXEMPTION**<br><br>Date:    June 9, 2021<br>Time:   2:00 p.m.<br>Place:  Via Zoom Video Conference<br><br>Hon. Stephen L. Johnson |

## Table of Contents

| | | | Page |
|---|---|---|---|
| I. | Introduction | | 6 |
| II. | Relevant Facts | | 6 |
| III. | Analysis | | 7 |
| | A. | Section 522(*o*) Applies Squarely to Kane's Actions and his Arguments to the Contrary Are Unsupported by Evidence or Legal Authority. | 7 |
| | B. | Section 522(p) Applies in California. | 11 |
| | C. | Kane's Argument that He Gets to Keep $245,000 in Purported "Appreciation" From August 2020 to the Petition Date is Flawed and Unsupported by Evidence. | 13 |
| | D. | The Court Should Reject Kane's Procedural Arguments. | 14 |
| | | 1. The Homestead Objection was Timely Filed and Served. | 14 |
| | | 2. The Court Should Apply the Plain Meaning of the Rule and Reject Kane's Request that the Court Inject a Brand New 30-Day Service Rule Into Rule 4003(b). | 15 |
| | | 3. The Court Should Decline to Follow *Bush* Because it is Both Misguided and Materially Factually Distinguishable. | 16 |
| | | 4. The Court Should Not Apply "Strict Construction" or "Liberal Construction" of Rule 4003(b)(4) Where Kane Does Not Dispute That He Received Timely Notice. | 18 |
| | | 5. The Case of *Fisher* is Better Reasoned and More Factually On Point. | 19 |
| | | 6. The Court May Not Summarily Overrule the Objection. | 20 |
| IV. | Conclusion | | 20 |

**Table of Authorities**

Page(s)

**Federal Cases**

*In re Arrol*,
    170 F.3d 934 (9th Cir. 1999) ................................................................................................ 18

*In re Aurelio*,
    252 B.R. 102 (Bankr. N.D. Miss. 2000) ................................................................................ 7

*In re Bush*,
    346 B.R. 523 (Bankr. E.D. Wash. 2006) ........................................................................ *passim*

*In re Diaz*,
    547 B.R. 329 (B.A.P. 9th Cir. 2016) ............................................................................. 7ffisher

*In re Fisher*,
    63 B.R. 649 (Bankr. W.D. Ky. 1986) ............................................................................ 19, 20

*Gill v. Stern (In re Stern)*,
    345 F.3d 1036 (9th Cir. 2003) ........................................................................................... 8, 9

*In re Greene*,
    583 F.3d 614 (9th Cir. 2009) ................................................................................................ 13

*In re Kane*,
    336 B.R. 477 (Bankr. D. Nev. 2006) ................................................................................... 14

*In re Kaplan*,
    331 B.R. 483 (Bankr. S.D. Fla. 2005) ........................................................................... 11, 12

*In re Keck*,
    363 B.R. 193 (Bankr. D. Kan. 2007) ................................................................................... 10

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004) ............................................................................................................. 15

*In re Laurain*,
    113 F.3d 595 (6th Cir. 1997) ............................................................................................... 19

*In re Lee*,
    889 F.3d 639 (9th Cir. 2018) .......................................................................................... 17, 18

*In re McNabb*,
    326 B.R. 785 (Bankr. D. Ariz. 2005) ............................................................................. 11, 12

*In re Nolan*,
    618 B.R. 860 (Bankr. C.D. Cal. 2020), aff'd, No. 2021 WL 528679 (C.D. Cal.
    Feb. 12, 2021) ................................................................................................................... 7

*Preblich v. Battley*,
    181 F.3d 1048 (9th Cir. 1999) ............................................................................................. 7

*In re Presto*,
    376 B.R. 554 (Bankr. S.D. Tex. 2007) ............................................................................... 10

*In re Rasmussen*,
    349 B.R. 747 (Bankr. M.D. Fla. 2006) ............................................................................... 12

*In re Schaefers*,
    623 B.R. 777 (B.A.P. 9th Cir. 2020) .................................................................................. 14

*In re Sissom*,
    366 B.R. 677 (Bankr. S.D. Tex. 2007) ............................................................................... 10

*Taylor v. Freeland & Kronz*,
    503 U.S. 638 (1992) ........................................................................................................... 19

*In re Tober*,
    688 F.3d 1160 (9th Cir. 2012) ............................................................................................ 18

*In re Vanderpol*,
    606 B.R. 425 (Bankr. D. Colo. 2019) ................................................................................. 15

*Wilson v. Rigby*,
    909 F.3d 306 (9th Cir. 2018) .............................................................................................. 13

**State Cases**

*Kirkeby v. Superior Court*,
    33 Cal. 4th 642 (2004) ......................................................................................................... 9

*Nagel v. Westen*,
    59 Cal. App. 5th 740 (2021) ................................................................................................ 9

