**SUMMARY OF EXHIBITS A - N**

**CENTENNIAL BANK'S MOTION TO DISMISS CASE AS A BAD FAITH FILING PURSUANT TO SECTION 707(a)**

| | |
|---|---|
| Exhibit A | Wells Fargo Bank Statement<br>Day of Filing – Redacted |
| Exhibit B | May 18, 2018 Standard Player's Contract |
| Exhibit C | September 5, 2018 Security Agreement |
| Exhibit D | September 5, 2018 Garnishment Waiver Agreement |
| Exhibit E | Transcript of 2004 Exam, pages 40 - 41 |
| Exhibit F | Transcript of 341 Hearing, page 68 |
| Exhibit G | Transcript of 2004 Exam, pages 47 - 48 |
| Exhibit H | Transcript of 341 Hearing, pages 63 - 64 |
| Exhibit I | Transcript of 2004 Exam, page 37 |
| Exhibit J | 2021 Paystubs |
| Exhibit K | Wells Fargo Relevant Monthly Statements – Redacted |
| Exhibit L | Transcript of 2004 Exam, pages 81- 83 |
| Exhibit M | Royal Bank of Canada Credit Card Nov – Dec – Redacted |
| Exhibit N | Transcript of 2004 Exam, pages 51, 94 - 95 |

1506007.1

# EXHIBIT "A"



# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** ℠
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932,** *TTY:* 1-800-600-4833
*Spanish:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

EVANDER KANE
8012 WILES RD
CORAL SPRINGS FL 33067-2072

## January 31, 2021

| | |
|---|---|
| **Total assets:** | **$(85.19)** |
| **Total liabilities:** | **$0.00** |
| Qualifying Balance: | $(85.19) |
| Deposit Balance: | $(85.19) |

**Contents**   *Page*

Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . . 3

Go Far™ Rewards. . . . . . . . . . . . . . . . . . . . . . . . 6

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 10 of 128

522745



# Your Portfolio by Wells Fargo overview

## Assets

| Account (Account Number) | Balance this month ($) |
|---|---|
| Wells Fargo Portfolio Checking ▮▮▮ 1607 | (85.19) |
| **Total assets** | **$(85.19)** |

## Go Far™ Rewards

| Rewards ID (▮▮▮▮▮▮▮) | |
|---|---|
| Available balance | 0 |
| *Pending relationship bonus rewards* | 32,159 |

---

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Advisors, which is a trade name used by Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, Members SIPC, registered broker-dealers and separate non-bank affiliates of Wells Fargo & Company; and (3) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.

**Investment and Insurance Products are:**
- **Not Insured by the FDIC or Any Federal Government Agency**
- **Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate**
- **Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested**

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

---

**Other Wells Fargo Benefits**

Please take a few minutes to review the accounts that are linked to your Portfolio by Wells Fargo program. To see the accounts that are linked to your Portfolio program, please go to the section of this statement titled "Your Portfolio by Wells Fargo Overview". Or, sign onto Wells Fargo Online and at the top of the Account Summary page, click on "Explore Program and Benefits", and this will take you to the Balance and Benefits page. To view the Balance and Benefits page from your mobile device, log into the Wells Fargo app and at the top of the Account Summary page, tap "Portfolio by Wells Fargo". Linked eligible accounts make up your Portfolio by Wells Fargo statement-ending qualifying balance and are used to determine if you are eligible to avoid the monthly service fee, and to get pricing discounts and other benefits. If you do not see all of the accounts you would like included in your Portfolio by Wells Fargo program, please contact your banker or call the number listed on the first page of this statement for assistance with linking the accounts.



# Wells Fargo Portfolio Checking

## Statement period activity summary

| | |
|---|---|
| Balance on 1/1 | 8,462.43 |
| Deposits/Additions | 11,000.02 |
| Withdrawals/Subtractions | 19,547.64 |
| **Balance on 1/31** | **-$85.19** |

Account number: ■■■■ **1607**

**EVANDER KANE**

*Wells Fargo Bank, N.A. (Member FDIC)*

*CALIFORNIA account terms and conditions apply*

Questions about your account: **1-800-742-4932**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Interest you've earned

| | |
|---|---|
| Interest paid this statement | $0.02 |
| Interest earned this statement period | $0.02 |
| Average collected balance | $2,296.44 |
| Annual percentage yield earned | 0.01% |
| Interest paid this year | $0.02 |
| Total interest paid in **2020** | $10.26 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | **Beginning balance on 1/1** | | | | **8,462.43** |
| 1/4 | Recurring Payment Authorized On 12/29 Ccbill.Com *Fenix 888 5969279 CA S300364842593397 Card 7236 | | | 22.00 | |
| 1/4 | Recurring Payment Authorized On 12/29 Ccbill.Com *Fenix 888 5969279 CA S380364847604430 Card 7236 | | | 9.99 | |
| 1/4 | Purchase Authorized On 12/30 Chick Fil A #01584 Phoenix AZ S300366078957413 Card 7236 | | | 13.79 | |
| 1/4 | Recurring Payment Authorized On 12/31 Ccbill.Com *Fenix 888 5969279 CA S301001260974611 Card 7236 | | | 17.00 | |
| 1/4 | Recurring Payment Authorized On 01/01 Best Alarm Company 408 8712400 CA S381002039612173 Card 7236 | | | 114.00 | |
| 1/4 | Purchase Intl Authorized On 01/01 Sp * Merabi Manchester Gbr S301002104804468 Card 7236 | | | 260.07 | |
| 1/4 | International Purchase Transaction Fee | | | 7.80 | |
| 1/4 | Purchase Authorized On 01/01 Sp * Nickho Rey Nickhorey.Mys TX S381002216891158 Card 7236 | | | 225.00 | |
| 1/4 | Purchase Intl Authorized On 01/03 Sp * Lemonlunar Bolton Gbr S301003709142670 Card 7236 | | | 171.09 | |
| 1/4 | International Purchase Transaction Fee | | | 5.13 | |
| 1/4 | Purchase Intl Authorized On 01/03 Sp * Satya Port Moody Can S381003820376162 Card 7236 | | | 35.25 | |
| 1/4 | International Purchase Transaction Fee | | | 1.05 | |
| 1/4 | Purchase Authorized On 01/03 Mastro'S Oceanclub Scottsdale AZ S301004168248790 Card 7236 | | | 454.93 | 7,125.33 |
| 1/5 | Purchase Authorized On 01/04 Sp * Heiress Cloth Httpsheiressb FL S581004662979614 Card 7236 | | | 169.52 | 6,955.81 |
| 1/6 | Recurring Payment Authorized On 01/03 Ccbill.Com *Fenix 888 5969279 CA S581003588635568 Card 7236 | | | 12.00 | |
| 1/6 | Recurring Payment Authorized On 01/03 Ccbill.Com *Fenix 888 5969279 CA S301003591796899 Card 7236 | | | 10.00 | |
| 1/6 | Purchase Authorized On 01/05 Sp * Skims Httpsskimsbod CA S581005639121077 Card 7236 | | | 190.14 | 6,743.67 |
| 1/7 | eDeposit IN Branch/Store 01/07/21 04:05:27 Pm 14595 N Scottsdale Rd Scottsdale AZ | | 11,000.00 | | |
| 1/7 | Purchase Authorized On 01/06 Sp * Mutha Httpsmuthasto TX S301006688901755 Card 7236 | | | 159.00 | |



# Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| 1/7 | Purchase Authorized On 01/06 Sp * Afrmclothing Httpsarrivecl CA S461007099027689 Card 7236 | | | 186.62 | 17,398.05 |
| 1/8 | Wire Trans Svc Charge   Sequence: 210108061202 Srf# 0006313007688619 Trn#210108061202 Rfb# | | | 30.00 | |
| 1/8 | Purchase Authorized On 01/07 Sp * Posh Peanut l Poshpeanutsco CA S381007588955595 Card 7236 | | | 53.55 | |
| 1/8 | Purchase Authorized On 01/07 Sp * Little Sleepi Httpslittlesl CA S381007845533775 Card 7236 | | | 69.92 | |
| 1/8 | WT Fed#05530 Liberty Bank /Ftr/Bnf=Greg Henehan Srf# 0006313007688619 Trn#210108061202 Rfb# | | | 11,000.00 | |
| 1/8 | Zelle to Dussault Morgan On 01/08 Ref #Rp09Lh2F79 | | | 500.00 | |
| 1/8 | American Express ACH Pmt 210108 M0416 Evander Kane | | | 4,000.00 | 1,744.58 |
| 1/11 | Purchase Authorized On 01/08 Sp * Newton Baby, Staging.Newto NY S301008707899864 Card 7236 | | | 327.74 | |
| 1/11 | Recurring Payment Authorized On 01/09 Ccbill.Com *Onlyf 888 5969279 CA S381009538510871 Card 7236 | | | 5.99 | |
| 1/11 | Purchase Authorized On 01/09 Staples 0010 Scottsdale AZ S581009797014125 Card 7236 | | | 11.04 | |
| 1/11 | Purchase Authorized On 01/09 Oregano's Bistro 1 Scottsdale AZ S581009829323111 Card 7236 | | | 35.51 | |
| 1/11 | Purchase Authorized On 01/09 C2 Tactical 101 An Phoenix AZ S381010026296563 Card 7236 | | | 184.46 | |
| 1/11 | Purchase Authorized On 01/09 C2 Tactical 101 An Phoenix AZ S461010032694444 Card 7236 | | | 170.20 | |
| 1/11 | Zelle to Dussault Morgan On 01/10 Ref #Rp09Lvwjr7 | | | 500.00 | 509.64 |
| 1/13 | Purchase Authorized On 01/09 Sp * Skims Httpsskimsbod CA S301009740907012 Card 7236 | | | 187.91 | 321.73 |
| 1/15 | Purchase Authorized On 01/13 Tst* Pieology   Av Avondale AZ S301014055788293 Card 7236 | | | 26.00 | |
| 1/15 | Purchase Authorized On 01/14 Sports Venture Chandler AZ S461014768837216 Card 7236 | | | 141.96 | 153.77 |
| 1/19 | Recurring Payment Authorized On 01/12 Ccbill.Com *Onlyf 888 5969279 CA S461013017382444 Card 7236 | | | 49.00 | |
| 1/19 | Recurring Payment Authorized On 01/13 Ccbill.Com *Onlyf 888 5969279 CA S581013341928615 Card 7236 | | | 19.99 | |
| 1/19 | Recurring Payment Authorized On 01/13 Ccbill.Com *Onlyf 888 5969279 CA S461014209320030 Card 7236 | | | 16.99 | |
| 1/19 | Purchase Authorized On 01/14 Tst* Pieology   Av Avondale AZ S581014744007970 Card 7236 | | | 14.79 | |
| 1/19 | Recurring Payment Authorized On 01/15 Ritual Httpsritual.C CA S461015682634640 Card 7236 | | | 38.24 | 14.76 |
| 1/22 | Recurring Payment Authorized On 01/19 Ccbill.Com *Onlyf 888 5969279 CA S461019496437527 Card 7236 | | | 9.99 | 4.77 |
| 1/27 | Recurring Payment Authorized On 01/24 Ccbill.Com *Onlyf 888 5969279 CA S581024445719964 Card 7236 | | | 9.99 | 5.22 |
| 1/28 | Overdraft Fee For A Transaction Posted On 01/27 $9.99 Recurring Payment Authori Zed On 01/24 Ccbill.Com *Onlyf 888 5969 | | | 35.00 | |
| 1/28 | Recurring Payment Authorized On 01/24 Ccbill.Com *Onlyf 888 5969279 CA S461024841032039 Card 7236 | | | 9.99 | 50.21 |
| 1/29 | Overdraft Fee For A Transaction Posted On 01/28 $9.99 Recurring Payment Authori Zed On 01/24 Ccbill.Com *Onlyf 888 5969 | | | 35.00 | |
| 1/29 | Interest Payment | | 0.02 | | 85.19 |
| **Ending balance on 1/31** | | | | | **-85.19** |
| **Totals** | | | **$11,000.02** | **$19,547.64** | |



 **Wells Fargo Portfolio Checking** (continued)

### Summary of Overdraft and Returned Item Fees

|  | Total this statement period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $70.00 | $70.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Year to date totals reflect fees assessed or reversed since the first full statement period of the calendar year. Negative values indicate that fee reversals exceed fees assessed.*

---

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo program. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on about the 2nd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs), FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors®) and credit balances (including 10% of mortgage balances).

**Investment and Insurance Products are:**
**- Not Insured by the FDIC or Any Federal Government Agency**
**- Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate**
**- Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested**

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 104
of 128

# EXHIBIT "B"

# EXHIBIT 1
## STANDARD PLAYER'S CONTRACT

### IMPORTANT NOTICE TO PLAYER

Before signing this Standard Player's Contract ("SPC") you should carefully examine it to be sure that all terms and conditions agreed upon have been incorporated herein, and if any has been omitted, you should insist upon having it inserted in the SPC before you sign.

---

## NATIONAL HOCKEY LEAGUE
### STANDARD PLAYER'S CONTRACT
### (2013 FORM)

BETWEEN       San Jose Sharks

Hereinafter called the "Club," a member of the National Hockey League, hereinafter called the "League"

AND       Evander Kane

hereinafter called the "Player"

State/Province/Country

of    Vancouver    in   BC   of   CANADA

In consideration of the respective obligations herein and hereby assumed, the parties to this SPC severally agree as follows:

1. The Club hereby employs the Player as a skilled hockey Player for the term of eight (7) League Year(s) commencing the later of July 1, 2018 or upon execution of this SPC and agrees, subject to the terms and conditions hereof, to pay the Player a salary of _____ US Dollars ($ _____ ).

| | | |
|---|---|---|
| 2018/19: | Six Million Dollars | $6,000,000 |
| 2019/20: | Six Million Dollars | $6,000,000 |
| 2020/21: | Three Million Dollars | $3,000,000 |
| 2021/22: | Seven Million Dollars | $7,000,000 |
| 2022/23: | Five Million Dollars | $5,000,000 |
| 2023/24: | Six Million Dollars | $6,000,000 |
| 2024/25: | Four Million Dollars | $4,000,000 |

Payment of such Paragraph 1 Salary shall be in consecutive semi-monthly installments on the 15th and 30th day of each month following the commencement of the NHL Regular Season or

following the dates of reporting, whichever is later (provided that the pay period shall not close more than three (3) days prior to payroll dates); provided, however, that if the Player is not in the employ of the Club for the whole period of the Club's NHL Regular Season Games, then he shall receive only part of such Paragraph 1 Salary in the ratio of the number of days of actual employment to the number of days of the NHL Regular Season.

And it is further mutually agreed that if the SPC and rights to the services of the Player are Loaned or otherwise transferred to a club in another league, the Player shall only be paid at an annual salary rate of

| | | |
|---|---|---|
| 2018/19: | N/A | Dollars--------------------------------in the AHL |
| 2019/20: | N/A | Dollars--------------------------------in the AHL |
| 2020/21: | N/A | Dollars--------------------------------in the AHL |
| 2021/22: | N/A | Dollars--------------------------------in the AHL |
| 2022/23: | N/A | Dollars--------------------------------in the AHL |
| 2023/24: | N/A | Dollars--------------------------------in the AHL |
| 2024/25: | N/A | Dollars--------------------------------in the AHL |

2.     The Player agrees to give his services and to play hockey in all NHL Games, All Star Games, International Hockey Games and Exhibition Games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.

The Player further agrees,

(a)     to report to his Club's Training Camp at the time and place fixed by the Club, in good physical condition,

(b)     to keep himself in good physical condition at all times during the season,

(c)     to give his best services to the Club and to play hockey only for the Club unless his SPC is Assigned, Loaned or terminated by the Club,

(d)     to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally,

(e)     to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

3.     In order that the Player shall be fit and in proper condition for the performance of his duties as required by this SPC and the Agreement, the Player agrees to report for practice at such time and place as the Club may reasonably designate and participate in such Exhibition Games as may be arranged by the Club.

4.     The Club may from time to time during the continuance of this SPC establish reasonable rules governing the conduct and conditioning of the Player, and such reasonable rules shall form part of this SPC and the Agreement as fully as if herein written. For violation of any such rules

or for any conduct impairing the thorough and faithful discharge of the duties incumbent upon the Player, the Club may impose a reasonable fine upon the Player and deduct the amount thereof from any money due or to become due to the Player. The Club may also suspend the Player for violation of any such rules. When the Player is fined or suspended, he shall be given notice in writing stating the amount of the fine and/or the duration of the suspension and the reason therefor. Copies of the rules referred to herein shall be filed at the main offices of the League and the National Hockey League Players' Association ("NHLPA").

5.    (a)    Should the Player be disabled or unable to perform his duties under this SPC he shall submit himself for medical examination and treatment by a physician selected by the Club, and such examination and treatment, when made at the request of the Club, shall be at its expense unless made necessary by some act or conduct of the Player contrary to the terms and provisions of this SPC or the rules established under Paragraph 4. At any time a physician selected by a Club makes a determination as to whether or not a Player is disabled and unable to perform his duties as a hockey Player for purposes of this Paragraph 5 of this SPC, such physician shall evidence such determination by fully completing the form attached to the CBA as Exhibit 25-A, which shall be provided to the Player at the time such determination is made and immediately provided to the Club as well. Upon receipt of such fully completed form, the Club shall send an electronic copy forthwith to the Player, his Certified Agent, the NHL, and the NHLPA (the "Recipients"), which shall contain the language from CBA Exhibit 25-A contained in the "Message to Player", provided, however, that the Club's failure to include such language shall not affect the time frames set out in this Paragraph 5, or otherwise prejudice the Club.

(b)    If the Player, in the judgment of the Club's physician, is disabled or is not in good physical condition at the commencement of the season or at any subsequent time during the season (unless such condition is the direct result of any injury sustained during the course of his employment as a hockey Player with the Club, including travel with his team or on business requested by the Club) so as to render him unfit to play skilled hockey, then it is mutually agreed that the Club shall have the right to suspend the Player for such period of disability or unfitness, and no compensation shall be payable for that period under this SPC.

(c)    If the Player is injured during the course of his employment as a hockey Player with the Club, including travel with his team or on business requested by the Club, the Club will pay the Player's reasonable hospitalization until discharged from the hospital, and his medical expenses and doctor's bills, provided that the hospital and doctor are approved by the Club. This approval will not be unreasonably withheld.

(d)    It is also agreed that if the Player, in the sole judgment of the Club's physician, is disabled and unable to perform his duties as a hockey Player by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall be entitled to receive his remaining Paragraph 1 Salary and Signing Bonuses due in accordance with the terms of this SPC for the remaining stated term of this SPC as long as the said disability and inability to perform continue but in no event beyond the expiration date of the fixed term of this SPC. In consideration of the payment of such Paragraph 1 Salary, as well as payments made by the Club to fund the Hospital, Major Medical, Visioncare and Dental Plan, career ending disability policy and serious disability policy and other consideration (including the payment of salary referenced herein, where applicable), the

Player does hereby covenant that in the event he receives full payment of a claim under such career ending disability policy or serious disability policy, he personally releases and will release, and will cause his corporation if a corporate contract is involved to release, the Club, the League, the NHLPA, all other Clubs, the insurance carrier, and the servants, employees, officers and agents of each of the above from any and every additional obligation, liability, claim or demand for any additional salary or other payments, arising out of or relating to such injury or the treatment thereof, including without limitation liability in tort, and extending to all damages, whenever arising.

(e)     In the event that the Player wishes to seek a second opinion in respect of the Club Physician's determination regarding the Player's fitness or unfitness to play, the Player shall provide electronic notice to the Club (unless the Player provides notice by any other means to the General Manager, Assistant General Manager or the Head Athletic Trainer) that he is seeking a second opinion pursuant to Paragraph 5 of the SPC by no later than 5:00 pm New York time on the third day after the electronic notice referred to in Paragraph 5(a) above is sent, except that, if the notice referred to in Paragraph 5(a) above is sent after 5:00 pm New York time the Player shall have until 5:00 pm New York time on the fourth day to provide such notice.  Upon receiving notice that the Player is seeking a second opinion, the Club shall promptly provide the Player its complete medical file on the Player in respect of the Player's condition that is the subject of the Club Physician's determination. The Player must obtain a second opinion within five (5) days (or later only upon showing of good cause) of the electronic notice from the Club.

(f)     The physician consulted by the Player ("Player's Physician") in accordance with Paragraph 5(e) must make a determination as to whether the Player is disabled and unable to perform his duties as a hockey Player and shall evidence such determination by fully completing the form attached to the CBA as Exhibit 25-A, which shall be provided to the Player at the time of the examination, with an electronic copy sent forthwith to the Club and the Recipients. The Club Physician and the Player's Physician must consult as expeditiously as possible and, in any event, by no later than 5:00 pm New York time on the third day after the Player is sent electronic notice of the determination by the Player's Physician (referenced in this Paragraph 5(f) above) (or later only upon a showing of good cause).

(g)     (i)     If, after consulting as provided for in Paragraph 5(f), the Club Physician and the Player's Physician agree that the Player is either disabled and unable to perform, or not disabled and able to perform, his duties as a hockey Player, their agreed-upon determination shall be evidenced by fully completing the form attached to the CBA as Exhibit 25-B (as set forth in Paragraph 5(g)(i)(iii)).  Such determination shall be conclusive, final and binding upon the Club and the Player, absent a showing of improper interference with the procedures set forth in CBA Section 17.7 and Paragraph 5 of the SPC.

(ii)     If after consulting as provided for in Paragraph 5(f), the Club physician and the Player's Physician cannot agree on whether the Player is disabled and unable to perform his duties as a hockey Player, they shall evidence such disagreement by fully completing the form attached to the CBA as Exhibit 25-B (as set forth in Paragraph 5(g)(iii)).

(iii)     Pursuant to either Paragraph 5(g)(i) or 5(g)(ii) above, the Player's Physician shall complete his/her portion of Exhibit 25-B first and then shall send such form to

the Club Physician. The Club Physician shall then complete his/her portion of Exhibit 25-B and then shall send such fully completed form to the Club, the Player's Physician and the Recipients.

(iv)     If the Club Physician and the Player's Physician cannot agree on whether the Player is disabled and unable to perform his duties as a hockey Player pursuant to Paragraph 5(g)(ii) above, they shall confer and agree on an independent physician to examine the Player. The independent physician must be selected as expeditiously as possible and, in any event, within the time frame referred to in Paragraph 5(f) above (or later only upon a showing of good cause). If the Player's Physician and the Club Physician are unable to select the independent physician within such period, the independent physician shall be selected jointly by a medical designee appointed by the NHL and a medical designee appointed by the NHLPA. That selection shall take place as expeditiously as possible, but not later than 5:00 pm New York time on the second day after referral to the NHL and NHLPA medical designees.

(h)     Following the selection of the independent physician pursuant to Paragraph 5(g)(iv), the NHLPA (with a copy sent forthwith to the Club and the Recipients) shall provide the independent physician with a completed form set out in CBA Exhibit 25-C. The Club also shall send to the independent physician a copy of the medical file that it had forwarded to the Player pursuant to Paragraph 5(e). The Player shall direct the Player's Physician to forward to the independent physician a complete copy of his medical file in respect of the condition that is the subject of the Player's Physician's second opinion pursuant to Paragraph 5(h). The Player must submit himself to examination, and the independent physician must examine the Player, within five (5) business days of his selection (or later only upon a showing of good cause). The independent physician shall make a determination of whether the Player is disabled and unable to perform his duties as a hockey Player and evidence such determination by fully completing the form attached as Exhibit 25-A, which shall be provided to the Player at the time of the examination and an electronic copy sent forthwith to the Club and the Recipients.

(i)     The independent physician's determination as to whether the Player is disabled and unable to perform his duties as a hockey Player shall be conclusive, final and binding upon the Club and the Player, absent a showing of improper interference with the procedures set forth in CBA Section 17.7 and Paragraph 5 of the SPC.

(j)     If, pursuant to Paragraph 5(g) or Paragraph 5(h) a Player examined in connection with Paragraph 5(d) is declared to be unfit for play by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall continue to receive the full benefits of this Agreement in accordance with the provisions of Paragraph 5(d). If such Player is declared to be physically able to play and refuses to do so, he shall be liable to immediate suspension without pay. For the avoidance of doubt, if the Player is deemed to have had a separation from service (as defined in Treas. Reg. section 1.409A-1(h)) and, prior to such separation, the Player has not been disabled for purposes of Section 409A(a)(2)(C) of the Internal Revenue Code, any amount payable pursuant to this Paragraph 5(j) shall be paid over the Buy-Out Period prescribed by Paragraph 13(d) (i.e., over twice the remaining term of the SPC).

(k)    If either the Club or the Player fail to timely comply with any of the requirements set forth in Paragraph 5, absent a showing of good cause, then such non-complying party shall be deemed to have acceded to the other party's position in such dispute.

(l)    The Club and Player shall cooperate, and shall cause their respective physicians to cooperate, for the purpose of making medical records available to any physician who examines the Player pursuant to this Paragraph 5.

(m)    For purposes of clarity, the Club physician, the Player's Physician and the independent physician shall be charged only with determining whether the Player is disabled and unable to perform his duties as a hockey Player. Any other determinations, including whether a Player's disability is a hockey related injury, shall be within the jurisdiction of the Impartial Arbitrator.

(n)    In connection with a disability which is not caused by an injury sustained during the course of his employment as a hockey Player including travel with his team or on business requested by his Club, the procedures set forth in this Paragraph 5 shall also apply to the Club doctor's determination regarding the Player's physical fitness to return to play. If the Player is declared to be fit for play, by the Club doctor and Player doctor, or by the independent doctor, he must perform his duties hereunder and shall be entitled to receive the full benefits of this Agreement. If he is declared to be not physically able to play, he shall not be entitled to the benefits of this Agreement until he has been declared to be physically fit to play by the independent medical specialist.

(o)    The reasonable costs incurred by the Player in the course of obtaining a second opinion pursuant to this Paragraph 5 shall be borne equally by the Club and the Player.

6.    The Player represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey Player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages. The Player therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunctive proceedings without first exhausting any other remedy which may be available to the Club, from playing hockey for any other team and/or for any breach of any of the other provisions of this SPC.

7.    The Player and the Club recognize and agree that the Player's participation in other sports may impair or destroy his ability and skill as a hockey Player. Accordingly the Player agrees that he will not during the period of this SPC or during any period when he is obligated under this SPC to enter into a further SPC with the Club engage or participate in football, baseball, softball, hockey, lacrosse, boxing, wrestling or other athletic sport without the written consent of the Club, which consent will not be unreasonably withheld.

8.    (a)    The Club recognizes that the Player owns exclusive rights to his individual personality, including his likeness. The Player recognizes that the Club owns exclusive rights to its name, emblems and uniform, which the Player wears as a hockey Player for the Club.

The Player hereby irrevocably grants to the Club during the period of this SPC and during any period when he is obligated under this SPC to enter into a further SPC with the Club

the right to permit or authorize any firm, person or corporation to take and make use of any still photographs, motion pictures or electronic (including television) images of himself in uniform and agrees that thereafter all rights in such photographs, pictures and images (including the right to identify him by name) shall belong to the Club exclusively for the purposes of telecasts, film or video documentaries or features, advertisements and promotions of the Club's games, use by the media for reportorial purposes, game programs, yearbooks, magazines and the like, and purposes in which the focus is on the Club or game and not the individual Player.

The Club hereby irrevocably grants to the Player during the period of this SPC and thereafter the right to use the name of the Club (but not the emblem or uniform unless otherwise agreed) to identify himself, truthfully, as a Player of the Club, past or present.

All obligations and rights set forth in this Paragraph 8(a) shall be subject to modification from time to time by the provisions of the CBA.

(b) The Player further agrees that during the period of this SPC and during any period when he is obligated under this contract to enter into a further contract with the Club, he will not make public appearances, participate in radio or television programs, or permit his picture to be taken, or write or sponsor newspaper or magazine articles, or sponsor commercial products without the written consent of the Club which consent shall not be unreasonably withheld.

9. It is mutually agreed that the Club will not pay, and the Player will not accept from any person, any bonus or anything of value for winning or otherwise attempting to affect the outcome of any particular game or series of games except as authorized by the League By-Laws.

10. The Player agrees he will not tamper with or enter into negotiations with any Player under SPC or reservation to any Club of the League for or regarding such Player's current or future services, without the written consent of the Club with which such Player is connected under penalty of a fine to be imposed by the Commissioner of the League.

11. It is mutually agreed that the Club shall have the right to Assign or to Loan this SPC, and the Player agrees to accept and be bound by such Assignment or Loan, and will faithfully perform and carry out this SPC with the same purpose and effect as if it had been entered into by the Player and such other club.

