

The following constitutes the order of the Court.
Signed: July 9, 2021

_Stephen Johnson_
_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **EVANDER FRANK KANE**,

               Debtor.

Case No. 21-50028 SLJ
Chapter 7

## ORDER ON ZIONS BANCORPORATION'S OBJECTION
## TO DEBTOR'S HOMESTEAD EXEMPTION

    Zions Bancorporation, N.A. ("Zions") has filed an Objection to Homestead Exemption. ECF 74. Zions objects to Debtor claiming a homestead exemption in real property he owns in San Jose, California, contending the property was purchased with non-exempt assets shortly before this bankruptcy case was filed. Zions contends that Debtor's homestead exemption must be reduced to account for conversions of non-exempt property to exempt property on the eve of the bankruptcy filing. Debtor filed an Opposition to Objection to Homestead Exemption, ECF 147, as well as a Declaration of Evander Kane in support of that opposition. ECF 148. Debtor argues Zions' objection is procedurally improper because he was not personally served within the filing deadline; that he did not dispose of non-exempt property with intent to hinder, delay, or defraud creditors; and that

1  other limitations on claiming homestead exemptions do not apply in California, and in any

2  event the property's pre-petition appreciation is not subject to such provisions.

3      I conclude the objection was timely and served in a way that was materially consistent

4  with the Bankruptcy Code and Rules. I then conclude § 522(p)[1] applies in California and

5  operates to limit Debtor's homestead exemption to $170,350. Finally, I find Debtor is not

6  denied his homestead claim in its entirety because he did not dispose of property, as § 522(o)

7  requires. Accordingly, Zions' objection will be sustained in part and overruled in part.

8  ## I.    BACKGROUND

9      Zions filed its objection on March 25, 2021. Zions served the objection and notice of

10 hearing on Debtor's attorney through first class mail and ECF. ECF 74-2, 73.

11     The essence of Zions' objection is that Debtor is not entitled to a homestead

12 exemption he claims in real property located at 2301 Richland Avenue, San Jose, California

13 95125 ("San Jose Property"). This is so because he obtained the funds for the down payment

14 on the San Jose Property in August 2020 by taking out a $600,000[2] loan that was cross-

15 collateralized and secured by two properties he already owned in Canada ("Canadian

16 Properties").[3] Rather than Debtor and his wife taking title, the San Jose Property was

17 purchased in the name of Lions Properties, LLC ("Lions Properties"), a Florida entity wholly

18 owned by Debtor and his wife that Debtor formed on May 26, 2020. ECF 74-1, p. 5–8. The

19 San Jose Property was later transferred from Lions Properties to Debtor and his wife by

20

21     _____

22     [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy
   Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil
23 Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy
   Procedure. All "Civil L.R." and "B.L.R." references are to the applicable Civil Local Rules
24 and Bankruptcy Local Rules. And all "C.C.P." references are to the California Code of Civil
   Procedure.
25     [2] The record is not precisely clear about one thing: Debtor's opposition states the
26 correct amount is $435,000, though his schedules state the loan was for $600,000. ECF 18,
   p. 2. Given the nature of the transaction, I find this unexplained difference is not controlling.
27     [3] Those properties are located at 3457 West 35th Avenue, Vancouver British
28 Columbia, Canada and 8447 Isabel Place, Vancouver, British Columbia, Canada.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                        2/29

quitclaim deed on January 8, 2021, one day prior to his filing this bankruptcy case.[4] *Id.* at 20–22. Zions argues this shows Debtor used nonexempt property – his equity in the Canadian Properties – to purchase a homestead exemption with the intent to hinder, delay, or defraud creditors, in violation of § 522(o).

Zions points to other pre-petition conduct to advance its assertion of Debtor's fraudulent intent. For instance, as early as October 2019 Debtor was concerned that he would not be able to continue making his debt payments and so hired restructuring counsel at Pachulski Stang Ziehl & Jones to assist in negotiating with his creditors. ECF 65-1, p. 2–3. Zions also notes Debtor's admission that he incurred $1,500,000 in gambling losses within one year of the petition. ECF 19. Coupled with Debtor's balance sheet insolvency, *see* ECF 1, p. 8, Zions argues this shows Debtor structuring his estate to hinder creditors, even as his conduct continued to deplete his estate.

## II. DISCUSSION

### A. Zions' Evidentiary Objections

Zions raises several evidentiary objections in its reply. These pertain to statements set out in Debtor's declaration. I conclude that one of these objections should be sustained and the balance overruled.

First, Zions argues two of Debtor's statements are not relevant: (1) Debtor stating he did not move to California to avoid creditors or because of its exemption laws; and (2) Debtor stating the funds for the San Jose Property down payment came from his salary bonus and from a loan secured by the Canadian Properties. Relevance is defined by Federal Rule of Evidence 401: "Evidence is admissible if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Relevance is established by any showing, however slight, which makes it more likely than it was before the admission of the evidence that the" fact in

---

[4] Zions also notes that, when asked at the § 341(a) meeting why Lions Properties transferred title to him and his wife just prior to his filing this case, Debtor declined to answer, citing attorney-client privilege. ECF 74, p. 66.

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 3 of 29

question is true or false. *United States v. Federico*, 658 F.2d 1337, 1343 (9th Cir. 1981), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259–60 (9th Cir. 1984) (en banc).

Debtor's statements are not irrelevant; quite the contrary, they contest Zions' contentions. Zions claims in its objection that Debtor's conduct is fraudulent or dilatory in relation to his claimed homestead exemption. Debtor contests this in his declaration, indicating he had motives other than evasion of creditors when he purchased the San Jose Property. Debtor's first statement says he had no such intent when he came to California, which in turn makes it at least somewhat more likely that he also did not have that intent when he bought the San Jose Property. As for the second statement, part of Debtor's opposition argues he did not "dispose of" non-exempt property to pay for the San Jose Property because pledging equity as security for a loan is not a "disposal." This statement makes it more likely he in fact pledged equity as security for the loan proceeds that partially paid for the San Jose Property, and that fact is of consequence for Zions' § 522(o) claim.

