1  Gregg S. Kleiner, State Bar No. 141311
   RINCON LAW LLP
2  268 Bush Street, Suite 3335
   San Francisco, CA 94104
3  Telephone No.:  415-672-5991
   Facsimile No.:  415-680-1712
4  Email: gkleiner@rinconlawllp.com

5
   Counsel for FRED HJELMESET,
6  Trustee in Bankruptcy

7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11  In re                              Case No. 21-50028 SLJ
                                       Chapter 7
12  EVANDER FRANK KANE,                Hon. Stephen L. Johnson

13        Debtor.                      **MOTION TO:**
                                       **(I) SELL REAL PROPERTY,**
14                                     **SUBJECT TO OVERBID;**
                                       **(II) PAY LIENS, COSTS OF SALE,**
15                                     **REAL ESTATE COMMISSION**
                                       **AND TAXES; AND**
16                                     **(III) PAY DEBTOR HIS HOMESTEAD**
                                       **EXEMPTION**
17                                     **(2301 Richland Avenue,**
                                       **San Jose, CA  95125)**
18
                                       [No Hearing Required Unless Requested]
19

20

21

22        Fred Hjelmeset, Trustee in Bankruptcy of the estate of the above-named Debtor, hereby

23  moves the Court for an order authorizing him to enter into a "California Residential Purchase

24  Agreement and Joint Escrow Instructions" dated August 25, 2021, as amended by the "Seller's

25  Counter-Offer to Purchase Contract for 2301 Richland Avenue, San Jose, CA  95125" (collectively

26  the "Agreement") with Sharon Ruthanne DeAngelo, Bruce Rollins Jr., and Sharlee Marie DeAngelo

27  (collectively, "Buyer"); concerning the sale of the estate's right, title and interest in and to real

28  property commonly known as 2301 Richland Avenue, San Jose, CA  95125 ("Property"), for

$3,375,000, which amount is equal to an effective purchase price of $3,410,000,[1] pay liens asserted against the Property, costs of sale, real estate commissions and any taxes that may arise from the sale of the Property, and pay the Debtor his homestead exemption, on the terms for fully set forth in the Notice and Opportunity For Hearing on Motion to: (I) Sell Real Property, Subject to Overbid; (II) Pay Liens, Costs of Sale, Real Estate Commission and Taxes; and (III) Pay Debtor His Homestead Exemption (2301 Richland Avenue, San Jose, CA 95125) ("Notice").

A copy of the Notice is attached hereto as **Exhibit A** and is incorporated by reference.

A copy of the Agreement is attached hereto as **Exhibit B** and is incorporated by reference.

As set forth in greater detail in the Notice, the Trustee is seeking authority to enter into the Agreement pursuant to 11 U.S.C. Section 363. By this motion:

(a) the Trustee seeks authority to enter into the Agreement with the Buyer, or an overbidder, and execute any and all documents necessary to consummate the Agreement;

(b) the Trustee seeks authority to pay liens asserted against the Property, costs of sale, real estate commissions and any taxes that may arise from the sale of the Property;

(c) the Trustee seeks authority to pay the Debtor his $170,350 homestead exemption;

(d) the Trustee requests a finding that the Buyer (or any overbidders) are good faith purchasers pursuant to 11 U.S.C. § 363(m); and

(e) the Trustee seeks authority to include a provision in the order granting this motion that it is effective upon entry, and the stay imposed by Rule 62(a) of FRCP and/or Bankruptcy Rule 6004(h) shall not apply.

DATED: August 30, 2021    RINCON LAW LLP

           By: */s/Gregg S. Kleiner*
             GREGG S. KLEINER
             Counsel for FRED HJELMESET,
             Trustee in Bankruptcy

---

[1] As discussed in the Notice in the Section entitled "Purchase Offer" the Buyer will, subject to Court approval, pay to the Trustee $3,375,000 for the Property, and, the Buyer's broker has agreed to accept a $35,000 *reduction* in its commission (roughly a 1.5% commission vs. 2.5% commission). When the $35,000 in actual cost reduction is added to the $3,375,000 purchase price the *effective price is $3,410,000.*

| In re | Case No. 21-50028 SLJ |
| --- | --- |
| | Chapter 7 |
| EVANDER FRANK KANE, | Hon. Stephen L. Johnson |
| Debtor. | [No Hearing Required Unless Requested] |

**NOTICE AND OPPORTUNITY FOR HEARING
ON MOTION TO: (I) SELL REAL PROPERTY, SUBJECT TO OVERBID;
(II) PAY LIENS, COSTS OF SALE, REAL ESTATE COMMISSION AND TAXES;
AND (III) PAY DEBTOR HIS HOMESTEAD EXEMPTION
<u>(2301 Richland Avenue, San Jose, CA  95125)</u>**

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST:**

**PLEASE TAKE NOTICE THAT** Fred Hjelmeset, the duly appointed and acting Chapter 7 Trustee ("**Trustee**") of the bankruptcy estate of Evander Frank Kane ("**Estate**"), has entered into a "California Residential Purchase Agreement and Joint Escrow Instructions" dated August 25, 2021, as amended by  other addenda (collectively the "**Agreement**") with Sharon Ruthanne DeAngelo, Bruce Rollins Jr., and Sharlee Marie DeAngelo (collectively, "**Buyer**"); concerning the sale of the Estate's right, title, and interest in and to real property commonly known as 2301 Richland Avenue, San Jose, CA  95125 ("**Property**"), for $3,375,000, which amount is equal to an effective purchase price of $3,410,000,[1] pay liens asserted against the Property, costs of sale, real estate commissions and any taxes that may arise from the sale of the Property, and pay the Debtor his homestead exemption.

In the event that there is an overbid, the auction will take place telephonically on **September 7, 2021, at 1:00 p.m. PDT**, with dial-in information provided to all qualified overbidders and the Buyer. If the sale is approved, the Trustee estimates that the Estate will receive, after paying costs of sale, commissions and liens, and after paying the Debtor his homestead exemption, approximately $700,000.  The Trustee seeks authorization to enter into the Agreement.