**Federal Statutes**

11 U.S.C. § 522 ........................................................................................................................ 19

11 U.S.C. § 522(*o*) .............................................................................................................*passim*

11 U.S.C. § 522(p) ..................................................................................................... *passim*

11 U.S.C. § 522(q) .......................................................................................................8f1009

**Federal Rules**

Fed. R. Bankr. P. 1009(a) ....................................................................................................... 7

Fed. R. Bankr. P. 4003 ................................................................................................*passim*

Fed. R. Bankr. P. 4003(b)...........................................................................................*passim*

Fed. R. Bankr. P. 4003(b)(1).......................................................................... 14, 15, 16, 18

Fed. R. Bankr. P. 4003(b)(4)......................................................................................*passim*

**Secondary Authorities**

Collier on Bankruptcy, ¶ 522.13[1] (16th ed.) ....................................................... 11, 12

Zions Bancorporation, N.A. ("Zions") submits its reply in support of its Objection to Homestead Exemption ("Objection") (Dkt. 74) and in response to the Opposition ("Opposition") (Dkt. 146) filed by the Debtor Evander Frank Kane ("Kane"). The Court should reject the arguments raised in the Opposition and grant the relief requested in Zions' Objection in full.

## I. Introduction

Kane is a professional hockey player under a remaining $29 million dollar NHL contract. A few months prior to filing chapter 7 and while he was being sued personally by a phalanx of creditors and in a year where he lost $1.5 million by gambling at casinos, Kane consulted with himself in his capacity as the manager member of a Florida LLC (while represented by Pachulski Stang Ziehl & Jones LLP). Kane decided to shield $600,000 in nonexempt equity from his two multimillion dollar Canadian Properties by transferring those funds to himself as the manager of the insider Florida LLC, and then used those funds (essentially *all* of his nonexempt assets) as a down payment on a multimillion dollar mansion in San Jose. It is obvious that Kane intended to conceal from the creditors suing him the transferred money and the ownership of the property via these surreptitious transfers to an insider shell entity in Florida. Then, hours before Kane filed this chapter 7 case, Kane in his capacity as the Florida LLC manager consulted with himself again, and caused the LLC to transfer title to the residence to himself and his wife. He then invoked California's newly-enacted $600,000 homestead exemption as to the residence that he had owned for only a few hours, again obviously manipulating the transfers to harm the creditors suing him. Under Bankruptcy Code provisions specifically enacted by Congress to close the so-called "mansion loophole," the Court should disallow Kane's $600,000 exemption in its entirety under section 522(*o*) or, at the very least, reduce it to the statutory cap under section 522(p).

## II. Relevant Facts

Kane filed chapter 7 on January 9, 2021, and his meeting of creditors concluded on February 23, 2021. *See* unnumbered Dkts. 30/31. Thereafter, on February 26, 2021, Kane filed an Amended Schedule C, which amended schedule did not reflect any certificate of service. The Amended Schedule does not appear to have been properly served on any creditors and it is lacking any certificate of service. *See* Dkt. 37. On March 4, 2021, the chapter 7 trustee filed an application

Motion for Authority to Convey Estate's Equity in Real Estate and Resolve Dispute Concerning Bank Accounts ("9019 Motion") (Dkt. 42). The 9019 Motion seeks approval of a settlement agreement, which, if approved, would entitle Kane to retain his $600,000.00 homestead exemption in exchange for paying $255,000.00 to the estate, which payment would release the estate's interest in and claims to Kane's Assets. (Settlement Agreement at ¶¶ 3-4, 8.) Zions objected to the 9019 Motion on March 25, 2021, asserting, among other things, that the trustee had failed to provide evidence or even analysis concerning Kane's homestead exemption. (*See* Dkt. 76.) **To date, the trustee has not set a hearing on Zions' objection to the 9019 Motion.**[1]

## III. Analysis

As analyzed below, the Court should reject Kane's substantive arguments as well as his procedural arguments and enter an order granting Zions' Objection on the merits.

### A. Section 522(*o*) Applies Squarely to Kane's Actions and his Arguments to the Contrary Are Unsupported by Evidence or Legal Authority.

A debtor claiming a California homestead has the burden of proving entitlement to that homestead exemption (unless a declaration of homestead has been recorded). *In re Nolan*, 618 B.R. 860, 865 (Bankr. C.D. Cal. 2020), aff'd, No. 2021 WL 528679 (C.D. Cal. Feb. 12, 2021); *In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016) (citing *In re Tallerico*, 532 B.R. 774, 788 (Bankr. E.D. Cal. 2015); *In re Pashenee*, 531 B.R. 834, 837 (Bankr. E.D. Cal. 2015)). Here, the salient facts are **undisputed**. Kane is invoking California's automatic homestead exemption, which means that Kane has the burden of proof to demonstrate his entitlement to the exemption under applicable law. Yet Kane has completely failed to meet his burden. He makes various vague factual assertions in his Opposition. (*See* Opposition at 7:28-8:9.) None of these factual assertions