It is further mutually agreed that in the event that this SPC is Assigned, or the Player's services are Loaned, to another club, the club shall by notice in writing delivered to the Player advise the Player of the name and address of the club to which he has been Assigned or Loaned, and specify the time and place of reporting. If the Player fails to report to such other club, he may be suspended by such other club and no Paragraph 1 Salary shall be payable to him during the period of such suspension.

12. *Default.* If a Club defaults in the payment of any compensation to the Player provided for in his SPC or fails to perform any other obligation under his SPC, the Player may, by notice in writing to the Club and to the League and the NHLPA, specify the nature of any and all defaults and thereafter:

(a)    If the Club fails to remedy the default within fourteen (14) days from receipt of such notice, except as hereinafter provided in Paragraphs 12(b), (c) and (d), the SPC shall be terminated, and, upon the date of such termination, all obligations of both parties shall cease, except the obligation of the Club to pay the Player's compensation to that date, provided, however, that;

(b)    the player hereby irrevocably offers the League an option to cure said default within the seven (7) days next succeeding the fourteen (14) days within which the Club may cure the default upon the condition that, in the event the League may accept this offer, the League would then guarantee payment of that portion of the Player's compensation, as set forth in the Player's SPC, as may become due for a period of twenty-one (21) days from receipt by the League of any notice of default. The League may accept this offer by notification to the Player and the NHLPA in writing of such acceptance and of its guarantee of said twenty-one (21) day compensation period as soon as possible following receipt of notice of default from Player but in no event later than fourteen (14) days following receipt of such notice. This offer will be deemed rejected if not accepted as set forth above;

(c)    said option may be assigned by the League to any other Club and, upon such assignment, the assignee Club shall inure to all of the rights of and assume all obligations of the League under this Paragraph 12;

(d)    the Player further agrees that, if the League has given due notice as set forth in Paragraph 12 (b), he will continue to perform all of his obligations under his SPC for the full twenty-one (21) day period and, in the event the Club does not cure the default within the fourteen (14) day period, as set forth in subsection (a), the League, or any Club to which its option has been assigned, may cure the default within the seven (7) days following the first fourteen (14) days next succeeding receipt of notice of default; and

(e)    the Club agrees if it does not cure the default within the fourteen (14) day period, as set forth in Paragraph 12 (a) above, and the League, or an assignee Club, cures said default in accordance with Paragraph 12 (b), (c) and (d) then, in such event, all rights and obligations of the Club under this SPC shall be transferred to the League, or such assignee Club, provided, however, that no obligation with respect to a default or defaults claimed to exist at the time of notice of default, as provided above, but not specifically included and set forth in said notice shall be assumed by the League or such assignee Club and the League or such assignee Club shall have no liability with respect thereto.

(f)    The Club and/or the League may dispute the Player's assertion of a default through an expedited arbitration proceeding in which case the Arbitrator shall be directed both to hear and decide such case within fourteen (14) days of receipt of notice from the Player pursuant to this Paragraph 12 absent a showing of good cause by the League and/or the Club as to why it requires additional time in order to adequately investigate and try such case. In such event, it is nonetheless the intention of the parties that the case be heard and decided as expeditiously as possible. During the pendency of the Grievance concerning the existence of a default, the Player's SPC shall remain in full force and effect.

13. The Club, in addition to other rights hereunder, at its option, by written notice delivered to the Player in accordance with Exhibit 3, may terminate this SPC on the following conditions:

(a) The Club shall offer the Player on Unconditional Waivers, either before or promptly after the notice of intention to exercise the Ordinary Course Buy-Out option (herein called "notice of termination") is given.

(b) Termination pursuant to this Paragraph shall be effective upon receipt by the Player of the notice of termination and the Player clearing Unconditional Waivers pursuant to Paragraph 13(a) above.

(c) The notice of termination shall be effective if given in the form attached as CBA Exhibit 20, with a copy to the NHLPA and Central Registry as follows:

(i) beginning the later of June 15 or forty-eight (48) hours after the conclusion of the Stanley Cup Finals and ending at 5:00 p.m. New York time on June 30; and

(ii) For Clubs who have Club or Player elected Salary Arbitration filings pursuant to Article 12, within the forty-eight (48) hour period beginning on the third day following the later of: (i) the Club's receipt of its last salary arbitration award; or (ii) settlement of its last case (provided such award was received or such settlement occurred prior to 7:00 p.m. New York time; awards or settlements that occurred or were received after 7:00 p.m. New York time will be deemed to have occurred or received the following business day for purposes of this provision).

(d) If the Club elects to terminate this SPC pursuant to this Paragraph 13, it shall be obligated to pay to the Player, in equal semi-monthly installments, to be paid in accordance with the payroll payment schedule applicable to the Club's Active Roster, over twice the remaining term of the SPC (the "Buy-Out Period"):

(i) if the Player is under 26 years of age at the time the termination is effective, an amount equal to 1/3 of, or

(ii) if the Player is 26 years of age or older at the time the termination is effective, an amount equal to 2/3 of the total fixed amount of the Player's Paragraph 1 NHL Salary, for the unexpired fixed-term of this SPC, reduced by any advance payment of Paragraph 1 Salary received by the Player prior to the date the termination is effective.

(e) Upon termination, the Player shall immediately be an Unrestricted Free Agent and shall no longer be obligated to perform under this SPC.

(f) Waiver claim of Player by another Club shall pre-empt and relinquish Club's Buy-Out obligation, due to failure to clear Waivers.

(g) Clubs shall file their Buy-Out agreements, the form of which is attached hereto as Exhibit 21, with Central Registry and the NHLPA within 24 hours of such agreements becoming effective.

14.     The Club may also terminate this SPC upon written notice to the Player (but only after obtaining Waivers from all other Clubs) if the Player shall at anytime:

(a)     fail, refuse, or neglect to obey the Club's rules governing training and conduct of Players, if such failure, refusal or neglect should constitute a material breach of this SPC.

(b)     fail, refuse or neglect to render his services hereunder or in any other manner materially breach this SPC.

In the event of termination under Paragraph 14 (a) or (b) the Player shall only be entitled to compensation due to him to the earlier of the date such notice is personally delivered to him or the date such notice is e-mailed to him.

In the event this SPC is terminated by the Club while the Player is "away" with the Club for the purpose of playing games the installment then falling due shall be paid on the first week-day after the return "home" of the Club.

15.     The Player further agrees that the Club may carry out and put into effect any order or ruling of the League or its Commissioner for his suspension or expulsion and that in the event of suspension his Paragraph 1 Salary shall cease for the duration thereof and that in the event of expulsion this SPC shall terminate forthwith.

16.     Except as otherwise provided in CBA Article 18, the Player agrees that, in the event of his suspension without pay pursuant to any of the provisions of this SPC, there shall be deducted from the Paragraph 1 Salary an amount equal to the exact proportion of such salary as the number of days' suspension bears to the total number of days of the Regular Season Games.

17.     If because of any condition arising from a state of war or other cause beyond the control of the League or of the Club, it shall be deemed advisable by the League or the Club to suspend or cease or reduce operations, then:

(a)     in the event of suspension of operations, the Player shall be entitled only to the proportion of Paragraph 1 Salary due at the date of suspension,

(b)     in the event of cessation of operations, the Paragraph 1 Salary shall be automatically canceled on the date of cessation, and

(c)     in the event of reduction of operations, the Paragraph 1 Salary shall be replaced by that mutually agreed upon between the Club and the Player, or, in the absence of mutual agreement, by that determined by neutral arbitration.

18.     The Club and the Player severally and mutually promise and agree to be legally bound by the League Rules that affect any terms or conditions of employment of any Player and by any Collective Bargaining Agreement that has been or may be entered into between the member Clubs of the League and the NHLPA, and by all of the terms and provisions thereof. This SPC is entered into subject to the CBA between the NHL and the NHLPA and any provisions of this SPC inconsistent with such CBA are superseded by the provisions of the CBA.

The Club and the Player further agree that in case of dispute between them, except as to the compensation to be paid to the Player on a new SPC, the dispute shall be referred within one year from the date it arose to the Commissioner of the League, as an arbitrator and his decision shall be accepted as final by both parties, unless, and to extent that, other arbitration procedures are provided in any Collective Bargaining Agreement between the member Clubs of the League and the NHLPA to cover such dispute.

The Club and the Player further agree that all fines imposed upon the Player under the Playing Rules, or under the provisions of the League By-Laws, shall be deducted from the Paragraph 1 Salary of the Player and be remitted by the Club to the NHL Players' Emergency Assistance Fund.

19. The Club and the Player represent and warrant that there are no undisclosed agreements of any kind, express or implied, oral or written and that there are no promises, undertakings, representations, commitments, inducements, assurances of intent, supplements or understandings of any kind between the Player or his Certified Agent and the Club that have not been disclosed to the NHL, with regard to: (i) any consideration of any kind to be paid, furnished or made available during the term of the SPC or thereafter; and/or (ii) and future renegotiation, extension, amendment or termination of this SPC.

20. Capitalized terms shall have the meaning set forth in the CBA, to the extent not otherwise defined in this SPC.

21. Unless otherwise specified, the service of all notices pursuant to the provisions of the SPC shall be effected in accordance with Exhibit 3 of the CBA.

22. The parties agree that the rights provided herein and in the CBA and in any addendum hereto and the promise of the Player to play hockey only with the Club, or such other club as provided in Paragraphs 2, 11 and 12, and the Club's right to take pictures of and to televise the Player as provided in Paragraph 8 of this SPC have all been taken into consideration in determining the Paragraph 1 Salary payable to the Player.

23. It is severally and mutually agreed that this SPC and the CBA contain the entire agreement between the parties and there are no oral or written inducements, promises or agreements except as provided herein.

**In Witness Whereof,** the parties have signed this _____ day of _____ A.D.20_____.

Witnesses:

San Jose Sharks
Club

525 W. Santa Clara St., San Jose, CA 95113
Address of Club

By:

Doug Wilson, EVP and General Manager

Evander Kane

8447 Isabel Place, Vancouver, BC  V6P 6R8
Home Address of Player

I hereby certify that I have, at this date, received, examined and noted of record the within SPC, and that it is in regular form.

Dated _____ , 20 ___ _____
for the National Hockey League

Les parties ont par les présentes exprimé leur volonté expresse que ce contrat soit rédigé en anglais.

The parties hereby state their expressed wish that this SPC be drafted in the English language.

# SAN JOSE SHARKS
## ADDENDUM "A"
### ADDENDUM TO NATIONAL HOCKEY LEAGUE
### STANDARD PLAYER'S CONTRACT

This Addendum A is attached to and made part of that certain National Hockey League Standard Player's Contract ("SPC") entered into by and between **SAN JOSE SHARKS, LLC** ("Club") and **EVANDER KANE** ("Player"). The SPC together with this Addendum constitute the "Contract". Any capitalized terms not defined herein shall have the meaning(s) as defined in the SPC, the current Collective Bargaining Agreement between NHL and NHLPA, and/or the League Rules.

## 1. SIGNING BONUS:

In consideration of the Player entering into and fully performing his obligations under this Contract, the Club agrees to pay the Player the total sum of $12,000,000 (the "Signing Bonus") payable in installments (each an "Installment") and on the dates as specified in the following table:

| Season | Installment | Date |
|--------|-------------|------|
| 2018-19 | $3,000,000 | July 1, 2018 |
| 2019-20 | $2,000,000 | July 1, 2019 |
| 2020-21 | $3,000,000 | July 1, 2020 |
| 2022-23 | $2,000,000 | July 1, 2022 |
| 2024-25 | $2,000,000 | July 1, 2024 |

Notwithstanding the foregoing, if at any time during the term of this Contract, Player refuses to perform or otherwise withholds his services from Club, or Player elects to voluntarily retire, or Player materially breaches the Contract in any way, including by being injured in a contractually prohibited endeavor, the Club shall immediately and automatically be relieved of any obligations whatsoever with respect to any unpaid portion of the Signing Bonus, but only during the period of his refusal to perform, material breach, and/or voluntary retirement. Any retirement as a result of illness or injury, with the exception of an injury sustained in the course of Player's participation in an inherently dangerous activity (including without limitation, an injury sustained in violation of Section 7 of the SPC), shall not be deemed refusal to perform, voluntary retirement, or material breach of the Contract for purposes of calculating the Signing Bonus. Furthermore, any withholding of Player's services in the course of a work-stoppage between the NHL and the NHLPA shall not be considered a refusal to perform, voluntary retirement, or material breach of the Contract for purposes of this section.

If, during the term of the Contract, Player returns to play for Club after a period of refusal to perform, material breach, or voluntary retirement, Player will be entitled to begin receiving Installment payments in accordance with the table above, based on the League Year of Player's return to play and, in the event that no Installment payment has been made in the League Year of the Player's return to play, the Player shall be entitled to payment of a portion of the scheduled Installment for the League Year in which he returns to play pro rated on the basis of the formula set out in the paragraph below. The Club shall make any such payment within 15 days of the Player's return to play.

In the event that Club has already paid any Installment to Player for a League Year during which he refuses to perform or withholds his services from Club, or elects to retire, or materially breaches the Contract, Player agrees he will be entitled to keep only a portion of the applicable Installment equal to the product of multiplying the applicable Installment by the ratio of number of days of performing services during the Regular Season

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 21 of 128

prior to withholding services, retiring, or breaching the Contract to the total number of days of the Regular Season for that League Year. Player shall immediately pay to Club any remaining Installment funds.

*For purposes of example only, if Player refused to perform, voluntarily retired, or otherwise materially breached the Contract during the 2018-19 Regular Season and returned to play during that same season after missing 60 days of the 2018-19 Regular Season (assuming 180 day season, Player has 120 days of performance), then the Player would be entitled to $2,000,000.00. [ = $3,000,000.00 x (120/180)] of the 2018-19 Installment and shall immediately repay Club $1,000,000.00. The Club would be obligated to make further Installment payments in subsequent League Years.*

*For purposes of further example, if Player is injured while engaging in an inherently dangerous activity on June 15, 2019 and he returns to play 45 days after the commencement of the 2019-2020 Regular Season (assuming 180 day Regular Season, Player has 135 days of performance), the Player would be entitled to $1,500,000.00 [ = $2,000,000.00 x (135/180)] of the 2019-2020 Installment, which amount would be paid by the Club within 15 days of his return to play. Player's entitlement to payments made during 2018-2019 League Year would not be affected. The Club would be obligated to make further Installment payments in subsequent League Years.*

## 2. MODIFIED NO-TRADE CLAUSE:

For the period beginning on July 1, 2018 and ending on June 30, 2025, the Club shall not trade the Player; provided that for each of the 2018-19, 2019-20, 2020-21, 2021-22, 2022-23, 2023-24 and 2024-25 League Years, the Player shall provide to the Club a written list of three (3) NHL Member Clubs to which the Club may trade the Player during the applicable League Year (the "Trade List"). For each such League Year, the Player shall provide the Trade List via email, receipt acknowledgment requested, to the Club's then-current General Manager or Assistant General Manager of record no later than 5:00 PM Pacific Time on June 30 of the immediately preceding League Year. In the event the Player fails to provide the Trade List in a timely manner for any such League Year, the most recently submitted Trade List shall remain in effect for such League Year. If the Player never submits a Trade List, the Club shall have the right to trade the player to any NHL Member Club of its choosing.

## 3. MISCELLANEOUS

a. <u>Governing Law</u>. This Contract will be governed and construed in accordance with the laws of the State of California without regard to conflict of law principles. Subject to the League Rules, any and all actions arising out of this Contract shall be instituted and maintained in a court of competent jurisdiction in Santa Clara County, California.

b. <u>Withholding</u>. All payments made under the Contract shall be in United States Dollars and shall be subject to required withholdings pursuant to federal, state, local, and other applicable income tax laws, regulations, and rulings and such withholdings or source deductions shall be made by the Club in accordance with its then-current payroll policies and practices.

ACCEPTED AND AGREED TO:                    ACCEPTED AND AGREED TO:


By: _____             By: _____
   Evander Kane                              Doug Wilson, General Manager
   Player                                    for San Jose Sharks, LLC

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 22 of 128

EXHIBIT 1
STANDARD PLAYER'S CONTRACT

IMPORTANT NOTICE TO PLAYER

Before signing this Standard Player's Contract ("SPC") you should carefully examine it
to be sure that all terms and conditions agreed upon have been incorporated herein, and if any
has been omitted, you should insist upon having it inserted in the SPC before you sign.

NATIONAL HOCKEY LEAGUE
STANDARD PLAYER'S CONTRACT
(2013 FORM)

BETWEEN      San Jose Sharks
             Hereinafter called the "Club," a member of the National Hockey
             League, hereinafter called the "League"

AND          Evander Kane
             hereinafter called the "Player"

State/Province/Country

of   Vancouver   in   BC   of   CANADA

In consideration of the respective obligations herein and hereby assumed, the parties to
this SPC severally agree as follows:

1.      The Club hereby employs the Player as a skilled hockey Player for the term of seven (7)
League Year(s) commencing the later of July 1, 2018 or upon execution of this SPC and agrees,
subject to the terms and conditions hereof, to pay the Player a salary of _____ US Dollars
($_____).

2018/19: Six Million Dollars-------------------------------------------------$6,000,000
2019/20: Six Million Dollars-------------------------------------------------$6,000,000
2020/21: Three Million Dollars-----------------------------------------------$3,000,000
2021/22: Seven Million Dollars-----------------------------------------------$7,000,000
2022/23: Five Million Dollars------------------------------------------------$5,000,000
2023/24: Six Million Dollars-------------------------------------------------$6,000,000
2024/25: Four Million Dollars------------------------------------------------$4,000,000

following the dates of reporting, whichever is later (provided that the pay period shall not close more than three (3) days prior to payroll dates); provided, however, that if the Player is not in the employ of the Club for the whole period of the Club's NHL Regular Season Games, then he shall receive only part of such Paragraph 1 Salary in the ratio of the number of days of actual employment to the number of days of the NHL Regular Season.

And it is further mutually agreed that if the SPC and rights to the services of the Player are Loaned or otherwise transferred to a club in another league, the Player shall only be paid at an annual salary rate of

| | | | |
|---|---|---|---|
| 2018/19: | N/A | Dollars----------------------------in the AHL |
| 2019/20: | N/A | Dollars----------------------------in the AHL |
| 2020/21: | N/A | Dollars----------------------------in the AHL |
| 2021/22. | N/A | Dollars----------------------------in the AHL |
| 2022/23 | N/A | Dollars----------------------------in the AHL |
| 2023/24. | N/A | Dollars----------------------------in the AHL |
| 2024/25. | N/A | Dollars----------------------------in the AHL |

2.    The Player agrees to give his services and to play hockey in all NHL Games, All Star Games, International Hockey Games and Exhibition Games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.

The Player further agrees.

(a)    to report to his Club's Training Camp at the time and place fixed by the Club, in good physical condition.

(b)    to keep himself in good physical condition at all times during the season.

(c)    to give his best services to the Club and to play hockey only for the Club unless his SPC is Assigned, Loaned or terminated by the Club.

(d)    to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally.

(e)    to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

3.    In order that the Player shall be fit and in proper condition for the performance of his duties as required by this SPC and the Agreement, the Player agrees to report for practice at such time and place as the Club may reasonably designate and participate in such Exhibition Games as may be arranged by the Club.

4.    The Club may from time to time during the continuance of this SPC establish reasonable rules governing the conduct and conditioning of the Player, and such reasonable rules shall form part of this SPC and the Agreement as fully as if herein written. For violation of any such rules

NHL CENTRAL REGIS

MAY 24'18 AM 11:4

In Witness Whereof, the parties have signed this _24_ day of _May_ A.D.20_18_

Witnesses:

_____
San Jose Sharks
Club

_____
525 W. Santa Clara St., San Jose, CA 95113
Address of Club

By:

_____
Doug Wilson, EVP and General Manager

_____
Evander Kane

_____
8447 Isabel Place, Vancouver, BC  V6P 6R8
Home Address of Player

I hereby certify that I have, at this date, received, examined and noted of record the within SPC, and that it is in regular form.

MAY 2 5 2018

Dated _____, 20 ___   _____
for the National Hockey League

Les parties ont par les présentes exprimé leur volonté expresse que ce contrat soit rédigé en anglais.

The parties hereby state their expressed wish that this SPC be drafted in the English language.

NHL CENTRAL REGISTRY

MAY24'18AM11:46

SAN JOSE SHARKS
ADDENDUM "A"
ADDENDUM TO NATIONAL HOCKEY LEAGUE
STANDARD PLAYER'S CONTRACT

This Addendum A is attached to and made part of that certain National Hockey League Standard Player's Contract ("SPC") entered into by and between SAN JOSE SHARKS, LLC ("Club") and EVANDER KANE ("Player"). The SPC together with this Addendum constitute the "Contract". Any capitalized terms not defined herein shall have the meanings as defined in the SPC, the current Collective Bargaining Agreement between NHL and NHLPA, and/or the League Rules.

## 1. SIGNING BONUS:

In consideration of the Player entering into and fully performing his obligations under this Contract, the Club agrees to pay the Player the total sum of $12,000,000 (the "Signing Bonus") payable in installments (each an "Installment") and on the dates as specified in the following table:

| Season | Installment | Date |
|--------|-------------|------|
| 2018-19 | $3,000,000 | July 1, 2018 |
| 2019-20 | $2,000,000 | July 1, 2019 |
| 2020-21 | $3,000,000 | July 1, 2020 |
| 2022-23 | $2,000,000 | July 1, 2022 |
| 2024-25 | $2,000,000 | July 1, 2024 |

Notwithstanding the foregoing, if at any time during the term of this Contract, Player refuses to perform or otherwise withholds his services from Club, or Player elects to voluntarily retire, or Player materially breaches the Contract in any way, including by being injured in a contractually prohibited endeavor, the Club shall immediately and automatically be relieved of any obligations whatsoever with respect to any unpaid portion of the Signing Bonus, but only during the period of his refusal to perform, material breach, and/or voluntary retirement. Any retirement as a result of illness or injury, with the exception of an injury sustained in the course of Player's participation in an inherently dangerous activity (including without limitation, an injury sustained in violation of Section 7 of the SPC), shall not be deemed refusal to perform, voluntary retirement, or material breach of the Contract for purposes of calculating the Signing Bonus. Furthermore, any withholding of Player's services in the course of a work-stoppage between the NHL and the NHLPA shall not be considered a refusal to perform, voluntary retirement, or material breach of the Contract for purposes of this section.

If, during the term of the Contract, Player returns to play for Club after a period of refusal to perform, material breach, or voluntary retirement, Player will be entitled to begin receiving Installment payments in accordance with the table above, based on the League Year of Player's return to play and, in the event that no Installment payment has been made in the League Year of the Player's return to play, the Player shall be entitled to payment of a portion of the scheduled Installment for the League Year in which he returns to play pro-rated on the basis of the formula set out in the paragraph below. The Club shall make any such payment within 15 days of the Player's return to play.

In the event that Club has already paid any Installment to Player for a League Year during which he refuses to perform or withholds his services from Club, or elects to retire, or materially breaches the Contract, Player agrees he will be entitled to keep only a portion of the applicable Installment equal to the product of multiplying the applicable Installment by the ratio of number of days of performing services during the Regular Season

NHL CENTRAL REGISTRY

MAY 24 '18 AM 11:47



prior to withholding services, retiring, or breaching the Contract to the total number of days of the Regular Season for that League Year, Player shall immediately pay to Club any remaining Installment funds.

*For purposes of example only, if Player refused to perform, voluntarily retired, or otherwise materially breached the Contract during the 2018-19 Regular Season and returned to play during that same season after missing 60 days of the 2018-19 Regular Season (assuming 180 day season, Player has 120 days of performance), then the Player would be entitled to $2,000,000.00 [ = $3,000,000.00 x (120÷180)] of the 2018-19 Installment and shall immediately repay Club $1,000,000.00. The Club would be obligated to make further Installment payments in subsequent League Years.*

*For purposes of further example, if Player is injured while engaging in an inherently dangerous activity on June 15, 2019 and he returns to play 45 days after the commencement of the 2019-2020 Regular Season (assuming 180 day Regular Season Player has 135 days of performance), the Player would be entitled to $1,500,000.00 [ = $2,000,000.00 x (135÷180)] of the 2019-2020 Installment, which amount would be paid by the Club within 15 days of his return to play. Player's entitlement to payments made during 2018-2019 League Year would not be affected. The Club would be obligated to make further Installment payments in subsequent League Years.*

2. MODIFIED NO-TRADE CLAUSE:

For the period beginning on July 1, 2018 and ending on June 30, 2025, the Club shall not trade the Player; provided that for each of the 2018-19, 2019-20, 2020-21, 2021-22, 2022-23, 2023-24 and 2024-25 League Years, the Player shall provide to the Club a written list of three (3) NHL Member Clubs to which the Club may trade the Player during the applicable League Year (the "Trade List"). For each such League Year, the Player shall provide the Trade List via email, receipt acknowledgment requested, to the Club's then-current General Manager or Assistant General Manager of record no later than 5:00 PM Pacific Time on June 30 of the immediately preceding League Year. In the event the Player fails to provide the Trade List in a timely manner for any such League Year, the most recently submitted Trade List shall remain in effect for such League Year. If the Player never submits a Trade List, the Club shall have the right to trade the player to any NHL Member Club of its choosing.

3. MISCELLANEOUS

   a. Governing Law. This Contract will be governed and construed in accordance with the laws of the State of California without regard to conflict of law principles. Subject to the League Rules, any and all actions arising out of this Contract shall be instituted and maintained in a court of competent jurisdiction in Santa Clara County, California.

   b. Withholding. All payments made under the Contract shall be in United States Dollars and shall be subject to required withholdings pursuant to federal, state, local, and other applicable income tax laws, regulations, and rulings and such withholdings or source deductions shall be made by the Club in accordance with its then-current payroll policies and practices.

ACCEPTED AND AGREED TO:                        ACCEPTED AND AGREED TO:

By: _____                    By: _____
Evander Kane                                    Doug Wilson General Manager
Player                                          for San Jose Sharks, LLC

NHL CENTRAL REGISTRY

MAY 24'18 AM11:47

# EXHIBIT "C"

<u>**Secured Financial Transaction and Security Agreement**</u>
<u>**(Centennial Bank Loan No. ███ 1221)**</u>

This Secured Financial Transaction and Security Agreement ("Agreement"), having an effective date of September 5, 2018 ("Effective Date"), is hereby entered into by and between **Evander Kane**, who resides at 8447 Isabel Place, Vancouver, BC, Canada V6P 6R8, and his agents, successors in interest, heirs, executors, representatives, successors and assignors (hereinafter referred to collectively as "Borrower") and Centennial Bank, an Arkansas banking corporation, with a mailing address of P.O. Box 966, Conway, Arkansas 72033, and its representatives, successors and assignors (hereinafter referred to collectively as "Lender"), who hereby agree as follows:

RECITALS

**WHEREAS**, simultaneous to the execution of this Agreement, Lender is providing a loan ("Loan") to Borrower in the principal amount of $3,900,000.00 ("Loan Amount"), which is more specifically set forth in the Promissory Note ("Note") also entered on this same date and in the related loan documents (collectively "Loan Documents"). The repayment of the Loan Amount is identified in the repayment terms and schedule set forth in the Note (the "Repayment Amount"). The Note provides evidence of Borrower's indebtedness to Lender and his promise to pay to the Lender the Repayment Amount, in full, under the terms as set forth in this Agreement and the Note; and,

**WHEREAS**, in order to secure the Repayment Amount due to Lender, Borrower agrees to grant to the Lender a perfected security interest in those payments (including, wages, bonuses, all payments defined as "Compensation" in the NHL Contract (defined below) and any other payments due Borrower) set forth in: (a) that certain National Hockey League Standard Player's Contract ("NHL Contract") by and between the Borrower and the San Jose Sharks, LLC (hereinafter referred to as the "Sharks") dated on or about May 25, 2018, having an effective date of July 1, 2018, and their representatives, successors and assigns, <u>and</u> (b) any other subsequent contract or arrangement pursuant to which the Borrower enters into respective of services performed by Borrower for playing professional hockey (together hereinafter referred to as the "Borrower Contract" or "Borrower's Contract"). These payments are referred to as the "Pledged Payments"; and,

**WHEREAS**, as a material condition of the Loan, during the term of the Loan, Borrower shall be required to have all of the Pledged Payments electronically deposited directly into a controlled deposit account opened with Lender for the benefit of Borrower, wherein such funds shall be used to pay the Lender its monthly payment due pursuant to the Note, including insurance escrows, and Borrower shall be responsible to maintain a minimum balance necessary to satisfy the monthly obligations each month during the term of the Note; and,

**WHEREAS**, to the extent of any inconsistency exists between the terms of this Agreement and the Note, the terms of this Agreement shall control.

**NOW, THEREFORE**, for value received, Borrower and Lender have entered into this Agreement in order to secure (a) the timely repayment of all sums due under the terms of the Note and this Agreement; (b) the performance of all of the Borrower's obligations set forth herein below and in the Note; and (c) the repayment of any and all other agreed-upon liabilities of Borrower to Lender, of any kind of nature, whether direct or indirect, arising by operation of law or otherwise, whether now existing or in the future.