Zions next argues certain statements lack foundation: (1) Debtor's statement that he purchased the San Jose Property in August 2020 for $3,030,000[5]; (2) Debtor statement that the funds for the San Jose Property down payment came from his salary bonus and from a loan secured by the Canadian Properties; (3) Debtor's statement that he used part of his salary bonus to pay off a junior lien on the Canadian Properties which had become due; (4) Debtor's statement that he obtained a new loan of $435,000 on the Canadian Properties after paying off the junior lien; (5) Debtor's statement that he combined loan proceeds with the rest of his salary bonus to make the $705,000 down payment on the San Jose Property; and (6) Debtor's statement that he and the trustee reached the Exemption Settlement after the trustee got a $3,275,000 valuation opinion for the San Jose Property from a local realtor.

Foundation is defined by Federal Rule of Evidence 602, which says: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the

---

[5] Zions also argues this misstates the record, as the San Jose Property was originally titled in Lions Properties' name. It is unclear how this is relevant to a lack of foundation evidentiary objection.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    4/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

The statements do not lack foundation in the main. Debtor has personal knowledge of the events described in the first four statements because, as his own testimony makes clear, he was the one who caused those events to occur. Zions appears to argue the fifth statement lacks foundation because it was actually Lions Properties who bought the San Jose Property, not Debtor. Assuming that is true, Debtor, along with his wife, are 100% owners of Lions Properties; I can infer from this that Debtor acted as Lions Properties' agent in this transaction, giving him personal knowledge of the events. *See United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977) (holding a witness restaurant manager had personal knowledge of company procedures on account of such witness's position in the company).

I agree with Zions that Debtor has not shown he has personal knowledge of the events described in the sixth statement. Accordingly, this statement must be excluded, and I decline to rule on the other objections to that statement.

Finally, Zions makes best evidence objections to: (1) Debtor's statement that he used part of his salary bonus to pay off a junior lien on the Canadian Properties that had become due; (2) Debtor's statement that he obtained a new loan of $435,000[6] on the Canadian Properties after paying off the junior lien; and (3) Debtor's statement that he combined loan proceeds with the rest of his salary bonus to make the $705,000 down payment on the San Jose Property.

People often think the best evidence rule is aptly named. I would argue that is not necessarily so. The rule does not require, as its name suggests, that a party must produce the best *quality* evidence of a fact. Rather, "The best evidence rule provides that the original of a writing, recording, or photograph is required to prove the contents thereof." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (quoting Fed. R. Evid. 1002). "The rule's

---

[6] This statement arguably tries to prove the contents of the loan documents, as the actual amount borrowed may be in dispute. But that is at best ancillary to Debtor's main purpose, which is describing *why the timing of this loan is not fraudulent.*

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    5/29

application turns on 'whether contents are sought to be proved.' Fed. R. Evid. 1002 Advisory Committee's note. '[A]n event may be proved by nondocumentary evidence, even though a written record of it was made.'" *Id.* Documentary evidence likely exists for each of the events described in these statements.

Debtor is not required to produce documentary evidence in this situation. He is not seeking to prove the contents of documents. The purpose of these statements is to show that he paid off the Canadian Properties' junior lien as it became due; that the timing of the new loan he took out on the Canadian Properties was based on the old loan becoming due, not because of an impending bankruptcy; and that he used certain specific property to make the down payment on the San Jose Property. These are simply statements by Debtor pertaining to a transaction he participated in. He may not have the facts and figures right, a point that Zions can establish with relative ease. But none of these statements are meant to prove the contents of the documents used to record each of these events, so Zions' objections to them must be overruled.

B.    <u>Zions' Objection was Timely</u>

Debtor's opposition first argues that, because Zions failed to deliver or mail its objection to Debtor's homestead exemption to Debtor personally within the 30-day period set by Bankruptcy Rule 4003, the objection is untimely and must be overruled. Although a close question, I disagree with Debtor and conclude Zions' objection was timely.

The first meeting of creditors in this case was concluded on February 23, 2021. Thirty days from that date is March 25, 2021, when Zions filed its objection to Debtor's homestead exemption. ECF 74. Zions' certificate of service states the objection was served on Debtor's counsel, but not Debtor. ECF 74-2. Zions set that objection for hearing on May 4, 2021, giving due notice. On April 27, 2021, Debtor filed his Response to Objection to Homestead Exemption filed by Zions Bancorporation, N.A. ECF-106. He argued that Bankruptcy Rule 4003(b)(4) requires that an objection be served on both debtor and debtor's counsel and it was not served Debtor. Zions immediately sought a continuance of the May 4, 2021 hearing,

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 6 of 29

ECF-109, which the court granted on April 29, 2021. ECF-110. Zions served a copy of the objection on Debtor the same day that order was docketed.

Like much of this case, this dispute is complicated. Section 522(l) requires a debtor "file a list of property that the debtor claims as exempt under subsection (b) of this section." In turn, Bankruptcy Rule 4003(b)(1) allows a party in interest to "file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Bankruptcy courts may extend that deadline for cause "if, before the time to object expires, a party in interest files a request for an extension." *Id.* The means of service are also stated: "A copy of any objection shall be delivered or mailed to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney." Bankruptcy Rule 4003(b)(4).

The deadline for exemption objections is also found in this rule. "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.'" *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992). If no one timely objects to an exemption, and the bankruptcy court does not extend the objection period, § 522(l) makes the claimed property exempt, even if the debtor has no "colorable statutory basis for claiming it." *Freeland & Kronz*, 503 U.S. at 643–44.

Debtor cites *In re Bush*, 346 B.R. 523 (Bankr. E.D. Wash. 2006), in support of his timeliness argument. In *Bush*, the bankruptcy court admitted that Bankruptcy Rule 4003(b) does not explicitly set a deadline for serving the objection on Debtor personally. The *Bush* court then reasoned that there were two ways to resolve this issue: (1) require the objector to deliver or mail a copy of the objection "within a reasonable period of time"; or (2) require the objector deliver or mail a copy of the objection within the same period required for filing it. *Bush*, 346 B.R. at 526. The court concluded the second resolution better served the Rule's purpose of "provid[ing] the debtor with timely notice that the trustee or other interested

party objects to the debtor's claimed exemption." *Id.* (quoting *In re Spenler*, 212 B.R. 625, 630 (B.A.P. 9th Cir. 1997)). Allowing a flexible deadline would in fact hinder the timeliness of notice, as such "notice is accomplished by serving the objection, not by filing it." *Bush*, 346 B.R. at 526. Also relevant were cases holding that a court cannot extend the 30-day period for filing objections when "the court failed to rule on a timely motion to extend before the expiration of the period," *id.* at 528 (citing *In re Laurain*, 113 F.3d 595 (6th Cir. 1997); *Matter of Stoulig*, 45 F.3d 957 (5th Cir. 1995))[7], and the Supreme Court's decision in *Freeland & Kronz*, 503 U.S. at 644, which held the effect of failing to timely object to a claim of exemptions is such exemptions are upheld, even if there is "no colorable statutory basis for claiming" them. *Bush* concluded these cases supported a strict construction of Bankruptcy Rule 4003, "based upon the policy of finality for the parties with respect to the property claimed as exempt." *Bush*, 346 B.R. at 528.