<u>**Background**</u>

The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on January 9, 2021 ("**Petition Date**"). According to the Debtor's sworn schedules, as of the Petition Date, the Debtor and his non-debtor spouse, Deanna Sara Jean Kane, are the owners of the Property. The Trustee has reviewed the preliminary title report for the Property.  Other than real estate taxes, the only lien of record relates to an interest only loan in the principal amount of $2,272,500.00 in favor of Pacific Private Money, Inc. ("**Lender**"), which loan is secured by a first priority deed of trust against the Property. Monthly interest only payments are $17,990.63. The Trustee is informed that the Debtor was current on these payments through June 2021. It is anticipated that approximately $50,000 in unpaid interest and costs will be owed to the Lender when the sale closes. Based on information presently available to the Trustee today, he anticipates that the Estate will incur little or no capital gains taxes,

---

[1] As discussed below in the Section entitled "Purchase Offer" the Buyer will, subject to court approval, pay to the Trustee $3,375,000 for the Property, and, the Buyer's broker has agreed to accept a $35,000 <u>*reduction*</u> in its commission (roughly a 1.5% commission vs. 2.5% commission).  When the $35,000 in actual cost reduction is added to the $3,375,000 purchase price the <u>*effective price is $3,410,000.*</u> Because the Trustee received multiple offers for the Property, he wants to make sure any party that makes an overbid understands the effective value of the Buyer's offer.

1

**EXHIBIT A**

## Purchase Offer

The Trustee has accepted a purchase offer for the Property in the aggregate amount of $3,375,000, to purchase the Property. The actual effective value of the Buyer's offer to the Estate is $3,410,000 because the Buyer's broker has agreed to accept a $35,000 _reduction_ in its commission (roughly a 1.5% commission vs. 2.5% commission). When the $35,000 in actual cost reduction is added to the $3,375,000 purchase price the _effective price is $3,410,000._ The sale to the Buyer of the Estate's right, title and interest in the Property is subject to overbid and Court approval. A true and correct copy of the Agreement is attached as Exhibit B to the motion filed by the Trustee to sell the Property.

The Buyer has requested that the Trustee seek a finding that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m). In the event that there is an overbid, the Trustee anticipates that the overbidder, too, will seek a § 363(m) finding. The Trustee requests that the sale order provide that, in the event that the Buyer does not timely close the transaction, the Trustee shall be authorized to seek to sell the Property under substantially the same terms and conditions and at the same or a higher price to an alternative purchaser, without the need of further notice to creditors or a hearing. The Trustee requests that the order approving the sale of the Property include the following provision: "This order is effective upon entry and any stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

## Payment of Liens, Real Estate Commission and Costs

Subject to Bankruptcy Court approval sought herein, the Trustee shall pay the following obligations from the sale proceeds: (a) sums due and owing to the Lender, estimated at approximately $2,322,500; (b) a real estate commission equal to 4% of the gross purchase price (approximately $135,000), to be divided between the real estate brokers, as detailed in the following paragraph; (c) ordinary closing costs of sale and other payments (transfer taxes, recording fees, etc.) that are made in sales of real property in Santa Clara County, California; (d) miscellaneous costs, which may include home warranty inspections, smoke detectors, carbon monoxide detectors, reimbursement to the Estate's broker for advancing payment for inspections costs, etc.; (e) tax obligations, if any; and (f) the Debtor's homestead exemption in the amount of $170,350.

Subject to Court approval, the Trustee intends to pay from the sale proceeds a commission equal to 4% of the gross sale price, to be divided between (a) the Estate's broker, Intero Real Estate Services which will receive 2.5% of the 4% commission, and (b) the Buyer's broker which will receive 1.5% of the 4% commission. **The broker's commission and estimated costs _will increase_ in the event that the Property is sold at overbid for a higher price, and if the Property is purchased by someone other than the Buyer, the commission will be 5% of the gross purchase price.**

## Payment of Debtor's Homestead Exemption

At the time the Debtor filed his bankruptcy petition, he asserted a $600,000 homestead exemption in the Property, which exemption was made pursuant to Code of Civil Procedure Section 704.730. On July 9, 2021, the Bankruptcy Court entered its order sustaining the objection of Zions Bancorporation, N.A. to the Debtor's claimed homestead exemption ("Order"). Among other things, the Order concluded that the Debtor's maximum allowed homestead exemption is $170,350, pursuant to Bankruptcy Code Section 522(p), which section limits a homestead exemption to that amount where the debtor acquired the property within 1,215 days of the petition date. The Order has been appealed by the Debtor and the appeal is currently pending before the District Court. As noted above, the anticipated proceeds from the sale of the Property are approximately $700,000, _after_ payment of the liens, of costs of sale and a $170,350 homestead. Following the closing of the sale of the Property to the Buyer, the Trustee shall deliver to the Debtor the sum of $170,350, as his homestead exemption. The Trustee shall reserve the sum of $429,650 in the event that the District Court overrules the Order, and awards the Debtor a homestead exemption up to the aggregate amount of $600,000.

## Sale Subject to Overbid

The sale of the Property is subject to overbid. In the event that there is an overbid for the Property, the overbid

EXHIBIT A

auction will take place telephonically on **September 7, 2021, at 1:00 p.m., PDT**. All qualified overbidders and the Buyer and their respective real estate agents and brokers will be provided a telephone dial-in number in advance of the telephonic auction.

The following terms shall apply to all parties seeking to make an overbid for the Property:

     1.     On or before **September 3, 2021, 5:00 pm PDT**, bidders must (i) provide evidence to the Trustee at fhtrustee@gmail.com (with a copy to Trustee's counsel – gkleiner@rinconlawllp.com), that they can close and pay the purchase price in cash, (ii) deliver to the Escrow Agent, a $105,000 deposit ("Deposit"), and (iii) agree to be bound by the terms of the Agreement (except the amount of the purchase price, which amount will be the amount of a party's highest offer). The Deposit must be delivered to: Lawyers Title Company, Rosa Anna Juarez, Escrow Officer, 20520 Prospect Road, Suite 390, Saratoga, CA 95070, RosaAnna.Juarez@LTIC.com /TEAMMartha@LTIC.com, (408) 588-3858.