---

[1] Kane failed to properly serve his Amended Schedule C on all creditors entitled to notice. *Compare* Dkt. 37 *with* creditor matrix; *see also* Dkt. 16 (reflecting Zions' Notice of Change of Address). As a result, the deadline to file objections to Kane's exemptions is tolled as to these affected creditors. *See* Fed. R. Bankr. P. 1009(a); *Preblich v. Battley*, 181 F.3d 1048, 1052-53 (9th Cir. 1999) (citation omitted); *In re Aurelio*, 252 B.R. 102, 104 (Bankr. N.D. Miss. 2000) (finding improper notice of amended schedule where no certificate of service was filed by the debtor). The trustee has, so far, declined to object to Kane's homestead exemption on behalf of the estate.

are supported by credible and admissible testimony or evidence. (*Cf., generally*, Kane Declaration Dkt. 146.)[2]  Accordingly, Kane has failed to meet his burden and the Court should sustain the Objection for that reason.

Kane's undisputed actions come squarely within the ambit of section 522(*o*). He used an insider shell entity to convert $600,000 USD (Sworn Schedule D. Dkt 18) in nonexempt assets into a $600,000 USD homestead at a time when he was hopelessly insolvent, incurring massive gambling losses, and being sued by numerous creditors. He concealed the property through insider transfers with the obvious intent to hinder, delay, and defraud his creditors and then transferred the property to himself literally hours before filing chapter 7.

Kane cites *Gill v. Stern (In re Stern)*, 345 F.3d 1036 (9th Cir. 2003). But, *Stern* does not help him. Critically, *Stern* was decided **before** Congress enacted sections 522(*o*), (p), and (q) to close the "mansion loophole." In addition, *Stern* is factually distinguishable. In *Stern*, the Ninth Circuit found that where the *only evidence* presented is that non-exempt assets were "deliberately converted to exempt assets just prior to filing the bankruptcy petition," such evidence is "insufficient as a matter of law to establish fraud." *Id.* at 1044. The *Stern* court then analyzed the badges of fraud and concluded that "With the exception of the arbitration loss and the speculative insolvency, the other articulated badges of fraud are simply restatements of the accusation that Stern converted nonexempt assets into exempt assets, an accusation that cannot support a finding of fraud." *Id.* at 1045.

The distinctions between *Stern* and the instant case are decisive. Here, Kane *was* balance sheet and equitably insolvent and did orchestrate a scheme to convert essentially all of his nonexempt assets in to a homestead exemption hours before filing chapter 7. He concealed these nonexempt assets by using an insider shell entity based in Florida. He then converted the equity to

---

[2] Should the Court find that Kane's two-page declaration raises a material issue of fact—including specifically any vague commingling statements—Zions demands a full evidentiary hearing to allow cross-examination and testimony concerning tracing and the application of the lowest intermediate balance rule or similar tracing rules. This is not necessary on the record before the Court, but out of an abundance of caution, Zions formally demands an evidentiary hearing to the extent the Court finds that Kane has actually raised a disputed material factual issue.

community property hours before filing chapter 7. This was done while he was being sued by numerous creditors and while he had gambled and lost $1.5 million. In short, his actions and the undisputed evidentiary record demonstrate that Kane acted with the requisite intent to hinder, delay, and defraud his creditors.

In addition, *Stern* appears to conflict with *Nagel v. Westen*, 59 Cal. App. 5th 740 (2021). *Nagel* was decided a few days prior to Kane's filing bankruptcy and is therefore applicable under the "snapshot rule." In *Nagel*, the California Court of Appeal held that under California's voidable transactions laws "physically relocating personal property and transmitting or transporting sale proceeds out of state, then transmuting them into a different legal form, may constitute a direct or indirect mode of parting with assets or one's interest in those assets. As such, Nagel adequately alleged a 'transfer' under the UVTA." *Id*. at 749. The Court reasoned that "asset" is defined from the creditor's perspective, not the debtor's, and that debtors may not avoid California's voidable transactions statutes "by simply manipulating an asset's form or location without vesting legal title or ownership in a third party." *Id*. *Nagel* distinguished as dicta language from the California Supreme Court in *Kirkeby v. Superior Court*, 33 Cal. 4th 642, 648 (2004), that a "transfer" requires the conveyance of an interest to a third party. Just as in *Nagel*, Kane changed the form of an asset (from non-exempt to exempt and from separate to community property) which act qualifies as a "transfer" under California fraudulent transfer statutes.

Kane meets almost every badge of fraud (as set forth in detail in the Objection). Kane does not rebut any of the evidence submitted in connection with the Objection, all of which amply demonstrate that he intentionally hindered, delayed, and defrauded his creditors within the ambit of section 522(*o*). In short, *Stern* is both legally and factually distinguishable given the state of federal and California law on the petition date and considering Kane's undisputed prepetition actions, which come squarely within the concept of hinderance, delay, and defrauding creditors under section 522(*o*).