**TERMS**

A. **SCHEDULE OF REPAYMENT.**

1. As set forth in the Note, Borrower shall make monthly payments on the Loan, payable in arrears, commencing with the first payment due on September 15, 2018, and each monthly payment due shall thereafter be paid on the 15th day of each consecutive month thereafter through the Maturity Date. The amount of each monthly payment, and the breakdown of the amounts applied toward principal and/or interest, is specifically set forth on the Loan Amortization Schedule attached as Exhibit "A" hereto, which is identical to Exhibit "A" to the Note. In particular, each monthly payment due is identified under the "Repayment Amount" category on Exhibit "A." As the interest rate is schedule to adjust after the 50th month of the term, the monthly payments due pursuant to the Note, and the amounts stated in the "Repayment Amount" category on Exhibit "A," will likely be adjusted at that time (unless the variable rate is the same as the existing rate).

2. It is noted that, with the exception of the payment due July 15, 2024, the regularly scheduled monthly payments due on the 15th day of May through October each year, rather than paid during those months, shall be paid during the preceding 15th day of November through April, as stated under the "Repayment Amount" on Exhibit "A." Further, in addition to the monthly payments due under the "Repayment Amount" set forth on Exhibit "A," Borrower shall further be required to pay the amounts due for the insurance escrows, on the 15th day of each November through April, in the amounts identified under the "Insurance Escrow" category on Exhibit "A." Accordingly, Borrower's monthly payments due pursuant to the Loan shall be the aggregate of the amounts due under the "Repayment Amount" and Insurance Escrow" categories on Exhibit "A" (subject to any adjustments made after the 50th month of the term).

3. Notwithstanding anything to the contrary stated herein or in the Note, in the event the NHL Contract is Terminated prior to the final scheduled payment due April 15, 2025, Borrower shall be required to make a final balloon payment to Lender in an amount equal to the remaining principal balance, plus all accrued interest, advances and all other fees then due, within five (5) calendar days of the date of the Termination as defined in the NHL Contract. In the event the Maturity Date remains April 15, 2025, the entire remaining principal balance of this Note, plus all accrued but unpaid interest, advances and fee shall be due and payable in full as a final payment on the Maturity Date.

4. All payments made pursuant to the Note shall be credited first to accrued interest on the unpaid balance, next to the payment of principal, then to late fees and other fees charged on the account, and lastly to the repayment of any monies paid by Lender for the protection of the collateral securing the Note; however, in the event any default in the Note or this Agreement, Lender may, at its sole discretion, and in such order as it may choose, apply any payment to interest, principal, protection of the collateral securing the Note and/or lawful charges and expenses then accrued.

B. **BORROWER'S OBLIGATIONS UNDER THIS AGREEMENT**

1. As consideration for Lender extending the Loan to Borrower, Borrower shall pay to the Lender the fees and costs identified on the **Closing Statement** that is included in the Loan Documents, wherein said fees and costs shall be added to and reflected in the repayment amount set forth in this Agreement. Borrower agrees and acknowledges that the above fees are not and should not be construed to be interest for any purpose.

2. At Closing, as part of the other closing costs and fees, Lender shall receive from Borrower an interest reserve in the amount of $28,870.83, and said funds shall be applied toward Borrower's

2

initial two (2) monthly interest-only payments due September 15, 2018 and October 15, 2018; and (b) an interest reserve in the amount of $7,041.67, which is equal to 10 days of interest payments at the initial non-default interest rate.

3. As a condition to the Lender disbursing to Borrower the proceeds of the Loan, Borrower agrees to authorize the Sharks or any future contract holder to electronically deposit into a designated account (the "designated account") the Pledged Payments that would otherwise be paid directly to Borrower by the Sharks, or any future contract holder, under the terms of the NHL Contract and/or Borrower's Contract, until such time that the Lender receives the full repayment amount agreed to by Borrower and as set forth under the terms of this agreement. Such authorization shall be in the form of an "Automatic Payment Authorization Form" attached hereto and made a part hereof, and said payments shall be made no later than five (5) calendar days after each of the scheduled payment dates set forth on Exhibit "A." Failure to timely make any of the required scheduled payments as set forth herein and in the Note shall be deemed an event of default.

4. Borrower agrees to allow Lender to directly provide to the Sharks, or any future contract holder, Borrowers financial institution information and account and routing numbers, as well as any other relevant instructions for the designated account, so the Sharks may directly deposit the Pledged Payments in accordance with subparagraph 3, above.

5. Borrower shall notify Lender, in writing, when there is any change in Borrower's health status that could affect the Borrower contract.

6. Borrower shall immediately notify Lender if there is any change in the Borrower's contact information including, but not limited to, a change of address, telephone number, or email address.

7. Borrower shall immediately notify Lender of a Termination of the NHL Contract within one (1) business day of Borrower receiving a Notice of Termination or one (1) business day of Borrower providing a Notice of Termination of the NHL Contract. Borrower acknowledges his obligation to satisfy in full the remaining principal, interest and fees due pursuant to the Note within five (5) calendar days of a Termination of the NHL Contract if such termination occurs prior to the final scheduled payment due date of April 15, 2025.

8. Borrower agrees to provide Lender with notice of any changes to the Borrower's contract within two (2) business days of such change, including, but not limited to, any notices of default, notices of retirement, changes in terms or any other changes, and during that same time period, shall provide Lender with a copy of any notice and/or revised or amended contract.

9. Borrower agrees that the loan amount shall not be funded to Borrower unless and until Borrower executes and delivers to the Lender the Note and other Loan Documents required to be delivered to lender hereunder.

10. Lender shall be authorized and empowered to debit the designated account and any securities account by an automated clearinghouse (ACH) transaction, for the purpose of making the payments required under this Agreement and the Note as set forth on Exhibit "A," including any other payments due or to become due pursuant to this Agreement and the Note.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 31 of 128

### C. **BORROWER'S REPRESENTATIONS AND WARRANTIES AND GRANTING OF A SECURITY INTEREST**

1. Borrower warrants and represents that he owns all rights, title and interest in and to the Borrower Contract and is entitled to all of the benefits afforded to it and to the Borrower Contract, including, but not limited to, any and all payments to be made to Borrower thereunder and Borrower further acknowledges the Borrower is hereby granting a perfected security interest in into the Pledged Payments in order to satisfy the repayment amount on the terms as set forth in this Agreement.

2. Borrower warrants and represents that, in addition to the Loan from Lender, he recently obtained financing from California Bank & Trust ("CB&T"), for a loan in the principal amount of $4,250,000.00 (56 month term) ("CB&T Loan"), and is scheduled to obtain another loan from another institution in the principal amount of around $4,550,000.00 (80 month term) (hereinafter the "Other Institutional Loan" or the "OI Loan"). The aggregate funds received from the Loan, the CB&T Loan and the Other Institutional Loan shall predominantly be used to pay off four existing loans Borrower has with other lenders, resulting in Borrower having the Loan, CB&T Loan and OI Loan.

3. Borrower warrants and represents that the CB&T Loan and the OI Loan are both structured similarly to the Loan herein, wherein monthly payments on those loans shall be paid directly by from the Sharks or any other subsequent hockey club.

4. With the exception of the CB&T Loan and the OI Loan, Borrower's Contract and Pledged Payments are free and clear of any liens, judgments and or security interests.

5. Borrower warrants and represents that, with the exception of the CB&T Loan and the OI Loan, he has not entered into or granted, and will not enter into or grant during the term of this Loan, any security interest, and has not permitted the filing or attachment of any security interests, and will not permit the filing or attachment of any security interests during the term of the Loan, on or affecting any of the Collateral that, directly or indirectly, secures the repayment of Borrower's Loan and Promissory Note unless first approved in writing by Lender.

6. Borrower warrants and represents that, subject to the CB&T Loan and the OI Loan he has the unrestricted right to assign to the Lender any portion of the Borrower's Contract, including the Pledged Payments and Borrower has not previously assigned, sold or otherwise transferred any portion of the Borrower Contract to the pledged payments, in whole or in part, to any other party, including the granting of any liens and or judgments if applicable except as set forth in this Agreement.

7. Borrower warrants and represents that he has a legal capacity and the mental competency to execute this Agreement and shall perform all obligations set forth within the terms of this agreement and that it is doing so voluntarily and of its own free will.

8. Borrower warrants and represents that he is under no contractual obligations or other restrictions that are adverse to the Lender with regard to the terms of this Agreement, the Borrower's Contract, or the Pledged Payments.

9. Borrower warrants and represents that the execution, delivery and performance of this Agreement, and the consummation of the transaction contemplated in this Agreement, does not violate any laws, rules, regulations, order, or other agreement or instrument.

4

10. Borrower warrants and represents that there are no bankruptcies or insolvency proceedings in progress or in prospect, either personally, or with regard to any entity owned, in whole or in part, that could affect the repayment amount or Lender's interest in the repayment amount.

11. Borrower warrants and represents that he is not subject to any legal proceeding that could in anyway adversely affect the terms of this Agreement or pledged payments, and or Borrower's right, title, or interest in the Borrower's Contract or the Pledged Payments. Borrower further warrants that the Borrower contract has not been and is not in jeopardy of being subject to a levy or any other type of adverse interest.

12. Borrower warrants and represents that the information he has provided to the Lender prior to the execution of this Agreement is true, accurate, and complete. Borrower further acknowledges that the Lender has relied and will continue to rely on this information in acquiring, protecting and otherwise dealing with the terms of this Agreement.

13. Borrower warrants and represents that he has not engaged in any acts or conduct or made any omissions that could potentially result in Lender receiving less than the full amount of the Repayment Amount and there are no other parties that hold a similar interest in the Borrower's Contract or the Pledged Payments except as set forth in this agreement.

14. Borrower warrants and represents that he has paid all federal state and local taxes or has made adequate and acceptable terms for any tax payment due with the appropriate tax agency responsible for excepting such payment.

15. Borrower warrants and represents that there are no outstanding tax liens or judgments against the Borrower, liens owed by them to any county, city or state government entity, or other liens owed to the United States government, or other person or entity for any social service or other benefit that Borrower has received and is obligated to pay, including but not limited to child support or alimony.

16. This Agreement constitutes Borrower's legal, valid and binding obligation and is legally enforceable in a court of law and that the Agreement is binding upon Borrower, his successors and assigns.

### D. **BREACH BY BORROWER**

A Breach of this agreement shall occur, upon one or more of the following events:

1. Borrower makes a material misrepresentation or false statement in this Agreement or in any financial documentation provided to Lender.

2. Borrower voluntarily files for bankruptcy, or in involuntary bankruptcy is filed against him;

3. Borrower incurs any federal, state or other tax lien or judgment;

4. Borrower fails to stay current in any federal, state or other tax payment due;

5. Borrower or the Pledged Payments become the subject of a civil lien and or civil judgment;

5

6. Borrower becomes indebted to any present or former spouse for support, maintenance or similar obligations, or becomes indebted to any child or to a guardian of any child for any child support or similar payments;

7. Borrower is convicted of a felony involving a crime of fraud theft perjury or other moral turpitude;

8. Borrower engages in any other action or behavior that, in the sole opinion of the Lender, could create a default under the Borrower contract, or encumber the Pledged Payments; or

9. Borrower becomes in default or suffers a default under any provision of the Note or this Agreement.

### E. MISCELLANEOUS PROVISIONS

1. **NOTWITHSTANDING ANYTHING TO THE CONTRARY ABOVE, IT SHALL BE AN IMMEDIATE DEFAULT OF THIS AGREEMENT, THE NOTE AND LOAN DOCUMENTS IF BORROWER, DIRECTLY OR INDIRECTLY, TAKES ANY ACTION, OR FAILS TO TAKE ANY ACTION, THAT RESULTS IN THE PLEDGED PAYMENTS BEING NO LONGER ELECTRONICALLY DEPOSITED DIRECTLY INTO THE DEPOSIT ACCOUNT REFERENCED HEREINABOVE AT ANYTIME PRIOR TO THE SATISFACTION OF THE FULL BALANCE DUE UNDER THE NOTE. UPON SUCH IMMEDIATE DEFAULT AS DESCRIBED HEREIN, LENDER SHALL HAVE THE RIGHT TO ACCELERATE THE FULL BALANCE DUE, EXECUTE ON THE BALANCE DUE, AND SHALL FURTHER HAVE THE RIGHT TO DISBURSE TO LENDER AND APPLY TOWARD THE LOAN BALANCE ALL AMOUNTS HELD IN THE DEPOSIT ACCOUNT. NO NOTICE SHALL BE REQUIRED TO BE PROVIDED BY LENDER TO BORROWER UNDER SUCH IMMEDIATE DEFAULT.**

2. Borrower and Lender agree that, in addition to any other legal rights and remedies available to Lender for any breach by the Borrower, Lender shall be entitled to enforce Borrower's obligations hereunder by court injunction, or court ordered affirmative action, which injunction or ordered action they also serve to restrain a future breach of this Agreement if there are reasonable grounds to believe that such a breach is threatened.

3. If Borrower breaches this Agreement, Lender may terminate its obligations under this Agreement and shall immediately be entitled to the full payment of the repayment amount, plus interest calculated at the highest non-usurious rate permitted by the laws of the State of Florida.

4. In the event of any material change in the Borrower's Contract, including, but not limited to, the termination of the Borrower's Contract, any material violation by Borrower of the Borrower's Contract, the suspension of Borrower by the National Hockey League, the Sharks or any future contract holder, or the withholding of Compensation as described in the NHL Contract, all payments under the Note and any payments due under this Agreement shall be immediately due and payable by the Borrower to Lender.

5. In the event of a breach by Borrower under this Agreement, Borrower shall pay to the Lender all fees, cost and expenses incurred by the lender, including Lender's reasonable attorney's fees, incurred by Lender to enforce the terms of this Agreement.

6. During the entire term of the Loan and the Promissory Note, Borrower shall be required to maintain a Death & Disgrace insurance policy naming Lender as the insured or primary beneficiary, with said policy being issued by an insurance company acceptable to Lender, with a policy limit in an

6

amount no less than the then outstanding principal balance of the Note. Borrower shall be required to provide Lender with written confirmation of such policy on an annual basis. Borrower authorizes the Bank the right to automatically debit the Loan Account for all insurance premiums and related other charges associated with the Death & Disgrace insurance policy. Borrower acknowledges that the Lender will collect payments from Borrower to hold in escrow for the Insurance premiums set forth herein, in the amounts stated under the "Insurance Escrow" category on Exhibit "A." Borrower further acknowledges that the amounts shown in the "Insurance Escrow" category are only estimates, and if the insurance premiums are greater than the aggregate amount collected by Lender, Borrower shall be required to remit to Lender additional funds to satisfy the shortfall.

7. During the entire term of the Loan, Borrower shall not be permitted to obtain unsecured debt exceeding $100,000.00 or secured debt exceeding $100,000.00 without the prior written consent of the Lender.

8. On an annual basis, Borrower shall deliver to Lender his individual U.S. and Canadian federal (and any state or province) income tax returns within 10 days of each said return being filed. Additionally, should any extensions on filing these returns be sought, Borrower shall provide Lender a copy of any such signed extensions.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement effective on the 5th day of September 2018.

**BORROWER:**

Evander Kane

STATE OF IL
COUNTY OF COOK

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgements, the foregoing instrument was acknowledged before me by Evander Kane, who is: ____ either personally known to me or ✓ has produced Passport _____ as identification.

WITNESS by hand and official seal in the County and State last aforesaid this 5th day of September 2018.

NOTARY PUBLIC
Print Name: Wendy V Davis
My commission expires: 5/2/2020

*(remainder of page left blank – Lender's signature page to follow)*

7

## INDIVIDUAL ACKNOWLEDGMENT

State/Commonwealth of _Illinois_

County of _Cook_ } ss.

On this the _5th_ day of _September_ _2018_, before me,
_Wendy N Davis_
Name of Notary Public _____, the undersigned Notary Public,

personally appeared _Evander Kane_
Name(s) of Signer(s)

☐ personally known to me – OR –

☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same for the purposes therein stated.

WITNESS my hand and official seal.

WENDY N DAVIS
Official Seal
Notary Public · State of Illinois
My Commission Expires May 2, 2020

_____
Signature of Notary Public

_Wendy N Davis_
_5/2/2020_

Place Notary Seal/Stamp Above

Any Other Required Information
(Printed Name of Notary, Expiration Date, etc.)

_____ OPTIONAL _____

This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _Secured Financial Transaction and Security agreement_

Document Date: _9/5/2018_                    Number of Pages: _8_

Signer(s) Other Than Named Above: _N/A_

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)  Item #25936

**LENDER:**

**CENTENNIAL BANK**
An Arkansas banking corporation



By: _____
Eric Servaites, Executive Vice President

STATE OF FLORIDA
COUNTY OF BROWARD

    I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgements, the foregoing instrument was acknowledged before by Eric Servaites, as Executive Vice President of Centennial Bank, an Arkansas banking corporation, who does freely and voluntarily under authority duly vested in him by said company. He is: ✓ either personally       known     to     me     or   ____   has   produced _____ as identification.

    WITNESS by hand and official seal in the County and State last aforesaid this $10$ day of September 2018.



RENE MARIE DUCHESNEAU
Notary Public - State of Florida
Commission # GG 045869
My Comm. Expires Jan 15, 2021
Bonded through National Notary Assn.

NOTARY PUBLIC
Print Name: Rene Duchesneau
My commission expires: 4/15/21

*(remainder of page left blank – Exhibit "A" to follow)*

8

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 37 of 128

# EXHIBIT "D"

## FLORIDA AGREEMENT TO WAIVE GARNISHMENT PROTECTION

Loan Number ████ 1221

**IF YOU PROVIDE MORE THAN ONE-HALF OF THE SUPPORT FOR A CHILD OR OTHER DEPENDENT, ALL OR PART OF YOUR INCOME IS EXEMPT FROM GARNISHMENT UNDER FLORIDA LAW. YOU CAN WAIVE THIS PROTECTION ONLY BY SIGNING THIS DOCUMENT. BY SIGNING BELOW, YOU AGREE TO WAIVE THE PROTECTION FROM GARNISHMENT.**

Borrower:

_____
Evander Kane, an individual

Sep 5 18
Date

I have fully explained this document to the consumer.

Lender:

**Centennial Bank**

By: _____
Authorized Signor

9 10 18
Date

# EXHIBIT "E"

1               UNITED STATES BANKRUPTCY COURT
               NORTHERN DISTRICT OF CALIFORNIA
2                  SAN JOSE DIVISION
              CASE NO.: 21-50028-SLJ
3                    Chapter 7

4   In re

5   EVANDER FRANK KANE,

6       Debtor.
   _____/
7

8

9

10  RULE 2004
    EXAMINATION AND
    DUCES TECUM
11  DEPOSITION OF:       **EVANDER FRANK KANE**

12  TAKEN:            Pursuant to Notice by
                     Counsel for Centennial Bank
13

14  DATE:              March 24, 2021

15  TIME:              2:01 p.m. to 5:14 p.m. (EST)

16  LOCATION:         Zoom videoconference

17  REPORTED BY:      Melanie Keefe, FPR
                     Notary Public
18                    State of Florida at Large