Zions points to *In re Fisher*, 63 B.R. 649 (Bankr. W.D. Ky. 1986), as providing a better interpretation of Bankruptcy Rule 4003. In *Fisher*, the bankruptcy court rejected part of the argument Debtor makes here – that an exemption objection must be delivered or mailed to both the debtor and his attorney – this way: "Service on the debtor's attorney was obviously sufficient to give the debtor notice of the objections. [Bankruptcy] Rule 4003(b) states that copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney. Reading this language literally and carried to the extreme, one could conclude that 'the person filing the list' means someone from the attorney's office who *physically* filed the same. We decline to read the Rule so literally as to mandatorily require service on both the debtor and his attorney." The *Fisher* court seems to have concluded that interpreting Bankruptcy Rule 4003(d)(4) to mean what it says – that both the debtor and the

---

[7] These cases were later superseded by amendments to Bankruptcy Rule 4003 in 2000, allowing courts to "to grant a timely request for an extension of time to file objections to the list of claimed exemptions, whether the court rules on the request before or after the expiration of the 30-day period." The Advisory Committee made clear this amendment was in response to the holdings of cases like *Laurain* and *Stoulig*.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    8/29

debtor's counsel must receive a copy of the objection by mail or delivery – would be an overly literal construction of the Rule.

While *Bush* is well-considered, I will not follow it.[8] Critically, the rule itself does not command me to disregard the objection, as the *Bush* court did. Bankruptcy Rule 4003(b)(3) specifies that an objection must be filed within 30 days. If it is not filed, it is untimely. Thus, the deadline for filing an objection is found in paragraph (3). The rule further specifies that "a copy of any objection shall be delivered or mailed to the trustee, the debtor, and the debtor's attorney . . . ." Bankruptcy Rule 4003(b)(4). The service of an objection is addressed in paragraph (4), and there is no stated deadline. *Bush* is right that a natural inference is that the filing and service of the objection should be coincident, as paragraph (3) states. But paragraph (4) does not say so explicitly and I do not see a reason to establish a hard and fast rule as *Bush* did in the absence of such language.

Moreover, I find two more general principles to be worthy of consideration. First, generally speaking, notice in bankruptcy is a flexible concept properly tailored to the circumstances presented. *In re Tennant,* 318 B.R. 860, 871-72 (B.A.P. 9th Cir. 2004); *In re Krueger*, 88 B.R. 23, 241 (B.A.P. 9th Cir. 1988). Looking at the docket, it appears a timely objection was filed to Debtor's claimed homestead exemption and that Debtor's counsel was notified. Debtor later filed an objection to the initial hearing date stating that he was not personally served, presumably because he received that notice. Realizing the oversight, Zions' counsel immediately sought a continuance of the hearing and served Debtor with the objection. I find nothing untoward about that process because, in the end, Debtor had due

---

[8] As an aside, I reject Zions' argument that Bush rule, even if correct, cannot allow me to summarily overrule its objection, calling this result "arbitrary and bizarrely draconian[.]" ECF 153, p. 20. In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992), the Supreme Court held that a party in interest cannot object to debtor's claim of exemption after Bankruptcy Rule 4003(b)(1)'s deadline has passed, even if the debtor has no "colorable statutory basis for claiming it." The Supreme Court's holding in *Freeland & Kronz* creates results that are at least as arbitrary as those urged here.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    9/29

notice of the objection and hearing date and filed a timely and comprehensive response. More is not necessary, at least under the current version of Bankruptcy Rule 4003.

I also conclude that getting to the substance of a dispute is preferable to reaching a decision by default, which is one reading of Debtor's argument. As the Ninth Circuit said in affirming a district judge's refusal to enter a default judgment: "Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986) (citing *Pena v. Seguaros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985)). In this matter, the parties contest Debtor's right to a homestead exemption and have filed extensive briefing on the point. Getting to the bottom of those disputes is the right thing to do.

C.    Burden of Proof

The burden of proof in an exemption objection is on the party objecting to the claimed exemption under Bankruptcy Rule 4003(c), which says the party bringing a claim objection bears "the burden of proving that the exemptions are not properly claimed." But I note that in *In re Diaz,* 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016), the BAP reasoned that the Supreme Court's decision in *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000), requires that "where a state law exemption statute specifically allocates the burden of proof to the debtor, Bankruptcy Rule 4003(c) does not change that allocation." C.C.P. § 703.580(b) allocates the burden of proof at a hearing on a claim of exemption to the exemption claimant. In turn, C.C.P. § 704.780(a)(1) allocates the burden of proof at a hearing on a homestead exemption claim on the claimant unless "the records of the county tax assessor indicate that there is a current homeowner's exemption . . . for the dwelling claimed by the" debtor; in that instance, "the judgment creditor has the burden of proof that the dwelling is not a homestead." The BAP in *Diaz* held these provisions showed that "California has mandated the use of state exemptions in bankruptcy and has placed the burden of proof on the party claiming the exemption." 547 B.R. at 337 (citations omitted).

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 10 of 29

I conclude *Diaz* does not apply to Zions' objections. The trustee's objection in *Diaz* was that the debtor's homestead exemption was improper because he did not reside in the property on the date he filed his bankruptcy case. That is, the objection argued the debtor was not entitled to his claimed exemption under State law. But the objections here do not challenge Debtor's entitlement to a homestead under State law. They argue such exemption should be limited or barred entirely under §§ 522(o) and (p). Since Zions' objections arise from Federal limitations on State exemptions, Bankruptcy Rule 4003(c) provides the relevant burden of proof here, not State law. *See In re Fehmel*, 372 Fed. App'x. 507, 511 (5th Cir. 2010) (Applying Bankruptcy Rule 4003(c) to a § 522(p) objection); *In re Wilcut*, 472 B.R. 88, 92 (B.A.P. 10th Cir. 2012) (applying Bankruptcy Rule 4003(c) to a § 522(o) objection).