     2.     The initial overbid must be at least $3,430,000, approximately $20,000 higher than the Buyer's *effective offer*. Thereafter, additional bidding shall proceed in minimum increments of $2,000.

     3.     In the event that a qualified bidder is not the successful bidder, it may act as a back-up bidder at its last highest offer. The Deposit will be promptly returned to bidders who do not want to act as back-up bidders.

     4.     Bids may not contain any contingencies, whatsoever, including, but not limited to, any loan contingencies and inspection contingencies. The bidders must agree and acknowledge that they are purchasing the Property, "as is, where is" with all faults and defects and with no representations or warranties.

     5.     In the event there is an overbid, the overbid auction will occur by telephone on **September 7, 2021, at 1:00 pm, PDT**, with dial-in information provided to all qualified overbidders and the Buyer. Prior to the start of the auction, the Trustee will (i) identify any party or parties that have made a qualified bid for the Property and (ii) set forth the auction rules on the record, and may amend, modify or alter any bid procedure, rule or provision as the Trustee deems necessary, just or appropriate. The Trustee reserves the right, in his sole and absolute discretion, to refuse bids that do not, in his sole opinion, conform with the terms of the sale, to modify the terms and conditions of the sale or auction, to continue the sale from time to time. Only qualified bid participants may attend the overbid auction. All disputes with regard to the sale or auction will be resolved by the U.S. Bankruptcy Court. At the conclusion of the auction, the Trustee, in his sole discretion, will determine the highest and best bid and make a recommendation to the Bankruptcy Court to approve the sale of the Property.

     6.     The successful bidder for the Property must close escrow by tendering the entire purchase price to the Trustee, less a credit for any deposit held by escrow, not later than fifteen (15) days after the sale order is entered. If the successful bidder fails to timely close, it will forfeit its deposit to the Estate for all purposes. In the event of such a default, the Trustee will, without further order of the Court, be free to sell the Property to another party at the back-up bidder's last highest offer. The back-up bid shall have seven (7) business days, from the date that his/her/its counsel/agent has been notified by email by Trustee's counsel of the default by the original successful bidder, to close escrow. Should the back-up bidder fail to timely tender the purchase price for any reason, they shall be in default, and the deposit that they have tendered to the Trustee shall be forfeited to the Estate for all purposes.

Interested parties or their agents should feel free to contact Trustee's counsel with questions.

**PLEASE TAKE NOTICE THAT** due to the shelter in place requirements caused by the COVID-19 pandemic, all appearances will be by telephone, or, in the Court's sole discretion, by video conference. Instructions on how to file opposition, if any, and how to appear by phone are contained provided at the following link on the Court's website   https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak  and further detailed in the Court's Seventh Amended General Order 38, effective June 28, 2021.

The Court's Seventh Amended General Order specifies the following: "All interested parties should consult the

EXHIBIT A

Bankruptcy Court's website at www.canb.uscourts.gov for information about Court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website."

Effective June 28, 2021, the Intake Counter at Clerk's office locations in San Francisco, San Jose and Oakland will re-open to the public with limited hours of operation. The hours of operation are subject to change and may vary by location. ECF Registered Participants must continue to file all documents electronically.

All other parties may submit documents for filing by mail, electronically via the Court's website, in designated drop-box locations or at the Clerk's office Intake Counter during the posted hours of public operation. Filing fee payments (no cash) may be submitted electronically, by mail or drop-box, or at the Clerk's office Intake Counter during the posted hours of public operation. Information regarding Clerk's office Intake Counter hours of public operation, the electronic submission of documents, mailing addresses and the location of drop-boxes is available on the Court's website home page under the banner "Court Operations during the COVID-19 Outbreak Information about Hearings, Filings, and Operations": https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak.

All counsel, parties and other interested persons who intend to appear on a calendared motion or application shall appear telephonically or, at the presiding judge's discretion, by video. Again, absent express order of the presiding judge, there will be no physical access to any courtroom. Instructions for appearing via AT&T (telephonic only) or Zoom (telephonic or video) can be found on each individual judge's calendar page on the Court's website: https://www.canb.uscourts.gov/calendars/judges. There is NO COST for these services.

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the sale of the Property or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days' written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

DATED:   August 30, 2021          RINCON LAW LLP

By:   _/s/ Gregg S. Kleiner_____
          GREGG S. KLEINER
          Counsel for FRED HJELMESET, Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP, 268 Bush Street, Suite 3335, San Francisco, CA 94104
Telephone No.: 415-672-5991 / Facsimile No.: 415-680-1712 / Email: gkleiner@rinconlawllp.com