Kane provides *no evidence or analysis* to support his assertion that Kane's conversion of the equity in his Canadian Properties into cash and then funneling it into his Residence does not constitute "disposing of" property. (*See* Opposition at 8:23-9:2.) Applicable case law provides

that use of nonexempt funds as a down payment on a homestead comes within the "disposing of" language of section 522(*o*). *In re Presto*, 376 B.R. 554 at n. 19 (Bankr. S.D. Tex. 2007) (providing that use of nonexempt proceeds "as a down payment or to pay down principal" comes within section 522(*o*) "because these uses have a direct, equivalent increase in equity") (citation omitted); *In re Sissom*, 366 B.R. 677, 689 (Bankr. S.D. Tex. 2007) (finding that conversion of nonexempt assets to purchase a homestead comes with the "disposed of" language of section 522(*o*)). *See also In re Keck*, 363 B.R. 193, 208 (Bankr. D. Kan. 2007) (providing that obtaining credit and using those proceeds to improve a homestead comes within the ambit of section 522(*o*)). The Court should reject Kane's unsupported legal argument.

Kane concedes that the Canadian Properties were not exempt, but then states that "Kane also acknowledges that the proceeds from the loan were combined with his other funds to make the down payment on the Residence." (Opposition at 9:4-5.) These vague commingling statements peppered throughout Kane's Opposition simply fail to actually raise disputed material issue of fact. Kane notably admits that $600,000 in nonexempt equity was used as a down payment. At any rate, none of these statements are supported by credible and admissible evidence. All should be disregarded. Kane states that there is no "evidence" that the disposition was done to hinder, delay, or defraud creditors. To the contrary, the Objection lays out in detail with authenticated evidence each badge of fraud, which is the best evidence of Kane's intent (aside from him coming out and saying what his subjective intentions were).

And, Kane utterly fails to address several of the badges of fraud analyzed in detail in Zions' Objection. For example, Kane completely ignores his admitted balance sheet insolvency, his admission concerning the numerous lawsuits against him at the time, his undeniable insider transfers of substantially all of his assets on the eve of bankruptcy.

Kane states in a footnote that Ms. Kane's community interests are property of the estate under section 541(a)(2). (Opposition at n. 6.) But Kane fails to address the legally operative point: Kane transferred his interests in the Canadian Properties (in which Mrs. Kane had no apparent interest) to an LLC which Mrs. Kane held a 50% interest. Kane provided no evidence that this transfer was anything other than a gratuitous transfer to his wife to shield Kane's assets from his

10

creditors (again, to "hinder, delay, or defraud" creditors). This was not an apples-to-apples transfer of community property in one form to community property in another form. Rather, it was a fraudulent conversion of non-community property (of Kane) to community property (of Kane and his wife). Kane misses this critical point and fails to address it entirely. Again, Kane has failed to meet his burden of proof.

### B. Section 522(p) Applies in California.

Kane asserts that section 522(p) does not apply in opt-out states like California. In support, of this assertion, Kane cites *In re McNabb*, 326 B.R. 785 (Bankr. D. Ariz. 2005). *McNabb* held that the section 522(p) "cap" only applies in states which have not opted out of the federal exemption scheme. California has opted-out, and so Kane asserts that the Court should overrule Zions' section 522(p) objection.

Simply put, this legal argument is untenable because *McNabb*'s analysis is erroneous. The *McNabb* court found that the cap only applied "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law." *McNabb*, 326 B.R. at 788. The court construed the phrase "as a result of electing" to refer to the election made by a debtor in non-opt-out-states (i.e., where the debtor may "elect" either the federal or the state statutory exemption scheme). Collier on Bankruptcy points to another, more plain, interpretation of this "electing" phrase in section 522(p):

> A possible explanation for the "electing" language, not considered by the McNabb court, is that congress intended the homestead limitations to apply when the debtor elects to exempt homestead property under section 522(b)(3)(A), but not when the debtor elects to exempt homestead property under section 522(b)(3)(B) that is held as a tenant by the entirety or by joint tenancy, if that interest is exempt from process under nonbankruptcy law. The existence of section 522(b)(3)(B) points to another form of election available to debtors. Moreover, the exemption under section 522(b)(3)(B) is available to debtors in all states to the extent recognized by state law, even in opt-out states, and would therefore suggest a reason why Congress may have included the "electing" language.

Collier on Bankruptcy, ¶ 522.13[1] (16th ed.). *See also In re Kaplan*, 331 B.R. 483, 486 (Bankr. S.D. Fla. 2005) (rejecting *McNabb*'s reasoning as being a "shaky platform").