19

20

21

22

23

24

25

_REGENCY REPORTING SERVICE, INC. (813)224-0224_

```
1    APPEARANCES:      ANDREW J. GHEKAS, ESQUIRE
                       Anthony & Partners, LLC
2                      100 South Ashley Drive
                       Suite 1600
3                      Tampa, Florida  33602

4                           Attorney for Centennial Bank

5                      STEPHEN D. FINESTONE, ESQUIRE
                       Finestone Hayes LLP
6                      456 Montgomery Street
                       20th Floor
7                      San Francisco, California  94104

8                           Attorney for the Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

─── REGENCY REPORTING SERVICE, INC. (813)224-0224 ───

1        A.   Yes.

2        Q.   And is that still what your monthly expenses are?

3        A.   I'm not sure exactly the amount.

4        Q.   Are you able to estimate whether or not it's gone

5 down or higher?

6        A.   I'm not at this time, no.

7        Q.   Mr. Kane, other than your player's contract, do

8 you have any other source of income?

9        A.   No.

10       Q.   The -- so the -- the monthly expenses that is

11 reflected here, I know you were asked a number of questions

12 regarding it at the 341, so I don't want to repeat all of

13 those.  My -- my one question is did you pay these expenses

14 in January of 2021?

15       A.   That amount is -- sorry.  I don't understand the

16 question.

17       Q.   Yeah.  So this says your monthly expenses is this

18 amount, and so I'm just confirming whether or not this

19 amount or something similar to it you paid in January of

20 2021?

21       A.   Something similar to that, yes.

22       Q.   And also for February 2021?

23       A.   I -- I couldn't tell you exactly what I paid at

24 the moment.

25       Q.   Would it have been close to this number?  Are you

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 43 of 128

1 able to estimate?

2          A.    I'm not able to estimate at this time, no.

3          Q.    Well, have you done anything different in your --

4 in your lifestyle that would have caused the monthly

5 expenses to go down any?

6          A.    I'm not sure, to be honest.

7          Q.    So in January with the season having started, do

8 you recall what your first paycheck was?

9          A.    I don't recall exactly, but I believe you have

10 it.

11          Q.    Yeah.  And I'll -- we can go to that document.

12 It's the January 13, '21, to January 21, '21.

13                MR. FINESTONE:  I'm not seeing that, Andrew.  Do

14          you?  Am I missing it?

15                THE WITNESS:  I had trouble too.  It's -- it's

16          actually the February ones.  See it?

17                MR. FINESTONE:  Okay.  Okay.  Found it.  Thank

18          you.

19          Q.    So do you have it open?

20          A.    I do.

21          Q.    Okay.  So this shows that this was for the period

22 January 13, 2021, through January 21, 2021, and a pay date

23 of January 29, 2021.  So is -- is that standard where you

24 usually get paid a week after the period ends?

25          A.    To be honest, I'm unsure on the exact -- how the

REGENCY REPORTING SERVICE, INC. (813)224-0224

1                    CERTIFICATE OF REPORTER

2      STATE OF FLORIDA            )

3      COUNTY OF HILLSBOROUGH      )

4

5            I, Melanie Keefe, Court Reporter, certify that I
   was authorized to and did stenographically report remotely
6   the deposition of EVANDER FRANK KANE; that a review of the
   transcript was requested; and that the transcript, pages 5
7   through 102, inclusive, is a true and complete record of my
   stenographic notes.
8
            I further certify that I am not a relative,
9   employee, attorney, or counsel of any of the parties, nor am
   I a relative or employee of any of the parties' attorney or
10  counsel connected with the action, nor am I financially
   interested in the action.
11
                           s/ Melanie Keefe
12                         Melanie Keefe, FPR
                           Court Reporter
13  _____

14                    CERTIFICATE OF OATH

15     STATE OF FLORIDA            )

16     COUNTY OF HILLSBOROUGH      )

17            I, the undersigned authority, certify that
   EVANDER FRANK KANE personally appeared before me remotely
18  and was duly sworn.

19            WITNESS my hand and official seal this 8th day of
   April, 2021.
20

21                         s/ Melanie Keefe
                           Melanie Keefe, FPR
22                         Notary Public
                           State of Florida
23                         My Commission No.:  HH055410
                           Expires:  December 9, 2024
24

25

          ─REGENCY REPORTING SERVICE, INC. (813)224-0224─

# EXHIBIT "F"

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

_____
                                        )
In re:                                  )
                                        )
EVANDER FRANK KANE          CH: 7       )   21-50028
                                        )
        Debtor.                         )
_____ )

                          U.S. Trustee
                          P.O. Box 4188
                          Mountain View, CA 94040

                          February 3, 2021


          BEFORE FRODE S. HJELMESET Chapter 7 Trustee

<u>APPEARANCES</u>:

For the Debtor:              Stephen Finestone
                             Finestone Hayes LLP
                             456 Montgomery St. 20th Fl.
                             San Francisco, CA 94104

For Chapter 7 Trustee:       Gregg S. Kleiner
                             Rincon Law LLP
                             268 Bush St. #3335
                             San Francisco, CA 94104

For Sure Sports:             Alan Wilmot
                             Heitner Legal
                             215 Henricks Isle
                             Fort Lauderdale, FL 33301

For Centennial Bank, N.A.:   Andrew J. Ghekas
                             Anthony & Partners, LLC
                             100 S. Ashley Dr., #1600
                             Tampa, FL 33602

For Newport Management:      Arthur Yellin
                             Keith Banner
                             Greenberg Glusker, LLP
                             2049 Century Park E, Suite 2600
                             Los Angeles, CA 90067

*TheRecordXchange*
www.therecordxchange.com  (800) 406-1290

APPEARANCES: (Continued)

For South River Capital LLC:  David B. Rao
Law Offices of Binder and Malter
2775 Park Ave.
Santa Clara, CA 95050

For Zions Bancorporation,  Gerrick Warrington
N.A:  Frandzel Robins Bloom & Csato,
LC.
1000 Wilshire Blvd., 19th Fl
Los Angeles, CA 90017

For Loan Shark, LLC:  Christopher Ribas

For Hope Parker:  Jonathan Lewis

For the United States  Marta E. Villacorta
Trustee:

Proceedings recorded by electronic sound recording;
transcript produced by The Record Xchange.

*TheRecordXchange*
www.therecordxchange.com (800) 406-1290
Case: 21-50028  Doc# 172-1  Filed 06/25/21  Entered 06/25/21 17:29:42  Page 48 of 128

1    previously testified that your wife is not employed, and so is

2    there any reason why your wife can't take care of the baby?

3            MR. FINESTONE:  Your Honor, I don't think that's

4    really an appropriate question.  Ms. Villacorta, I don't think

5    the Debtor is going to answer that.

6            MS. VILLACORTA:  Okay.  Well, we're going to need

7    documentation with respect to this expense, the $12,000.  So

8    if you could please add that to your list.

9            MR. FINESTONE:  Yeah.

10           MS. VILLACORTA:  Thank you.  Line item number 14.

11   Mr. Kane, the charitable contribution for $500; what is this

12   expense for?

13           MR. KANE:  I don't recall.

14           MS. VILLACORTA:  Okay.  So again, if you could add

15   this to your list, because we're going to need documentation

16   in support of this expense.

17           And then your vehicle insurance.  I just want to

18   confirm, you only have the two Mercedes and then the vehicle

19   insurance is $600, in connection with the two leased vehicles?

20           MR. KANE:  Yes.

21           MS. VILLACORTA:  Okay.  And so who drives the --

22   okay, so I only have the VIN numbers, and I don't -- so if you

23   could just -- are they both the same model?  I don't know, if

24   you could just describe your vehicles, and who uses them?

25           MR. KANE:  My wife and I each run one or the other.

<u>C E R T I F I C A T E</u>

I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader

The approval code is: 12878671

**Mercedes-Benz Financial Services**

# CALIFORNIA
## MOTOR VEHICLE LEASE AGREEMENT

# The First Class Lease®

The date of this Lease is **11/23/2020**

The scheduled term of this lease is _____ **36** _____ months ("Lease Term").

The scheduled also this lease ended is **11/23/2023** ("Lease End").

**Type of Lease**

☑ Standard Lease ☐ Single Payment Lease

If the Single Payment Lease box is checked above, "Monthly Payment", "Monthly Payments" or "First Monthly Payment" are replaced with the words "Single Lease Payment" throughout this lease and the word "Monthly" in section II, Monthly Payments.

**Vehicle Information**

| | | | | |
|---|---|---|---|---|
| ☑ New | ☐ Used | Make | Body Style | Odometer |
| | 2021 MERCEDES- G63W4 G63W4 | | | 18 |

**Lessee** (Dealer): MERCEDES BENZ OF OAKLAND
2915 BROADWAY
OAKLAND CA 94611

**Lessee:** DEANNA KARA JEAN KANE
EVANDER F KANE
2301 RICHLAND AVE
SAN JOSE CA 95125 SANTA CLARA
N/A

Primary intended Use

☐ Personal ☑ Business, Commercial, or Agricultural Purposes

If no box is checked, or if the Personal box is checked, you agree to use the vehicle for personal, family or household purposes.

**Consumer Leasing Act Disclosures**

| 1. Amount Due at Lease Signing or Delivery | 2. Monthly Payments | 3. Other Charges (not part of your Monthly Payment) | 4. Total of Payments |
|---|---|---|---|
| (Itemized below) | Your first Monthly Payment of $**4353.42** due on **11/23/2020** followed by Monthly Payments of $**4353.42** due the Monthly Payment is $**156723.12** | a. Vehicle Turn-in Fee (if you do not purchase the vehicle at Lease End) | |
| $7238.16 | | | $168194.66 |

**5. Itemization of Amount Due at Lease Signing or Delivery**

**a. Amount Due at Lease Signing or Delivery**

| | | |
|---|---|---|
| 1. First Total Monthly Payment (includes sales/use taxes) | $ | 4353.42 |
| 2. Capitalized Cost Reduction | $ | 1145.87 |
| 3. Acquisition Fee* (if not capitalized) | $ | N/A |
| 4. Sales/Use Taxes | $ | N/A |
| 5. Refundable Security Deposit | $ | N/A |
| 6. Registration/Titling Fees | $ | 35.00 |
| 7. License Fees | $ | 1299.00 |
| 8. Electronic Filing Fee (not a government fee) | $ | N/A |
| 9. Electronic Filing Fee (not a government fee) | $ | N/A |
| 10. N/A | $ | N/A |
| 11. REDUCTION TAX | $ | 105.52 |
| 12. N/A | $ | N/A |
| 13. Total | $ | 7238.16 |

**b. How the Amount Due at Lease Signing is paid:**

| | | |
|---|---|---|
| 1. Net Trade-in Allowance | $ | 7238.16 |
| 2. Rebates and Noncash Credits | $ | N/A |
| 3. Amount to be Paid in Cash | $ | N/A |
| 4. N/A | $ | N/A |
| 5. Total | $ | 7238.16 |

**6. Your monthly payment is determined as shown below:**

| | | |
|---|---|---|
| a. Gross Capitalized Cost. The agreed upon value of the vehicle ($199999.00 ) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance)... | $ | 209204.80 |
| b. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost... | $ | 1145.87 |
| c. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment | $ | 208058.93 |
| d. Residual Value. The value of the vehicle at the end of the lease used in calculating your Base Monthly Payment | $ | 107160.00 |
| e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term... | $ | 100898.93 |
| f. Rent Charge. The amount charged in addition to the Depreciation and any amortized amounts... | $ | 42554.59 |
| g. Total of Base Monthly Payments. The Depreciation and any amortized amounts plus the Rent Charge... | $ | 143453.52 |
| h. Lease Payments. The number of payments in your lease | | 36 |
| i. Base Monthly Payment | $ | 3984.82 |
| j. Monthly Sales/Use Tax | $ | 368.60 |
| k. Total Monthly Payment | $ | 4353.42 |

**7. Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of **22500** miles [Mileage Allowance] for the term of this lease, at the rate of **.25** per mile for any mileage in excess.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the vehicle ("as is") at the end of the lease term for $**107160.00** plus a Purchase Option Fee of $ **150.00** , plus all official fees and taxes. See the Purchase Option section on the back of this lease for more information.

**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**11. Itemization of Gross Capitalized Cost**

Agreed upon value of vehicle as equipped at the time of Lease signing: $ **199999.00** ...

(Remainder of this section is a detailed itemized list with various fields and dollar amounts, including Acquisition Fee, Sales/Use Tax, Registration/Titling Fees, Electronic Filing Fee, Optional Products and Services, Credit Life Insurance Premium, Credit Disability Insurance Premium, and others, totaling $ **209204.80**.)

**12. Estimated Official Fees and Taxes**

**13. Mileage Allowance**

The odometer reading of the Vehicle Information section of this lease provides the number of miles included in your lease (the "Mileage Allowance"). Your Mileage Allowance is provided in section 8 refers to miles driven during the Lease Term and does not include the Existing Miles.

If your Mileage Allowance in section 8 shows a greater than **22500** ...

**14. Missing Records**

**15. New and Pre-owned Vehicle Warranty**

**16. Optional Insurance and Other Products**

**Important Arbitration Provisions**

The following arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

**Additional Disclosures**

| DESCRIPTION OF TRADE-IN | YEAR | MAKE | MODEL |
|---|---|---|---|
| C-CLASS | 2019 | MERCEDES | |

N/A

**Notices/Guaranty**

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE. (3) WARNING - UNLESS A CHARGE IS INCLUDED IN THIS LEASE FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR THAT COVERAGE IS NOT PROVIDED BY THIS LEASE.**

**LESSEE**

By signing below, you acknowledge that:
* This lease is completely filled out;
* You have read this entire lease carefully and agree to all of the terms, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES ABOVE;
* You have received a completed copy of this lease; and the Lessor may assign all right, title, and interest in this lease, vehicle and Guaranty to anyone.

X _____ Y_____

**GUARANTY**

**NOTICE: SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS OF THIS LEASE.**

ALL TERMS AND CONDITIONS ON THE FRONT AND BACK OF THIS LEASE, INCLUDING THE ARBITRATION DISCLOSURES ABOVE, ARE A PART OF THIS LEASE.

## 14. Maintenance

## 15. Prohibited Uses of Vehicle

## Insurance

## 16. Vehicle Insurance

## 20. Total Vehicle Loss/Gap Waiver

## End of Lease

## 21. Purchase Option

## 22. Standard Lease – Early Return Purchase Option Price

## 23. Single Payment Lease – Early Purchase Option Price

## 24. Standard Lease – Early Termination

## 25. Single Payment Lease – Early Termination

## 26. Notices/General

---

## End of Lease (continued)

## Default

## Security Interest

## Power of Attorney

---

The approval code is: 12915544

# CALIFORNIA
# MOTOR VEHICLE LEASE AGREEMENT

**The First Class Lease®**

## Dates

The date of this Lease is **11/30/2020**

The scheduled term of this lease is _____ **36** _____ months ("Lease Term").

The scheduled date this lease ends is **11/30/2023**

## Type of Lease

☒ Standard Lease   ☐ Single Payment Lease

If the Single Payment Lease box is checked above, "Monthly Payment", "Monthly Payments" or "First Monthly Payment" are replaced with the words "Single Lease Payment" throughout this lease and the word "Monthly" in section 4.j. below is deleted.

## Parties

**Lessee (Dealer):** MERCEDES BENZ OF OAKLAND
2915 BROADWAY
OAKLAND CA 94611

**Lessee:** DEANNA SARA JEAN KANE
EVANDER F KANE
2301 RICHLAND AVE
SAN JOSE CA 95125 SANTA CLARA

## Vehicle Information

| | | | | |
|---|---|---|---|---|
| ☒ New | ☐ Pre-Owned | VIN | W1NYC7HJ0MX366157 | |
| Year | Make | Model | Body Style | Odometer Reading |
| 2021 MERCEDES- G63W4 G63W4 | | | | 17 |

**Primary Intended Use**

☒ Personal   ☐ Business, Commercial, or Agricultural Purposes

If no box is checked, or if the Personal box is checked, you agree to use the vehicle for personal, family or household purposes.

## Consumer Leasing Act and Disclosures

Unless otherwise noted, "Lessor" refers to this Vehicle Lease Agreement...

| 1. Amount Due at Lease Signing (itemized below) | 2. Monthly Payments | 3. Other Charges (not part of your Monthly Payment) | 4. Total of Payments (The amount you will have paid by the end of the lease) |
|---|---|---|---|
| $ 8020.00 | Your first Monthly Payment of $ 4557.41 is due on 11/30/2020, followed by ___35___ payments of $ 4557.41 due on the 30TH of each month. The total of your Monthly Payments is $ 164066.76 | a. Vehicle Turn-in Fee $ N/A b. N/A $ N/A c. N/A $ N/A **Total** $ 595.00 | $ 168106.35 |

### 5. Itemization of Amount Due at Lease Signing or Delivery

**a. Amount Due at Lease Signing or Delivery:**
1. First Total Monthly Payment (includes sales/use taxes) ....... $ 4557.41
2. Capitalized Cost Reduction ....... $ 1599.85
3. Acquisition Fee (if not capitalized) ....... $ N/A
4. Sales/Use Taxes ....... $ N/A
5. Refundable Security Deposit ....... $ N/A
6. Registration/Titling Fees ....... $ 116.00
7. License Fees ....... $ 1368.00
8. Environmental Recycling Fee (not a government fee) ....... $ N/A
9. Electronic Filing Fee (not a government fee) ....... $ N/A
10. California Tire Fees ....... $ N/A
11. INSPECTION TAX ....... $ 8.50
12. N/A ....... $ N/A
13. N/A ....... $ N/A
14. **Total** ....... $ 8020.00

**b. How the Amount Due at Lease Signing or Delivery will be paid:**
1. Net Trade-in Allowance ....... $ 0000.00
2. Rebates and Noncash Credits ....... $ N/A
3. Amount to be Paid in Cash ....... $ 8020.00
4. N/A ....... $ N/A
5. **Total** ....... $ 8020.00

### 6. Your monthly payment is determined as shown below:

a. **Gross Capitalized Cost.** The agreed upon value of the vehicle ($ 118420.00) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). ....... $ 119685.00

b. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ....... $ 1599.85

c. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment ....... $ 118085.15

d. **Residual Value.** The value of the vehicle at the end of the lease used in calculating your Base Monthly Payment ....... $ 71743.40

e. **Depreciation and any amortized amounts.** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ....... $ 46341.75

f. **Rent Charge.** The amount charged in addition to the Depreciation and any amortized amounts ....... $ 44618.29

g. **Total of Base Monthly Payments.** The Depreciation and any amortized amounts plus the Rent Charge ....... $ 158176.44

h. **Lease Payments.** The number of payments in your lease ....... 36

i. **Base Monthly Payment** ....... $ 4171.54

j. **Monthly Sales/Use Tax** ....... $ 385.87

k. **Total Monthly Payment** ....... $ 4557.41

### 7. Early Termination.
You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

### 8. Excessive Wear and Use.
You may be charged for excessive wear based on our standards for normal use and mileage. It is $ .25/Mile Additional Charges Allowed for the term of the lease, at the rate of _____ ¢ per mile.

### 9. Purchase Option at End of Lease Term.
You have an option to purchase the vehicle ("as is") at the end of the lease term for $ 71743.40 plus a Purchase Option Fee of $ 150.00 plus all official fees and taxes. See the Purchase Option section on the back of this lease for more information.

### 10. Other Important Terms.
See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 11. Determination of Gross Capitalized Cost

Agreed upon value of vehicle as equipped at the time of the Lease signing ....... $ 118420.00

Accessories and optional equipment Lessor agrees to add to the vehicle after Lease Signing:
(Describe) N/A ....... $ N/A
(Describe) N/A ....... $ N/A
(Describe) N/A ....... $ N/A
(Describe) N/A ....... $ N/A
Total agreed upon value of vehicle ....... $ 118420.00

Other amounts included in the Gross Capitalized Cost:
Acquisition Fee (if capitalized) ....... $ 1095.00
Sales/Use Tax ....... $ N/A
License Fees ....... $ N/A
Registration/Titling Fees ....... $ N/A
California Tire Fees ....... $ N/A
Document Processing Fee (not a government fee) ....... $ 85.00
Outstanding Prior Credit or Lease Balance on Trade-in Vehicle Included in Gross Capitalized Cost ....... $ N/A
Electronic Filing Fee (not a government fee) ....... $ 30.00
Optional Products and Services:
Credit Life Insurance Premium ....... $ N/A
Credit Disability Insurance Premium ....... $ N/A
Charge for Service Contract ....... $ N/A
Charge for Maintenance Agreement ....... $ N/A
(Describe) N/A ....... $ N/A
(Describe) N/A ....... $ N/A
(Describe) N/A ....... $ N/A
(Describe) N/A ....... $ N/A
**Total Gross Capitalized Cost** ....... $ 119685.00

### 12. Estimated Official Fees and Taxes

The total estimated amount you will pay for official fees, taxes, and registration, license and taxes over the term of your lease, whether included with your Monthly Payments or assessed otherwise is $ 191536.00...

### 13. Mileage Allowance

...

### Important Arbitration Disclosures

The following arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.

...

### 14. Mailing Records

...

### 15. New and Pre-owned Vehicle Warranty

If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer.

...

### 16. Optional Insurance and Other Products

...

### Additional Disclosures

| DESCRIPTION OF TRADE-IN | YEAR | MAKE | MODEL | | |
|---|---|---|---|---|---|
| C-CLASS | 2019 | MERCED | | | |

...

## Notices/Signatures

By signing below, you acknowledge that:
- This lease is completely filled out;
- **You have read this entire lease carefully as well as of all the terms, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES ABOVE;**
- You have received a completed copy of this lease; and
- The Lessor was completely filled in when you signed it.

**17. Maintenance**

**19. Prohibited Uses of Vehicle**

**20. Total Vehicle Loss/Gap Waiver**

## End of Lease

**21. Purchase Option**

a. **Scheduled Termination.**

b. **Before Scheduled Termination.**

1. **Standard Lease – Early Purchase Option Price.**

2. **Single Payment Lease – Early Purchase Option Price.**

3. **Single Payment Lease – Early Purchase Option Price.**

c. **Payment of Purchase Price.**

## End of Lease

**22. Termination of Lease**

a. **Scheduled Termination.**

b. **Early Termination by You.**

c. **Early Termination by Us.**

1. **Standard Lease – Early Return of Vehicle Charge.**

2. **Single Payment Lease – Early Return of Vehicle Charge.**

d. **Early Termination by You.**

1. **Standard Lease – Early Return of Vehicle Charge.**

2. **Single Payment Lease – Early Return of Vehicle Charge.**

3. **Single Payment Lease – Early Return of Vehicle Charge.**

## End of Lease of Vehicle

**23. Default**

a. **Early Termination by Us.**

b. **Events of Default.**

c. **Remedies for Default.**

d. **Remedies for Default.**

**24. Interest on Unpaid Amounts**

## Additional Information

**25. Assignment and True Lease**

**26. Late Charges/Returned Payment and Other Fees/Fines and Tickets**

**27. Indemnification**

**28. Notices/General**

**29. Entire Agreement**

**30. Modification**

**31. Enforceability**

**32. Payment Obligations**

**33. Taxes, Registration and Title**

**34. Insurance**

**35. Warranties**

**36. Power of Attorney**

**37. Vehicle Location Covenant**

# EXHIBIT "G"

1                    UNITED STATES BANKRUPTCY COURT
                      NORTHERN DISTRICT OF CALIFORNIA
2                          SAN JOSE DIVISION
                       CASE NO.: 21-50028-SLJ
3                             Chapter 7

4       In re

5       EVANDER FRANK KANE,

6            Debtor.
        _____/
7

8

9

        RULE 2004
10      EXAMINATION AND
        DUCES TECUM
11      DEPOSITION OF:        **EVANDER FRANK KANE**

12      TAKEN:                Pursuant to Notice by
                              Counsel for Centennial Bank
13
        DATE:                 March 24, 2021
14
        TIME:                 2:01 p.m. to 5:14 p.m. (EST)
15
        LOCATION:             Zoom videoconference
16
        REPORTED BY:          Melanie Keefe, FPR
17                            Notary Public
                              State of Florida at Large
18

19

20

21

22

23

24

25

——REGENCY REPORTING SERVICE, INC. (813)224-0224——

1     APPEARANCES:     ANDREW J. GHEKAS, ESQUIRE
                       Anthony & Partners, LLC
2                      100 South Ashley Drive
                       Suite 1600
3                      Tampa, Florida  33602

4                          Attorney for Centennial Bank

5                      STEPHEN D. FINESTONE, ESQUIRE
                       Finestone Hayes LLP
6                      456 Montgomery Street
                       20th Floor
7                      San Francisco, California  94104

8                          Attorney for the Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

───────REGENCY REPORTING SERVICE, INC. (813)224-0224────────

1    same document?

2        A.    Yes.

3        Q.    Okay.  So if we just go through the properties

4    you have listed here quickly, we already discussed the 2301

5    Richland Avenue property, and so I'm curious, you purchased

6    this property in August of 2020; correct?

7        A.    Correct.

8        Q.    And so that was five months prior to filing

9    bankruptcy?

10       A.    Yeah, August to January.

11       Q.    And so is there a reason why you would purchase a

12   property at the same time that you were in litigation with

13   various creditors regarding debt obligations?

14       A.    Sorry.  I don't -- what's the question?

15       Q.    Is there a reason why you would purchase this

16   property in August of 2020 when you were already in

17   litigation with the inability to service prior debt

18   obligations?

19           MR. FINESTONE:  I'm going to object to the

20           question as being argumentative.

21           But you can go ahead and answer it if -- if you

22           can.

23       A.    Yeah, I can't really answer that question.

24       Q.    If you were in -- were you in litigation because

25   you were unable to pay loan obligations to certain

—— REGENCY REPORTING SERVICE, INC. (813)224-0224 ——

1    creditors?

2         A.    Correct.

3         Q.    And with knowing that you were, at the time,

4    unable to service prior debt obligations, what made you

5    believe that you would be able to service a new debt

6    obligation in the form of this loan on the Richland Avenue

7    home?

8              MR. FINESTONE:  I'm going to object again to the

9         question being argumentative, but the two things do not

10        connect to one another.  You know, it sounds like

11        Centennial is of the opinion Mr. Kane shouldn't have

12        bought the property when he owed them the money, but

13        that's just an argument.  That's not -- you know, those

14        two things aren't connected.  They can make that

15        argument somehow if they feel that's inappropriate, but

16        -- so that's why I object to the question.

17        Q.    Mr. Kane, you can answer if you can.

18        A.    I -- there wasn't a thought about it.

19        Q.    Okay.  Turn to page 2, if you would.  The

20   property 3457 West 35th Avenue, Vancouver, British Columbia,

21   do you own -- it says here it's a joint tenant property.

22   Who do you own this property with?

23        A.    My mom.

24        Q.    And what's your mother's name?

25        A.    Sheri.

—— REGENCY REPORTING SERVICE, INC. (813)224-0224 ——

1                    CERTIFICATE OF REPORTER

2      STATE OF FLORIDA              )

3      COUNTY OF HILLSBOROUGH        )

4

5              I, Melanie Keefe, Court Reporter, certify that I
   was authorized to and did stenographically report remotely
6   the deposition of EVANDER FRANK KANE; that a review of the
   transcript was requested; and that the transcript, pages 5
7   through 102, inclusive, is a true and complete record of my
   stenographic notes.

8
             I further certify that I am not a relative,
9   employee, attorney, or counsel of any of the parties, nor am
   I a relative or employee of any of the parties' attorney or
10  counsel connected with the action, nor am I financially
   interested in the action.

11
                    _s/ Melanie Keefe_____
12                   Melanie Keefe, FPR
                     Court Reporter
13  _____

14                    CERTIFICATE OF OATH

15     STATE OF FLORIDA              )

16     COUNTY OF HILLSBOROUGH        )

17              I, the undersigned authority, certify that
   EVANDER FRANK KANE personally appeared before me remotely
18  and was duly sworn.

19              WITNESS my hand and official seal this 8th day of
   April, 2021.

20

21                    _s/ Melanie Keefe_____
                     Melanie Keefe, FPR
22                   Notary Public
                     State of Florida
23                   My Commission No.:  HH055410
                     Expires:  December 9, 2024

24

25

─────REGENCY REPORTING SERVICE, INC. (813)224-0224─────

# EXHIBIT "H"

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

_____
                                        )
In re:                                  )
                                        )
EVANDER FRANK KANE          CH: 7       )   21-50028
                                        )
        Debtor.                         )
_____        )

                            U.S. Trustee
                            P.O. Box 4188
                            Mountain View, CA 94040

                            February 3, 2021


        BEFORE FRODE S. HJELMESET Chapter 7 Trustee

APPEARANCES:

For the Debtor:             Stephen Finestone
                            Finestone Hayes LLP
                            456 Montgomery St. 20th Fl.
                            San Francisco, CA 94104

For Chapter 7 Trustee:      Gregg S. Kleiner
                            Rincon Law LLP
                            268 Bush St. #3335
                            San Francisco, CA 94104

For Sure Sports:            Alan Wilmot
                            Heitner Legal
                            215 Henricks Isle
                            Fort Lauderdale, FL 33301

For Centennial Bank, N.A.:  Andrew J. Ghekas
                            Anthony & Partners, LLC
                            100 S. Ashley Dr., #1600
                            Tampa, FL 33602

For Newport Management:     Arthur Yellin
                            Keith Banner
                            Greenberg Glusker, LLP
                            2049 Century Park E, Suite 2600
                            Los Angeles, CA 90067

*TheRecordXchange*
www.therecordxchange.com (800) 406-1290

<u>APPEARANCES</u>:(Continued)

For South River Capital LLC:   David B. Rao
Law Offices of Binder and Malter
2775 Park Ave.
Santa Clara, CA 95050

For Zions Bancorporation,   Gerrick Warrington
N.A:   Frandzel Robins Bloom & Csato,
LC.
1000 Wilshire Blvd., 19th Fl
Los Angeles, CA 90017

For Loan Shark, LLC:   Christopher Ribas

For Hope Parker:   Jonathan Lewis

For the United States   Marta E. Villacorta
Trustee:

Proceedings recorded by electronic sound recording;
transcript produced by The Record Xchange.

1    have any income coming in from any -- because you testified

2    that your property, one of your properties in Canada is

3    vacant, and then the other one, the Isabelle (phonetic)

4    property is occupied by your parents, and then the other one

5    is vacant.  So there's no rental income, nothing coming in,

6    with respect to the Canadian property?

7              MR. KANE:  No.

8              MS. VILLACORTA:  Okay.  On line 8H, you stated the

9    only income that you listed was from a podcast, totaling

10   $2,083.33.  Do you have a contract in place?

11             MR. KANE:  I -- I don't, anymore.

12             MS. VILLACORTA:  Do you expect to continue to earn

13   this money, in connection with the podcast, going forward?

14             MR. KANE:  No.

15             MS. VILLACORTA:  Okay, why?

16             MR. KANE:  Pardon me?

17             MS. VILLACORTA:  Why?

18             MR. KANE:  It's just no longer happening.

19             MS. VILLACORTA:  When did it stop; when was your

20   last show?

21             MR. KANE:  There was never a show.

22             MS. VILLACORTA:  Or the podcast, sorry.  Well, I'm

23   trying to figure out this --

24             MR. KANE:  There was never -- there was never an

25   episode released, or show released.  It never came --

*TheRecordXchange*

1              MS. VILLACORTA:  So where did this -- so where was

2    this 20 -- $2,083 coming from?

3              MR. KANE:  It -- it come from that podcast company.

4              MS. VILLACORTA:  Where did it come from?

5              MR. KANE:  The podcast company.

6              MS. VILLACORTA:  Okay.  So I'm going to back to my

7    previous -- do you have a contract with this podcast company?

8              MR. KANE:  I did.

9              MS. VILLACORTA:  Okay.  And when -- okay, when did

10   that contract end?

11             MR. KANE:  I want to say a month and a half ago.

12             MS. VILLACORTA:  Okay.  So if you could just provide

13   us a copy of the contract, with the podcast company.  What's

14   the name of the company?

15             MR. KANE:  Blue Wire.

16             MS. VILLACORTA:  Can you please spell that, sorry?

17             MR. KANE:  Blue Wire

18             MS. VILLACORTA:  Oh, Blue Wire.  Okay, Blue Wire.

19   Sorry, I heard something different.

20             So your wife wasn't listed on Schedule I.  So just

21   to confirm, she's unemployed?

22             MR. KANE:  Yes.

23             MS. VILLACORTA:  How long has she been unemployed?

24             MR. KANE:  I don't know.

25             MS. VILLACORTA:  Does she have any business

TheRecordXchange
www.TheRecordXchange.com  (800) 406-1291

# C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_John Buckley_
John Buckley, CET-623
Digital Court Proofreader

# EXHIBIT "I"

1          UNITED STATES BANKRUPTCY COURT
           NORTHERN DISTRICT OF CALIFORNIA
2                SAN JOSE DIVISION
             CASE NO.: 21-50028-SLJ
3                    Chapter 7

4    In re

5    EVANDER FRANK KANE,

6         Debtor.
     _____/
7

8

9

     RULE 2004
10   EXAMINATION AND
     DUCES TECUM
11   DEPOSITION OF:        **EVANDER FRANK KANE**

12   TAKEN:                Pursuant to Notice by
                           Counsel for Centennial Bank
13
     DATE:                 March 24, 2021
14
     TIME:                 2:01 p.m. to 5:14 p.m. (EST)
15
     LOCATION:             Zoom videoconference
16
     REPORTED BY:          Melanie Keefe, FPR
17                         Notary Public
                           State of Florida at Large
18

19

20

21

22

23

24

25

───── REGENCY REPORTING SERVICE, INC. (813)224-0224 ─────

```
1    APPEARANCES:      ANDREW J. GHEKAS, ESQUIRE
                       Anthony & Partners, LLC
2                      100 South Ashley Drive
                       Suite 1600
3                      Tampa, Florida  33602

4                           Attorney for Centennial Bank

5                      STEPHEN D. FINESTONE, ESQUIRE
                       Finestone Hayes LLP
6                      456 Montgomery Street
                       20th Floor
7                      San Francisco, California  94104

8                           Attorney for the Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

REGENCY REPORTING SERVICE, INC. (813)224-0224

1    make it into the Dropbox, so I'm going to quickly try and

2    share screen this.  Are you able to see that?

3         A.    Yes.

4         Q.    And is it showing up Schedule I, your income?

5         A.    Yes.

6         Q.    Okay.  So I just want to scroll to the bottom,

7    the last two sentences here, "Finally, debtor may terminate

8    his contract and he may opt out of the season as allowed

9    under current rules because of health concerns given the

10   recent birth of his first child.  Should he terminate his

11   contract or opt out at a point in the season, debtor will

12   not receive his salary."  Did I read that correctly?

13        A.    Yes.

14        Q.    All right.  I'm going to stop sharing.  And so,

15   Mr. Kane, you did not opt out of the season; correct?

16        A.    Correct.

17        Q.    And you're still playing for the San Jose Sharks?

18        A.    Correct.

19        Q.    And do you intend to continue to play the rest of

20   the season for the San Jose Sharks?

21        A.    I'm taking it day by day.

22        Q.    And when did the season start exactly?

23        A.    I'm not sure of the exact date, but it was

24   mid-January.

25        Q.    And so when the season started back up in

1                        CERTIFICATE OF REPORTER

2    STATE OF FLORIDA         )

3    COUNTY OF HILLSBOROUGH   )

4

5            I, Melanie Keefe, Court Reporter, certify that I
was authorized to and did stenographically report remotely
6 the deposition of EVANDER FRANK KANE; that a review of the
transcript was requested; and that the transcript, pages 5
7 through 102, inclusive, is a true and complete record of my
stenographic notes.

8

9            I further certify that I am not a relative,
employee, attorney, or counsel of any of the parties, nor am
I a relative or employee of any of the parties' attorney or
10 counsel connected with the action, nor am I financially
interested in the action.

11

12                    *s/ Melanie Keefe*
                   Melanie Keefe, FPR
                   Court Reporter

13 _____

14                      CERTIFICATE OF OATH

15    STATE OF FLORIDA         )

16    COUNTY OF HILLSBOROUGH   )

17            I, the undersigned authority, certify that
EVANDER FRANK KANE personally appeared before me remotely
18 and was duly sworn.