In the Ninth Circuit, Bankruptcy Rule 4003(c)'s burden of proof works as follows: "A claimed exemption is presumptively valid . . . . Once an exemption has been claimed, it is the objecting party's burden . . . to prove that the exemption is not properly claimed. Initially, this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. The burden of persuasion, however, always remains with the objecting party." *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (internal citations and quotation marks omitted). I will apply this framework to Zions' objections under both § 522(o) and (p).

### D. Zions' § 522(p) Objection Must be Sustained

#### 1. *Section 522(p) Applies Here*

Section 522(p)(1)(A) says that, "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in real [] property that the

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 11 of
29

debtor . . . uses as a residence[.]" Understanding this provision requires some discussion of how exemptions work under the Code.

The Code's exemption framework is as follows: Section 522(l) requires a debtor "file a list of property that the debtor claims as exempt under subsection (b) of this section." Section 522(b)(1) allows an individual debtor to "exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of" § 522(b). Section 522(b)(2) says "property listed in" that subsection means the property exemptions provided in § 522(d), "unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize."[9] And § 522(b)(3), subject to §§ 522(o) and (p), defines "property listed in" that subsection to mean "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition[.]" To summarize: a debtor is required to file a list of property he claims as exempt. A debtor can claim the exemptions described in either §§ 522(b)(2) or (3). But if applicable State law explicitly disallows the exemptions provided in § 522(d), then § 522(b)(2) essentially provides the debtor no valid exemptions.

Courts are split on the meaning of § 522(p) limiting a debtor's claim of exemption "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law" when a State has opted out of the federal exemption scheme. One interpretation is that "the bankruptcy exemptions of § 522(d) may not be elected by a debtor if the applicable state law specifically does not so authorize. This effectively permits states to 'opt out' of the Bankruptcy Code's exemptions, and as noted above [California] is an opt-out state. Consequently in [California], a debtor does not get to 'elect' state exemptions. Rather, they are the only exemptions available to a debtor, so there is no election to be made." *In re Mcnabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005). Because § 522(p) only applies "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law," and a

---

[9] C.C.P. § 703.130 makes clear that the exemptions in § 522(d) "are not authorized in" California.

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 12 of
29

state's decision to opt out of § 522(d) prohibits a debtor from electing such exemptions, a debtor in such a state cannot make an election, so § 522(p) does not apply. *Mcnabb* also pointed to § 522(o) which, instead of using § 522(p)'s election language, states it applies "[f]or purposes of subsection (b)(3)(A)[.]" "If Congress had similarly intended the $125,000 cap found in § 522(p) to apply across the board, it would presumably have used the identical language: 'For purposes of subsection (b)(3)(A), a debtor may not exempt any amount' that was acquired during 1,215 days prepetition. There would have been no need to refer to an election at all. This striking difference between the language of § 522(o) and § 522(p) must have been intended to effect a difference in result. The somewhat convoluted language of § 522(p) must have been intended to impose a condition beyond that of the far simpler language of § 522(o)." *Mcnabb*, 326 B.R. at 790 (citations and footnote omitted).

*Mcnabb* also pointed to § 522(q)(1), which also applies "[a]s a result of electing under subsection (b)(3)(A) to exempt property under State or local law[.]" That subsection bars a debtor from exempting more than $125,000 "if he has been convicted of a felony or owes a debt arising from securities fraud, breach of fiduciary duty, etc." *Mcnabb*, 326 B.R. at 790. The court found "special significance" in how this provision interacts with § 727(a)(12). That provision requires a court deny a discharge if "finds that there is reasonable cause to believe that § 522(q)(1) may be applicable to the debtor; and there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A)[.]" § 727(a)(12)(A)–(B). In the court's view, "[s]ubparagraph A of § 727(a)(12) necessarily implies that § 522(q)(1) 'may be applicable' to some debtors and not to others, because such applicability is a discrete finding the court is required to make. Subparagraph B of § 727(a)(12) necessarily implies that the determination under (A)—whether § 522(q)(1) may be applicable to the debtor—is something separate and distinct from the finding that there is pending a proceeding in which the debtor may be found guilty of a felony or liable for a debt of the kind described there. What would make § 522(q)(1) applicable, or not applicable, to a debtor *other than* the pendency of such a proceeding? Other the pendency of

Case: 21-50028   Doc# 178   Filed: 07/09/21   Entered: 07/09/21 15:09:12   Page 13 of
29

such a proceeding, the only other factor that could determine whether § 522(q)(1) 'may be applicable' to a debtor is whether a debtor elects to claim state exemptions. A court would not need a hearing to find reasonable cause to believe that a debtor has elected state exemptions in states where no such election is available." *Mcnabb*, 326 B.R. at 790.

The other approach concludes that, while an "election may become ineffective if the debtor chooses a federal exemption in an opt-out state, [] the debtor nonetheless makes an 'election' within the meaning of the statute." *In re Virissimo*, 332 B.R. 201, 205 (Bankr. D. Nev. 2005). The court reasoned as follows: "Under [] § 541 all property is property of the estate. If the debtor wishes to exempt property he must engage in an act to do so. [] § 522(l). Pursuant to § 522(b)(1), he may elect to choose property listed in [] § 522(b)(2) or (b)(3)." *Virissimo*, 332 B.R. at 205. "Given the language of the statute, the debtor makes an election as to whether to exempt property and whether to use paragraph (b)(2) or paragraph (b)(3). If he 'elects' paragraph (b)(2) in [California], or any other opt-out state, and if a party timely objects, then he is denied the exemption. But conversely, as the United States Supreme Court has held in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), if a party does not timely object to a claimed objection, the property is exempt even if there is no basis for the claiming of that exemption. Similarly, if the debtor fails to choose any exemptions, no property is exempted." *Virissimo*, 33 B.R. at 205–06. The court also noted that Congress could have avoided this result by rewording § 522(p) to say: "'A debtor shall receive exemptions set forth under subsection (d) unless the state law does not permit such exemptions to be used. If a state does not permit a debtor to use such exemptions, the debtor shall receive the exemptions provided under the laws of that state.' With that language there is no election and a debtor automatically receives state exemptions but not the exemptions under § 522(d)." *Virissimo*, 33 B.R. at 206.