4

**EXHIBIT A**



**CALIFORNIA**
# RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
(C.A.R. Form RPA-CA, Revised 12/18)

**Date Prepared:** _08/25/2021_

**1. OFFER:**
   **A. THIS IS AN OFFER FROM** _Sharon Ruthanne DeAngelo, Bruce Rollins Jr., Sharlee Marie DeAngelo_ ("Buyer").
   **B. THE REAL PROPERTY** to be acquired is _2301 Richland Ave, San Jose, CA 95125_ , situated in
       _San Jose_ (City), _Santa Clara_ (County), California, _95125_ (Zip Code), Assessor's Parcel No. _026-22-025_ ("Property").
   **C. THE PURCHASE PRICE** offered is _Three Million, Three Hundred Ten Thousand_
      Dollars $ _3,310,000.00_ .
   **D. CLOSE OF ESCROW** shall occur on _____ (date)(or [X] _50_ **Days** After Acceptance).
   **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
   **A. DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   **B. CONFIRMATION:** The following agency relationships are confirmed for this transaction:
      **Seller's Brokerage Firm** _Intero Real Estate Services_ License Number _001354442_
      Is the broker of (check one): [X] the seller; or ☐ both the buyer and seller. (dual agent)
      Seller's Agent _Chris Buchanan_ License Number _02068778_
      Is (check one): [X] the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
      **Buyer's Brokerage Firm** _Palazzo Real Estate_ License Number _01919624_
      Is the broker of (check one): [X] the buyer; or ☐ both the buyer and seller. (dual agent)
      Buyer's Agent _Fernando Palazzo_ License Number _01919624_
      Is (check one): [X] the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
   **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _99,300.00_
      **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _within 1 business day after acceptance_ );
      OR **(2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within **3** business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . $ _____
      within **Days** After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   **C.** ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within **3 (or** _____ **) Days** After Acceptance, Deliver to Seller such verification.
   **D. LOAN(S):**
      **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,810,000.00_
      This loan will be conventional financing **OR** ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing **OR** ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or** _____ **) Days** After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   **E. ADDITIONAL FINANCING TERMS:** _____

   **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . $ _1,400,700.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . $ _3,310,000.00_

Buyer's Initials _SD_ / _BR_ / _SMD_        Seller's Initials **X** ( _FHBT_ ) ( )

© 1991-2018, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/18 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**EXHIBIT B**

Case: 21-50028    Doc# 209    Filed: 08/30/21    Entered: 08/30/21 08:50:05    Page 7 of 24

Property Address: **_2301 Richland Ave, San Jose, CA  95125_** Date: **_August 25, 2021_**

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( **X** Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or **X** is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

**J. LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or _____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**

Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4) X NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

A. ADDENDA:

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

B. BUYER AND SELLER ADVISORIES:

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | **X** Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6. OTHER TERMS:** **_This offer is subject to bankruptcy court approval and overbid. Property is being sold in an as-is condition._**

**7. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer **X** Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ _____ prepared by **_JCP_** .

**(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____ .

**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____ .

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

**(1)** ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and ____ Law, unless Seller is exempt.

Buyer's Initials ( **SD** ) ( **BR** **SMD** )   Seller's Initials **X** ( **FHBT** _____ )

**RPA-CA REVISED 12/18 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

**EXHIBIT B**

Property Address: *2301 Richland Ave, San Jose, CA  95125*                                      Date: *August 25, 2021*

**(2) (i)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

**(ii)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

**(iii)** Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**

**(1) (a)** ☐ Buyer ☒ Seller shall pay escrow fee *Lawyer's Title* _____ .

**(b)** Escrow Holder shall be _____ .

**(c)** The Parties shall, within **5 (or ____ ) Days** After receipt, sign and return Escrow Holder's general provisions.

**(2) (a)** ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____ .

**(b)** Owner's title policy to be issued by *Lawyer's Title* _____ .

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

**(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .

**(2)** ☒ Buyer ☒ Seller shall pay City transfer tax or fee *50/50* _____ .

**(3)** ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .

**(4)** Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

**(5)** ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

**(6)** Buyer to pay for any HOA certification fee.

**(7)** ☐ Buyer ☐ Seller shall pay for any private transfer fee _____ .

**(8)** ☐ Buyer ☐ Seller shall pay for _____ .

**(9)** ☐ Buyer ☐ Seller shall pay for _____ .

**(10)** ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ *950.00* _____ , of a standard (or ☒ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☒ Air Conditioner ☐ Pool/Spa ☐ Other: _____
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

**OR** ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

**(1)** All EXISTING fixtures and fittings that are attached to the Property;

**(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all  refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;

**(3)** The following additional items: _____

**(4)** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

**(5) LEASED AND LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

**(6)** Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items)  if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or** ☐ **will be removed and holes or other damage shall be repaired, but not painted).**

**9. CLOSING AND POSSESSION:**

**A.** Buyer intends (☐ does not intend) to occupy the Property as Buyer's primary residence.

**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or (____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/ _____ .

Buyer's Initials ( SD ) ( BR ) ( SMD )                                      Seller's Initials X( FHBT ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 3 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**

**EXHIBIT B**

Property Address: **2301 Richland Ave, San Jose, CA  95125**                    Date: **August 25, 2021**

**C.** **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D.** **Tenant-occupied property: Property shall be vacant** at least **5 (or _____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
**OR** ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.** **(1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**(3)** **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**B.** **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C.** **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E.** **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F.** **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
**(1) SELLER HAS: 7 (or _____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials                                               Seller's Initials **X** ( **FHBT**                 )   

**RPA-CA REVISED 12/18 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**

**EXHIBIT B**

Property Address: **2301 Richland Ave, San Jose, CA  95125**                              Date: **August 25, 2021**

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ____ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

   **C.** **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   **D.** **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   **E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, inst_____older in writing and shall pay any _____ase in co_____.

Buyer's Initials ( SD )( BK )( SMD )                              Seller's Initials **X**( FHBT )(_____ )

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com                    **Richland**

**EXHIBIT B**

Property Address: **_2301 Richland Ave, San Jose, CA  95125_**                    Date: **_August 25, 2021_**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

**A. SELLER HAS: 7 (or _0_ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

**B. (1) BUYER HAS: 17 (or _0_ ) Days** After Acceptance, unless otherwise agreed in writing, to:

   **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

   **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

   **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

   **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

   **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

**C.** ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

**D. SELLER RIGHT TO CANCEL:**

   **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

**F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials  (                       )                    Seller's Initials **x**(  _____ )

**RPA-CA REVISED 12/18 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com                    **Richland**

**EXHIBIT B**

Property Address: **2301 Richland Ave, San Jose, CA 95125**                     Date: **August 25, 2021**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

16. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

19. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

20. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( SD )( BR )( SMD )                     Seller's Initials X( FHBT )( )

**RPA-CA REVISED 12/18 (PAGE 7 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com     **Richland**

**EXHIBIT B**

Case: 21-50028     Doc# 209     Filed: 08/30/21     Entered: 08/30/21 08:50:05     Page 13 of 24