Once again, the plain meaning rule applies. If the Court decides to interpret the "electing" language of section 522(p) as the *McNabb* court did, then it is definitively *ambiguous*—capable of

two plausible yet mutually-exclusive and conflicting alternative meanings (i.e., the interpretation used by *McNabb* versus the one recognized by Collier and *Kaplan*). As a result, the Court may then—and only then—resort to legislative history to ascertain Congress' intention to give meaning to the statute.

The legislative history for section 522(p) demonstrates that Congress intended it to apply broadly and did not intend to limit it to only the handful of non-opt out states. *See In re Rasmussen*, 349 B.R. 747, 752 (Bankr. M.D. Fla. 2006) (citing *In re Kane*, 336 B.R. 477, 481-82 (Bankr. D. Nev. 2006) (holding that section 522(p) was designed to close "the 'millionaire's mansion' loophole in the current bankruptcy code that permits corporate criminals to shield their multi-million dollar homesteads"); *In re Virissimo*, 332 B.R. 201, 207 (Bankr. D. Nev. 2005)). Accordingly, should the Court find the "electing" phrase of section 522(p) ambiguous, the Court should *still* reject McNabb and adopt the interpretative analysis of Collier and *Kaplan*.

Kane asserts that this is not a "mansion loophole" case because Kane did not "flee" to California for the purpose of invoking its homestead exemption, but rather "he moved to California in February 2018 as a result of being traded to the Sharks…." (Opposition at 6:11-12.) This misses the point. It is undisputed that Kane acquired a homestead (by acquiring title in the name of an insider shell entity located in Florida which was held in both Kane and his wife's names) within the timeframe of section 522(p) and then transferred title to himself and his wife within hours of filing chapter 7 (claiming California's newly-enacted $600,000.00 homestead exemption). This squarely comes within the "mansion loophole" that Congress expressly intended to curtail in the 2005 BAPCPA amendments, including section 522(p). Courts have rejected similarly specious arguments. *See In re Kaplan*, 331 B.R. at 488 ("Nowhere within the Report is it ever suggested that the homestead limitations in the Reform Act are limited to Texas and Minnesota as concluded in *McNabb*. To arrive at this result based on a strained and convoluted use of statutory interpretation in the face of this unambiguous legislative intent is simply wrong.") (citing 151 Cong. Rec. H1993–01, 2048 (2005)).

The Court should reject Kane's arguments under *McNabb*—section 522(p) applies in opt-out states like California.

### C. Kane's Argument that He Gets to Keep $245,000 in Purported "Appreciation" From August 2020 to the Petition Date is Flawed and Unsupported by Evidence.

Kane asserts that, if section 522(p) applies, he is entitled to $245,000 in purported "appreciation" based on the difference between the Property's "purchase price" in August of 2020 and the trustee's valuation conducted "shortly after the case was filed." (Opposition at 7:18.) This statement is unsupported by evidence and should be disregarded. Kane arrives at this "appreciation" figure by taking the purported purchase price (unsupported by authenticated evidence) and comparing it to the chapter 7 trustee's purported valuation (also unsupported by evidence) and then announcing that Kane is entitled to the difference. Kane's method is flawed and without legal or evidentiary support. If the Court finds that Kane has made an evidentiary showing and is entitled to any purported "appreciation," Zions demands a full evidentiary hearing.

Kane states that it is purportedly undisputed that "*Kane and his wife acquired the Residence in August 2020* for the price of $3,030,000." (Opposition at 7:15-16 (emphasis added).) This is a sleight of hand and is very obviously materially false. What *is* undisputed is that *Kane's Florida limited liability company* acquired the Residence in August 2020 (*not Kane*), and that Kane and his wife acquired the Residence by grant deed recorded literally hours before Kane filed chapter 7 bankruptcy. Any "appreciation" in those brief moments between the recordation of the LLC's grant deed (at 3:16 p.m. PST on January 8, 2021) and Kane's filing his chapter 7 petition (on January 8, 2021) has not been proven as a factual matter by Kane.

The Ninth Circuit case of *In re Greene*, which was cited by Kane in support of his argument, goes precisely the other way. *See In re Greene*, 583 F.3d 614, 624 (9th Cir. 2009) ("We hold that 'any amount of interest that was acquired,' as used in Section 522(p)(1), means the acquisition of *ownership* of real property….") (emphasis added). Again, *Kane* did not acquire *ownership* of the Residence in August 2020, his insider shell entity did. Kane did not own *the Residence* until hours before his bankruptcy was filed. And, the estate—not Kane—would be entitled to any postpetition appreciation not otherwise exempted under section 522(p)'s cap. *See Wilson v. Rigby*, 909 F.3d 306, 308-309 (9th Cir. 2018) (citing 11 U.S.C. § 541(a)(6) and *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991)).