19            WITNESS my hand and official seal this 8th day of
April, 2021.

20

21                    *s/ Melanie Keefe*
                   Melanie Keefe, FPR
22                   Notary Public
                   State of Florida
23                   My Commission No.: HH055410
                   Expires:  December 9, 2024

24

25

# EXHIBIT "J"

REMOVE DOCUMENT ALONG THIS PERFORATION

| Employee | | Emp ID | Social Security | Status | Fed-Res-Work Exempt/Allow | | Number |
|----------|--|--------|-----------------|--------|---------------------------|--|--------|
| EVANDER KANE | | 200300 | XXX-XX-XXXX US-S CA-S | | US-1/0 CA-99/0 MO-99/0 | | 00030948 |

| Code | | Paygroup | Division | Department | Hire Date | Period Start | Period End | Pay Date |
|------|--|----------|----------|------------|-----------|--------------|-----------|----------|
| SJSHARKS | | 2 | 10 | 7020 | 02/26/18 | 02/05/21 | 02/18/21 | 02/26/21 |

| Taxable Earnings | Rate | Hrs/Units | Current | Year To Date |
|------------------|------|-----------|---------|--------------|
| NHL Salary | - | - | 23,767.24 | 879,387.93 |
| gn Bonus Subject to Escrow | - | - | - | 665,482.72 |
| n Bonus Not Currently Due | - | - | - | -665,482.72 |
| crow 20-21 withheld | - | - | -4,753.45 | -237,227.59 |
| al YR 21 Comp Deferral | - | - | - | -118,965.51 |
| crow 21 Withholding | - | - | - | -76,251.72 |
| crow 21 Deferral | - | - | - | -72,413.79 |
| al | | | 19,013.79 | 374,529.32 |

| Taxes | | | | |
|-------|--|--|--|--|
| Social Security (FICA) | | - | | 8,853.60 |
| Federal Income Tax | | 5,473.86 | | 130,517.90 |
| Federal Medicare | | 275.70 | | 6,480.68 |
| Federal Medicare Surcharge | | 171.13 | | 2,222.49 |
| California Income Tax | | 352.33 | | 41,195.23 |
| Missouri Income Tax | | 991.00 | | 991.00 |
| Arizona Income Tax | | - | | 2,459.75 |
| California State Disability | | - | | 1,539.58 |
| Colorado Income Tax | | - | | 1,722.67 |
| Total | | 7,264.02 | | 195,982.90 |

| After-Tax Deductions | | | | |
|----------------------|--|--|--|--|
| Fines | | - | | 50.00 |
| Hotel | | - | | 398.95 |
| NHL Dues | | - | | 2,160.00 |
| Total | | - | | 2,608.95 |

| W2 Gross | | 19,013.79 | 374,529.32 |
|----------|--|-----------|------------|

| Net Pay | | 11,749.77 |
|---------|--|-----------|

San Jose Sharks LLC  -  525 W. Santa Clara Street  San Jose,  CA  95113-1520  -  (408) 287-7070

© 2006 ADP, LLC  All Rights Reserved

| Employee | | | Emp ID | Social Security | Status | Fed-Res-Work Exempt/Allow | Number |
|---|---|---|---|---|---|---|---|
| EVANDER KANE | | | 200300 | XXX-XX-XXXX | US-S CA-S | US-1/0 CA-99/0 AZ-99 | 00030788 |

| Code | | Paygroup | Division | Department | Hire Date | Period Start | Period End | Pay Date |
|---|---|---|---|---|---|---|---|---|
| SJSHARKS | | 2 | 10 | 7020 | 02/26/18 | 01/13/21 | 01/21/21 | 01/29/21 |

| Taxable Earnings | Rate | Hrs/Units | Current | Year To Date | Messages |
|---|---|---|---|---|---|
| NHL Salary | - | - | 213,905.17 | 213,905.17 | HTL-10/1/19 Bellagio |
| Fiscal YR 21 Comp Deferral | - | - | -46,551.72 | -46,551.72 | HTL 02/23/20 Ritz |
| Escrow 21 Withholding | - | - | -76,251.72 | -76,251.72 | Dues 03/01/20-04/04/20 |
| Total | | | 91,101.73 | 91,101.73 | Dues Jan 2021 9 Days |

| Taxes | Current | Year To Date |
|---|---|---|
| Social Security (FICA) | 5,648.31 | 5,648.31 |
| Federal Income Tax | 32,083.46 | 32,083.46 |
| Federal Medicare | 1,320.98 | 1,320.98 |
| California Income Tax | 9,111.25 | 9,111.25 |
| Arizona Income Tax | 2,459.75 | 2,459.75 |
| Total | 50,623.75 | 50,623.75 |

| After-Tax Deductions | Current | Year To Date |
|---|---|---|
| Fines | 50.00 | 50.00 |
| Hotel | 398.95 | 398.95 |
| NHL Dues | 1,320.00 | 1,320.00 |
| Total | 1,768.95 | 1,768.95 |

| W2 Gross | 91,101.73 | 91,101.73 |
|---|---|---|

| Net Pay | 38,709.03 |
|---|---|

San Jose Sharks LLC  -  525 W. Santa Clara Street  San Jose,  CA  95113-1520  -  (408) 287-7070

© 2006 ADP, LLC   All Rights Reserved



REMOVE DOCUMENT ALONG THIS PERFORATION

| Employee | | Emp ID | Social Security | Status | Fed-Res-Work Exempt/Allow | Number |
|---|---|---|---|---|---|---|
| EVANDER KANE | | 200300 | XXX-XX-XXXX US-S CA-S | | US-1/0 CA-99/0 CO-99/0 | 00030947 |

| Code | Paygroup | Division | Department | Hire Date | Period Start | Period End | Pay Date |
|---|---|---|---|---|---|---|---|
| SJSHARKS | 2 | 10 | 7020 | 02/26/18 | 02/05/21 | 02/18/21 | 02/26/21 |

| Taxable Earnings | Rate | Hrs/Units | Current | Year To Date |
|---|---|---|---|---|
| NHL Salary | - | - | 47,534.48 | 855,620.69 |
| Sign Bonus Subject to Escrow | - | - | - | 665,482.72 |
| Sign Bonus Not Currently Due | - | - | - | -665,482.72 |
| Escrow 20-21 withheld | - | - | -9,506.90 | -232,474.14 |
| Fiscal YR 21 Comp Deferral | - | - | - | -118,965.51 |
| Escrow 21 Withholding | - | - | - | -76,251.72 |
| Escrow 21 Deferral | - | - | - | -72,413.79 |
| Total | | | 38,027.58 | 355,515.53 |

| Taxes | | | Current | Year To Date |
|---|---|---|---|---|
| Social Security (FICA) | | | - | 8,853.60 |
| Federal Income Tax | | | 12,446.03 | 125,044.04 |
| Federal Medicare | | | 551.40 | 6,204.98 |
| Federal Medicare Surcharge | | | 342.24 | 2,051.36 |
| California Income Tax | | | 2,125.72 | 40,842.90 |
| Colorado Income Tax | | | 1,722.67 | 1,722.67 |
| Arizona Income Tax | | | - | 2,459.75 |
| California State Disability | | | - | 1,539.58 |
| Total | | | 17,188.06 | 188,718.88 |

| After-Tax Deductions | | | Current | Year To Date |
|---|---|---|---|---|
| Fines | | | - | 50.00 |
| Hotel | | | - | 398.95 |
| NHL Dues | | | - | 2,160.00 |
| Total | | | - | 2,608.95 |

| W2 Gross | | | 38,027.58 | 355,515.53 |

| Net Pay | | | | 20,839.52 |

San Jose Sharks LLC  -  525 W. Santa Clara Street  San Jose,  CA  95113-1520  -  (408) 287-7070

© 2006 ADP, LLC  All Rights Reserved

REMOVE DOCUMENT ALONG THIS PERFORATION

| Employee | | Emp ID | Social Security | Status | | Fed-Res-Work Exempt/Allow | | Number |
|---|---|---|---|---|---|---|---|---|
| EVANDER KANE | | 200300 | XXX-XX-7617 | US-S CA-S | | US-1/0  CA-99/0 | | 00030946 |

| Code | | Paygroup | Division | Department | Hire Date | Period Start | Period End | Pay Date |
|---|---|---|---|---|---|---|---|---|
| SJSHARKS | | 2 | 10 | 7020 | 02/26/18 | 02/05/21 | 02/18/21 | 02/26/21 |

| Taxable Earnings | Rate | Hrs/Units | Current | Year To Date |
|---|---|---|---|---|
| NHL Salary | - | - | 261,439.66 | 808,086.21 |
| Sign Bonus Subject to Escrow****** | 14.00 | 332,741.36 | 665,482.72 |
| Sign Bonus Not Currently Due | - | - | -332,741.36 | -665,482.72 |
| Escrow 20-21 withheld | - | - | -104,353.45 | -222,967.24 |
| Fiscal YR 21 Comp Deferral | - | - | - | -118,965.51 |
| Escrow 21 Withholding | - | - | - | -76,251.72 |
| Escrow 21 Deferral | - | - | -72,413.79 | -72,413.79 |
| Total | | | 84,672.42 | 317,487.95 |

| Taxes | | | Current | Year To Date |
|---|---|---|---|---|
| Social Security (FICA) | | | - | 8,853.60 |
| Federal Income Tax | | | 29,704.62 | 112,598.01 |
| Federal Medicare | | | 2,277.75 | 5,653.58 |
| Federal Medicare Surcharge | | | 1,413.78 | 1,709.12 |
| California Income Tax | | | 10,630.39 | 38,717.18 |
| California State Disability | | | - | 1,539.58 |
| Arizona Income Tax | | | - | 2,459.75 |
| Total | | | 44,026.54 | 171,530.82 |

| After-Tax Deductions | | | Current | Year To Date |
|---|---|---|---|---|
| Fines | | | - | 50.00 |
| Hotel | | | - | 398.95 |
| NHL Dues | | | 420.00 | 2,160.00 |
| Total | | | 420.00 | 2,608.95 |

| W2 Gross | | | 84,672.42 | 317,487.95 |

| Net Pay | | | | 40,225.88 |

San Jose Sharks LLC    525 W. Santa Clara Street    San Jose    CA   95113-1520    (408) 287-7070

©2006 ADP LLC   All Rights Reserved

# EXHIBIT "K"



# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** ℠
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932,** *TTY:* 1-800-600-4833
*Spanish:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

EVANDER KANE
8012 WILES RD
CORAL SPRINGS FL 33067-2072

## September 30, 2020

| | |
|---|---|
| **Total assets:** | **$13,200.63** |
| **Total liabilities:** | **$40,618.44** |
| Qualifying Balance: | **$53,819.07** |
| Deposit Balance: | **$13,200.63** |

**Contents** *Page*

Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . 4
Wells Fargo Credit Card. . . . . . . . . . . . . . . . . . . . 8
Go Far™ Rewards. . . . . . . . . . . . . . . . . . . . . . . . 9



# Your Portfolio by Wells Fargo overview

## Assets

| Account  (Account Number) | Balance this month ($) |
|---|---|
| Wells Fargo Portfolio Checking ▇ 1607) | 13,200.63 |
| **Total assets** | **$13,200.63** |

## Liabilities

| Account  (Account Number) | Outstanding balance this month ($) |
|---|---|
| Wells Fargo Credit Card † ▇ 2528) | 40,618.44 |
| **Total liabilities** | **$40,618.44** |

† Refer to your statement for actual statement dates.

## Available credit

The information below may not be current.  Be sure to verify the credit available on your accounts when accessing your credit lines.

| Account | Approved credit line | Credit used | Credit available |
|---|---|---|---|
| Wells Fargo Credit Card ▇ 2528) | 82,200.00 | 40,618.44 | 41,581.00 |
| **Total available credit** | **$82,200.00** | **$40,618.44** | **$41,581.00** |

## Go Far™ Rewards

| Rewards ID ▇ ) | |
|---|---|
| Available balance | 1,749,407 |
| *Pending relationship bonus rewards* | 18,812 |

---

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Advisors, which is a trade name used by Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, Members SIPC, registered broker-dealers and separate non-bank affiliates of Wells Fargo & Company; and (3) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 1 of Page 79
of 128
605560



 **Your Portfolio by Wells Fargo overview** (continued)

**Other Wells Fargo Benefits**

Please take a few minutes to review the accounts that are linked to your Portfolio by Wells Fargo program. To see the accounts that are linked to your Portfolio program, please go to the section of this statement titled "Your Portfolio by Wells Fargo Overview". Or, sign onto Wells Fargo Online and at the top of the Account Summary page, click on "Explore Program and Benefits", and this will take you to the Balance and Benefits page. To view the Balance and Benefits page from your mobile device, log into the Wells Fargo app and at the top of the Account Summary page, tap "Portfolio by Wells Fargo". Linked eligible accounts make up your Portfolio by Wells Fargo statement-ending qualifying balance and are used to determine if you are eligible to avoid the monthly service fee, and to get pricing discounts and other benefits. If you do not see all of the accounts you would like included in your Portfolio by Wells Fargo program, please contact your banker or call the number listed on the first page of this statement for assistance with linking the accounts.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 84 of 128



# Wells Fargo Portfolio Checking

## Statement period activity summary

| | |
|---|---:|
| Balance on 9/1 | 5,565.28 |
| Deposits/Additions | 35,000.07 |
| Withdrawals/Subtractions | 27,364.72 |
| **Balance on 9/30** | **$13,200.63** |

Account number: ████ **1607**

**EVANDER KANE**

*Wells Fargo Bank, N.A. (Member FDIC)*

*CALIFORNIA account terms and conditions apply*

Questions about your account: **1-800-742-4932**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Overdraft protection

Your account is linked to the following for Overdraft Protection:
■ Credit card ████ 2528

## Interest you've earned

| | |
|---|---:|
| Interest paid this statement | $0.07 |
| Interest earned this statement period | $0.06 |
| Average collected balance | $8,030.03 |
| Annual percentage yield earned | 0.01% |
| Interest paid this year | $9.96 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---:|---:|---:|
| | **Beginning balance on 9/1** | | | | **5,565.28** |
| 9/1 | Online Transfer Ref #Ib08Rnqd43 to Propel World American Express Card Xxxxxxxxxxx2528 On 09/01/20 | | | 215.00 | 5,350.28 |
| 9/2 | Portfolio By Wells Fargo Mnthly Srvc Fee | | | 30.00 | 5,320.28 |
| 9/8 | Purchase Intl Authorized On 09/06 McDonald's #1198 Vancouver Can S580250843281023 Card 7236 | | | 11.90 | |
| 9/8 | International Purchase Transaction Fee | | | 0.35 | |
| 9/8 | Non WF ATM Withdrawal Authorized On 09/07 8324 Granville Street Vancouver Can 00300251768019971 ATM ID 0644089 Card 7236 | | | 615.80 | |
| 9/8 | Purchase Intl Authorized On 09/07 Subway 11695 Vancouver Can S380251770663121 Card 7236 | | | 4.50 | |
| 9/8 | International Purchase Transaction Fee | | | 0.13 | 4,687.60 |
| 9/9 | Purchase Intl Authorized On 09/07 Halsa Spa (CA100) Vancouver Can S300251737624370 Card 7236 | | | 116.38 | |
| 9/9 | International Purchase Transaction Fee | | | 3.49 | |
| 9/9 | Purchase Intl Authorized On 09/07 Marine Drive Tripl Vancouver Can S300252015466973 Card 7236 | | | 11.45 | |
| 9/9 | International Purchase Transaction Fee | | | 0.34 | 4,555.94 |
| 9/18 | Purchase Authorized On 09/17 of London Gbr S300261515630226 Card 7236 | | | 19.00 | |
| 9/18 | Recurring Payment Authorized On 09/17 of London Gbr S300261515884286 Card 7236 | | | 29.00 | |
| 9/18 | Recurring Payment Authorized On 09/17 of London Gbr S300261517501230 Card 7236 | | | 14.00 | |
| 9/18 | Recurring Payment Authorized On 09/17 of London Gbr S300261518060305 Card 7236 | | | 8.00 | |
| 9/18 | Recurring Payment Authorized On 09/17 of London Gbr S300261519452578 Card 7236 | | | 40.00 | |
| 9/18 | Recurring Payment Authorized On 09/17 Ritual Httpsritual.C CA S460261678494185 Card 7236 | | | 38.24 | 4,407.70 |
| 9/21 | Purchase Authorized On 09/19 Amazon.Com*M43Yp20 Amzn.Com/Bill WA S580263271561314 Card 7236 | | | 28.19 | 4,379.51 |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 81 of 128

605562



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| 9/23 | Online Transfer Ref #Ib08Wjggxb From Propel World American Express Card Xxxxxxxxxxx2528 On 09/23/20 | | 15,000.00 | | |
| 9/23 | Recurring Payment Authorized On 09/19 of London Gbr S580263317400620 Card 7236 | | | 9.90 | |
| 9/23 | Recurring Payment Authorized On 09/19 of London Gbr S580263322419734 Card 7236 | | | 29.99 | |
| 9/23 | Recurring Payment Authorized On 09/19 of London Gbr S580263324391798 Card 7236 | | | 20.00 | |
| 9/23 | Recurring Payment Authorized On 09/19 of London Gbr S580263326490416 Card 7236 | | | 29.99 | 19,289.63 |
| 9/24 | Recurring Payment Authorized On 09/21 Ccbill.Com *Onlyfa 888 5969279 CA S380265314851464 Card 7236 | | | 5.00 | |
| 9/24 | Recurring Payment Authorized On 09/21 Ccbill.Com *Onlyfa 888 5969279 CA S460265315376134 Card 7236 | | | 9.99 | |
| 9/24 | Recurring Payment Authorized On 09/21 Ccbill.Com *Onlyfa 888 5969279 CA S380265317229280 Card 7236 | | | 11.00 | |
| 9/24 | Recurring Payment Authorized On 09/21 Ccbill.Com *Onlyfa 888 5969279 CA S380265460692801 Card 7236 | | | 12.00 | 19,251.64 |
| 9/28 | Online Transfer Ref #Ib08Xcmsd6 From Propel World American Express Card Xxxxxxxxxxx2528 On 09/28/20 | | 10,000.00 | | |
| 9/28 | Online Transfer Ref #Ib08Xcnfl6 From Propel World American Express Card Xxxxxxxxxxx2528 On 09/28/20 | | 10,000.00 | | |
| 9/28 | Recurring Payment Authorized On 09/23 Ccbill.Com *Onlyfa 888 5969279 CA S300267301297578 Card 7236 | | | 14.00 | |
| 9/28 | Recurring Payment Authorized On 09/23 Ccbill.Com *Onlyfa 888 5969279 CA S300267303503435 Card 7236 | | | 15.00 | |
| 9/28 | Recurring Payment Authorized On 09/23 Ccbill.Com *Onlyfa 888 5969279 CA S380267305903022 Card 7236 | | | 5.00 | |
| 9/28 | Recurring Payment Authorized On 09/23 Ccbill.Com *Onlyfa 888 5969279 CA S300267312812053 Card 7236 | | | 5.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S300268369649227 Card 7236 | | | 5.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S580268426332197 Card 7236 | | | 14.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S460268426997762 Card 7236 | | | 17.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S300268428260072 Card 7236 | | | 5.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S300268430974442 Card 7236 | | | 10.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S300268435493558 Card 7236 | | | 4.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S580268436699706 Card 7236 | | | 4.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S300268437239612 Card 7236 | | | 4.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S300268438790767 Card 7236 | | | 5.00 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S460268443006684 Card 7236 | | | 3.50 | |
| 9/28 | Recurring Payment Authorized On 09/24 Ccbill.Com *Onlyfa 888 5969279 CA S380268444671435 Card 7236 | | | 3.00 | |
| 9/28 | Mbfs Web Pay 200924 5001153101001 Evander Kane | | | 7,223.96 | |
| 9/28 | American Express ACH Pmt 200928 M9982 Evander Kane | | | 18,684.62 | 13,229.56 |
| 9/30 | Recurring Payment Authorized On 09/27 Ccbill.Com *Onlyfa 888 5969279 CA S460271318648373 Card 7236 | | | 29.00 | |
| 9/30 | Interest Payment | | 0.07 | | 13,200.63 |
| **Ending balance on 9/30** | | | | | **13,200.63** |
| **Totals** | | | **$35,000.07** | **$27,364.72** | |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 82 of 128

605563



 **Wells Fargo Portfolio Checking** (continued)

### Summary of Overdraft and Returned Item Fees

| | Total this statement period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $35.00 |

*Year to date totals reflect fees assessed or reversed since the first full statement period of the calendar year. Negative values indicate that fee reversals exceed fees assessed.*

---

**Important Account Information**

Effective June 1, 2020, the Deposit Account Agreement has been updated.

In the section of the Deposit Account Agreement titled "Available balance, posting order, and overdrafts," the second bullet of the paragraph titled "Then, we sort your transactions into categories before we process them" under the subsection titled "How do we process (post) transactions to your account?" is deleted and replaced with the following: "Then, we process withdrawals/payments we have previously authorized and cannot return unpaid, such as debit card purchases, ATM withdrawals, account transfers, Online Bill Pay transactions, and teller-cashed checks. If we receive more than one of these transactions for payment from your account, we will generally sort and pay them based on the date and time you conducted the transactions. For a debit card transaction, if a merchant does not seek authorization from the Bank at the time of the transaction or you conducted the transaction more than 10 business days before we receive it for payment, we will use the date the transaction is received for payment from your account. For some transactions, such as Online Bill Pay transactions or teller-cashed checks, the time may be assigned by our systems and may vary from the time it was conducted. Multiple transactions that have the same time will be sorted and paid from lowest to highest dollar amount."

For questions, please call the number listed on your statement.

---

IMPORTANT ACCOUNT INFORMATION

**Regulation D and Wells Fargo withdrawal and transfer restrictions on all savings accounts have been discontinued.**

The Federal Reserve Board recently removed Regulation D's six transaction limit on certain withdrawals and transfers from savings accounts, and allowed banks to suspend enforcement of that limit at each bank's discretion. Your Deposit Account Agreement states that both Regulation D and Wells Fargo limit certain types of withdrawals and transfers from a savings account to a combined total of six per monthly fee period. This message is to advise you that these limits were removed in May 2020. We have also discontinued charging the related excess activity fees, and have ceased account conversions and account closures related to the six withdrawal or transfer limit.

While it will take a period of time to update our disclosures and other materials, the changes described above apply to your account immediately and allow you to make withdrawals and transfers, including online and mobile, from your savings account without regard to the previous limit of six transactions. If you have any questions about your account, please call the phone number at the top of your statement or visit your Wells Fargo branch.

605564



## ⟲ Wells Fargo Portfolio Checking (continued)

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo program. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on about the 2nd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs), FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors®) and credit balances (including 10% of mortgage balances).

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

**Other Wells Fargo Benefits**

The benefit of having no fee cashier's checks and money orders is no longer limited to only your primary Wells Fargo Portfolio Checking account within the Portfolio by Wells Fargo program. Those fees are waived if you have any qualified Consumer account that offers no fee cashier's checks or money orders as an account benefit.

605565



# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** ℠
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932,** *TTY:* 1-800-600-4833
*Spanish:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

EVANDER KANE
8012 WILES RD
CORAL SPRINGS FL 33067-2072

## October 31, 2020

| | |
|---|---|
| **Total assets:** | **$45,438.96** |
| **Total liabilities:** | **$81,285.84** |
| Qualifying Balance: | **$126,724.80** |
| Deposit Balance: | **$45,438.96** |

### Contents

| | Page |
|---|---|
| Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . | 4 |
| Wells Fargo Credit Card. . . . . . . . . . . . . . . . . . . | 8 |
| Go Far™ Rewards. . . . . . . . . . . . . . . . . . . . . . . | 9 |

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 82
of 128

585774



# Your Portfolio by Wells Fargo overview

## Assets

| Account (Account Number) | Balance this month ($) |
|---|---|
| Wells Fargo Portfolio Checking ████ 1607) | 45,438.96 |
| **Total assets** | **$45,438.96** |

## Liabilities

| Account (Account Number) | Outstanding balance this month ($) |
|---|---|
| Wells Fargo Credit Card † ████ 2528) | 81,285.84 |
| **Total liabilities** | **$81,285.84** |

† Refer to your statement for actual statement dates.

## Available credit

The information below may not be current. Be sure to verify the credit available on your accounts when accessing your credit lines.

| Account | Approved credit line | Credit used | Credit available |
|---|---|---|---|
| Wells Fargo Credit Card (XXXX-XXXXXX-X2528) | 82,200.00 | 81,285.84 | 682.00 |
| **Total available credit** | **$82,200.00** | **$81,285.84** | **$682.00** |

## Go Far™ Rewards

| Rewards ID (████████) | |
|---|---|
| Available balance | 3,095 |
| *Pending relationship bonus rewards* | 19,855 |

---

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Advisors, which is a trade name used by Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, Members SIPC, registered broker-dealers and separate non-bank affiliates of Wells Fargo & Company; and (3) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 86 of 128   Page 86



 **Your Portfolio by Wells Fargo overview** (continued)

**Other Wells Fargo Benefits**

Please take a few minutes to review the accounts that are linked to your Portfolio by Wells Fargo program. To see the accounts that are linked to your Portfolio program, please go to the section of this statement titled "Your Portfolio by Wells Fargo Overview". Or, sign onto Wells Fargo Online and at the top of the Account Summary page, click on "Explore Program and Benefits", and this will take you to the Balance and Benefits page. To view the Balance and Benefits page from your mobile device, log into the Wells Fargo app and at the top of the Account Summary page, tap "Portfolio by Wells Fargo". Linked eligible accounts make up your Portfolio by Wells Fargo statement-ending qualifying balance and are used to determine if you are eligible to avoid the monthly service fee, and to get pricing discounts and other benefits. If you do not see all of the accounts you would like included in your Portfolio by Wells Fargo program, please contact your banker or call the number listed on the first page of this statement for assistance with linking the accounts.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 87 of 128



# Wells Fargo Portfolio Checking

## Statement period activity summary

| | |
|---|---:|
| Balance on 10/1 | 13,200.63 |
| Deposits/Additions | 88,829.60 |
| Withdrawals/Subtractions | 56,591.27 |
| **Balance on 10/31** | **$45,438.96** |

Account number: ▮▮▮▮ **1607**

**EVANDER KANE**

*Wells Fargo Bank, N.A. (Member FDIC)*

*CALIFORNIA  account terms and conditions apply*

Questions about your account: **1-800-742-4932**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Overdraft protection

Your account is linked to the following for Overdraft Protection:

■ Credit card ▮▮▮▮ 2528

## Interest you've earned

| | |
|---|---:|
| Interest paid this statement | $0.11 |
| Interest earned this statement period | $0.12 |
| Average collected balance | $13,438.15 |
| Annual percentage yield earned | 0.01% |
| Interest paid this year | $10.07 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---:|---:|---:|
| | **Beginning balance on 10/1** | | | | **13,200.63** |
| 10/1 | Venmo Payment 4528527323 Evander Kane | | | 4,500.00 | 8,700.63 |
| 10/2 | Recurring Payment Authorized On 09/29 Ccbill.Com *Onlyfa 888 5969279 CA S300273360956423 Card 7236 | | | 5.00 | |
| 10/2 | Recurring Payment Authorized On 10/01 Best Alarm Company 408 8712400 CA S460276003647192 Card 7236 | | | 114.00 | 8,581.63 |
| 10/5 | Recurring Payment Authorized On 10/03 Ccbill.Com *Onlyfa 888 5969279 CA S580277521716646 Card 7236 | | | 10.00 | |
| 10/5 | Recurring Payment Authorized On 10/03 Ccbill.Com *Onlyfa 888 5969279 CA S300277522735744 Card 7236 | | | 4.00 | 8,567.63 |
| 10/8 | Venmo Payment 4567759008 Evander Kane | | | 4,500.00 | 4,067.63 |
| 10/9 | WT Fed#04402 Bank of America, N /Org=Blue Wire Inc. Srf# 2020100900611039 Trn#201009165933 Rfb# Xxxxx9278 | | 25,000.00 | | |
| 10/9 | Wire Trans Svc Charge   Sequence: 201009165933 Srf# 2020100900611039 Trn#201009165933 Rfb# Xxxxx9278 | | | 15.00 | |
| 10/9 | Online Transfer Ref #Ib08Zl9Fpv to Propel World American Express Card Xxxxxxxxxxx2528 On 10/09/20 | | | 1,097.00 | 27,955.63 |
| 10/13 | eDeposit IN Branch/Store 10/10/20 09:26:18 Am 3053 Meridian Ave San Jose CA 6649171607 | | 633.62 | | |
| 10/13 | Recurring Payment Authorized On 10/09 Ccbill.Com *Onlyfa 888 5969279 CA S460283537432421 Card 7236 | | | 5.99 | |
| 10/13 | Purchase Authorized On 10/09 Chevron/Csi 096139/1771 San Jose CA P00300284058443458 Card 7236 | | | 40.00 | |
| 10/13 | Purchase Authorized On 10/09 Little Caesar's 33 San Jose CA S300284119572784 Card 7236 | | | 12.00 | |
| 10/13 | Purchase Bank Check OR Draft | | | 5,250.00 | |
| 10/13 | American Express ACH Pmt 201013 M8954 Evander Kane | | | 4,000.00 | 19,281.26 |
| 10/14 | Zelle From Kane Evander On 10/14 Ref # Bace784Fb323 | | 2,000.00 | | 21,281.26 |
| 10/15 | Zelle Kane Evander On 10/15 Ref # Bac0619F5019 | | 2,000.00 | | |
| 10/15 | Recurring Payment Authorized On 10/12 Ccbill.Com *Onlyfa 888 5969279 CA S300286519608502 Card 7236 | | | 40.00 | |
| 10/15 | Recurring Payment Authorized On 10/12 Ccbill.Com *Onlyfa 888 5969279 CA S460286524751738 Card 7236 | | | 7.00 | |
| 10/15 | Check | | | 17,990.63 | 5,243.63 |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 88 of 128