*Virissimo* alternatively concluded that, if one considered § 522(p) to be ambiguous, the legislative history of this provision supports applying it to states that have opted out of the § 522(d) exemption scheme. In its own words: "Nowhere is there a suggestion that the

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION

$125,000 homestead limitation is applicable to debtors in some states but not to debtors in other states. Rather, it is obvious that Congress intended to eliminate some of anomalies created by the use of state homestead exemptions and create a more uniform, predictable set of exemptions. Congress wanted to close what it perceived was the abuse of exemptions caused, in part, by the varying state laws and overly generous homesteads." 332 B.R. at 207. The Bankruptcy Appellate Panel appears to have adopted the *Virissimo* court's view, though the Panel did not explain its reasoning for doing so. *See In re Caldwell*, 545 B.R. 605, 609 (B.A.P. 9th Cir. 2016) ("Section 522(p)(1) imposes a limitation on the homestead exemption a debtor can claim regardless of the applicable state law exemptions.") (citing *In re Kane*, 336 B.R. 477, 481 (Bankr. D. Nev. 2006); *Virissimo*, 332 B.R. at 207).

       I conclude § 522(p)(1) applies even where State law opts out of the exemptions given in § 522(d). Section 522(l) requires the debtor to list the exemptions he claims. Another way of saying this is that a debtor is required to state in writing which exemptions he is electing to claim. It is true that California, by opting out of § 522(d), causes § 522(b)(2) to list no property as exempt. But as *Virissimo* noted, a debtor could still claim exemptions under § 522(d), and such exemptions would be allowed unless someone timely objected. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (holding that invalid claims of exemption still result in such property being exempt unless someone timely object under Bankruptcy Rule 4003(b)). *Mcnabb*'s reasoning is essentially that a state opting out of § 522(d) precludes a debtor from electing those exemptions, and the resulting choice between State exemptions under § 522(b)(3) or no exemptions cannot be construed as an election at all. The first problem with this reasoning is it adds an additional question – not just whether an election happened, but whether it was effective – into a provision that does not expressly ask for it. But more importantly, the Supreme Court's decision in *Freeland & Kronz* makes clear that a debtor *could* make an effective election of § 522(d)'s exemptions in a state that has opted out of them, unless someone timely objects. So even if the effectiveness of a debtor's election

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                  15/29

1    matters under § 522(p), a state opting out of federal exemptions does not necessarily bar a

2    debtor-resident of such a state from electing such exemptions.

3         The majority of courts that have decided this issue have done so in accordance with

4    *Virissimo*, not *Mcnabb*, including the BAP. And my own analysis of § 522(p) leads me to

5    conclude that *Virissimo* provides the correct rule. Accordingly, § 522(p) applies to Debtor's

6    homestead exemption. I determine the effect of § 522(p) on Debtor's exemption next.

7              2.    *§ 522(p) Limits Debtor's Homestead Exemption to $170,350*

8         Again, § 522(p)(1)(D) says "a debtor may not exempt any amount of interest that was

9    acquired by the debtor during the 1215-day period preceding the date of the filing of the

10   petition that exceeds in the aggregate $125,000[10] in value in real [] property that the debtor

11   or a dependent of the debtor claims as a homestead." Courts look to state law first to decide

12   what property interests a debtor acquired in a given transaction, "and then to [§] 522(p)(1) to

13   determine whether that [interest] qualifies as an 'any amount of interest that was acquired'

14   within the compass of [§] 522(p). *In re Greene*, 583 F.3d 614, 620 (9th Cir. 2009).

15        "California defines a homestead as a dwelling where a person resides." *In re Schaefers*,

16   623 B.R. 777, 782 (B.A.P. 9th Cir. 2020) (citing Cal. Code Civ. Proc. §§ 704.710(a), (c)).

17   "Californians may, therefore, claim a homestead exemption without holding a fee simple

18   interest in the subject real property. Even so, they must have *some* legal or equitable interest

19   in the real property." *Schaefers*, 623 B.R. at 782–83 (citations omitted). "[U]nder California

20   law a limited liability company is a separate and distinct legal entity from its owners or

21   members." *Id.* at 783 (citing *Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 220–21 (2017)).

22   "Consequently, limited liability company members have no interest in the company's assets."

23   *Schaefers*, 623 B.R. at 783 (citing *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958,

24   963 & n.21 (9th Cir. 2002)). In *Schaefers*, the BAP held that a debtor who failed to identify a

---

27   [10] This amount is regularly adjusted to reflect changing economics. Currently the

28   amount is $170,350.

beneficial or equitable interest in real property held by an LLC could not claim a homestead exemption in such property because his interest in the LLC was not a homestead.

In *Greene*, the Ninth Circuit used the Black's Law Dictionary definition of "acquire" to interpret § 522(p): "[t]o gain possession or control of; to get or obtain." 583 F.3d 614, 623 (9th Cir. 2009). Because Debtor and Lions Properties are separate entities, Debtor did not gain possession or control of the San Jose Property until it was quitclaimed to Debtor the day before he filed this bankruptcy case. So to the extent the San Jose Property appreciated in value between the date of purchase and the date Lions Properties transferred it to Debtor, he "acquired" such appreciation in the transfer, making that appreciation subject to § 522(p).

As for any post-petition appreciation: "A debtor's exemptions have long been fixed at the date of the filing of the bankruptcy petition. This rule determines not only what exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her exemptions." *Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018) (cleaned up). So assuming that trustee's valuation of the San Jose Property is correct, that post-petition appreciation accrues to the bankruptcy estate, and cannot be claimed as exempt by Debtor. *See* § 541(a)(1) ("The commencement of a [bankruptcy case] . . . creates an estate. Such estate is comprised of," among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case.").