Property Address: *2301 Richland Ave, San Jose, CA  95125*                    Date: *August 25, 2021*

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

**A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

**B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials  SD  /  BX   SMD                    Seller's Initials  FHBT    _____

**22. DISPUTE RESOLUTION:**

**A. MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

**B. ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____                    Seller's Initials _____ / _____

**C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:

**(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisd**ic **. . .**robate, small claims or bank** **. . .**cy court** **. . .**

Buyer's Initials  SD    BX    SMD                    Seller's Initials x( FHBT     )

**RPA-CA REVISED 12/18 (PAGE 8 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)**

**EXHIBIT B**

Property Address: *2301 Richland Ave, San Jose, CA  95125*      Date: *August 25, 2021*

    **(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**

    **(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:

    **A. "Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    **B. "Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

    **C. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

    **D. "Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

    **E. "Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

    **F. "Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

    **G. "Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

    **H. "Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

    **I. "Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

    **J. "Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

    **K. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

    **L. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

    **M. "Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by *Fernando Palazzo* , who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ *5:00* AM/☒ PM, on *August 26, 2021* (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and *not* for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 25-Aug-21    BUYER _Sharon DeAngelo_

**(Print name)** *Sharon Ruthanne D___*

Date 25-Aug-21    BUYER _Bruce Rollins Jr._    _Sharlee Marie DeAngelo_

**(Print name)** *Bruce Rollins Jr., Sharlee Marie Deangelo*

☐ Additional Signature Addendum attached (C.A.R. Form ASA).      Seller's Initials **X**( FHBT )

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

**EXHIBIT B**

DocuSign Envelope ID: D6F94F3C-0990-4BE7-9A4C-184AB995E08A

Property Address: *2301 Richland Ave, San Jose, CA  95125*                                    Date: *August 25, 2021*

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

[X] (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:** 8/25/2021 .

[ ] One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date 26-Aug-21   SELLER *Fred Hjelmeset, Bk Trustee*

**(Print name)** *Fred Hjelmeset, DR Trustees*

Date _____   SELLER _____

**(Print name)** _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
[ ] AM/ [ ] PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
**A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
**B. Agency relationships are confirmed as stated in paragraph 2.**
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
**E. PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Broker *Palazzo Real Estate* _____ DRE Lic. # *01919624*
By _____ *Fernando Palazzo* DRE Lic. # *01919624* Date 25-Aug-21
By _____ DRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail *fp@palazzore.com*

Seller's Broker *Real Estate Services* _____ DRE Lic. # *001354442*
By *Chris Buchanan* *Chris Buchanan* DRE Lic. # *02068778* Date 26-Aug-21
By _____ DRE Lic. # _____ Date _____
Address *16185 Los Gatos Blvd* City *Los Gatos* State *CA* Zip *95032*
Telephone _____ Fax _____ E-mail *chrisb@intero.com*

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, [ ] a deposit in the amount of $ _____ ), counter offer numbers _____ [ ] Seller's Statement of Information and _____
, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
[ ] Department of Financial Protection and Innovation, [ ] Department of Insurance, [ ] Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Seller's Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement   SD | BK | SMD
Buyer's Initials

**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   Richland

**EXHIBIT B**

Case: 21-50028    Doc# 209    Filed: 08/30/21    Entered: 08/30/21 08:50:05    Page 16 of 24

DocuSign Envelope ID: D6F94F3C-0990-4BE7-9A4C-184AB995E08A



**CONTINGENCY REMOVAL No.** _1_
(C.A.R. Form CR, Revised, 12/20)

In accordance with the terms and conditions of the: [X] Purchase Agreement, OR [ ] Request For Repair (C.A.R. Form RR), [ ] Response And Reply To Request For Repair (C.A.R. Form RRRR), [ ] Amendment of Existing Agreement (C.A.R. Form AEA) or [ ] Other _____ ("Agreement"),

dated _08/25/2021_ , on property known as _2301 Richland Ave, San Jose, CA 95125_ ("Property"),

between _Sharon Ruthanne DeAngelo, Bruce Rollins Jr., Sharlee Marie DeAngelo_ ("Buyer")

and _Fred Hjelmeset, BK Trustees_ ("Seller").

**I.    BUYER REMOVAL OF BUYER CONTINGENCIES:**

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by Law.

2. Buyer removes those contingencies specified below.

   **A.   ONLY the following individually checked Buyer contingencies are removed:** (Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA) unless a different form is specified.)

   1. [ ] Loan (Paragraph 3J)
   2. [ ] Appraisal (Paragraph 3I)
   3. Buyer's Investigation Contingency (Paragraph 12)
      a. [ ] Only the physical inspection portion of Buyer's Investigation (Paragraph 12)
      b. [ ] All Buyer Investigations other than a physical inspection (Paragraph 12)
      c. [ ] Entire Buyer's Investigation Contingency (Paragraph 12)
   4. [ ] Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   5. [ ] Reports/Disclosures (Paragraphs 7 and 10)
   6. [ ] Title: Preliminary Report (Paragraph 13)
   7. Sale of Buyer's Property (Paragraph 4B)
      a. [ ] Entering into contract for Buyer's Property (COP, Paragraph 2)
      b. [ ] Close of escrow for Buyer's Property (COP, Paragraph 4)
   8. [ ] Review of documentation for leased or liened items (Paragraph 8B(5))
   9. [ ] Other: _____
   10. [ ] Other: _____

   **OR B.** [ ] **ALL Buyer contingencies are removed, EXCEPT:** [ ] Loan Contingency (Paragraph 3J); [ ] Appraisal Contingency (Paragraph 3I); [ ] Contingency for the Sale of Buyer's Property (Paragraph 4B); [ ] Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); [ ] Other: _____

   **OR C.** [X] **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

3. Once all contingencies are removed, whether or not Buyer has satisfied him/her/itself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA) unless a different form is specifie  h numbers used for each contingency in other C.A.R. forms may be different.