Importantly, Kane has failed to demonstrate that he had a sufficient cognizable legal or equitable interest in the Residence to claim a homestead exemption in the property prior to January 8, 2021, when he caused the LLC transfer the Residence to himself and his wife. Prior to this transfer in January 2021, Kane would not have been entitled to claim a homestead exemption in the Residence because his LLC membership interest coupled with his apparent possessory interest in the Residence is insufficient as a matter of California law to qualify for a homestead exemption. *See In re Schaefers*, 623 B.R. 777, 783 (B.A.P. 9th Cir. 2020) (finding that under California law, a debtor could not claim a homestead exemption in the real property of an LLC, co-owned by debtor and debtor's spouse, that contained a dwelling where debtor resided because debtor did not have a legal or equitable interest in the real property and because possession of the property together with ownership of the membership interest was not enough). Kane has provided no evidence of any beneficial or equitable interest sufficient to support a homestead exemption prior to the LLC's transfer of the Residence to Kane on January 8, 2021.

The Court should reject Kane's arguments as being contrary to Ninth Circuit law and contrary to the undisputed facts of this case.

### D. The Court Should Reject Kane's Procedural Arguments.

Kane's procedural arguments are moot and fail as a matter of law as analyzed below.

#### 1. The Homestead Objection was Timely Filed and Served.

On March 25, 2021, Zions filed its Objection to Homestead Exemption (defined above as "Objection") (Dkt. 74) and served it by mail and electronically upon, among others, the chapter 7 trustee, the U.S. trustee, certain creditors, and Kane's counsel of record. *See* Certificate of Service Dkt. 74-2. On April 26, 2021, (33 days after the Objection was filed and eight days in advance of the initial hearing on the Objection), Zions mailed and overnighted a copy of the Objection to Kane at his residence.

On April 27, 2021, Kane filed a Limited Response ("Limited Response") (Dkt. 106) to the Objection, requesting that the Court summarily overrule the Objection on the grounds that Kane contended that the Objection failed to comply with Rule 4003(b)(4) of the Federal Rules of Bankruptcy Procedure ("Rules") because although Zions served Kane's counsel of record by mail

and electronically, "Zions did not serve Mr. Kane with the Objection." (Dkt. 106 2:10-11.) This statement was untrue when it was made, because Zions had in fact served Kane with the Objection the day before (and had also served his counsel some 33 days prior).

On April 28, 2021, Zions filed a motion to continue ("Motion to Continue") (Dkt. 109) the hearing on the Objection purportedly for the express purposes of resolving any due process or procedural objections by Kane, allowing Kane's full substantive response, and permitting the Court to then rule on the merits of the Objection. On April 29, 2021, the Court entered an order granting Zions' Motion to Continue (Dkt. 110).

Rule 4003(b)(1) provides that "a party in interest may *file* an objection to the list of property claimed as exempt within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later…." (emphasis added). Rule 4003(b)(4) provides that "A copy of any objection *shall be delivered or mailed* to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney." (emphasis added).

Here, it is undisputed that Zions filed its Objection within 30 days of the conclusion of Kane's meeting of creditors and that it also served all parties entitled to notice under Rule 4003(b)(4). Accordingly, Zions has fully complied with Rule 4003(b). As analyzed below, the Court should reject Kane's arguments to the contrary.

    2.    <u>The Court Should Apply the Plain Meaning of the Rule and Reject Kane's Request that the Court Inject a Brand New 30-Day Service Rule Into Rule 4003(b).</u>

"[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted). Prior versions of the same rule cannot make a rule "ambiguous" such that resort to legislative history is required to interpret the present rule. *Id*. Under the plain meaning rule, a court may not add words or rewrite a non-ambiguous federal statute. *Id*. at 538. The plain meaning rule applies to federal rules of bankruptcy procedure. *In re Vanderpol*, 606 B.R. 425, 428 (Bankr. D. Colo. 2019) (citing *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 123 (1989)).

15

Here, the undisputed facts demonstrate that Zions has met the letter and the purpose of Rule 4003(b). Zions filed its Objection 30 days of the completion of Kane's meeting of creditors, which satisfies Rule 4003(b)(1). And, Zions promptly served Kane, his attorney, and all other requisite parties by mail (among other methods). Zions then went a step further and obtained a continuance of the hearing to obviate any procedural objections or due process qualms and allow additional time for Kane to make a substantive response. In short, notice is *not* the issue here. In fact, Kane does not allege or provide any evidence that he lacked prompt or adequate *notice* of the Objection or that he lacked sufficient time to oppose the Objection. *See, generally*, Kane Declaration Dkt. 147. Rather, Kane is asking the Court to inject a brand new service deadline into Rule 4003(b) and then overrule Zions objection based on that newly-minted service deadline. As set forth herein, the Court may not do as Kane requests. The Court should decline Kane's request and simply apply the plain text of the Rule.