585777



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| 10/16 | Venmo Payment 4606649243 Evander Kane | | | 2,000.00 | 3,243.63 |
| 10/19 | Recurring Payment Authorized On 10/13 Ccbill.Com *Onlyfa 888 5969279 CA S300288207925084 Card 7236 | | | 16.99 | |
| 10/19 | Recurring Payment Authorized On 10/13 Ccbill.Com *Onlyfa 888 5969279 CA S300288210909676 Card 7236 | | | 37.00 | |
| 10/19 | Recurring Payment Authorized On 10/13 Ccbill.Com *Onlyfa 888 5969279 CA S460288212184604 Card 7236 | | | 29.00 | |
| 10/19 | Purchase Authorized On 10/15 Wendy's 0527 San Jose CA S580289818290186 Card 7236 | | | 13.09 | |
| 10/19 | Recurring Payment Authorized On 10/16 Ccbill.Com *Onlyfa 888 5969279 CA S300290484250809 Card 7236 | | | 18.00 | |
| 10/19 | Recurring Payment Authorized On 10/16 Ccbill.Com *Onlyfa 888 5969279 CA S580290486628582 Card 7236 | | | 5.00 | |
| 10/19 | Recurring Payment Authorized On 10/16 Ccbill.Com *Onlyfa 888 5969279 CA S300290489110004 Card 7236 | | | 7.99 | |
| 10/19 | Recurring Payment Authorized On 10/16 Ccbill.Com *Onlyfa 888 5969279 CA S300290490179940 Card 7236 | | | 15.00 | |
| 10/19 | Purchase Authorized On 10/16 Wendy's 0526 San Jose CA S580290714226928 Card 7236 | | | 16.68 | |
| 10/19 | Recurring Payment Authorized On 10/17 Ccbill.Com *Onlyfa 888 5969279 CA S300291652932579 Card 7236 | | | 3.60 | |
| 10/19 | Recurring Payment Authorized On 10/17 Ccbill.Com *Onlyfa 888 5969279 CA S580291657601044 Card 7236 | | | 6.00 | |
| 10/19 | Recurring Payment Authorized On 10/17 Ccbill.Com *Onlyfa 888 5969279 CA S380291664083806 Card 7236 | | | 1.87 | |
| 10/19 | Recurring Payment Authorized On 10/17 Ccbill.Com *Onlyfa 888 5969279 CA S460291665059843 Card 7236 | | | 50.00 | |
| 10/19 | Recurring Payment Authorized On 10/17 Ritual Httpsritual.C CA S580291678687292 Card 7236 | | | 38.24 | |
| 10/19 | Non WF ATM Withdrawal Authorized On 10/18 200 W Taylor St San Jose CA 00460292649131261 ATM ID 00072080 Card 7236 | | | 303.00 | |
| 10/19 | Check | 164 | | 460.00 | |
| 10/19 | Venmo Payment 4612324371 Evander Kane | | | 220.00 | 2,002.17 |
| 10/20 | Purchase Authorized On 10/18 Wendy's 0527 San Jose CA S460292784238769 Card 7236 | | | 10.79 | |
| 10/20 | Purchase Authorized On 10/19 Amazon.Com*2T2IL3J Amzn.Com/Bill WA S580293267986962 Card 7236 | | | 29.41 | |
| 10/20 | Venmo Payment 4631748337 Evander Kane | | | 500.00 | 1,461.97 |
| 10/21 | Go Far Rewards | | 12,000.00 | | 13,461.97 |
| 10/22 | Recurring Payment Authorized On 10/19 Ccbill.Com *Onlyfa 888 5969279 CA S380293495509198 Card 7236 | | | 9.90 | |
| 10/22 | Purchase Authorized On 10/21 Sq *Future Wash  San Jose CA S580296007812229 Card 7236 | | | 44.39 | |
| 10/22 | Purchase Authorized On 10/22 Smaimai Thai Well San Jose CA P00580296694497834 Card 7236 | | | 96.00 | |
| 10/22 | Purchase Authorized On 10/22 958 Sephora Santana Ro San Jose CA P00000000884727158 Card 7236 | | | 112.53 | |
| 10/22 | American Express ACH Pmt 201022 M5064 Evander Kane | | | 2,173.09 | 11,026.06 |
| 10/23 | Go Far Rewards | | 5,500.00 | | |
| 10/23 | Purchase Return Authorized On 10/20 Ccbill.Com *Onlyfa 888 5969279 CA S620297597411814 Card 7236 | | 1.87 | | |
| 10/23 | Recurring Payment Authorized On 10/19 Ccbill.Com *Onlyfa 888 5969279 CA S580294095566990 Card 7236 | | | 49.99 | |
| 10/23 | Recurring Payment Authorized On 10/19 Ccbill.Com *Onlyfa 888 5969279 CA S300294096345819 Card 7236 | | | 5.00 | |
| 10/23 | Recurring Payment Authorized On 10/19 Ccbill.Com *Onlyfa 888 5969279 CA S460294097371088 Card 7236 | | | 25.00 | |
| 10/23 | Recurring Payment Authorized On 10/20 Ccbill.Com *Onlyfa 888 5969279 CA S300294393958029 Card 7236 | | | 9.90 | |
| 10/23 | Purchase Authorized On 10/21 Little Caesar's 33 San Jose CA S300295741775039 Card 7236 | | | 10.73 | |
| 10/23 | Purchase Authorized On 10/22 Sq *Future Wash  San Jose CA S460296749797708 Card 7236 | | | 53.99 | |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 89 of 128



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|------|-------------|-----------|--------------------|--------------------------|----------------------|
| 10/23 | Online Transfer Ref #Ib093Tnqy6 to Propel World American Express Card Xxxxxxxxxxx2528 On 10/22/20 | | | 3,000.00 | |
| 10/23 | American Express ACH Pmt 201023 M1812 Evander Kane | | | 5,000.00 | 8,373.32 |
| 10/26 | Purchase Authorized On 10/22 Maggianos San Jose San Jose CA S300296728381280 Card 7236 | | | 27.75 | |
| 10/26 | Purchase Authorized On 10/22 Little Caesar's 33 San Jose CA S300297082177530 Card 7236 | | | 10.73 | |
| 10/26 | Recurring Payment Authorized On 10/23 Ccbill.Com *Onlyfa 888 5969279 CA S580297526817736 Card 7236 | | | 20.00 | |
| 10/26 | Recurring Payment Authorized On 10/24 Ccbill.Com *Onlyfa 888 5969279 CA S460298444890577 Card 7236 | | | 9.99 | |
| 10/26 | Check | 162 | | 1,700.00 | 6,604.85 |
| 10/29 | Check | 163 | | 360.00 | 6,244.85 |
| 10/30 | eDeposit IN Branch/Store 10/30/20 11:31:39 Am 1790 S Bascom Ave Campbell CA 7236 | | 1,251.81 | | |
| 10/30 | eDeposit IN Branch/Store 10/30/20 11:34:41 Am 1790 S Bascom Ave Campbell CA 7236 | | 40,442.19 | | |
| 10/30 | Zelle to Kane Anna On 10/30 Ref #Pp0956Kzxk | | | 2,500.00 | |
| 10/30 | Interest Payment | | 0.11 | | 45,438.96 |
| **Ending balance on 10/31** | | | | | **45,438.96** |
| **Totals** | | | **$88,829.60** | **$56,591.27** | |

### Summary of checks written *(checks listed are also displayed in the preceding Transaction history section)*

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|--------|------|----------|
| 161 | 10/15 | 17,990.63 | 163 | 10/29 | 360.00 | 164 | 10/19 | 460.00 |
| 162 | 10/26 | 1,700.00 | | | | | | |

### Summary of Overdraft and Returned Item Fees

| | Total this statement period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $35.00 |

*Year to date totals reflect fees assessed or reversed since the first full statement period of the calendar year. Negative values indicate that fee reversals exceed fees assessed.*

---

### Important Account Information

Effective on or after November 30, 2020, (1) Wells Fargo branches will no longer be able to issue Wells Fargo Instant Issue Debit Cards and/or Business Instant Issue Debit Cards in certain circumstances, and (2) Wells Fargo branches in the states of South Carolina and Washington will no longer be able to issue Wells Fargo Instant Issue Debit Cards, Wells Fargo Business Instant Issue Debit Cards, and/or EasyPay Instant Cards. If you need a replacement card, you may request one by signing on to Wells Fargo Online® or calling the number on your statement. Once requested, replacement cards typically arrive in 5 to 7 calendar days. If you previously added your current Wells Fargo Debit Card or EasyPay Card to your Wells Fargo-supported digital wallet, you may continue to make purchases and access Wells Fargo ATMs using your digital wallet while you wait for your replacement card to arrive. For more details on digital wallets, please visit wellsfargo.com/mobile/payments.



## ⊃ Wells Fargo Portfolio Checking (continued)

IMPORTANT ACCOUNT INFORMATION

**Regulation D and Wells Fargo withdrawal and transfer restrictions on all savings accounts have been discontinued.**

The Federal Reserve Board recently removed Regulation D's six transaction limit on certain withdrawals and transfers from savings accounts, and allowed banks to suspend enforcement of that limit at each bank's discretion. Your Deposit Account Agreement states that both Regulation D and Wells Fargo limit certain types of withdrawals and transfers from a savings account to a combined total of six per monthly fee period. This message is to advise you that these limits were removed in May 2020. We have also discontinued charging the related excess activity fees, and have ceased account conversions and account closures related to the six withdrawal or transfer limit.

While it will take a period of time to update our disclosures and other materials, the changes described above apply to your account immediately and allow you to make withdrawals and transfers, including online and mobile, from your savings account without regard to the previous limit of six transactions. If you have any questions about your account, please call the phone number at the top of your statement or visit your Wells Fargo branch.

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo program. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on about the 2nd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs), FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors®) and credit balances (including 10% of mortgage balances).

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

**Other Wells Fargo Benefits**

The benefit of having no fee cashier's checks and money orders is no longer limited to only your primary Wells Fargo Portfolio Checking account within the Portfolio by Wells Fargo program. Those fees are waived if you have any qualified Consumer account that offers no fee cashier's checks or money orders as an account benefit.



# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** ℠
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932,** *TTY:* 1-800-600-4833
*Spanish:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

EVANDER KANE
8012 WILES RD
CORAL SPRINGS FL 33067-2072

## November 30, 2020

| | |
|---|---|
| **Total assets:** | **$5,605.09** |
| **Total liabilities:** | **$82,627.81** |
| Qualifying Balance: | $88,232.90 |
| Deposit Balance: | $5,605.09 |

**Contents** *Page*

Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . 4
Wells Fargo Credit Card. . . . . . . . . . . . . . . . . . . 7
Go Far™ Rewards. . . . . . . . . . . . . . . . . . . . . . . 8

554999



# Your Portfolio by Wells Fargo overview

## Assets

| Account  (Account Number) | Balance this month ($) |
|---|---|
| Wells Fargo Portfolio Checking ▨ 1607) | 5,605.09 |
| **Total assets** | **$5,605.09** |

## Liabilities

| Account  (Account Number) | Outstanding balance this month ($) |
|---|---|
| Wells Fargo Credit Card  † ▨ 2528) | 82,627.81 |
| **Total liabilities** | **$82,627.81** |

*† Refer to your statement for actual statement dates.*

## Available credit

*The information below may not be current.  Be sure to verify the credit available on your accounts when accessing your credit lines.*

| Account | Approved credit line | Credit used | Credit available |
|---|---|---|---|
| Wells Fargo Credit Card  (XXXX-XXXXXX-X2528) | 82,200.00 | 82,627.81 | 0.00 |
| **Total available credit** | **$82,200.00** | **$82,627.81** | **$0.00** |

## Go Far™ Rewards

| Rewards ID ▨ ) | |
|---|---|
| Available balance | 28,911 |
| *Pending relationship bonus rewards* | 20,544 |

---

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Advisors, which is a trade name used by Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, Members SIPC, registered broker-dealers and separate non-bank affiliates of Wells Fargo & Company; and (3) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 93 of 128

555000



 **Your Portfolio by Wells Fargo overview** (continued)

**Other Wells Fargo Benefits**

Please take a few minutes to review the accounts that are linked to your Portfolio by Wells Fargo program. To see the accounts that are linked to your Portfolio program, please go to the section of this statement titled "Your Portfolio by Wells Fargo Overview". Or, sign onto Wells Fargo Online and at the top of the Account Summary page, click on "Explore Program and Benefits", and this will take you to the Balance and Benefits page. To view the Balance and Benefits page from your mobile device, log into the Wells Fargo app and at the top of the Account Summary page, tap "Portfolio by Wells Fargo". Linked eligible accounts make up your Portfolio by Wells Fargo statement-ending qualifying balance and are used to determine if you are eligible to avoid the monthly service fee, and to get pricing discounts and other benefits. If you do not see all of the accounts you would like included in your Portfolio by Wells Fargo program, please contact your banker or call the number listed on the first page of this statement for assistance with linking the accounts.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 94 of 128



# Wells Fargo Portfolio Checking

## Statement period activity summary

| | |
|---|---:|
| Balance on 11/1 | 45,438.96 |
| Deposits/Additions | 181,902.04 |
| Withdrawals/Subtractions | 221,735.91 |
| **Balance on 11/30** | **$5,605.09** |

Account number: �emptyset 1607

**EVANDER KANE**

*Wells Fargo Bank, N.A. (Member FDIC)*

*CALIFORNIA account terms and conditions apply*

Questions about your account: **1-800-742-4932**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Overdraft protection

Your account is linked to the following for Overdraft Protection:

■ Credit card ▉▉▉▉ 2528

## Interest you've earned

| | |
|---|---:|
| Interest paid this statement | $0.15 |
| Interest earned this statement period | $0.15 |
| Average collected balance | $18,118.42 |
| Annual percentage yield earned | 0.01% |
| Interest paid this year | $10.22 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---:|---:|---:|
| | **Beginning balance on 11/1** | | | | **45,438.96** |
| 11/2 | Online Transfer Ref #Ib095Tq8Dx to Propel World American Express Card Xxxxxxxxxxx2528 On 11/02/20 | | | 20,000.00 | |
| 11/2 | American Express ACH Pmt 201102 M0682 Evander Kane | | | 4,000.00 | 21,438.96 |
| 11/3 | Purchase Authorized On 11/02 Evi* Seminole Hard 702 8553000 FL S380307769610818 Card 7236 | | | 16,192.50 | 5,246.46 |
| 11/5 | eDeposit IN Branch/Store 11/05/20 03:21:51 Pm 1790 S Bascom Ave Campbell CA 7236 | | 164,368.89 | | 169,615.35 |
| 11/6 | eDeposit IN Branch/Store 11/06/20 09:13:35 Am 1790 S Bascom Ave Campbell CA 7236 | | 1,033.00 | | |
| 11/6 | Wire Trans Svc Charge - Sequence: 201106201278 Srf# 0003090311557814 Trn#201106201278 Rfb# | | | 45.00 | |
| 11/6 | Purchase Authorized On 11/04 Dor Tax Payments Raleigh NC S300309801761851 Card 7236 | | | 872.15 | |
| 11/6 | Purchase Authorized On 11/04 Dor Tax Payments Raleigh NC S460309801773894 Card 7236 | | | 18.00 | |
| 11/6 | Purchase Bank Check OR Draft | | | 17,990.63 | |
| 11/6 | Withdrawal Made In A Branch/Store | | | 20,000.00 | |
| 11/6 | Withdrawal Made In A Branch/Store | | | 10,000.00 | |
| 11/6 | WT 201106 201278 Royal Bank of Canad /Bnf=Evander Kane Srf# 0003090311557814 Trn#201106201278 Rfb# | | | 70,000.00 | 51,722.57 |
| 11/9 | Zelle to Kane Evander Ref #Pp096R23Y7 | | | 100.00 | |
| 11/9 | Withdrawal Made In A Branch/Store | | | 10,000.00 | |
| 11/9 | American Express ACH Pmt 201109 M9618 Evander Kane | | | 1,000.00 | 40,622.57 |
| 11/10 | Purchase Authorized On 11/10 Taqueria El Ranchito San Jose CA P00000000586054309 Card 7236 | | | 2.19 | |
| 11/10 | American Express ACH Pmt 201110 M5752 Evander Kane | | | 19,384.45 | 21,235.93 |
| 11/12 | Recurring Payment Authorized On 11/09 Ccbill.Com *Onlyfa 888 5969279 CA S460314537873129 Card 7236 | | | 5.99 | |
| 11/12 | Purchase Authorized On 11/09 Panera Bread #2044 408 267 1290 CA S300315043499813 Card 7236 | | | 43.75 | 21,186.19 |
| 11/16 | Purchase Authorized On 11/14 Drybar Holdings 8773792279 CA S380319505372519 Card 7236 | | | 20.00 | |
| 11/16 | Check | | | 193.28 | 20,992.91 |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 95 of 128

555002



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|------|-------------|-----------|---------------------|---------------------------|----------------------|
| 11/16 | Check | 166 | | 150.00 | |
| 11/16 | Mbfs Web Pay 201113 5001153101001 Evander Kane | | | 2,391.32 | |
| 11/16 | Check | 168 | | 900.00 | 17,531.59 |
| 11/17 | Wire Trans Svc Charge   Sequence: 201117154560 Srf# 0003090322742994 Trn#201117154560 Rfb# | | | 30.00 | |
| 11/17 | Recurring Payment Authorized On 11/16 Ritual Httpsritual.C CA S460321678754597 Card 7236 | | | 38.24 | |
| 11/17 | WT Fed#03908 Professional Bank /Ftr/Bnf=Evander Kane Srf# 0003090322742994 Trn#201117154560 Rfb# | | | 3,000.00 | 14,463.35 |
| 11/18 | Check | 171 | | 1,810.00 | 12,653.35 |
| 11/19 | Recurring Payment Authorized On 11/13 Ccbill.Com *Onlyfa 888 5969279 CA S460319208194081 Card 7236 | | | 16.99 | |
| 11/19 | Recurring Payment Authorized On 11/14 Ccbill.Com *Onlyfa 888 5969279 CA S380320223679526 Card 7236 | | | 18.00 | 12,618.36 |
| 11/20 | Recurring Payment Authorized On 11/17 Ccbill.Com *Onlyfa 888 5969279 CA S300322653192449 Card 7236 | | | 8.99 | |
| 11/20 | Purchase Authorized On 11/19 Amazon.Com*V207B32 Amzn.Com/Bill WA S460324307247318 Card 7236 | | | 29.41 | |
| 11/20 | Online Transfer Ref #Ib099772Gt to Propel World American Express Card Xxxxxxxxxxx2528 On 11/20/20 | | | 2,714.81 | 9,865.15 |
| 11/23 | Recurring Payment Authorized On 11/19 Ccbill.Com *Onlyfa 888 5969279 CA S380324495795051 Card 7236 | | | 9.90 | |
| 11/23 | Recurring Payment Authorized On 11/20 Ccbill.Com *Onlyfa 888 5969279 CA S580325394234182 Card 7236 | | | 9.90 | |
| 11/23 | American Express ACH Pmt 201123 M1472 Evander Kane | | | 6,000.00 | |
| 11/23 | American Express ACH Pmt 201123 M3324 Evander Kane | | | 3,500.00 | 345.35 |
| 11/24 | eDeposit IN Branch/Store 11/24/20 02:29:08 Pm 1790 S Bascom Ave Campbell CA 7236 | | 9,000.00 | | 9,345.35 |
| 11/27 | eDeposit IN Branch/Store 11/27/20 02:19:52 Pm 1250 Lincoln Ave San Jose CA 7236 | | 1,000.00 | | |
| 11/27 | eDeposit IN Branch/Store 11/27/20 03:39:06 Pm 65 N Winchester Blvd Santa Clara CA 7236 | | 5,000.00 | | |
| 11/27 | Recurring Payment Authorized On 11/23 Ccbill.Com *Onlyfa 888 5969279 CA S300328354277910 Card 7236 | | | 7.99 | |
| 11/27 | Recurring Payment Authorized On 11/23 Ccbill.Com *Onlyfa 888 5969279 CA S300328515178694 Card 7236 | | | 17.00 | |
| 11/27 | Purchase Bank Check OR Draft | | | 3,200.00 | |
| 11/27 | Withdrawal Made In A Branch/Store | | | 5,000.00 | 7,120.36 |
| 11/30 | eDeposit IN Branch/Store 11/30/20 10:02:33 Am 65 N Winchester Blvd Santa Clara CA 7236 | | 1,500.00 | | |
| 11/30 | Recurring Payment Authorized On 11/24 Ccbill.Com *Onlyfa 888 5969279 CA S460329445208118 Card 7236 | | | 9.99 | |
| 11/30 | American Express ACH Pmt 201130 M2624 Evander Kane | | | 3,005.43 | |
| 11/30 | Interest Payment | | 0.15 | | 5,605.09 |
| **Ending balance on 11/30** | | | | | **5,605.09** |
| **Totals** | | | **$181,902.04** | **$221,735.91** | |

### Summary of checks written *(checks listed are also displayed in the preceding Transaction history section)*

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|--------|------|----------|
| 166 | 11/16 | 150.00 | 168 | 11/16 | 900.00 | 171 * | 11/18 | 1,810.00 |
| 167 | 11/16 | 193.28 | | | | | | |

*\* Gap in check sequence.*

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 96 of 128

555003



 **Wells Fargo Portfolio Checking** (continued)

### Summary of Overdraft and Returned Item Fees

|  | Total this statement period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $35.00 |

*Year to date totals reflect fees assessed or reversed since the first full statement period of the calendar year. Negative values indicate that fee reversals exceed fees assessed.*

---

**Important Account Information**

Effective on or after November 30, 2020, (1) Wells Fargo branches will no longer be able to issue Wells Fargo Instant Issue Debit Cards and/or Business Instant Issue Debit Cards in certain circumstances, and (2) Wells Fargo branches in the states of South Carolina and Washington will no longer be able to issue Wells Fargo Instant Issue Debit Cards, Wells Fargo Business Instant Issue Debit Cards, and/or EasyPay Instant Cards. If you need a replacement card, you may request one by signing on to Wells Fargo Online® or calling the number on your statement. Once requested, replacement cards typically arrive in 5 to 7 calendar days. If you previously added your current Wells Fargo Debit Card or EasyPay Card to your Wells Fargo-supported digital wallet, you may continue to make purchases and access Wells Fargo ATMs using your digital wallet while you wait for your replacement card to arrive. For more details on digital wallets, please visit wellsfargo.com/mobile/payments.

---

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo program. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on about the 2nd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs), FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors®) and credit balances (including 10% of mortgage balances).

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

---

**Other Wells Fargo Benefits**

The benefit of having no fee cashier's checks and money orders is no longer limited to only your primary Wells Fargo Portfolio Checking account within the Portfolio by Wells Fargo program. Those fees are waived if you have any qualified Consumer account that offers no fee cashier's checks or money orders as an account benefit.



# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** ℠
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932,** *TTY:* 1-800-600-4833
*Spanish:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

EVANDER KANE
8012 WILES RD
CORAL SPRINGS FL 33067-2072

## December 31, 2020

| | |
|---|---|
| **Total assets:** | **$8,462.43** |
| **Total liabilities:** | **$73,477.13** |
| Qualifying Balance: | $81,939.56 |
| Deposit Balance: | $8,462.43 |

**Contents** *Page*

Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . 4
Wells Fargo Credit Card. . . . . . . . . . . . . . . . . . . . 8
Go Far™ Rewards. . . . . . . . . . . . . . . . . . . . . . . . 9



# Your Portfolio by Wells Fargo overview

## Assets

| Account (Account Number) | Balance this month ($) |
|---|---|
| Wells Fargo Portfolio Checking ▇▇607) | 8,462.43 |
| **Total assets** | **$8,462.43** |

## Liabilities

| Account (Account Number) | Outstanding balance this month ($) |
|---|---|
| Wells Fargo Credit Card † ▇▇2528) | 73,477.13 |
| **Total liabilities** | **$73,477.13** |

† *Refer to your statement for actual statement dates.*

## Available credit

The information below may not be current. Be sure to verify the credit available on your accounts when accessing your credit lines.

| Account | Approved credit line | Credit used | Credit available |
|---|---|---|---|
| Wells Fargo Credit Card (▇▇2528) | 82,200.00 | 73,477.13 | 2,709.00 |
| **Total available credit** | **$82,200.00** | **$73,477.13** | **$2,709.00** |

## Go Far™ Rewards

| Rewards ID ▇▇▇ | |
|---|---|
| Available balance | 47,175 |
| *Pending relationship bonus rewards* | 26,221 |

---

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Advisors, which is a trade name used by Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, Members SIPC, registered broker-dealers and separate non-bank affiliates of Wells Fargo & Company; and (3) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.

**Investment and Insurance Products are:**
**- Not Insured by the FDIC or Any Federal Government Agency**
**- Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate**
**- Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested**

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.



 **Your Portfolio by Wells Fargo overview** (continued)

**Other Wells Fargo Benefits**

Please take a few minutes to review the accounts that are linked to your Portfolio by Wells Fargo program. To see the accounts that are linked to your Portfolio program, please go to the section of this statement titled "Your Portfolio by Wells Fargo Overview". Or, sign onto Wells Fargo Online and at the top of the Account Summary page, click on "Explore Program and Benefits", and this will take you to the Balance and Benefits page. To view the Balance and Benefits page from your mobile device, log into the Wells Fargo app and at the top of the Account Summary page, tap "Portfolio by Wells Fargo". Linked eligible accounts make up your Portfolio by Wells Fargo statement-ending qualifying balance and are used to determine if you are eligible to avoid the monthly service fee, and to get pricing discounts and other benefits. If you do not see all of the accounts you would like included in your Portfolio by Wells Fargo program, please contact your banker or call the number listed on the first page of this statement for assistance with linking the accounts.