Debtor fails to show what interest he had in the San Jose Property when it was held by Lions Properties, so I find he had none. As Lions Properties did not transfer the San Jose Property to Debtor until the day before he filed this bankruptcy case, he acquired any pre-petition appreciation on that date, making such appreciation subject to § 522(p). And any post-petition appreciation is the property of the bankruptcy estate. I conclude that Zions is correct, and § 522(p) requires that Debtor's homestead exemption in the San Jose Property must be limited to $170,350.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 17 of 29

E.      § 522(o) Limits Exemptions Otherwise Available but does not Apply on the Facts of this Case

    1.    *Exemption Planning is Permitted in General but § 522(o) Changes Things*

In this circuit, debtors like Kane are permitted to maximize their exemptions when contemplating a bankruptcy filing. The courts more or less uniformly conclude that the conversion by a consumer of non-exempt property into exempt property on the eve of bankruptcy alone does not mean a debtor must be denied such exemptions. *In re Stern*, 345 F.3d 1036, 1044-45 (9th Cir. 2003); *Wudrick v. Clements*, 451 F.2d 988, 989-90 (9th Cir. 1971); *In re Beverly*, 374 B.R. 221, 241 (B.A.P. 9th Cir. 2007). But courts have acknowledged that Congress has the power to legislate otherwise and change that result. *In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005). One such provision is § 522(o). It states:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in--
>
> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
>
> (3) a burial plot for the debtor or a dependent of the debtor; or
>
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

Courts have developed a standard to use when evaluating claims a debtor has violated § 522(o): "To prevail, a creditor or trustee must show: (a) an increase in the value of the debtor's homestead; (b) that the increase was 'attributable' to the disposition of nonexempt assets; (c) that the disposition of the nonexempt assets was made with the intent to hinder, delay, or defraud a creditor; and (d) that the disposition occurred during the ten-year period

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    18/29

ending on the date the debtor's bankruptcy petition was filed." *In re Stanton*, 457 B.R. 80, 91 (Bankr. D. Nev. 2011).[11] Some courts use a variant of this test, but they are not materially different. *In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007) (citing *In re Sissom*, 366 B.R. 677, 688 (Bankr. S.D. Tex. 2007)); *In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012).

The dispute in this case centers on whether Debtor "disposed of" property in his acquisition of the San Jose Property. Zions contends that Debtor "disposed of" nonexempt assets to purchase a homestead by taking a $600,000 loan secured by junior liens on the Canadian Properties, and by using the proceed from that loan as a partial down payment on the San Jose Property. Debtor disagrees and argues he had no equity in the Canadian Properties until he paid off a second deed of trust with some of his 2020 salary bonus, which he only did because the loan became due, requiring a balloon payment. More critically, in Debtor's view, that borrowing did not involve disposing of non-exempt assets.

>    2.     *Decisions Interpreting "Dispose of" Under § 522(o)*

Case law addressing precisely whether property has been "disposed of" within the meaning of the statute is hard to come by. Reviewing the case law, I find several types of cases. The first involves actual dispositions of assets – including real property, *In re Craig*, 2012 WL 6645692 (Bankr. D. Mont. Dec. 20, 2012), construction equipment, *In re Wilmoth*, 397 B.R. 915, 917 (B.A.P. 8th Cir. 2008), stock in a small company, *In re Sissom*, 366 B.R. 677, 689 (Bankr. S.D. Tex. 2007), coin collections, *In re Crabtree*, 562 B.R. 749, 751 (B.A.P. 8th Cir. 2017), trucks and trailers, *In re Maronde*, 332 B.R. 593, 597 (Bankr. D. Minn. 2005),

---

[11] Debtor argues this test is in conflict with *In re Stern*, 345 F.3d 1036, 1043 (9th Cir. 2003), which reiterated that "'that the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se.'" (quoting *Wudrick v. Clements*, 451 F.2d 988 (9th Cir. 1971)). Assuming that is true, the problem for Debtor is that § 522(o) was added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, which was passed in 2005, after *Stern* was decided. At least one bankruptcy court in this circuit has concluded that § 522(o) "was obviously added to the Bankruptcy Code by Congress to curb a perceived abuse by debtors of" *Stern*'s allowance of pre-bankruptcy planning. *In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005). I decline to decide this issue, as I conclude there are other grounds for denying Zions' § 522(o) claim.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    19/29

boats, *In re Roberts*, 527 B.R. 461, 471 (Bankr. N.D. Fla. 2015), liquor licenses and a business enterprise, *In re Halinga*, 2013 WL 6199152 (Bankr. D. Id. Nov. 27, 2013).

A second type of case involves, as here, a borrowing against property and use of funds to acquire exempt property. Here, one might argue that the borrowing against the Canadian Property was a sale of Debtor's equity in the property for cash, and later use of cash to purchase the Residence. The Fifth Circuit faced similar facts in *In re Cipolla*, 476 Fed. App'x. 301, 305 (5th Cir. 2012). Cipolla, the debtor, borrowed against non-exempt real property and used the funds to purchase an exempt homestead in Texas, much like Debtor did. But the *Cipolla* court never actually analyzed whether this qualified as a disposition, apparently because the parties did not contest it. The Fifth Circuit referred to the transaction using varying nomenclature, including sometimes referring to it as a "transfer."

Some courts have determined that the use of borrowed funds to acquire exempt property or pay down a debt on exempt property may be barred by § 522(o). *See In re Keck*, 363 B.R. 193, 208-09 (Bankr. D. Kan. 2007) (cash advances used to pay home equity line); *In re Wallwork*, 616 B.R. 395, 406 (Bankr. D. Idaho 2020)(credit card advances used to improve home, but not applying § 522(o) due to lack of intent to defraud). The trouble is the courts that have so held did not fully analyze the first part of the statute, which requires a disposition. In these cases, the courts either assume the existence of a disposition without any real analysis or the parties have not argued the point. The absence of analysis on what a "disposition" precisely is leads me to find their conclusions unpersuasive.

Somewhat surprisingly, some cases have held that the use of non-exempt cash reserves to acquire exempt assets can run afoul of § 522(o). These seem to be the facts in *In re Addison*, 540 F.3d 805, 813-14 (8th Cir. 2008) (concluding use of funds in brokerage and savings account to pay down mortgage balance qualified under § 522(o) as "conversion" but finding no extrinsic evidence of fraudulent intent). But we know that in the Ninth Circuit, absent § 522(o), exemption planning is not categorically barred. We also know that the statute requires a disposition. If this line of thinking is correct and every use of non-exempt cash to

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 20 of
29

1  acquire exempt assets is barred, I would have to conclude that § 522(o) overrules all Ninth

2  Circuit authority on exemption planning.

3       One could make a case that Congress itself, in enacting § 522(o) meant to catch a

4  broad range of transactions under that provision. The Report of the Committee on the

5  Judiciary House of Representatives described BAPCPA's addition to § 522 in this fashion:

6       Sec. 308. Reduction of Homestead Exemption for Fraud.

7       Section 308 amends section 522 of the Bankruptcy Code to
8       reduce the value of a debtor's interest in the following property
     that may be claimed as exempt under certain circumstances: (i)
9       real or personal property that the debtor or a dependent of the
     debtor uses as a residence, (ii) a cooperative that owns property
10       that the debtor or a dependent of the debtor uses as a residence,
     (iii) a burial plot, or (iv) real or personal property that the debtor
11       or dependent of the debtor claims as a homestead. Where
     nonexempt property is converted to the above-specified exempt
12       property within the ten-year period preceding the filing of the
     bankruptcy case, the exemption must be reduced to the extent
13       such value was acquired with the intent to hinder, delay or
     defraud a creditor.