**Buyer** _Sharon Ruthanne DeAngelo_ Date _25-Aug-21_

**Buyer** _Bruce Rollins Jr_  _Sharlee Marie DeAngelo_  _Rollins Jr., Sharlee Marie DeAngelo_ Date _25-Aug-21_

**II.   SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: [ ] Finding of replacement property (C.A.R. Form SPRP); [ ] Closing on replacement property (C.A.R. Form SPRP) [ ] Other _____

**Seller** _x_ _____ Date _____

**Seller** _____ Date _____

© 2020 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 12/20 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

**EXHIBIT B**

Case: 21-50028    Doc# 209    Filed: 08/30/21    Entered: 08/30/21 08:50:05    Page 17 of 24

DocuSign Envelope ID: 0D7D301C-01BF-42E3-B583-AB16FE5B914C



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## SELLER MULTIPLE COUNTER OFFER No. _1_
### (C.A.R. Form SMCO, Revised 12/18)

Date _08/25/2021_

This is a counter offer to the: Purchase Agreement, ☐ Other _____ ("Offer"),
dated _08/25/2021_ , on property known as _2301 Richland Ave, San Jose, CA 95125_ ("Property"),
between _Sharon Ruthanne DeAngelo_ _Bruce Rollins Jr., Sharlee Marie DeAngelo_ ("Buyer")
and _Fred Hjelmeset, BK Trustees_ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   **A.** Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   **B.** Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.
   **C.** OTHER TERMS: _1) Purchase price to be $3,335,000._
   _2) Buyer to return signed BK addendum._
   _3) All other terms remain the same._
   _____
   _____
   _____
   _____
   _____

   **D.** The following attached addenda are incorporated into this Multiple Counter Offer: ☐ Addendum No. _____

2. **BINDING EFFECT:** Seller is making Multiple Counter Offers to other prospective Buyers on terms that may or may not be the same as in this Multiple Counter Offer. This Multiple Counter Offer does not bind Seller and Buyer unless all of the following occur in the times specified below: Seller signs in paragraph 5, Buyer signs in paragraph 7, Seller signs in paragraph 8, and Buyer receives a copy of the Multiple Counter Offer with all of the signatures. (Note: Prior to the completion of all of the foregoing, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.)

3. **EXPIRATION OF SELLER MULTIPLE COUNTER OFFER:** This Multiple Counter Offer shall be deemed revoked and the deposits, if any, shall be returned to Buyer unless by 5:00PM on the third Day After the date Seller signs in paragraph 5 (if more than one Seller, then the last date) (or by _6:00_ ☐ AM ☒ PM on _08/26/2021_ (Date), **(i)** it is signed in paragraph 7 by Buyer, and **(ii)** a copy of the Multiple Counter Offer signed by Buyer is personally received by Seller or _Chris Buchanan_ , who is authorized to receive it;

4. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received prior to Seller selection of this Multiple Counter Offer.

5. **SEL~~~~~~~~~~ FER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   DocuSigned by:
   _Fred Hjelmeset, BK Trustee_ _Fred Hjelmeset, BK Trustees_ Date 26-Aug-21
   69B8D56AD7E64B9...                                                     Date _____

6. **ACCEPTANCE OF SELLER MULTIPLE COUNTER OFFER:** Buyer's acceptance of this Seller Multiple Counter Offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by 5:00PM on the fourth Day After the date Seller signs in paragraph 5 (if more than one Seller, then the last date) (or by ☐ AM ☐ PM on _____ (Date) **(i)** it is signed in paragraph 8 by Seller, and **(ii)** a copy of this Seller Multiple Counter Offer signed by Seller is personally received by Buyer or _____ who is authorized to receive it.

7. **ACCEPTANCE:** Buyer accepts the above Multiple Counter Offer (If checked ☒ SUBJECT TO THE ATTACHED COUNTER OFFER
   # _1_ ) DocuSigned by: ~~ledges receipt of a Copy.
   DocuSigned by:
   _Bruce Rollins Jr., Sharlee Marie DeAngelo_   _Sharon Ruthanne DeAngelo_ Date 26-Aug-21 Time 8:21 ☐ AM ☒ PM
   11E7430D47A2425...   ~~ns Jr., Sharlee Marie DeAngelo_ Date _____ Time _____ ☐ AM ☐ PM

8. 
   **SELECTION OF ACCEPTED MULTIPLE COUNTER OFFER:** By signing below, Seller accepts this Multiple Counter Offer. **NOTE TO SELLER:** Do NOT sign in this box until after Buyer signs in paragraph 7. DO NOT sign in this box if this Seller Multiple Counter Offer is subject to an attached Counter Offer.
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

( _____ / _____ ) (Initials) Confirmation of Acceptance: A Copy of the Signed Seller Selection was personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ ☐ AM ☐ PM. **A binding Agreement is created when a Copy of the Signed Seller Selection is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.**

© 2015, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SMCO REVISED 12/18 (PAGE 1 OF 1)**
### SELLER MULTIPLE COUNTER OFFER (SMCO PAGE 1 OF 1)

**EXHIBIT B**

Case: 21-50028    Doc# 209    Filed: 08/30/21    Entered: 08/30/21 08:50:05    Page 18 of 24

August 25, 2021

**SELLER'S ADDENDUM TO PURCHASE CONTRACT**
**FOR 2301 RICHLAND AVE. SAN JOSE CA 95125**

This Seller's Counter-Offer shall amend, as noted below, the provisions of that certain "California Residential Purchase Agreement and Joint Escrow Instructions" dated August 25, 2021, as amended (collectively "Agreement") for real property commonly referred to as 2301 Richland Avenue, San Jose, California 95125 ("Property"), by and between: (i) Frode Hjelmeset a/k/a Fred Hjelmeset, solely in his capacity as the Chapter 7 Trustee of the bankruptcy estate of Evander Kane ("Seller"); and (ii) Sharon DeAngelo, Bruce Rollins Jr., Sharlee Marie DeAngelo (collectively, "Buyer"), as follows:

1.      Notwithstanding anything in the Agreement to the contrary, the provisions of this Counter-Offer shall control;

2.      The Seller of the Property is Chapter 7 Trustee of the estate of Evander Kane ("Debtor"), Case No. 21-50028 SLJ, pending before the United States Bankruptcy Court, Northern District of California, San Jose Division ("Court");

3.      The Seller shall seek a finding that the Buyer (or, if appropriate, a successful overbidder) are good faith purchasers pursuant to 11 USC Section 363(m);

4.      The sale of the Property is subject to Court Approval. All sales are subject to higher and better offer. Seller will seek Court approval of a sale of the Property to Buyer. The decision of the Court not to approve the sale of the Property to the Buyer shall not constitute a breach of the Agreement or this Counter-Offer by the Seller. "Approval" as used in this Counter-Offer means entry of one or more orders by the Court approving the sale, including such approval as is necessary to sell and convey title. It is estimated that the time period for approval is from 30 to 45 days. Buyer's possession shall occur ONLY upon recordation of a deed transferring ownership of the Property to the Buyer;

5.      Seller is selling and Buyer is purchasing the Property in its present "as is/ where is" condition without representation or warranties of any kind. Buyer is not relying on Seller or Seller's agents as to the condition or safety of the Property and/or any improvements thereon, including but not necessarily limited to electrical, plumbing, heating, sewer, roof, air conditioning, foundations, soils and geology, lot size, boundary locations, or suitability of the Property and/or its improvements for particular purposes, or that any components of the Property are in working order, or that improvements are structurally sound and/or in compliance with any city, county, state, and/or federal statutes, codes, or ordinances. Seller will not be obligated to make any changes, alterations, or repairs to the Property. Any reports or corrective work required by Buyer's lender is to be the sole responsibility of Buyer. The closing of the transaction shall constitute acknowledgment by Buyer that the premises are accepted without representation or warranty of any kind and in their present "as is" condition based solely on Buyer's own inspections and investigations. Seller does not warrant existing structures as to habitability or suitability for occupancy. Buyer assume responsibility to check with appropriate planning authority regarding

1

**EXHIBIT B**

Buyer's intended use of the Property and agrees to hold Seller and Seller's agents harmless as to Buyer's intended use;

      6.    The Property shall be delivered to the Buyer vacant;

      7.    Paragraph 1 (D) of the Agreement is deleted in its entirety, as are all other references to a Closing Date or similar phrase or term in the Agreement, and are replaced as follows: "Escrow shall close within 14 days following Court approval of the sale, unless extended by mutual written agreement of the parties."

      8.    Paragraph 7 (C) of the Agreement is revised as follows: Escrow and Title services for the sale shall be provided by Lawyers Title Company, Rosa Anna Juarez, Escrow Officer, 20520 Prospect Road, Suite 390, Saratoga, CA 95070, RosaAnna.Juarez@LTIC.com /TEAMMartha@LTIC.com, (408) 588-3858.

      9.    Seller has no information about the condition of the Property. Pursuant to California Civil Code Section 1102.2, the Seller shall provide no reports or provide any disclosures with regard to the Property. As a result, the following provisions of the Agreement are hereby deleted as they relate to the Seller: Paragraphs 10(A)(1) -(4), (6) and (7); 10(B); 11 (A), 13(C), 14(A) and all other provisions in the Agreement that require the Seller to provide any reports and/or make disclosures concerning the Property.

      10.    Paragraph 18 (A) of the Agreement is replaced as follows: "Commissions shall be paid only upon Court approval of the sale of the Property and only from the proceeds of sale of the Property. If an approved sale does not close and fund, no commission shall be due or paid."

      11.    Notwithstanding anything in the Agreement to the contrary, city transfer taxes (if any), shall be split 50/50 between Seller and Buyer.

      12.    Notwithstanding anything in the Agreement to the contrary, all of Buyer's contingencies shall be removed upon Buyer's signature of this Counter-Offer.

      13.    Notwithstanding anything in the Agreement to the contrary, personal property is shall not be conveyed to the Buyer.

      14.    Paragraph 22 of the Agreement is replaced as follows: "This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws. The parties agree that the Court shall have exclusive jurisdiction over any dispute arising out of the Counter-Offer and the Agreement, including, but not limited to

**BALANCE OF PAGE LEFT INTENTIONALLY BLANK**

**EXHIBIT B**

the interpretation and enforcement of Counter-Offer and the Agreement, and, if necessary, to effect the Court's jurisdiction, and by your signature on this Agreement, you hereby stipulate to an order providing for such jurisdiction.

DATED:   August <u>25th</u>, 2021       ESTATE OF EVANDER KANE, CASE NO. 21-50028, SLJ

By: _____ *Fred Hjelmeset, Bk Trustee* _____
      F       69B8D56AD7E64B9...
      Chapter 7 Trustee

BUYER

DATED:   August <u>26th</u>, 2021

_____ *Sharon DeAngelo* _____
      EDFD2E96D33C4F5...

BUYER

DATED:   August _____, 2021

____ *Bruce Rollins Jr, Sharlee Marie DeAngelo* __
      11E7430D47A2425...

**APPROVED:**

DATED:   August <u>25th</u>, 2021       INTERO REAL ESTATE SERVICES

By: _____ *Chris Buchanan* _____
          42F099D6CD3F4A4...       N,
      Agent for Seller

DATED:   August <u>26th</u>, 2021       Palazzo Real Estate

By: _____ [signature] _____
          60AB276DFA5748B...
      Agent for Buyer

3

EXHIBIT B

DocuSign Envelope ID: DC82C5A7-E373-431A-BE13-E4187876C441



# BUYER COUNTEROFFER No. 2
### (C.A.R. Form BCO, 11/14)

Date **August 27, 2021**

This is a counteroffer to the: ☐ Seller Counteroffer No. ___ , ☒ Seller Multiple Counteroffer No. **1** , or ☐ Other _____ ("Offer"),
dated _____ , on property known as _____ **2301 Richland Ave, San Jose, CA 95125** _____ ("Property"),
between __ **Sharon Ruthanne DeAngelo, Bruce Rollins Jr., Sharlee** __ ("Buyer") and _____ **Fred Hjelmeset, BK Trustees** _____ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:

   A. **Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counteroffer or an addendum.**

   B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.**

   C. **OTHER TERMS:** *1) Purchase price to be $3,375,000.*

      *2) All other terms to be the same.*
      _____
      _____
      _____
      _____
      _____
      _____
      _____
      _____

   D. **The following attached addenda are incorporated into this Buyer Counteroffer:** ☐ Addendum No. _____
      ☐ _____    ☐ _____

2. **EXPIRATION:** This Buyer Counteroffer shall be deemed revoked and the deposits, if any, shall be returned:

   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 3 (if more than one signature then, the last signature date)(or by **9:00** ☐ AM ☒ PM on **08/27/2021** (date) **(i)** it is signed in paragraph 4 by Seller and **(ii)** a copy of the signed Buyer Counteroffer is personally received by Buyer or _____ **Fernando Palazzo** _____ , who is authorized to receive it.

OR B. If Buyer withdraws it in writing (CAR Form WOO) anytime prior to Acceptance.

3. **OFFER: BUYER MAKES THIS COUNTEROFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**

   Buyer _____ *Sharon DeAngelo* _____ **Sharon Ruthanne DeAngelo** Date 27-Aug-21
   Buyer _____ *Sharlee Marie DeAngelo* _____ **Bruce Rollins Jr., Sharlee Marie DeAngelo** Date 27-Aug-21

4. **ACCEPTANCE: I/WE** accept the above Buyer Counteroffer **(If checked ☐ SUBJECT TO THE ATTACHED COUNTEROFFER)** and acknowledge receipt of a Copy.

   Seller _____ **Fred Hjelmeset, BK Trustees** Date 27-Aug-21 Time 5:05 ☐ AM/☒ PM
   Seller _____ Date _____ Time _____ ☐ AM/☐ PM

**CONFIRMATION OF ACCEPTANCE:**

( _____ / _____ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent as specified in paragraph 2A on (date) _____ at _____ ☐ AM/☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.**

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BCO 11/14 (PAGE 1 OF 1)**

### BUYER COUNTEROFFER (BCO PAGE 1 OF 1)

Intero Real Estate Services, 496 FIRST STREET STE. 200 LOS ALTOS CA 94022    Phone: 4088927257    Fax:    Richland
Andrew Buchanan    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

**EXHIBIT B**

DocuSign Envelope ID: DC82C5A7-E373-431A-BE13-E4187876C441



**CALIFORNIA ASSOCIATION OF REALTORS®**

## COMMISSION AGREEMENT
(C.A.R. Form CA, Revised 12/15)

1. **COMPENSATION: Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between the Seller/Buyer/Landlord/Tenant/Optionor/Optionee ("Principal") and Broker.**

_____ **Fred Hjelmeset BK Trustee** _____ ("Principal"), agrees to pay to _____ **Palazzo Real Estate** _____ ("Broker(s)"), as compensation for services, irrespective of agency relationships, the sum of either ☐ _____ percent of the transaction price, or ☒ **Forty-Nine Thousand, Three Hundred Seventy-Five** _____ Dollars ($ **49,375.00** _____ ), for property situated in the City of _____ **San Jose** _____ , County of _____ **Santa Clara** _____ , California, described as _____ **2301 Richland Ave** _____ .

Compensation is payable if Principal accepts an offer on the above described property no later than _____ **10/16/2021** _____ (date) as follows: **(i)** On recordation of the deed or other evidence of title or, if a lease, on execution of the lease, or if an option, on execution of the option agreement; or **(ii)** If completion of the transaction is prevented by default of Principal, then upon such default; or **(iii)** If completion of the transaction is prevented by a party to the transaction other than Principal, then only if and when Principal collects damages by suit, settlement, or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered, or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any. Broker may cooperate with other brokers, and divide with other brokers such compensation in any manner acceptable to Broker. Principal hereby irrevocably assigns to Broker the above compensation from Principal's funds and proceeds in escrow.

---

### BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( **FHBT** ) ( _____ )     Broker's/Agent Initials ( **FP** ) ( _____ )

---

© 2015-2019, California Association of REALTORS® Inc.
CA REVISED 12/15 (PAGE 1 OF 2)

### COMMISSION AGREEMENT (CA PAGE 1 OF 2)

Intero Real Estate Services, 496 FIRST STREET STE. 200 LOS ALTOS CA 94022     Phone: 4088927257     Fax:     Richland
Andrew Buchanan     Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5     www.lwolf.com

**EXHIBIT B**

DocuSign Envelope ID: DC82C5A7-E373-431A-BE13-E4187876C441

**2. ATTORNEY FEES:** In any action, proceeding, or arbitration between Principal and Broker(s) arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney fees and costs except as provided in paragraph 3A.

**3. DISPUTE RESOLUTION:**

**A. MEDIATION:** Principal and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 3B.

**B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

**C. ADVISORY:** If Principal and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**4. OTHER TERMS AND CONDITIONS:** _____

Principal has read and acknowledges receipt of a copy of this Agreement.

| | |
|---|---|
| Principal _Fred Hjelmeset, Bk Trustee_ | Principal _____ |
| _Fred Hjelmeset, BK Trustee_ | |
| (Print name) | (Print name) |
| Address _____ | Address _____ |
| | |
| Date _____ Phone/Fax/Email _____ | Date _____ Phone/Fax/Email _____ |
| Real Estate Broker agrees to the foregoing: | |
| Broker _Palazzo Real Estate_ | By _____ Date 27-Aug-21 |
| DRE Lic. # _01919624_ | 60AB276DFA5748B... |

© 2015-2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CA REVISED 12/15 (PAGE 2 OF 2)**

Reviewed by _____ Date _____



**COMMISSION AGREEMENT (CA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          Richland

**EXHIBIT B**