### 3. The Court Should Decline to Follow *Bush* Because it is Both Misguided and Materially Factually Distinguishable.

Kane bases his "new service rule" argument on the misguided and materially factually distinguishable case of *In re Bush*, 346 B.R. 523 (Bankr. E.D. Wash. 2006). As a threshold matter, the *Bush* court expressly declined to opine on the instant fact-pattern. As the *Bush* court put it:

> Rule 4003(b) is clear that the objection must be filed within the 30-day time limit. The rule is also clear that the objection must be delivered or mailed to the debtor and the debtor's attorney. What is less clear, and at issue here, is what happens when the objection is timely filed but not delivered or mailed to the debtor and the debtor's attorney for sometime thereafter—outside the 30-day time limit. *There is another issue that the court does not decide: What is the consequence of the trustee's failure to deliver or mail a copy of the objection to the debtors?*

*Id*. at 525 (emphasis added). For this reason alone, the Court should disregard *Bush*. *Bush* is also factually distinguishable. In *Bush*, the trustee *never* served the objection on the debtor, and the trustee failed to mail-serve *anyone* until well after the 30-day filing deadline had expired. *See id*. Although NEF notice was generated by the filing of the objection, the trustee did not mail-serve the debtor's attorney until some *87 days* after the conclusion of the meeting of creditors. *Id*. The court emphasized that its own local rules "pointedly" did not authorize electronic service. *Id*. at 526. The matter came on for hearing without the debtor *ever* having been served—either by mail

or otherwise. See id. at 524. By contrast, Kane's attorney was mail-served *within* the 30-day filing deadline, Kane was mail and overnight mail served *prior* to the initially-set hearing, and the hearing was in fact *continued* by the Court to allow additional time for substantive objections by Kane. In short, *Bush* has *no* factual bearing on the instant case.

In addition, *Bush*'s "interpretation" of Rule 4003(b) is erroneous. For whatever reason, the court felt compelled to add a 30-day service deadline to Rule 4003(b). (This is what Kane is asking this Court to do.) The *Bush* court announced that a "clear," "bright line" rule that would be easy to follow would only help ensure good and timely notice and would avoid "secret or undisclosed objections." *Id*. at 525-27. The *Bush* court defended its new rule by explaining that it would only *improve* the existing rule by furthering its presumed policy and purpose of prompt notice. See id. at 526.

The *Bush* court fretted about the need to avoid "interpreting" Rule 4003(b) as to require service "within a reasonable period of time" because that would "inject[] uncertainty into Rule 4003(b)." But, it then went on to do exactly that—by arbitrarily choosing what it felt was a "reasonable period of time" for service—the thirty-day filing deadline of Rule 4003(b)(1). The *Bush* court's policy decisions were inappropriate and its reasoning was fallacious.

Good rule or not, the *Bush* court cited no authority that would permit it to engage in judicial rule-making (dubbed "interpretation") and create a service deadline where none existed before.[3]

---

[3] The *Bush* court's "bright line" drop-dead service rule also ignores informal exemption objections. An information exemption objection may be timely filed as, for example, an adversary proceeding, but then not served until after the 30-day filing deadline. This is exactly what happened in *In re Lee*, 889 F.3d 639 (9th Cir. 2018), where an adversary complaint was timely filed, but not served until after the 30-day filing deadline. Just as here, the debtor in *Lee* never disputed having received actual notice but, by contrast, in *Lee*, formal service upon him was *never actually accomplished*. *Id*. at 645; see Bankr. D. Hawaii 14 90003 Dkt. 1, 2, 6, 303, 307, D. Hawaii 1:15-cv-00100 Dkt. 19 (Zions requests the Court to take judicial notice of this record). The Ninth Circuit nonetheless rejected the debtor's due process arguments, finding that the adversary complaint was at least timely *filed* and that Rule 4003(b) provided the debtor with timely notice despite the lack of a formal exemption objection (or formal service for that matter). See id. at 646.

### 4. The Court Should Not Apply "Strict Construction" or "Liberal Construction" of Rule 4003(b)(4) Where Kane Does Not Dispute That He Received Timely Notice.

The Ninth Circuit has recognized that courts should not apply a hyper-technical or "liberal" and pro-debtor construction to the procedural rules governing exemption objections where the debtor actually received timely notice. *See In re Lee*, 889 F.3d 639, 642, 646 (9th Cir. 2018) (characterizing Rule 4003(b)(4) as a "procedural requirement[]" and declining to adopt a hyper-technical interpretation of Rule 4003 "where its purpose to 'provide the debtor with timely notice' has been clearly satisfied").

Here, Kane does not argue that he did not receive timely notice. Rather, Kane argues that Rule 4003(b)(4) should be "interpreted" to add a 30-day service rule which does not exist in the text of the Rule. The legal authority cited by Kane in support of this request is sourced from the *Bush* decision and elsewhere—the ubiquitous "liberal" or "strict" construction cases dealing with exemption statutes and exemption filing deadlines (not service deadlines). These cases do not apply to Rule 4003(b)(4).