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 100 of 128

549516



# Wells Fargo Portfolio Checking

## Statement period activity summary

| | |
|---|---|
| Balance on 12/1 | 5,605.09 |
| Deposits/Additions | 45,009.41 |
| Withdrawals/Subtractions | 42,152.07 |
| **Balance on 12/31** | **$8,462.43** |

Account number: ▮▮▮▮ 1607

**EVANDER KANE**

*Wells Fargo Bank, N.A. (Member FDIC)*

*CALIFORNIA account terms and conditions apply*

Questions about your account: **1-800-742-4932**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Overdraft protection

Your account is linked to the following for Overdraft Protection:

- Credit card ▮▮▮▮ 2528

## Interest you've earned

| | |
|---|---|
| Interest paid this statement | $0.04 |
| Interest earned this statement period | $0.04 |
| Average collected balance | $5,087.74 |
| Annual percentage yield earned | 0.01% |
| Interest paid this year | $10.26 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | **Beginning balance on 12/1** | | | | **5,605.09** |
| 12/1 | eDeposit IN Branch/Store 12/01/20 10:04:18 Am 65 N Winchester Blvd Santa Clara CA 7236 | | 3,100.00 | | |
| 12/1 | Recurring Payment Authorized On 11/27 Ccbill.Com *Onlyfa 888 5969279 CA S580332585778773 Card 7236 | | | 3.00 | |
| 12/1 | Purchase Bank Check OR Draft | | | 6,500.00 | |
| 12/1 | Zelle to Bella On 12/01 Ref #Rp09C7Q5Rb | | | 500.00 | 1,702.09 |
| 12/2 | Recurring Payment Authorized On 11/29 Ccbill.Com *Onlyfa 888 5969279 CA S380334576308636 Card 7236 | | | 30.00 | |
| 12/2 | Recurring Payment Authorized On 11/29 Ccbill.Com *Onlyfa 888 5969279 CA S580334576997503 Card 7236 | | | 8.00 | 1,664.09 |
| 12/4 | Recurring Payment Authorized On 11/30 Ccbill.Com *Onlyfa 888 5969279 CA S380336260777938 Card 7236 | | | 17.00 | 1,647.09 |
| 12/7 | Purchase Authorized On 12/06 Drybar Holdings 8773792279 CA S300341505330710 Card 7236 | | | 20.00 | |
| 12/7 | Check | 165 | | 1,225.00 | 402.09 |
| 12/10 | eDeposit IN Branch/Store 12/10/20 10:53:50 Am 1790 S Bascom Ave Campbell CA 7236 | | 15,000.00 | | |
| 12/10 | Wire Trans Svc Charge Sequence: 201210164747 Srf# 0003090345842096 Trn#201210164747 Rfb# | | | 30.00 | |
| 12/10 | Wire Trans Svc Charge Sequence: 201210164882 Srf# 0003090345324096 Trn#201210164882 Rfb# | | | 35.00 | |
| 12/10 | Purchase Authorized On 12/08 Ua Inflt 016990 Houston TX S380344002492916 Card 7236 | | | 8.99 | |
| 12/10 | WT Fed#06374 Alaska USA Federal /Ftr/Bnf=Bradley Lawson Srf# 0003090345842096 Trn#201210164747 Rfb# | | | 2,800.00 | |
| 12/10 | WT 201210 164882 Commonwealth Bank O /Bnf=Declan White Srf# 0003090345324096 Trn#201210164882 Rfb# | | | 4,000.00 | 8,528.10 |
| 12/11 | eDeposit IN Branch/Store 12/11/20 02:10:49 Pm 65 N Winchester Blvd Santa Clara CA 7236 | | 5,000.00 | | |
| 12/11 | American Express ACH Pmt 201211 M5142 Evander Kane | | | 6,511.24 | 7,016.86 |
| 12/14 | eDeposit IN Branch/Store 12/12/20 12:02:54 Pm 65 N Winchester Blvd Santa Clara CA 7236 | | 9,009.37 | | |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 101 of 128



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|------|-------------|-----------|---------------------|---------------------------|----------------------|
| 12/14 | Recurring Payment Authorized On 12/09 Ccbill.Com *Fenix 888 5969279 CA S300344538134460 Card 7236 | | | 5.99 | |
| 12/14 | Recurring Payment Authorized On 12/10 Ccbill.Com *Fenix 888 5969279 CA S580346273648698 Card 7236 | | | 21.00 | |
| 12/14 | Recurring Payment Authorized On 12/10 Ccbill.Com *Fenix 888 5969279 CA S460346274902739 Card 7236 | | | 6.00 | |
| 12/14 | Recurring Payment Authorized On 12/11 Ccbill.Com *Fenix 888 5969279 CA S580347061279805 Card 7236 | | | 24.00 | |
| 12/14 | Recurring Payment Authorized On 12/11 Ccbill.Com *Fenix 888 5969279 CA S580347062402177 Card 7236 | | | 6.00 | |
| 12/14 | Online Transfer Ref #Ib09Fcsng9 to Propel World American Express Card Xxxxxxxxxxx2528 On 12/12/20 | | | 6,000.00 | |
| 12/14 | Online Transfer Ref #Ib09Fcsv9M to Propel World American Express Card Xxxxxxxxxxx2528 On 12/12/20 | | | 3,000.00 | 6,963.24 |
| 12/15 | Non WF ATM Withdrawal Authorized On 12/15 1 Almaden Blvd San Jose CA 0058035061711543T ATM ID T309A452 Card 7236 | | | 903.00 | 6,060.24 |
| 12/16 | Wire Trans Svc Charge Sequence: 201216161935 Srf# 0003090351436937 Trn#201216161935 Rfb# | | | 30.00 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S580348312995705 Card 7236 | | | 4.00 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S300348315463605 Card 7236 | | | 15.00 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S580348319450080 Card 7236 | | | 25.00 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S460348330645925 Card 7236 | | | 14.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S380348341344155 Card 7236 | | | 5.00 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S580348344057012 Card 7236 | | | 25.00 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S460348612376229 Card 7236 | | | 6.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S580348613006427 Card 7236 | | | 6.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S460348614151145 Card 7236 | | | 14.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S580348615082608 Card 7236 | | | 7.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S460348628780011 Card 7236 | | | 6.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S460348629484733 Card 7236 | | | 14.99 | |
| 12/16 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S580348630256403 Card 7236 | | | 6.99 | |
| 12/16 | WT Fed#05745 Mufg Union Bank, N /Ftr/Bnf=Finestone Hayes Llp Client Trust Srf# 0003090351436937 Trn#201216161935 Rfb# | | | 5,000.00 | 875.32 |
| 12/17 | Online Transfer Ref #Ib09G76X4D From Propel World American Express Card Xxxxxxxxxxx2528 On 12/17/20 | | 3,000.00 | | |
| 12/17 | Recurring Payment Authorized On 12/13 Ccbill.Com *Fenix 888 5969279 CA S380349208648339 Card 7236 | | | 16.99 | |
| 12/17 | Recurring Payment Authorized On 12/16 Ritual Httpsritual.C CA S460351167888942 Card 7236 | | | 38.24 | |
| 12/17 | Cash eWithdrawal in Branch/Store 12/17/2020 09:14 Am 9354 Wilshire Blvd Beverly Hills CA 7236 | | | 2,000.00 | 1,820.09 |
| 12/18 | Purchase Authorized On 12/15 Sp * Skims Httpsskimsbod CA S460351193236533 Card 7236 | | | 139.84 | |
| 12/18 | Purchase Intl Authorized On 12/17 Sp * Merabi Manchester Gbr S300352667585051 Card 7236 | | | 218.03 | |
| 12/18 | International Purchase Transaction Fee | | | 6.54 | 1,455.68 |
| 12/21 | Recurring Payment Authorized On 12/17 Ccbill.Com *Fenix 888 5969279 CA S380352556010834 Card 7236 | | | 15.00 | |
| 12/21 | Purchase Authorized On 12/19 Amazon.Com*Xx2Dj9G | | | 29.41 | |

549518



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|------|-------------|-----------|---------------------|---------------------------|----------------------|
| 12/21 | Recurring Payment Authorized On 12/19 Ccbill.Com *Fenix 888 5969279 CA S460354495969298 Card 7236 | | | 9.90 | 1,401.37 |
| 12/22 | eDeposit IN Branch/Store 12/22/20 09:43:54 Am 1790 S Bascom Ave Campbell CA 7236 | | 9,900.00 | | |
| 12/22 | Purchase Intl Authorized On 12/20 Sp * Leah Alexandr Vancouver Can S380355806414692 Card 7236 | | | 266.29 | |
| 12/22 | International Purchase Transaction Fee | | | 7.98 | |
| 12/22 | Purchase Intl Authorized On 12/20 Sp * Leah Alexandr Vancouver Can S460355833429669 Card 7236 | | | 153.36 | |
| 12/22 | International Purchase Transaction Fee | | | 4.60 | |
| 12/22 | Purchase Authorized On 12/21 Sp * Oeufnyc.Com Httpsoeufnyc. NY S380356846155703 Card 7236 | | | 191.20 | |
| 12/22 | Purchase Authorized On 12/21 Sp * Posh Peanut I Poshpeanutsco CA S580356854094147 Card 7236 | | | 154.05 | 10,523.89 |
| 12/23 | Recurring Payment Authorized On 12/20 Ccbill.Com *Fenix 888 5969279 CA S580355394443290 Card 7236 | | | 4.99 | |
| 12/23 | Purchase Authorized On 12/20 Sp * Skims Httpsskimsbod CA S580356112464296 Card 7236 | | | 166.09 | 10,352.81 |
| 12/24 | Zelle to Kane Evander On 12/24 Ref #Rp09Hm6Xzm | | | 500.00 | 9,852.81 |
| 12/28 | Recurring Payment Authorized On 12/24 Ccbill.Com *Fenix 888 5969279 CA S300359445401678 Card 7236 | | | 9.99 | |
| 12/28 | Purchase Authorized On 12/24 Sp * Ultracoractiv Httpsultracor CA S300359633035932 Card 7236 | | | 276.06 | |
| 12/28 | Recurring Payment Authorized On 12/24 Ccbill.Com *Fenix 888 5969279 CA S380359839502555 Card 7236 | | | 49.00 | |
| 12/28 | Recurring Payment Authorized On 12/24 Ccbill.Com *Fenix 888 5969279 CA S460359840597676 Card 7236 | | | 3.00 | |
| 12/28 | Recurring Payment Authorized On 12/24 Ccbill.Com *Fenix 888 5969279 CA S460359842288225 Card 7236 | | | 10.00 | |
| 12/28 | Purchase Authorized On 12/26 Sp * Posh Peanut I Poshpeanutsco CA S300361686962682 Card 7236 | | | 342.21 | |
| 12/28 | Purchase Authorized On 12/26 Sp * Little Bum Bu Httpsnovacrys CA S300361849764515 Card 7236 | | | 124.41 | 9,038.14 |
| 12/30 | Purchase Authorized On 12/28 Sp * Skims Httpsskimsbod CA S460364146376779 Card 7236 | | | 126.76 | |
| 12/30 | Purchase Authorized On 12/29 Sp * Joah Brown Shopcoolie.My CA S460364852299037 Card 7236 | | | 261.69 | 8,649.69 |
| 12/31 | Purchase Authorized On 12/29 Sp * Alexa Kelley Alexakelley.M CA S300365168559380 Card 7236 | | | 187.30 | |
| 12/31 | Interest Payment | | 0.04 | | 8,462.43 |
| **Ending balance on 12/31** | | | | | **8,462.43** |
| **Totals** | | | **$45,009.41** | **$42,152.07** | |

**Summary of checks written** *(checks listed are also displayed in the preceding Transaction history section)*

| Number | Date | $ Amount |
|--------|------|----------|
| 165 | 12/7 | 1,225.00 |

**Summary of Overdraft and Returned Item Fees**

| | Total this statement period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $35.00 |

*Year to date totals reflect fees assessed or reversed since the first full statement period of the calendar year. Negative values indicate that fee reversals exceed fees assessed.*

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 103 of 128

549519



## ○ **Wells Fargo Portfolio Checking** (continued)

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo program. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on about the 2nd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs), FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors®) and credit balances (including 10% of mortgage balances).
**Investment and Insurance Products are:**
**- Not Insured by the FDIC or Any Federal Government Agency**
**- Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate**
**- Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested**

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

**Other Wells Fargo Benefits**

The benefit of having no fee cashier's checks and money orders is no longer limited to only your primary Wells Fargo Portfolio Checking account within the Portfolio by Wells Fargo program. Those fees are waived if you have any qualified Consumer account that offers no fee cashier's checks or money orders as an account benefit.

Case: 21-50028    Doc# 172-1    Filed: 06/25/21    Entered: 06/25/21 17:29:42    Page 104 of 128

549520



# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** ℠
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932,** *TTY:* 1-800-600-4833
*Spanish:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

EVANDER KANE
8012 WILES RD
CORAL SPRINGS FL 33067-2072

## January 31, 2021

| | |
|---|---|
| **Total assets:** | **$(85.19)** |
| **Total liabilities:** | **$0.00** |
| Qualifying Balance: | $(85.19) |
| Deposit Balance: | $(85.19) |

**Contents**                                *Page*

Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . 3
Go Far™ Rewards. . . . . . . . . . . . . . . . . . . . . . . . 6

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 105 of 128

522745



# Your Portfolio by Wells Fargo overview

## Assets

| Account *(Account Number)* | Balance this month ($) |
|---|---|
| Wells Fargo Portfolio Checking *(6649171607)* | (85.19) |
| **Total assets** | **$(85.19)** |

## Go Far™ Rewards

| **Rewards ID** ▬▬▬▬ | |
|---|---|
| Available balance | 0 |
| *Pending relationship bonus rewards* | 32,159 |

---

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Advisors, which is a trade name used by Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, Members SIPC, registered broker-dealers and separate non-bank affiliates of Wells Fargo & Company; and (3) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.
**Investment and Insurance Products are:**
**- Not Insured by the FDIC or Any Federal Government Agency**
**- Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate**
**- Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested**

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

---

**Other Wells Fargo Benefits**

Please take a few minutes to review the accounts that are linked to your Portfolio by Wells Fargo program. To see the accounts that are linked to your Portfolio program, please go to the section of this statement titled "Your Portfolio by Wells Fargo Overview". Or, sign onto Wells Fargo Online and at the top of the Account Summary page, click on "Explore Program and Benefits", and this will take you to the Balance and Benefits page. To view the Balance and Benefits page from your mobile device, log into the Wells Fargo app and at the top of the Account Summary page, tap "Portfolio by Wells Fargo". Linked eligible accounts make up your Portfolio by Wells Fargo statement-ending qualifying balance and are used to determine if you are eligible to avoid the monthly service fee, and to get pricing discounts and other benefits. If you do not see all of the accounts you would like included in your Portfolio by Wells Fargo program, please contact your banker or call the number listed on the first page of this statement for assistance with linking the accounts.

522746

SK000106



# Wells Fargo Portfolio Checking

## Statement period activity summary

| | |
|---|---|
| Balance on 1/1 | 8,462.43 |
| Deposits/Additions | 11,000.02 |
| Withdrawals/Subtractions | 19,547.64 |
| **Balance on 1/31** | **-$85.19** |

Account number: ████ 1607

**EVANDER KANE**

*Wells Fargo Bank, N.A. (Member FDIC)*

*CALIFORNIA  account terms and conditions apply*

Questions about your account: **1-800-742-4932**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Interest you've earned

| | |
|---|---|
| Interest paid this statement | $0.02 |
| Interest earned this statement period | $0.02 |
| Average collected balance | $2,296.44 |
| Annual percentage yield earned | 0.01% |
| Interest paid this year | $0.02 |
| Total interest paid in **2020** | $10.26 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | **Beginning balance on 1/1** | | | | **8,462.43** |
| 1/4 | Recurring Payment Authorized On 12/29 Ccbill.Com *Fenix 888 5969279 CA S300364842593397 Card 7236 | | | 22.00 | |
| 1/4 | Recurring Payment Authorized On 12/29 Ccbill.Com *Fenix 888 5969279 CA S380364847604430 Card 7236 | | | 9.99 | |
| 1/4 | Purchase Authorized On 12/30 Chick Fil A #01584 Phoenix AZ S300366078957413 Card 7236 | | | 13.79 | |
| 1/4 | Recurring Payment Authorized On 12/31 Ccbill.Com *Fenix 888 5969279 CA S301001260974611 Card 7236 | | | 17.00 | |
| 1/4 | Recurring Payment Authorized On 01/01 Best Alarm Company 408 8712400 CA S381002039612173 Card 7236 | | | 114.00 | |
| 1/4 | Purchase Intl Authorized On 01/01 Sp * Merabi Manchester Gbr S301002104804468 Card 7236 | | | 260.07 | |
| 1/4 | International Purchase Transaction Fee | | | 7.80 | |
| 1/4 | Purchase Authorized On 01/01 Sp * Nickho Rey Nickhorey.Mys TX S381002216891158 Card 7236 | | | 225.00 | |
| 1/4 | Purchase Intl Authorized On 01/03 Sp * Lemonlunar Bolton Gbr S301003709142670 Card 7236 | | | 171.09 | |
| 1/4 | International Purchase Transaction Fee | | | 5.13 | |
| 1/4 | Purchase Intl Authorized On 01/03 Sp * Satya Port Moody Can S381003820376162 Card 7236 | | | 35.25 | |
| 1/4 | International Purchase Transaction Fee | | | 1.05 | |
| 1/4 | Purchase Authorized On 01/03 Mastro'S Oceanclub Scottsdale AZ S301004168248790 Card 7236 | | | 454.93 | 7,125.33 |
| 1/5 | Purchase Authorized On 01/04 Sp * Heiress Cloth Httpsheiressb FL S581004662979614 Card 7236 | | | 169.52 | 6,955.81 |
| 1/6 | Recurring Payment Authorized On 01/03 Ccbill.Com *Fenix 888 5969279 CA S581003588635568 Card 7236 | | | 12.00 | |
| 1/6 | Recurring Payment Authorized On 01/03 Ccbill.Com *Fenix 888 5969279 CA S301003591796899 Card 7236 | | | 10.00 | |
| 1/6 | Purchase Authorized On 01/05 Sp * Skims Httpsskimsbod CA S581005639121077 Card 7236 | | | 190.14 | 6,743.67 |
| 1/7 | eDeposit IN Branch/Store 01/07/21 04:05:27 Pm 14595 N Scottsdale Rd Scottsdale AZ | | 11,000.00 | | |
| 1/7 | Purchase Authorized On 01/06 Sp * Mutha Httpsmuthasto TX S301006688901755 Card 7236 | | | 159.00 | |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 107 of 128

522747



## Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| 1/7 | Purchase Authorized On 01/06 Sp * Afrmclothing Httpsarrivecl CA S461007099027689 Card 7236 | | | 186.62 | 17,398.05 |
| 1/8 | Wire Trans Svc Charge   Sequence: 210108061202 Srf# 0006313007688619 Trn#210108061202 Rfb# | | | 30.00 | |
| 1/8 | Purchase Authorized On 01/07 Sp * Posh Peanut l Poshpeanutsco CA S381007588955595 Card 7236 | | | 53.55 | |
| 1/8 | Purchase Authorized On 01/07 Sp * Little Sleepi Httpslittlesl CA S381007845533775 Card 7236 | | | 69.92 | |
| 1/8 | WT Fed#05530 Liberty Bank /Ftr/Bnf=Greg Henehan Srf# 0006313007688619 Trn#210108061202 Rfb# | | | 11,000.00 | |
| 1/8 | Zelle to Dussault Morgan On 01/08 Ref #Rp09Lh2F79 | | | 500.00 | |
| 1/8 | American Express ACH Pmt 210108 M0416 Evander Kane | | | 4,000.00 | 1,744.58 |
| 1/11 | Purchase Authorized On 01/08 Sp * Newton Baby, Staging.Newto NY S301008707899864 Card 7236 | | | 327.74 | |
| 1/11 | Recurring Payment Authorized On 01/09 Ccbill.Com *Onlyf 888 5969279 CA S381009538510871 Card 7236 | | | 5.99 | |
| 1/11 | Purchase Authorized On 01/09 Staples 0010 Scottsdale AZ S581009797014125 Card 7236 | | | 11.04 | |
| 1/11 | Purchase Authorized On 01/09 Oregano's Bistro 1 Scottsdale AZ S581009829323111 Card 7236 | | | 35.51 | |
| 1/11 | Purchase Authorized On 01/09 C2 Tactical 101 An Phoenix AZ S381010026296563 Card 7236 | | | 184.46 | |
| 1/11 | Purchase Authorized On 01/09 C2 Tactical 101 An Phoenix AZ S461010032694444 Card 7236 | | | 170.20 | |
| 1/11 | Zelle to Dussault Morgan On 01/10 Ref #Rp09Lvwjr7 | | | 500.00 | 509.64 |
| 1/13 | Purchase Authorized On 01/09 Sp * Skims Httpsskimsbod CA S301009740907012 Card 7236 | | | 187.91 | 321.73 |
| 1/15 | Purchase Authorized On 01/13 Tst* Pieology   Av Avondale AZ S301014055788293 Card 7236 | | | 26.00 | |
| 1/15 | Purchase Authorized On 01/14 Sports Venture Chandler AZ S461014768837216 Card 7236 | | | 141.96 | 153.77 |
| 1/19 | Recurring Payment Authorized On 01/12 Ccbill.Com *Onlyf 888 5969279 CA S461013017382444 Card 7236 | | | 49.00 | |
| 1/19 | Recurring Payment Authorized On 01/13 Ccbill.Com *Onlyf 888 5969279 CA S581013341928615 Card 7236 | | | 19.99 | |
| 1/19 | Recurring Payment Authorized On 01/13 Ccbill.Com *Onlyf 888 5969279 CA S461014209320030 Card 7236 | | | 16.99 | |
| 1/19 | Purchase Authorized On 01/14 Tst* Pieology   Av Avondale AZ S581014744007970 Card 7236 | | | 14.79 | |
| 1/19 | Recurring Payment Authorized On 01/15 Ritual Httpsritual.C CA S461015682634640 Card 7236 | | | 38.24 | 14.76 |
| 1/22 | Recurring Payment Authorized On 01/19 Ccbill.Com *Onlyf 888 5969279 CA S461019496437527 Card 7236 | | | 9.99 | 4.77 |
| 1/27 | Recurring Payment Authorized On 01/24 Ccbill.Com *Onlyf 888 5969279 CA S581024445719964 Card 7236 | | | 9.99 | 5.22 |
| 1/28 | Overdraft Fee For A Transaction Posted On 01/27 $9.99 Recurring Payment Authori Zed On 01/24 Ccbill.Com *Onlyf 888 5969 | | | 35.00 | |
| 1/28 | Recurring Payment Authorized On 01/24 Ccbill.Com *Onlyf 888 5969279 CA S461024841032039 Card 7236 | | | 9.99 | 50.21 |
| 1/29 | Overdraft Fee For A Transaction Posted On 01/28 $9.99 Recurring Payment Authori Zed On 01/24 Ccbill.Com *Onlyf 888 5969 | | | 35.00 | |
| 1/29 | Interest Payment | | 0.02 | | 85.19 |
| **Ending balance on 1/31** | | | | | **-85.19** |
| **Totals** | | | **$11,000.02** | **$19,547.64** | |

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 108 of 128



 **Wells Fargo Portfolio Checking** (continued)

### Summary of Overdraft and Returned Item Fees

| | Total this statement period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $70.00 | $70.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

*Year to date totals reflect fees assessed or reversed since the first full statement period of the calendar year. Negative values indicate that fee reversals exceed fees assessed.*

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo program. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on about the 2nd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs), FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors®) and credit balances (including 10% of mortgage balances).
**Investment and Insurance Products are:**
**- Not Insured by the FDIC or Any Federal Government Agency**
**- Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate**
**- Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested**

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

522749

# EXHIBIT "L"

1      UNITED STATES BANKRUPTCY COURT
            NORTHERN DISTRICT OF CALIFORNIA
2                 SAN JOSE DIVISION
            CASE NO.: 21-50028-SLJ
3                    Chapter 7

4    In re

5    EVANDER FRANK KANE,

6         Debtor.
     _____/
7

8

9

     RULE 2004
10   EXAMINATION AND
     DUCES TECUM
11   DEPOSITION OF:          **EVANDER FRANK KANE**

12   TAKEN:                  Pursuant to Notice by
                             Counsel for Centennial Bank
13

     DATE:                   March 24, 2021
14

     TIME:                   2:01 p.m. to 5:14 p.m. (EST)
15

     LOCATION:               Zoom videoconference
16

     REPORTED BY:            Melanie Keefe, FPR
17                           Notary Public
                             State of Florida at Large
18