14  H.R. Report No. 109-31, pt. 1, at p. 72 (2005). The trouble is, the statute as proposed and

15  enacted consistently used the term "disposed of." It never strayed into other terms like

16  "converted" or "transferred" or any other such term. In my view, this means I must find the

17  challenged transaction was actually a disposition, and not any number of other transactions

18  that fall under the broad umbrella of "transfer."

19       3.   *The Bankruptcy Code Refers to the Term "Disposed of" and this Uniformly*

20          *Means Divestment of Ownership or the Rights of Ownership*

21       Finding little concrete guidance in the case law, it is worth looking harder at the

22  Bankruptcy Code itself to tease out a definition for "disposing of" property. The Ninth

23  Circuit has held under ordinary statutory interpretation rules, statutes are interpreted "as a

24  whole, giving effect to each word and making every effort not to interpret a provision in a

25  manner that renders other provisions of the same statute inconsistent, meaningless or

26  superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (citing

27  Sutherland Stat. Const. §§ 46.05, 46.06 (4th ed.1984); *Aluminum Co. of Am. v. Bonneville Power*

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION           21/29

1  *Admin.*, 891 F.2d 748, 755 (9th Cir.1989)). The Ninth Circuit has also held that "[w]e must

2  presume that words used more than once in the same statute have the same meaning." *Boise*

3  *Cascade*, 942 F.3d at 1432 (citing Sutherland Stat Const. § 46.06). So, where do these words

4  appear in the Bankruptcy Code and what does that tell us?

5     Section 559, which addresses the liquidation of repo participations, provides in part:

> In the event that a repo participant or financial participant liquidates one or more repurchase agreements with a debtor and under the terms of one or more such agreements has agreed to deliver assets subject to repurchase agreements to the debtor, any excess of the market prices received on liquidation of such assets (or if any such assets are not <u>disposed of</u> on the date of liquidation of such repurchase agreements, at the prices available at the time of liquidation of such repurchase agreements from a generally recognized source or the most recent closing bid quotation from such a source) over the sum of the stated repurchase prices and all expenses in connection with the liquidation of such repurchase agreements shall be deemed property of the estate, subject to the available rights of setoff.

§ 559 (emphasis added). In discussion this section, Collier makes clear it is intended to allow

non-breaching parties to close out or liquidate their investments by terminating the

agreement and fixing damage claims based on market prices at the time of liquidation.

5 Collier on Bankruptcy ¶ 559.04[1] (16th ed. 2021).

   Section 725 also makes a reference to these words:

> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall <u>dispose of</u> any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

§ 725 (emphasis added). This also suggests a final winding up and termination of rights.

   Finally, a provision addressing unclaimed property, § 347, contains a reference to

these words:

> (a) Ninety days after the final distribution under section 726, 1194, 1226, or 1326 of this title in a case under chapter 7, subchapter V of chapter 11, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and <u>disposed of</u> under chapter 129 of title 28.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                    22/29

§ 347 (emphasis added). Here, the statute is referring to a final payment and close out of the estate's asset base. Obviously, none of these statutes has anything to do with exemptions and exemption planning. But each refers to a final resolution or termination of ownership interests and none even vaguely suggests a party would have a continuing relationship or ownership with the affected property.

The cases sometimes describe transactions subject to § 522(o) as involving transfers or conversions, but their usage is imprecise. The definitional section of the Code, § 101, makes clear that a "disposition" is narrower than other similar terms. "Transfer," by example, is defined this way:

> The term "transfer" means--
>
> > (A) the creation of a lien;
> >
> > (B) the retention of title as a security interest;
> >
> > (C) the foreclosure of a debtor's equity of redemption; or
> >
> > (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
> >
> > > (i) property; or
> > >
> > > (ii) an interest in property.

11 U.S.C. § 101(54) (emphasis added). This section may not say exactly what a "disposition" is, but it at least implies that one cannot use "disposition" as an equivalent word for any other type of transfer. It is in some way distinct.

> 4.  *Lacking Concrete Guidance, I Resort to the Dictionary*

That leaves us with common understandings of the words "disposed of." The Dictionary definitions of "dispose" include "to get rid of," "to deal with conclusively," and "to transfer to the control of another." *Dispose*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/dispose. From this definition, Congress appears to define a disposition narrowly by comparing it to a "parting with" property or

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 23 of
29

interests in property. By contrast, the § 101(54) definition seems to distinguish a disposition from the creation of encumbrances like liens and the foreclosure of equitable rights.

It is useful to consider whether there are better definitions for the transaction here than disposition. One that comes immediately to mind is hypothecation: "The pledging of something as security without delivery of title or possession." *Hypothecation*, Black's Law Dictionary (11th ed. 2019). Debtor here borrowed against an asset and used the proceeds of the loan to pay for a new house (which is now his claimed homestead).

     5.    *Conclusion: Debtor did not Dispose of Assets Within the Meaning of § 522(o)*

I find no disposition of assets on the facts.

This case does not involve a sale of part or all of the Canadian Property. Instead, Debtor leveraged the Canadian Properties to purchase an exempt residence. This is not a disposition because the property used to buy the San Jose Property – his equity in the Canadian Properties – never left Debtor's ownership and to this day remains titled in his name. To find this series of transactions a disposition, I would have to conclude that any use of non-exempt cash to buy property capable of exemption is a disposition, regardless of whether that cash was obtained by selling property. I do not think § 522(o) works that way.

What matters is not whether cash was used to buy exempt property, but how the debtor obtained the cash to do so. If a debtor obtained the cash by selling non-exempt property, or even just a partial interest in such property, then the transaction is a disposition and thus subject to § 522(o). But if a debtor obtains cash using non-exempt property in a manner that does not result in the debtor giving up such property, in whole or in part, the transaction is not a disposition, and § 522(o) does not apply. The latter more accurately describes Debtor's conduct here. Zions' § 522(o) objection must therefore be denied.