Kane also cites *In re Tober*, 688 F.3d 1160, 1163 (9th Cir. 2012) and *In re Arrol*, 170 F.3d 934, 937 (9th Cir. 1999) for the proposition that the Court should apply liberal construction to exemption statutes in favor of the debtor. Opposition at 4:5-9. But, these so-called "liberal construction" statutes do not apply to procedural rules such as Rule 4003(b)(4). Indeed, the Ninth Circuit in *In re Lee* found that procedural rules relating to exemptions, including Rule 4003(b) specifically, should not be construed in a wooden manner where timely notice is not disputed. *See In re Lee*, 889 F.3d at 646.[4]

---

[4] Kane's Opposition actually copy and pastes from *In re Lee*, but fails to attribute the quote or to use quotation marks. And, Kane omits the very next sentence from *Lee* which clarifies the holding in a manner that is material to this Objection proceeding. That omitted portion is as follows: "Lee points to no instance, however, where we have applied this rule of statutory construction to interpret the procedural rules governing objections to exemptions. We have previously declined to construe "the trustee's ability to inhibit exemptions" under 11 U.S.C. § 522 strictly…, and likewise decline to adopt a hypertechnical interpretation of Rule 4003 where its purpose to "provide the debtor with timely notice" has been clearly satisfied…." *In re Lee*, 889 F.3d at 646. Kane's Opposition's omissions are misleading and improper.

In addition, just as *Bush* did, Kane cites *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) and *In re Laurain*, 113 F.3d 595 (6th Cir. 1997) for the proposition that Rule 4003 should be "strictly interpreted" "for the protection of debtors." Opposition at 5:11-12, n. 2. But these cases dealt only with the 30-day *filing* deadline, not some judicially-created *service* deadline. More fundamentally, those cases are not "strictly interpreting" Rule 4003(b) "for the protection of debtors." Rather, those cases are strictly interpreting the rules as written by applying the plain meaning rule. This Court is also required to apply the plain meaning doctrine. Notably, the strict construction doctrine actually *prohibits* the court from adding words (or deadlines) where none exist (i.e., it prevents the Court from doing what Kane is asking it to do). In short, the "strict construction" cases only cut *against* Kane's arguments and are antithetical to the *Bush* court's analysis. The Court should reject Kane's argument and apply the plain meaning of Rule 4003(b).

Indeed the central irony of Kane's argument is that a judicially-created service drop-dead rule deprives *everyone* of notice—the debtor, the trustee, the estate, the creditors, pro se parties—because this new drop-dead service rule has never been promulgated and exists *nowhere* in the text of Rule 4003(b).

### 5. The Case of *Fisher* is Better Reasoned and More Factually On Point.

In Zions' Motion to Continue, it directed the Court to *In re Fisher*, 63 B.R. 649, 651 (Bankr. W.D. Ky. 1986) (analyzing predecessor Rule 4003(b) which has essentially the same language as the current Rule 4003(b)(4)), where the court held:

> [W]e find that debtor's argument that the objection must be mailed to both the debtor and his attorney, to be without merit. Service on the debtor's attorney was obviously sufficient to give the debtor notice of the objections. Rule 4003(b) states that copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney. Reading this language literally and carried to the extreme, one could conclude that "the person filing the list" means someone from the attorney's office who *physically* filed the same. We decline to read the Rule so literally as to mandatorily require service on both the debtor and his attorney.

Predecessor Rule 4003(b) and current Rule 4003(b)(4) have essentially identical operative language. Predecessor Rule 4003(b) provided that "Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney," whereas the current version of Rule 4003(b)(4) provides that "A copy of any objection

shall be delivered or mailed to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney." The *Fisher* case is not only analytically sound, it is factually on-point. In fact, Zions gave *more* notice to Kane than the notice given in *Fisher*. The Court should adopt *Fisher* and reject *Bush*.

### 6. The Court May Not Summarily Overrule the Objection.

Assuming arguendo that Kane and *Bush* are correct, neither Kane nor *Bush* explain why that rule should require the Court to **summarily overrule** an objection where service was, in fact, accomplished prior to the hearing and a continuance was granted to allow full due process rights and an opportunity to object. Again, Kane does not assert that he lacked sufficient notice (and prompt service and notice was clearly provided). Service was accomplished eight days before the initial hearing and Zions obtained an additional continuance to avoid procedural objections. Accordingly, there is simply no cognizable basis—and neither Kane nor *Bush* have cited any—to allow the Court to summarily overrule the Objection based on this arbitrary and bizarrely draconian doomsday rule (which is not based on any text of the actual rule itself).

## IV. Conclusion

As analyzed above, the Court should sustain Zions' Objection on the merits. To the extent the Court is inclined to adopt any of Kane's factual allegations in contravention of the authenticated credible evidence presented by Zions in this matter, Zions demands a full evidentiary hearing and briefing schedule.

DATED: June 2, 2021

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
GERRICK M. WARRINGTON

By: /s/ Gerrick M. Warrington
GERRICK M. WARRINGTON
Attorneys for creditor Zions Bancorporation, N.A.