19

20

21

22

23

24

25

─────REGENCY REPORTING SERVICE, INC. (813)224-0224─────

```
 1   APPEARANCES:      ANDREW J. GHEKAS, ESQUIRE
                       Anthony & Partners, LLC
 2                     100 South Ashley Drive
                       Suite 1600
 3                     Tampa, Florida  33602

 4                         Attorney for Centennial Bank

 5                     STEPHEN D. FINESTONE, ESQUIRE
                       Finestone Hayes LLP
 6                     456 Montgomery Street
                       20th Floor
 7                     San Francisco, California  94104

 8                         Attorney for the Debtor

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        Q.   And who is Perry Eugene Kane?

2        A.   It's my dad.

3        Q.   If we go to July 16 -- scratch that.  Let's

4  continue.  When I went through these starting in September

5  and continuing through --

6        A.   What page?

7        Q.   I haven't actually identified a page yet.  Sorry.

8  But I can now.  I was talking and scrolling at the same

9  time, but page 46, it starts on September 18.  There's

10  several recurring payments for September 13 and 23 to

11  London, GBR, and various amounts ranging from $40 to $8.  Do

12  you know what any of these were for?

13        A.   I -- I honestly don't.  No, I don't.

14        Q.   Okay.  Do you know what London, GBR, is?

15        A.   London, Great Britain, I'm assuming.

16        Q.   And then after September 24, there are several

17  recurring payments which are ccbill.com *Onlyfa.  Do you

18  know what these are?

19        A.   I don't, no.

20        Q.   Okay.  And so these --

21        A.   I don't recall -- sorry to interrupt.  I don't

22  know if I got a -- I guess this was on my debit card, but I

23  do recall me getting a new credit card because of something

24  I did not recognize at the time.  I couldn't tell you

25  exactly when that was, but I'm not sure if this London or

1    this other stuff has to do with that, but...

2         Q.   Well, for --

3         A.   Because they are strange amounts and they're very

4    nominal comparatively speaking.

5         Q.   Well, if we look and these are recurring

6    payments, if you scroll down, they continue throughout the

7    month of September as well as the month of October.  Do you

8    see on October 2 and 15 and 19 --

9         A.   Right.

10        Q.   -- 23, and then they also continue through

11   November, on November --

12        A.   Yeah, I have no idea what those are.

13        Q.   And also, in December and January 2021, so you

14   don't know what any of these withdrawals are?

15        A.   No.

16        Q.   All right.  Are you familiar with the site

17   OnlyFans?

18        A.   I know what it is, yes.

19        Q.   And to me, when I had to look it up, it looked

20   like either recurring subscription payments --

21        A.   That's actually -- yeah.  Well, yeah, that's what

22   you said they were.  They were recurring; is that correct?

23   It says --

24        Q.   Do you subscribe to that site at all?

25        A.   I do not, no.

1        Q.    Is there anybody else who has access to your

2    debit card or your -- or this Wells Fargo account?

3        A.    There shouldn't be.

4        Q.    All right.

5        A.    Or there shouldn't have been.

6        Q.    And then if we were to look on November 6, page

7    60, there are four entries here on November 6 and November

8    9, three of them, withdrawals made in branch/store.  One is

9    purchase bank check or draft in various amounts.  Do you

10   know what any of these were for?

11       A.    I know the one that you have highlighted for

12   17,990.63.  That's just because I know the amount.  That's

13   the payment for the mortgage on my Richland home.

14       Q.    I'm sorry.  Which one are you referring to?

15       A.    The November 6th payment that you have

16   highlighted for $17,990.63.

17       Q.    Okay.  Yes.

18       A.    That is the amount that I pay on my mortgage on

19   my Richland property.

20       Q.    And then the other three withdrawals made in --

21   made in a branch/store, do you know what those were for?

22       A.    I don't recall the other two.  The Royal Bank of

23   Canada, that seems to be money transferred.

24       Q.    Right.  I -- I was excluding that one --

25       A.    Oh, okay.  The other two I don't recall.

REGENCY REPORTING SERVICE, INC. (813)224-0224

1                    CERTIFICATE OF REPORTER

2    STATE OF FLORIDA            )

3    COUNTY OF HILLSBOROUGH      )

4

5            I, Melanie Keefe, Court Reporter, certify that I
     was authorized to and did stenographically report remotely
6    the deposition of EVANDER FRANK KANE; that a review of the
     transcript was requested; and that the transcript, pages 5
7    through 102, inclusive, is a true and complete record of my
     stenographic notes.

8
             I further certify that I am not a relative,
9    employee, attorney, or counsel of any of the parties, nor am
     I a relative or employee of any of the parties' attorney or
10   counsel connected with the action, nor am I financially
     interested in the action.

11
                        _s/ Melanie Keefe_____
12                      Melanie Keefe, FPR
                        Court Reporter
13   _____

14                    CERTIFICATE OF OATH

15   STATE OF FLORIDA            )

16   COUNTY OF HILLSBOROUGH      )

17           I, the undersigned authority, certify that
     EVANDER FRANK KANE personally appeared before me remotely
18   and was duly sworn.

19           WITNESS my hand and official seal this 8th day of
     April, 2021.

20

21                      _s/ Melanie Keefe_____
                        Melanie Keefe, FPR
22                      Notary Public
                        State of Florida
23                      My Commission No.: HH055410
                        Expires: December 9, 2024

24

25

          ——REGENCY REPORTING SERVICE, INC. (813)224-0224——

# EXHIBIT "M"

 **Royal Bank**

## RBC® Avion® Visa Infinite Privilege‡
*for Private Banking*

EVANDER KANE ▮▮▮▮ 4741
**STATEMENT FROM OCT 27 TO NOV 25, 2020**

1 OF 1

### PREVIOUS STATEMENT BALANCE $80,653.27

**EVANDER KANE**
▮▮▮▮ **PRIMARY**

| TRANSACTION DATE | POSTING DATE | ACTIVITY DESCRIPTION | AMOUNT ($) |
|---|---|---|---|
| NOV 09 | NOV 09 | PAYMENT - THANK YOU / PAIEMENT - MERCI | -$1,653.27 |
| | | 74510400314619988855407 | |
| NOV 24 | NOV 24 | PAYMENT - THANK YOU / PAIEMENT - MERCI | -$4,500.00 |
| | | 74510400329619980757406 | |
| NOV 25 | NOV 25 | CASH ADVANCE INTEREST 22.99% | $1,491.21 |
| | | **NEW BALANCE** | **$75,991.21** |

### Time to Pay

If you make only the Minimum Payment each month, we estimate it will take 653 year(s) and 4 month(s) to fully repay the outstanding balance. Our estimate is based on the New Balance shown on this statement and your current credit card account terms.

### INTEREST RATE CHART

| Rate (%) | Remaining Balance** | Expiry Date |
|---|---|---|
| 22.99 | $74,500.00 | |

** The "Determination of Interest" section on the back of your statement explains how interest is charged and how you may avoid interest charges on purchases and fees and the "Applying your payments" section explains how payments are applied to the Remaining Balances shown above.

### Travel with confidence

Enjoy the security of premium travel protection with your RBC® Avion® Visa Infinite Privilege‡ *for Private Banking* card. Rest easy knowing you are covered with premium travel insurances including Trip Cancellation, Trip Interruption and Lost or Stolen Baggage coverage.

**IMPORTANT INFORMATION**

### RBC REWARDS POINTS

| | |
|---|---|
| Previous Points balance | 77,360 |
| Points earned this statement | 0 |
| **New points balance** | **77,360** |

### CONTACT US

| | |
|---|---|
| Customer Service / Lost & Stolen | 1-888-769-2585 |
| Collect Outside of North America | 416-974-5944 |
| Web site | www.rbcrewards.com |

### PAYMENTS & INTEREST RATES

| | |
|---|---|
| **Minimum payment** | **$1,501.00** |
| **Payment due date** | **DEC 21, 2020** |
| Credit limit | $80,000.00 |
| Available credit | $4,008.79 |
| **Annual interest rates:** | |
| Purchases | 19.99% |
| Cash advances | 22.99% |

### CALCULATING YOUR BALANCE

| | |
|---|---|
| **Previous Statement Balance** | **$80,653.27** |
| Payments & credits | -$6,153.27 |
| Purchases & debits | $0.00 |
| Cash advances | $0.00 |
| Interest | $1,491.21 |
| Fees | $0.00 |
| **NEW BALANCE** | **$75,991.21** |

---

 **RBC ROYAL BANK**
CREDIT CARD PAYMENT CENTRE
P.O.BOX 4016, STATION "A"
TORONTO, ONTARIO M5W 2E6

| NEW BALANCE $75,991.21 | MINIMUM PAYMENT $1,501.00 | PAYMENT DUE DATE DEC 21, 2020 | AMOUNT PAID $ |
|---|---|---|---|

**RBC® Avion® Visa Infinite Privilege‡**
*for Private Banking*
▮▮▮▮ 4741

**Quick, convenient and secure ways to pay your credit card bill:**
· RBC Online Banking at www.rbcroyalbank.com/online
· RBC Mobile app - text "RBC" to 722722 to download

**Other payment options include:**
· RBC Royal Bank ATM
· Telephone Banking 1-800-769-2511
· Visit an RBC Royal Bank branch

RBC0190000_7169014_010-48749    03740

EVANDER KANE
8447 ISABEL PL
VANCOUVER BC  V6P 6R8

Case: 21-50028   Doc# 172-1   Filed: 06/25/21   Entered: 06/25/21 17:29:42   Page 118 of 128

**IMPORTANT INFORMATION ABOUT YOUR RBC ROYAL BANK CREDIT CARD STATEMENT**

*The following is a summary of certain terms and conditions of your credit card account and details about some of the information shown on your statement. Please refer to your credit card agreement for complete terms and conditions for your account. For more tips on reading your statement, go to rbc.com/cardstatement.*

**New Balance.** The Total Account Balance as of your Statement Date minus the total amount of Installments Not Yet Due as shown on your statement. This is the amount you must pay to avoid interest on your regular purchases and fees shown on this statement.

**Statement Period.** Your statement covers activity on your account from the day after your previous statement was prepared to the last day of this statement period (your **Statement Date**). If the date we would ordinarily prepare your statement falls on a date on which we do not process statements (such as weekends) we will prepare it on our next statement processing date. Your Payment Due Date will be adjusted accordingly.

**Total Account Balance.** The total amount of your previous account balance, plus all new purchases and debits, cash advances, interest, and fees shown on your statement, minus the amount of any payments and credits which have been posted to your account on or before your Statement Date. The Total Account Balance includes the total amount of Installments Not Yet Due as shown on your statement, and is the same as your New Balance if you do not have any installment plans.

**YOUR RESPONSIBILITIES**

**Review your statement carefully.** If you think there is an error, omission or irregularity, you must contact us no later than 30 days following your Statement Date at 1-800-769-2512. After 30 days, our records will be considered correct except for credits improperly applied to your account.

**Report lost or stolen cards.** If your card is lost or stolen, or if you have your card but suspect that it or your account number is being used by someone else, log in to RBC Online Banking or the RBC Mobile app and select the "Report Lost or Stolen Card" option, or call 1-800-769-2512, immediately. This obligation applies to Primary cardholders, Co-applicant cardholders and Authorized Users.

**Making your payment.** You may pay the New Balance (or if you have installment plans, the Total Account Balance) in full or in part at any time. However, you must pay at least the Minimum Payment by the Payment Due Date shown on the statement each month. If the Payment Due Date falls on a weekend or holiday, we will extend it to the next business day. Remember to allow sufficient time for payments to reach us by the Payment Due Date. Payments made by mail or through another financial institution may take several days to reach us and are not credited to your account until we have processed them. Branch payments will be credited to your account on the same day if made before the earlier of 6:00 p.m. local time or the branch closing time.

**Missed payments.** Missing payments (which means not making at least the Minimum Payment by the next Statement Date) will affect your interest rates as follows:

- If you miss making any Minimum Payment, you will lose the benefit of any introductory or promotional interest rate offer in which you are participating, and your standard cash advance and purchase interest rates will apply to any remaining balance(s) which were subject to that offer (subject to any further increases set out below) as of the first day of the third Statement Period following the missed payment (or the expiry date if it is earlier).

- Where you have installment plans and you miss making any Minimum Payment, all your installment plans will be automatically cancelled. The missed Monthly Principal payment(s) will continue to accrue interest at the installment plan interest rate(s) until paid in full. However, your Installments Not Yet Due will lose the benefit of such rate(s) and will be subject to your rate applicable to regular purchases as of the first day of your next Statement Period following the missed payment.

- In addition, if you miss making 2 or more Minimum Payments in any 12 month period, your standard cash advance and purchase interest rates will increase by 5% (8% if you are a Visa Classic Low Rate Option Cardholder) as of the first day of the third Statement Period following the missed payment that caused the rate increase. You will continue to pay the higher interest rates until you have paid your Minimum Payment by the next Statement Date for 6 consecutive months thereafter.

**READING YOUR STATEMENT**

**Activity Description.** Each transaction and amount credited or charged to your account during the Statement Period is described in this section, including the transaction and posting dates. If the transaction date is not available for any transaction, its posting date is used as the transaction date. Transactions converted to installment plans are marked by a ^ symbol in the activity description. Interest is always calculated from the transaction date. If there is more than one credit card on the account, transactions will be grouped by cardholder name, card number and relationship to the account. Primary and Co-applicant cardholders (but not Authorized Users) are responsible for all amounts charged to the account.

**Payments & Interest Rates.** This section displays the Minimum Payment and its Payment Due Date, your current credit limit, and available credit as of the Statement Date. Your available credit does not reflect transactions or payments made but not received by us by the Statement Date. Your current interest rates for cash advances and purchases are also shown, as well as the expiry date if any of those rates are temporary. Any promotional or installment plan rates are shown in the Interest Rate Chart.

**Interest Rate Chart.** This chart sets out the interest rate(s) that apply to the Total Account Balance, any remaining balances associated with those rates, and expiry dates for any promotional and installment plan rates. Offers that we may have made to you but which you are not using are not shown as they will not have any associated balances. If you lose a promotional rate due to a missed payment, the Interest Rate Chart will continue to display that promotional rate until the loss takes effect. The expiry date for an installment plan rate reflects the due date of the final installment plan payment for that plan. If you lose an installment plan rate before its expiry date due to a missed payment, your Interest Rate Chart will be updated in your next statement to reflect this and any Installments Not Yet Due will be moved to your Purchases & Fees category. If an expiry date falls on a date on which we do not process statements we will continue to provide you with the benefit of the promotional or installment plan rate until our next statement processing date.

**Installment Plan Summary.** If you have any installment plans, this chart sets out the details of such plans.

**INTEREST AND OTHER CALCULATIONS**

**Determination of interest.** You have a minimum 21 day interest-free grace period for new purchases. You can avoid interest on these new purchases by: (i) for new purchases (except those converted to installment plans) and fees, paying your New Balance in full by your Payment Due Date, and (ii) for new purchases converted to installment plans, paying your Total Account Balance in full by your Payment Due Date. If you do not pay your New Balance in full by your Payment Due Date, you must pay interest on each new purchase retroactively from the transaction date until the date we process your payment in full for those purchases. The accrued interest will appear on your next statement. We continue to charge interest on the unpaid portion of those purchases until you pay the New Balance in full on or before its Payment Due Date. Interest related to your purchases could appear on the first statement you receive after you install a purchase that payment. This is interest that was not included in the New Balance you paid in full because it accrued between the date the monthly statement which showed that New Balance was prepared and the date you made your payment. For installment plans, interest is not included on your first statement after you install a purchase to allow you to benefit from the interest-free grace period if you pay the Total Account Balance in full by the Payment Due Date for that statement. If you do not pay this balance in full by the Payment Due Date, the accrued interest on the installment plan will appear on your next statement. Fees are treated in the same manner as purchases for the purpose of charging interest. Interest is always charged on cash advances from the day the cash advance is made until the date we process the payment in full for those cash advances. Balance transfers, cash-like transactions and bill payments made using your credit card at our branch, an ATM or our online banking service are treated as cash advances.

We do not charge interest on interest.

To calculate your interest shown in the Calculating Your Balance section of your statement, where there is only one applicable interest rate in a Statement Period, we add the amount you owe each day, and divide the total by the number of days in the Statement Period. This is your average daily balance. Where you have an installment plan, we use the total principal amount of your installment plan still outstanding (including Installments Not Yet Due) as the amount that you owe each day to calculate your average daily balance. Where you have more than one applicable interest rate in a Statement Period, we determine your average daily balance for each rate. We then multiply the average daily balance for each rate by the applicable daily interest rate (obtained by taking the annual interest rate and dividing by the number of days in the year). We then multiply this value by the total number of days in the Statement Period to determine the interest we charge you.

**Applying your payments.** We apply payments to your Minimum Payment First, then to the remainder of your New Balance. If the different amounts that make up your New Balance are subject to different interest rates, we will allocate any payment in excess of your Minimum Payment in the same proportion as each amount bears to your New Balance. If you have paid more than your New Balance, we will apply any excess payment to amounts that have not yet appeared on your monthly statement in the same manner as set out above, and then to Installments Not Yet Due.

**Foreign currency conversion.** The exchange rate shown on your statement, to six decimal places, is calculated by dividing the converted Canadian dollar (CAD) amount, rounded to the nearest cent, by the transaction currency amount. It may differ from the original benchmark rate because of this rounding. The CAD amount charged to your account is 2.5% over the benchmark rate. Some foreign currency transactions are converted directly to CAD, while others may be converted first to U.S. dollars (USD), then to CAD. In either case, the benchmark rate will be the actual exchange rate applied at the time of the conversion, and is generally set daily. The original benchmark rate at the time a transaction was converted may be obtained at usa.visa.com/support/consumer/travel-support/exchange-rate-calculator.html, if set by Visa, or mastercard.com/global/currencyconversion/index.html, if set by Mastercard. You can also call us at 1-800-769-2512. For U.S. Dollar Visa Gold Cardholders, transactions are shown in USD and the same principles will apply if an amount is charged in a currency other than USD.

® / ™ Trademark(s) of Royal Bank of Canada. RBC and Royal Bank are registered trademarks of Royal Bank of Canada. ‡ All other trademarks are the property of their respective owner(s).



**Royal Bank**

## RBC® Avion® Visa Infinite Privilege‡
*for Private Banking*

EVANDER KANE ▮▮▮▮ 4741

**STATEMENT FROM NOV 26 TO DEC 29, 2020**

1 OF 1

### Travel with confidence

Enjoy the security of premium travel protection with your RBC® Avion® Visa Infinite Privilege‡ *for Private Banking* card. Rest easy knowing you are covered with premium travel insurances including Trip Cancellation, Trip Interruption and Lost or Stolen Baggage coverage.

| **PREVIOUS STATEMENT BALANCE** | **$75,991.21** |
|---|---|

**IMPORTANT INFORMATION**

**EVANDER KANE**
**PRIMARY**

| TRANSACTION DATE | POSTING DATE | ACTIVITY DESCRIPTION | AMOUNT ($) |
|---|---|---|---|
| NOV 25 | NOV 26 | PP*6206CODE 4029357733 ON | $2.45 |
| | | 74897260330047337774270 | |
| NOV 25 | NOV 26 | PP*6206CODE 4029357733 ON | -$2.45 |
| | | 74897260330047337785888 | |
| NOV 25 | NOV 26 | PP*2752CODE 4029357733 ON | -$2.45 |
| | | 74897260330047340785974 | |
| NOV 25 | NOV 26 | PP*2752CODE 4029357733 ON | $2.45 |
| | | 74897260330047340777278 | |
| NOV 30 | DEC 02 | ONLYFANS.COM LOUISE ONLYFA | $132.04 |
| | | 74595340337000001868009 | |
| | | Foreign Currency-USD 99.00            Exchange rate-1.333737 | |
| DEC 01 | DEC 01 | ANNUAL FEE | $279.00 |
| DEC 01 | DEC 01 | ANNUAL FEE | $99.00 |
| DEC 13 | DEC 14 | ONLYFANS.COM LOUISE ONLYFA | $90.50 |
| | | 74595340349000002117386 | |
| | | Foreign Currency-USD 69.00            Exchange rate-1.311594 | |
| DEC 17 | DEC 17 | PAYMENT - THANK YOU / PAIEMENT - MERCI | -$76,591.75 |
| | | 74510400352619983569402 | |
| DEC 29 | DEC 29 | CASH ADVANCE INTEREST 22.99% | $982.73 |
| | | **NEW BALANCE** | **$982.73** |

### RBC REWARDS POINTS

| Previous Points balance | 77,360 |
|---|---|
| Points earned this statement | 279 |
| **New points balance** | **77,639** |

### CONTACT US

| Customer Service / Lost & Stolen | 1-888-769-2585 |
|---|---|
| Collect Outside of North America | 416-974-5944 |
| Web site | www.rbcrewards.com |

### PAYMENTS & INTEREST RATES

| Minimum payment | **$982.73** |
|---|---|
| Payment due date | **JAN 19, 2021** |
| Credit limit | $80,000.00 |
| Available credit | $79,017.27 |
| **Annual interest rates:** | |
| Purchases | 19.99% |
| Cash advances | 22.99% |

### CALCULATING YOUR BALANCE

| Previous Statement Balance | **$75,991.21** |
|---|---|
| Payments & credits | -$76,596.65 |
| Purchases & debits | $227.44 |
| Cash advances | $0.00 |
| Interest | $982.73 |
| Fees | $378.00 |
| **NEW BALANCE** | **$982.73** |

---



**RBC ROYAL BANK**
**CREDIT CARD PAYMENT CENTRE**
**P.O.BOX 4016, STATION "A"**
**TORONTO, ONTARIO M5W 2E6**

| NEW BALANCE | MINIMUM PAYMENT | PAYMENT DUE DATE | AMOUNT PAID |
|---|---|---|---|
| **$982.73** | **$982.73** | **JAN 19, 2021** | $ |

### RBC® Avion® Visa Infinite Privilege‡
*for Private Banking*

▮▮▮▮ 4741

**Quick, convenient and secure ways to pay your credit card bill:**
· RBC Online Banking at www.rbcroyalbank.com/online
· RBC Mobile app - text "RBC" to 722722 to download

**Other payment options include:**
· RBC Royal Bank ATM
· Telephone Banking 1-800-769-2511
· Visit an RBC Royal Bank branch

RBC0190000_1153723_014-69003            03990

EVANDER KANE
8447 ISABEL PL
VANCOUVER BC  V6P 6R8

## IMPORTANT INFORMATION ABOUT YOUR RBC ROYAL BANK CREDIT CARD STATEMENT

*The following is a summary of certain terms and conditions of your credit card account and details about some of the information shown on your statement. Please refer to your credit card agreement for complete terms and conditions for your account. For more tips on reading your statement, go to rbc.com/cardstatement.*

**New Balance.** The Total Account Balance as of your Statement Date minus the total amount of Installments Not Yet Due as shown on your statement. This is the amount you must pay to avoid interest on your regular purchases and fees shown on this statement.

**Statement Period.** Your statement covers activity on your account from the day after your previous statement was prepared to the last day of this statement period (your **Statement Date**). If the date we would ordinarily prepare your statement falls on a date on which we do not process statements (such as weekends) we will prepare it on our next statement processing date. Your Payment Due Date will be adjusted accordingly.

**Total Account Balance.** The total amount of your previous account balance, plus all new purchases and debits, cash advances, interest, and fees shown on your statement, minus the amount of any payments and credits which have been posted to your account on or before your Statement Date. The Total Account Balance includes the total amount of Installments Not Yet Due as shown on your statement, and is the same as your New Balance if you do not have any installment plans.

### YOUR RESPONSIBILITIES

**Review your statement carefully.** If you think there is an error, omission or irregularity, you must contact us no later than 30 days following your Statement Date at 1-800-769-2512. After 30 days, our records will be considered correct except for credits improperly applied to your account.

**Report lost or stolen cards.** If your card is lost or stolen, or if you have your card but suspect that it or your account number is being used by someone else, log in to RBC Online Banking or the RBC Mobile app and select the "Report Lost or Stolen Card" option, or call 1-800-769-2512, immediately. This obligation applies to Primary cardholders, Co-applicant cardholders and Authorized Users.

**Making your payment.** You may pay the New Balance (or if you have installment plans, the Total Account Balance) in full or in part at any time. However, you must pay at least the Minimum Payment by the Payment Due Date shown on the statement each month. If the Payment Due Date falls on a weekend or holiday, we will extend it to the next business day. However to allow sufficient time for payments to reach us by the Payment Due Date. Payments made by mail or through another financial institution may take several days to reach us and are not credited to your account until we have processed them. Branch payments will be credited to your account on the same day if made before the earlier of 6:00 p.m. local time or the branch closing time.

**Missed payments.** Missing payments (which means not making at least the Minimum Payment by the next Statement Date) will affect your interest rates as follows:

- If you miss making any Minimum Payment, you will lose the benefit of any introductory or promotional interest rate offer in which you are participating, and your standard cash advance and purchase interest rates will apply to any remaining balance(s) which were subject to that offer (subject to any further increases set out below) as of the first day of the third Statement Period following the missed payment (or the expiry date if it is earlier).

- Where you have installment plans and you miss making any Minimum Payment, all your installment plans will be automatically cancelled. The missed Monthly Principal payment(s) will continue to accrue interest at the installment plan interest rate(s) until paid in full. However, your Installments Not Yet Due will lose the benefit of such rate(s) and will be subject to your rate applicable to regular purchases as of the first day of your next Statement Period following the missed payment.

- In addition, if you miss making 2 or more Minimum Payments in any 12 month period, your standard cash advance and purchase rates will increase by 5% (8% if you are a Visa Classic Low Rate Option Cardholder) as of the first day of the third Statement Period following the missed payment that caused the rate increase. You will continue to pay the higher interest rates until you have paid your Minimum Payment by the next Statement Date for 6 consecutive months thereafter.

### READING YOUR STATEMENT

**Activity Description.** Each transaction and amount credited or charged to your account during the Statement Period is described in this section, including the transaction and posting dates. If the transaction date is not available for any transaction, its posting date is used as the transaction date. Transactions converted to installment plans are marked by a ^ symbol in the activity description. Interest is always calculated from the transaction date. If there is more than one credit card on the account, transactions will be grouped by cardholder name, card number and relationship to the account. Primary and Co-applicant cardholders (but not Authorized Users) are responsible for all amounts charged to the account.

**Payments & Interest Rates.** This section displays the Minimum Payment and its Payment Due Date, your current credit limit, and available credit as of the Statement Date. Your available credit does not reflect transactions or payments made but not received by us by the Statement Date. Your current interest rates for cash advances and purchases are also shown, as well as the expiry date if any of those rates are temporary. Any promotional or installment plan rates are shown in the Interest Rate Chart.

**Interest Rate Chart.** This chart sets out the interest rate(s) that apply to the Total Account Balance, any remaining balances associated with those rates, and expiry dates for any promotional and installment plan rates. Offers that we may have made to you but which you are not using are not shown as they will not have any associated balances. If you lose a promotional rate due to a missed payment, the Interest Rate Chart will continue to display that promotional rate until the loss takes effect. The expiry date for an installment plan rate reflects the due date of the final installment plan payment for that plan. If you lose an installment plan rate before its expiry date due to a missed payment, your Installments Not Yet Due will be moved to your Purchases & Fees category. If an expiry date falls on a date on which we do not process statements we will continue to provide you with the benefit of the promotional or installment plan rate until our next statement processing date.

**Installment Plan Summary.** If you have any installment plans, this chart sets out the details of such plans.

### INTEREST AND OTHER CALCULATIONS

**Determination of interest.** You have a minimum 21 day interest-free grace period for new purchases. You can avoid interest on these new purchases by: (i) for new purchases (except those converted to installment plans) and fees, paying your New Balance in full by your Payment Due Date, and (ii) for new purchases converted to installment plans, paying your Total Account Balance in full by your Payment Due Date. If you do not pay your New Balance in full by your Payment Due Date, you must pay interest on each new purchase retroactively from the transaction date until the date we process your payment in full for those purchases. The accrued interest will appear on your next statement. We continue to charge interest on the unpaid portion of those purchases until you pay the New Balance in full on or before its Payment Due Date. Interest related to your purchases could appear on the first statement you receive after you make that payment. This is interest that was not included in the New Balance you paid in full because it accrued between the date the monthly statement which showed that New Balance was prepared and the date you made your payment. For installment plans, interest is not included on your first statement after you install a purchase to allow you to benefit from the interest-free grace period if you pay the Total Account Balance in full by the Payment Due Date for that statement. If you do not pay this balance in full by the Payment Due Date, the accrued interest on the installment plan will appear on your next statement. Fees are treated in the same manner as purchases for the purpose of charging interest. Interest is always charged on cash advances from the day the cash advance is made until the date we process the payment in full for those cash advances. Balance transfers, cash-like transactions and bill payments made using your credit card at our branch, an ATM or our online banking service are treated as cash advances.

We do not charge interest on interest.

To calculate your interest shown in the Calculating Your Balance section of your statement, where there is only one applicable interest rate in a Statement Period, we add the amount you owe each day, and divide the total by the number of days in the Statement Period. This is your average daily balance. Where you have an installment plan, we use the total principal amount of your installment plan still outstanding (including Installments Not Yet Due) as the amount that you owe each day to calculate your average daily balance. Where you have more than one applicable interest rate in a Statement Period, we determine your average daily balance for each rate. We then multiply the average daily balance for each rate by the applicable daily interest rate (obtained by taking the annual interest rate and dividing by the number of days in the year). We then multiply this value by the total number of days in the Statement Period to determine the interest we charge you.

**Applying your payments.** We apply payments to your Minimum Payment first, then to the remainder of your New Balance. If the different amounts that make up your New Balance are subject to different interest rates, we will allocate any payment in excess of your Minimum Payment in the same proportion as each amount bears to your New Balance. If you have paid more than your New Balance, we will apply any excess payment to amounts that have not yet appeared on your monthly statement in the same manner as set out above, and then to Installments Not Yet Due.

**Foreign currency conversion.** The exchange rate shown on your statement, to six decimal places, is calculated by dividing the converted Canadian dollar (CAD) amount, rounded to the nearest cent, by the transaction currency amount. It may differ from the original benchmark rate because of this rounding. The CAD amount charged to your account is 2.5% over the benchmark rate. Some foreign currency transactions are converted directly to CAD, while others may be converted first to U.S. dollars (USD), then to CAD. In either case, the benchmark rate will be the actual exchange rate applied at the time of the conversion, and is generally set daily. The original benchmark rate at the time a transaction was converted may be obtained at usa.visa.com/support/consumer/travel-support/exchange-rate-calculator.html, if set by Visa, or mastercard.com/global/currencyconversion/index.html, if set by Mastercard. You can also call us at 1-800-769-2512. For U.S. Dollar Visa Gold Cardholders, transactions are shown in USD and the same principles will apply if an amount is charged in a currency other than USD.

® / ™ Trademark(s) of Royal Bank of Canada. RBC and Royal Bank are registered trademarks of Royal Bank of Canada. ‡ All other trademarks are the property of their respective owner(s).

# EXHIBIT "N"

1              UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF CALIFORNIA
2                SAN JOSE DIVISION
             CASE NO.: 21-50028-SLJ
3                  Chapter 7

4   In re

5   EVANDER FRANK KANE,

6       Debtor.
   _____/
7

8

9

RULE 2004
10  EXAMINATION AND
    DUCES TECUM
11  DEPOSITION OF:     **EVANDER FRANK KANE**

12  TAKEN:            Pursuant to Notice by
                     Counsel for Centennial Bank
13

DATE:              March 24, 2021
14

TIME:              2:01 p.m. to 5:14 p.m. (EST)
15

LOCATION:        Zoom videoconference
16

REPORTED BY:     Melanie Keefe, FPR
17                      Notary Public
                     State of Florida at Large
18

19

20

21

22

23

24

25

```
1    APPEARANCES:     ANDREW J. GHEKAS, ESQUIRE
                      Anthony & Partners, LLC
2                     100 South Ashley Drive
                      Suite 1600
3                     Tampa, Florida  33602

4                          Attorney for Centennial Bank

5                     STEPHEN D. FINESTONE, ESQUIRE
                      Finestone Hayes LLP
6                     456 Montgomery Street
                      20th Floor
7                     San Francisco, California  94104

8                          Attorney for the Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          A.   Again, I'm not sure exactly.  I'm not sure if
 2     it's rented out currently or not.
 3          Q.   Have you ever attempted to sell it?
 4          A.   No.
 5          Q.   Okay.  So without knowing whether it's rented
 6     out, you're still continuing to pay the mortgage on it?
 7          A.   Yes.
 8          Q.   Okay.  The next property, 8447 Isabel Place, so
 9     this one says "fee simple."  So do you own this one
10     individually?
11          A.   Yes.
12          Q.   And so you -- are you continuing to pay the
13     mortgage on this house?
14          A.   Yes.
15          Q.   And that's just you?
16          A.   Yes.
17          Q.   And who lives at this residence?
18          A.   My family.
19          Q.   And what part of your family lives there?
20          A.   My parents.
21          Q.   Is it just your parents?
22          A.   Yes.
23          Q.   And do they pay you any rent to live at this
24     residence?
25          A.   No.
```

1  into the 5955 account.  But then if you see also on

2  March 31, you received an online banking transfer for a

3  hundred thousand dollars.  Where did that money come from?

4          A.   I'm not sure.

5          Q.   Okay.  All right.  If we continue on, move a

6  little quicker here.  If we continue in the 5955 document,

7  page 11, do you see -- who is Christian Anthony?

8          A.   A friend of mine.

9          Q.   Is there any reason why you're paying Christian

10  Anthony $180, $1,500, and $1,200?

11          A.   Yeah.  I borrowed some money from him for the

12  larger amounts.  That was money borrowed.  I think the $180

13  amount -- I can't see them all, but I see the 180.  I think

14  that was paid for a round of golf for me, and I was just

15  sending him the money back.

16          Q.   Okay.  And if we continue on to page 12, there's

17  several other Christian Anthony entries:  2,400 and 2,700,

18  May 6, May 11.  Is that for the same reason?

19          A.   Yeah.  I was paying the money that he had lent me

20  back.

21          Q.   All right.  And then if we skip forward into --

22  I'm sorry.  You testified previously that you could not

23  recall what the Personal Loan SPL was?

24          A.   Yeah, I'm trying to -- I was trying to think what

25  that means.  SPL, oh, that is -- that is my -- I pay my

1    dad's car payment on his car.  I think that's what that is.

2         Q.    Okay.

3         A.    That -- yeah, that's -- that would make sense.

4    It comes in every month.  Yeah, that's what that is.  It's a

5    -- just a car payment on my dad's car.

6         Q.    All right.  And then if we -- if you go to page

7    18, July 7, there are payments ranging from 33,000 to $635

8    all to various credit cards.  Are these all your credit

9    cards?

10        A.    No, none of them are my credit cards.  They were

11   my parents' credit cards.

12        Q.    Okay.  So all of these are your parents' credit

13   cards?

14        A.    Yes.

15        Q.    That you're paying off?

16        A.    Yes.

17        Q.    Okay.  And then July 9, that same page, do you

18   see here there's another online transfer for a hundred

19   thousand dollars?  Do -- do you know where that came from?

20        A.    I'm assuming it would've come from somewhere in

21   my bonus check during that period of time.  I don't know --

22   I can't see where it came from.

23        Q.    But if it were to come from your bonus check,

24   wouldn't that have been deposited into your Wells Fargo

25   account and transferred to your RBC U.S. dollars account

REGENCY REPORTING SERVICE, INC. (813)224-0224

1                    CERTIFICATE OF REPORTER

2      STATE OF FLORIDA              )

3      COUNTY OF HILLSBOROUGH        )

4

5              I, Melanie Keefe, Court Reporter, certify that I
   was authorized to and did stenographically report remotely
6  the deposition of EVANDER FRANK KANE; that a review of the
   transcript was requested; and that the transcript, pages 5
7  through 102, inclusive, is a true and complete record of my
   stenographic notes.

8
               I further certify that I am not a relative,
9  employee, attorney, or counsel of any of the parties, nor am
   I a relative or employee of any of the parties' attorney or
10 counsel connected with the action, nor am I financially
   interested in the action.

11
                         *s/ Melanie Keefe*_____
12                       Melanie Keefe, FPR
                         Court Reporter
13 _____

14                    CERTIFICATE OF OATH

15     STATE OF FLORIDA              )

16     COUNTY OF HILLSBOROUGH        )

17             I, the undersigned authority, certify that
   EVANDER FRANK KANE personally appeared before me remotely
18 and was duly sworn.

19             WITNESS my hand and official seal this 8th day of
   April, 2021.

20

21                       *s/ Melanie Keefe*_____
                         Melanie Keefe, FPR
22                       Notary Public
                         State of Florida
23                       My Commission No.:  HH055410
                         Expires:  December 9, 2024

24

25

          ─REGENCY REPORTING SERVICE, INC. (813)224-0224─