     6.    *I Cannot Determine Whether Debtor Intended to Hinder, Delay or Defraud his Creditors Without an Evidentiary Hearing*

Debtor also argues he had no intend to hinder, delay, or defraud his creditors. He contends that he borrowed against the Canadian Properties to buy the San Jose Property

Case: 21-50028   Doc# 178   Filed: 07/09/21   Entered: 07/09/21 15:09:12   Page 24 of 29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

because a loan became due in the ordinary course. He paid off that prior loan and took out another to further his and his wife's desire to own a home. Debtor also notes that he only borrowed "approximately $435,000 USD." ECF 147, p. 2.

The point may be moot given my conclusion that no disposition occurred within the meaning of § 522(o). But I could not make a final determination about whether Debtor acted with the intent to hinder, delay, or defraud creditors on the existing record. "[A] plain reading of the statutory language reveals that hinder, delay, or defraud is stated in the disjunctive, so intent to hinder or delay is sufficient." *Wallwork*, 616 B.R. at 406; *see In re Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996) (applying the same reasoning to similar language in § 727(a)(2)). "[I]ntent may be inferred from the facts and circumstances of a case, because it is unlikely a debtor will testify directly that his intent was fraudulent." (citation omitted). When deciding whether to make such an inference, courts look to the badges of fraud, which "include (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer." *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010).

Beginning with the relationship between transferor and transferee, the transfer Zions argues is subject to § 522(o) is the loan Debtor obtained by encumbering his equity in the Canadian Properties, so the relevant transferee is the lender. Not, as Zions contends, Lions Properties.[12] *See* ECF 74, p. 16 ("Here, the analysis centers on the facts and circumstances in

---

[12] To the extent Zions meant to use § 522(o) to attack the transfer of the San Jose Property from Lions Properties to Debtor, I would still deny the motion. Section 522(o) only applies to property that *the debtor* disposed of. In the Lions Properties to Debtor transaction, it was Lions Properties, not Debtor, who disposed of the San Jose Property. Zions' motion can be read to implicitly request I treat these separate transactions as linked,

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    25/29

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 25 of 29

the time period leading up to the 'transfer'—i.e., the August 2020 Loan."). Nothing in the record allows me to infer there was a close relationship between Debtor and the lender. This badge of fraud is not present here.

The next badge of fraud asks whether the transfer was made in anticipation of a pending suit. As Zions notes, there were multiple lawsuits pending against Debtor at the time of the transfer. And Debtor has admitted that the increasing number of those lawsuits, and his inability to resolve those actions through his pre-bankruptcy restructuring, caused him to file this petition. This badge of fraud is present.

Third, Debtor's schedules show he was balance sheet insolvent as of the petition date, ECF 1, p. 8, and in October 2019 he was in poor financial condition, as his concerns over ability to meet debt obligations caused him to hire restructuring counsel. I have no evidence that in between October 2019 and the petition date Debtor's financial situation improved, and given that Debtor also admitted to incurring significant gambling losses during that period, I conclude it appropriate to infer he was either insolvent or in serious financial distress on the transfer date.

Fourth, I conclude that Debtor did not transfer substantially all of his non-exempt property. True, the $600,000 in question represents over 86% of Debtor's claimed exemptions. *See* ECF 1, p. 17–18. But from the standpoint of Debtor's total unencumbered property, the $600,000 represents just under 22%. *See* ECF 17, p. 9. I do not think that less than a quarter of non-exempt assets qualifies as substantially all.

Fifth, I conclude Zions has not been hindered in collecting on its judgment, because it does not currently have one.

Finally, Debtor did receive adequate consideration for the disposition, assuming it was one: in exchange for granting a security interest in his equity in the Canadian Properties, he received $435,000. Zions again argues the wrong transfer: while it is true Lions Properties

---

but to do so I would have to find that Debtor and Lions Properties are alter egos. No one has asked me to make such a finding, and I decline to do so.

Case: 21-50028   Doc# 178   Filed: 07/09/21   Entered: 07/09/21 15:09:12   Page 26 of 29

received nothing for transferring the San Jose Property to Debtor, that transfer did not involve a disposition *by Debtor* of non-exempt assets.

Two badges of fraud are present here. But Debtor presents an alternative explanation for this transfer: "The paying off of the maturing second deed on the Canadian Properties and the subsequent refinance were very close in time. The series of transactions was not designed to effect creditors but was done to retire matured debt and then purchase a home for Kane, his wife and their newborn daughter." ECF 146, p. 9. At a minimum, the fact that the second deed on the Canadian Properties came due of its own accord is some evidence that this transaction was not made with ill intent. It provides an alternate explanation for the timing of this transaction that is not rooted in Debtor planning for his bankruptcy case.

I also note that Debtor originally vested title to the San Jose Property in Lions Properties. Zions points out that they are statutory insiders, and says I should infer from this that the entire transaction was an effort to hide assets from creditors. But this is a motion to deny Debtor the homestead exemption he claims. If Zions is correct that Debtor planned this transaction from the outset to defraud his creditors by obtaining a homestead on the eve of bankruptcy, why did he have Lions Properties hold title to the San Jose Property? That choice could arguably support a finding that Debtor intended to hinder, delay, or defraud creditors, but it cannot be used to show that Debtor planned from the outset to claim a homestead exemption in the San Jose Property. If anything, Debtor's decision to vest title in Lions Properties at first supports an inference that he did not intend to file bankruptcy at that time, as that decision, absent the subsequent transfer, would have prevented Debtor from claiming a homestead exemption in the San Jose Property.

Zions is correct that some badges of fraud are present here. But Debtor's alternative explanation for the timing of the transaction could allow a reasonable trier of fact to find he lacked the necessary intent, despite the presence of such badges. Moreover, Debtor's choice to vest title to the San Jose Property in Lions Properties could only frustrate what Debtor is trying to do now: exempt the equity he holds in the San Jose Property in this bankruptcy

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    27/29

1 case. To resolve the factual contentions presented here I would need to weigh evidence and
2 make credibility determinations. Because it would be improper to do so on the papers, which
3 is a summary judgment-like procedure, I conclude that, to the extent I must reach Debtor's
4 intent to decide Zions' § 522(o) objection, an evidentiary hearing is necessary.

**III.    CONCLUSION**

Debtor's exemption in the San Jose Property is not barred by § 522(o) but it is limited
by § 522(p) to $170,350.

IT IS SO ORDERED.

**END OF ORDER**

Case: 21-50028    Doc# 178    Filed: 07/09/21    Entered: 07/09/21 15:09:12    Page 28 of
29

# COURT SERVICE LIST

[ECF recipients only]