1  Stephen D. Finestone (125675)
2  Ryan A. Witthans (301432)
   FINESTONE HAYES LLP
3  456 Montgomery Street, Floor 20
   San Francisco, CA 94104
4  Tel.:   (415) 616-0466
   Fax:   (415) 398-2820
   Email: sfinestone@fhlawllp.com
5  Email: rwitthans@fhlawllp.com

6  Attorneys for Debtor,
   Evander Frank Kane
7

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028-SLJ<br>Chapter 7<br><br>**DEBTOR'S OPPOSITION TO CENTENNIAL BANK'S MOTION TO DISMISS CASE AS A BAD FAITH FILING PURSUANT TO SECTION 707(A)[1]**<br><br>Hearing:<br>Date:   October 5, 2021<br>Time:   2:00 p.m. Pacific Prevailing Time<br>Place:  Tele/Videoconference<br><br>**Remote appearances only.**<br><br>*Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned proceeding.

OPPOSITION TO MOTION TO DISMISS                                                                                                      i

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

III. ARGUMENT .................................................................................................................... 3

    a. *Padilla* Is Still the Law in the Ninth Circuit, and Courts in This Circuit Have Repeatedly Held that "Bad Faith" Does Not Constitute "Cause" to Dismiss a Case Under 11 U.S.C. § 707(a) ......... 3

    b. Bad Faith Does Not Apply to Kane's Bankruptcy, and Kane Filed in Good Faith .................................................................................. 8

    c. The Motion Does Not Challenge Kane's Statutory Eligibility to be a Debtor Under Chapter 7, and Kane's Filing of This Chapter 7 Case Was Within His Rights and Not in Bad Faith ............................ 13

IV. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 523 B.R. 660 (B.A.P. 9th Cir. 2014) ..................... 1

*Franco v. U.S. Trustee (In re Franco)*,
2016 Bankr. LEXIS 2185 (B.A.P. 9th Cir. June 2, 2016)........................................................ 8

*Gill v. Stern (In re Stern)*, 345 F.3d 1036 (9th Cir. 2003) ............................................................... 13

*Harris v. Viegelahn*, 575 U.S. 510 (2015) ............................................................................... 12, 14

*Hickman v. Hana (In re Hickman)*, 384 B.R. 832 (B.A.P. 9th Cir. 2008)....................................... 1

*In re Alvarado*, 496 B.R. 200 (N.D. Cal. 2013)................................................................. 7, 8, 13

*In re Cherrett*, 873 F.3d 1060 (9th Cir. 2017) ............................................................................... 1

*In re Dunn*, 2010 Bankr. LEXIS 3070 (B.A.P. 9th Cir. Feb. 4, 2010) ......................................... 14

*In re Harris*, 2021 Bankr. LEXIS 1664 (Bankr. C.D. Cal. Feb. 17, 2021).................................... 7

*In re Mitchell*, 357 B.R. 142 (Bankr. C.D. Cal. 2006) .................................................................. 6

*In re Takano*, 771 Fed. App'x. 805 (9th Cir. 2019) .................................................................... 14

*Janvey v. Romero (In re Romero)*, 883 F.3d 406 (4th Cir. 2018) ................................................ 8

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) ........................................................... 6

*McDow v. Smith*, 295 B.R. 69 (E.D. Va. 2003) ............................................................................ 8

*Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir. 1999) ......................................... passim

*Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*,
719 F.3d 1253 (11th Cir. 2013)............................................................................................. 8

*Sherman v. SEC (In re Sherman)*, 491 F.3d 948 (9th Cir. 2007) ........................................ passim

*United States Voting Machs., Inc. v. Powelson (In re United States Voting Machs., Inc.)*,
2007 WL 4287526; 2007 U.S. Dist. LEXIS 98101 (N.D. Cal. Dec. 6, 2007) ........................... 6

**Statutes**

11 U.S.C. § 109(h) ......................................................................................................................... 8

11 U.S.C. § 343 ............................................................................................................................ 14

11 U.S.C. § 362(d)(1)................................................................................................................ 5, 8

OPPOSITION TO MOTION TO DISMISS                                                                                                              iii

| | |
|---|---|
| 11 U.S.C. § 523 | 3, 5, 15 |
| 11 U.S.C. § 547(b)(1) | 5 |
| 11 U.S.C. § 706(a) | 6 |
| 11 U.S.C. § 707(b) | 1, 3, 4, 7 |
| 11 U.S.C. § 707(b)(1) | 1, 2, 7 |
| 11 U.S.C. § 707(b)(3) | 6, 7 |
| 11 U.S.C. § 707(b)(3)(A) | 7 |
| 11 U.S.C. § 727 | 3, 5, 15 |
| 11 U.S.C. § 727(a)(4)(A) | 5 |
| 11 U.S.C. § 707(a) | passim |
| 11 U.S.C. § 547 | 5 |

OPPOSITION TO MOTION TO DISMISS iv

Evander F. Kane ("Kane" or "Debtor"), submits the following opposition to *Centennial Bank's Motion to Dismiss Case as a Bad Faith Filing Pursuant to Section 707(a)* (the "Motion"), ECF 172.

## I. INTRODUCTION

Centennial Bank ("Centennial"), having had its prior motion to dismiss this case as an abuse under § 707(b) denied by this Court because the Court found Kane's debts are primarily non-consumer debts, now turns to § 707(a) and asks the Court to dismiss this case for bad faith. The Motion suffers from two major deficiencies. First, Ninth Circuit law clearly and consistently hold that "bad faith" is not "cause" for dismissal under § 707(a). Second, there is no bad faith in Kane's filing this case. The party seeking dismissal bears the burden of establishing its prerequisites. *See Hickman v. Hana (In re Hickman)*, 384 B.R. 832, 840 (B.A.P. 9th Cir. 2008) (movant has the burden of persuasion on a motion to dismiss under § 707(a)); *cf. Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 523 B.R. 660, 668 (B.A.P. 9th Cir. 2014), *aff'd*, 873 F.3d 1060 (9th Cir. 2017) ("The moving party bears the burden of proof to support a § 707(b)(1) motion by a preponderance of the evidence."). Kane opposes the latest Motion and urges the Court to deny it.

## II. FACTUAL BACKGROUND

The lead-up to Kane's filing bankruptcy is discussed extensively in:

(i) Debtor's Opposition to Motion to Convert and for Appointment of Chapter 11 Trust*ee* (ECF 65)[2];

(ii) Debtor's Opposition to Motion to Dismiss (ECF 120) and Kane's declaration in support thereof (ECF 121);

(iii) The Court's decisions denying the aforementioned motions (ECF 101, and 151).

Kane incorporates those established facts in this Opposition. For the sake of brevity, Kane provides a streamlined discussion of the relevant facts below, limiting himself to facts necessary to refute Centennial's uneven recitation.

---

[2] *See also* ECF 65-1 (Kane's supporting declaration) and 65-3 (Declaration of John Fiero).

When Kane found himself in an untenable financial position, he retained experienced and skilled professionals to attempt a workout with his creditors. Those efforts, as detailed in Kane's previous declarations and in the Fiero Declaration (ECF 65-3), were unsuccessful. Many creditors, including Centennial, filed lawsuits in a race to collect. Unable to resolve matters, Kane filed this bankruptcy case.

Kane's bankruptcy filings, their amendments, his full cooperation with the Chapter 7 Trustee (the "Trustee") and the United States Trustee (the "UST"), his submission to a Rule 2004 exam and production of documents have been documented and discussed.

When Kane filed this bankruptcy case on January 9, 2021 (the "Petition Date"), the COVID-19 pandemic had caused the cancellation of several games in the prior season that resulted in a sharp and unexpected decrease in Kane's income. Exactly how the upcoming season would play out was unknown, but Kane's salary was subject to future cancellations and large withheld amounts pursuant to the collective bargaining agreement. Bizarrely, in accusing Kane of misreporting his income, Centennial suggests that Kane understated the source of his income. As Centennial is well aware, Kane provided a detailed description of the anticipated changes to his monthly income and the potential variations to that income as an attachment to Schedule I (the "Schedule I Attachment"). Moreover, Centennial already possessed Kane's contract with the San Jose Sharks (the "Sharks").

The Motion variously misstates Kane's salary over the next four years pursuant to his contract with the Sharks as in excess of $20 million, ¶ 3; upwards of $26 million, ¶ 31; and approximately $29 million, ¶ 14. While, Kane makes a significant sum as a professional athlete, Kane's current and future salary is far lower than the gaudy figures in the Motion as this Court recognized in its *Order Denying Motion to Convert*. ECF 101.

A group of creditors conceded that the filing was appropriate but sought to force Kane into a Chapter 11. That effort was unsuccessful, and the matter is on appeal. Centennial brought a previous motion to dismiss, arguing that Kane's case was a "consumer case" and should be dismissed for abuse pursuant to § 707(b)(1). The motion was denied and the order is also the subject of an appeal. Meanwhile, the Trustee has gone about the administration of the estate.

OPPOSITION TO MOTION TO DISMISS 2

After this Court's ruling on Kane's homestead exemption (ECF 178), the Trustee retained a broker and marketed Kane's home for sale (ECF 181, and 188). The sale netted a good price and is being sold to an overbidder. (ECF 209, and 216). The Trustee and Kane reached an agreement regarding other estate assets and that matter should be approved shortly. Kane believes the Trustee is also working on recovering other assets for the estate, an effort with which Kane is cooperating. *See* Declaration of Stephen D. Finestone in support of this Opposition ¶¶ 2-4.

### III. ARGUMENT

#### a. *Padilla* Is Still the Law in the Ninth Circuit, and Courts in This Circuit Have Repeatedly Held that "Bad Faith" Does Not Constitute "Cause" to Dismiss a Case Under 11 U.S.C. § 707(a).

Section 707(a) provides:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

In *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1193 (9th Cir. 1999), the Ninth Circuit held that bad faith per se cannot constitute "cause" for dismissal of a Chapter 7 petition under § 707(a). In *Padilla*, the United States Trustee moved to dismiss the debtor's Chapter 7 case for bad faith under § 707(a), alleging that the debtor engaged in credit card "bust-out," or the accumulation of consumer debt in anticipation of filing for bankruptcy. 222 F.3d. at 1188. The Ninth Circuit reasoned that a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct. *Id*. at 1192. The Code is specifically designed to exclude certain debtors from obtaining a discharge under § 727, prevent the discharge of certain kinds of debts under § 523, and provide for the dismissal of a case where discharge of consumer debts would be an abuse of Chapter 7 under § 707(b). *Id*. at 1191-92. Section 707(a), which recites three technical and procedural grounds that provide "cause" for dismissal, also functions as a specific Code provision. *Id*. at 1192. Thus, the Ninth Circuit

OPPOSITION TO MOTION TO DISMISS 3

inquired whether the debtor's credit card bust-out provided "cause" for dismissal under § 707(a), but observed that there was no evidence the debtor violated any technical and procedural requirements of Chapter 7. *Id*. at 1193. The Ninth Circuit recognized that the debtor's credit card bust-out was instead a type of misconduct contemplated by § 707(b). *Id*. at 1194.

The Ninth Circuit in *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 970 (9th Cir. 2007) (citing *Padilla*, 222 F.3d at 1193), confirmed after the enactment of BAPCPA that "cause" rather than "bad faith" remains the proper standard for evaluating a motion to dismiss under § 707(a). In *Sherman*, the SEC alleged the debtors improperly used bankruptcy to avoid the jurisdiction of another court, engaged in pre-petition transfers, and misrepresented their liabilities and expenses. 491 F.3d at 970-71. The Ninth Circuit applied the two-part test for cause that it articulated in *Padilla*: First, the court must consider whether the circumstances asserted to constitute "cause" are contemplated by any specific Code provision applicable to Chapter 7 petitions. *Sherman*, 491 F.3d at 970 (citing *Padilla*, 222 F.3d at 1193-94). If the asserted cause is contemplated by a specific Code provision, then it does not constitute cause under § 707(a). *Id*. Second, if the asserted cause is not contemplated by a specific Code provision, the court must further consider whether the circumstances asserted otherwise meet the criteria for cause for dismissal under § 707(a). *Id*.; *see also Hickman*, 384 B.R. at 840 (in the absence of a specific Code provision that addresses the asserted "cause," the question becomes whether the totality of circumstances amount to § 707(a) "cause").

In *Sherman*, the SEC argued that the debtors filed a Chapter 7 case as "a refuge from the district court's jurisdiction, and to thwart the Commission's efforts to obtain a disgorgement judgment." 491 F.3d at 970. The SEC further asserted that the bankruptcy filing was part of a "scorched earth" tactic to cause the SEC further trouble, and that debtors "deliberately exaggerated their liabilities and expenses" to make it appear they were in need of bankruptcy relief. *Id.*

The Ninth Circuit, assuming that the debtors engaged in the alleged conduct, still held that dismissal was improper because the alleged misconduct was contemplated by other sections of the Code. The court found the remedy in the "cause" provision of § 362(d)(1) more directly

OPPOSITION TO MOTION TO DISMISS 4

dealt with debtors taking advantage of bankruptcy to stay proceedings of another court; the "scorched earth" tactics were appropriately dealt with by avoidance of preferential transfers as contemplated by § 547(b)(1); and § 727(a)(4)(A) addressed misconduct related to the debtors' misrepresentations of liabilities and expenses. *Id*. at 971-73.

Similarly, here, the alleged evidence of Kane's "bad faith" is either addressed in other sections of the Code, or frankly nonsensical. Centennial's arguments are essentially the following:

- Kane made no effort to repay Centennial: While the statement is not true (*see*, *e.g*., the Fiero Declaration, ECF 65-3), the alleged conduct is covered by § 523;
- Kane transferred assets: Also not true, but the alleged conduct is covered by §§ 547 and 727, the latter of which Centennial has utilized to bring a claim;
- Kane's "lack of candor" and failure to make full disclosure by understating the source of his income: Not true, and particularly absurd given the detail in the Schedule I Attachment and the fact that Centennial had a copy of Kane's Sharks contract, but in any event covered by § 727;
- Sufficient resources to repay his debts: In denying the Motion to Convert, the Court detailed the limits to Kane's potential income and the various creditor claims against it. The income was insufficient to justify conversion to Chapter 11 and is far from enough to pay his debts. If anything, Centennial's argument here comes uncomfortably close to being made in bad faith;
- No lifestyle adjustments: The evidence on this is lacking. The Trustee sold Kane's home, so the argument that Kane has maintained his lavish lifestyle is simply in error. Moreover, this is an argument covered by §707(b);
- Intent to avoid a "single group of creditors," using the Chapter 7 "unfairly," and supporting his family: These arguments all fall within the category of "what are they talking about?" The bankruptcy filing effects all of Kane's unsecured creditors, which includes what Centennial refers to as the "Non-

OPPOSITION TO MOTION TO DISMISS 5

Real Estate Bank Creditors." That these creditors are similarly situated is of no meaning. The Code defines Kane's rights vis-à-vis unsecured creditors and their rights against him. Kane is using the Chapter 7 to seek to discharge his debts. The Trustee has sold/administered non-exempt assets and Kane has lost his home and a potentially significant tax refund. Creditors have filed adversary proceedings to assert their respective rights against Kane. Those matters are pending. There is no "unfairness" here, or if there is, it is a function of the Code rather than Kane's conduct. Finally, there is no prohibition against Kane providing future support for his family to the extent he is able. This future support is not "to the detriment" of his creditors.

Centennial acknowledges the holding in *Padilla* and completely ignores *Sherman*. Motion ¶ 22. Centennial then misconstrues subsequent case law to erroneously suggest that *Padilla* is no longer good law. *Id*. Centennial cites *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007), but the Supreme Court ruled that there is a "bad faith" exception to the right of conversion in § 706(a) because a Chapter 7 debtor who engages in bad faith conduct would not qualify as a debtor under Chapter 13, and thus could not convert his case. *Id*. at ¶ 23. Centennial also misreads two California cases decided after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, as "retreating from *Padilla*'s steadfast rejection of a 'bad faith' dismissal." *Id*. at ¶ 24. The discussion in the two cases Centennial cites, *United States Voting Machs., Inc. v. Powelson (In re United States Voting Machs., Inc.)*, 2007 WL 4287526, at *3 n.5; 2007 U.S. Dist. LEXIS 98101, at *8 n.5 (N.D. Cal. Dec. 6, 2007); and *In re Mitchell*, 357 B.R. 142, 154 n.11 (Bankr. C.D. Cal. 2006), clearly dealt with § 707(b)(3), *not* § 707(a) pursuant to which Centennial brings this Motion.

Section 707(b)(3) states:

*In considering under paragraph (1)* whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

OPPOSITION TO MOTION TO DISMISS 6

> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

(Emphasis added.) Section 707(b)(3)'s direction to consider bad faith and the totality of the circumstances is explicitly applicable only to § 707(b)(1) in determining whether a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts should be dismissed if the granting of relief would be an abuse of the provisions of Chapter 7. BAPCPA's addition of § 707(b)(3) with reference to only § 707(b)(1), indicates Congress did not intend to apply consideration of bad faith to dismissals under § 707(a). The Ninth Circuit in *Padilla* recognized § 707(a) concerns a debtor's violations of technical or procedural requirements of Chapter 7, while § 707(b) is the mechanism for addressing general concerns about the discharge of consumer debt. 222 F.3d at 1193-94. BAPCPA's enactment of § 707(b)(3) inserted bad faith as a consideration for dismissal of a Chapter 7, but under only § 707(b). *See In re Alvarado*, 496 B.R. 200, 204 (N.D. Cal. 2013) ("[*Padilla*] partially superseded by statute on other grounds, 11 U.S.C. § 707(b)(3)(A)"). Centennial already tried dismissing Kane's case under § 707(b), but this Court denied Centennial's earlier motion because it found Kane's debts are primarily non-consumer debts. ECF 83, and 151. Now Centennial is trying to read a bad faith test into § 707(a) where none exists.

This Court is "bound by the more restrictive construction of 'cause' set forth in *Padilla* and *Sherman*." *See In re Harris*, 2021 Bankr. LEXIS 1664, at *10 (Bankr. C.D. Cal. Feb. 17, 2021). *Padilla*'s two-part test for "cause" is still the law in the Ninth Circuit for motions seeking dismissal under § 707(a). In *Hickman*, 384 B.R. at 834-35, a debtor who developed "buyer's remorse" and failed to perform his duties as a debtor moved to dismiss his own voluntary Chapter 7 case, arguing that his want for a jury trial provided "cause" to dismiss under § 707(a). The Ninth Circuit Bankruptcy Appellate Panel applied the two-part test and found, first, the debtor's demand for a jury trial did not provide cause for dismissal under § 707(a); and second, affirmed the bankruptcy court's denial of the debtor's motion where such dismissal would cause some plain legal prejudice to a creditor. *Id.* at 840-41. In *Alvarado*, 496 B.R. at 207, the district court applied *Padilla*'s two-part test to determine whether noncompliance with the credit

counseling requirement under § 109(h) established cause for dismissal under § 707(a). Likewise, in *Franco v. U.S. Trustee (In re Franco)*, 2016 Bankr. LEXIS 2185, at *11 (B.A.P. 9th Cir. June 2, 2016), the Ninth Circuit Bankruptcy Appellate Panel also applied *Padilla*'s two-part test to determine the same issue as in *Alvarado*. Most recently in *Harris*, 2021 Bankr. LEXIS 1664, at *5-14, a judgment creditor sought to dismiss a debtor's case pursuant to § 707(a) arguing that the case was filed to frustrate the creditor's attempts to enforce a judgment, that the debtor had no legitimate bankruptcy purpose because the debtor's stated purpose of obtaining a homestead exemption was available outside of bankruptcy, and the judgment was nondischargeable under principals of issue preclusion. Applying the two-part test from *Padilla* and *Sherman*, the bankruptcy court denied the creditor's motion because the creditor failed to show "cause" existed where § 362(d)(1) provided a remedy for the creditor to enforce the judgment, and the possibility of the debtor obtaining a larger homestead and discharging the judgment in bankruptcy were not illegitimate uses of the Code. *Id.*

Therefore, to determine whether "cause" exists to dismiss Kane's case under § 707(a), bad faith cannot provide cause for dismissing a Chapter 7 petition; rather, the Court must inquire whether the circumstances alleged by Centennial to constitute "cause" are contemplated by any specific Code provision, and if so then they do not constitute cause for dismissal under § 707(a).

### b. Kane Filed in Good Faith.

Centennial reaches for law from outside the Ninth Circuit to argue that Kane's case should be dismissed for bad faith under § 707(a). *See* Motion ¶ 21. The cases cited by Centennial in support of dismissal are inapposite because they are from circuits that have adopted the more expansive interpretation of "cause." Centennial cites *Janvey v. Romero (In re Romero)*, 883 F.3d 406, 412 (4th Cir. 2018), and *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253 (11th Cir. 2013), for a "totality of the circumstances" test when considering whether a case should be dismissed for lack of good faith under § 707(a). Centennial goes on to cite *McDow v. Smith*, 295 B.R. 69, 79, n.22 (E.D. Va. 2003), for eleven non-dispositive factors assembled from cases outside the Ninth Circuit for this Court to consider in

OPPOSITION TO MOTION TO DISMISS 8

examining the totality of the circumstances, and attempts to slot its various objections into the listed factors. Although finding "bad faith" under the "totality of the circumstances" does not apply to a motion under § 707(a) in this jurisdiction, Kane briefly responds to Centennial's list below.

Factor 1: Centennial claims Debtor made no lifestyle adjustments and has continued living a lavish lifestyle. Centennial simply refers to Schedule J, reflecting the picture at the time of filing. BK 1. This gives, at best, a snapshot and ignores post-petition developments. Foremost among the post-petition events is the Trustee's sale of Kane's home. It is difficult to imagine a more significant "lifestyle adjustment" than the loss of one's home.

Factor 2: Centennial cites the substantial amounts that Kane could potentially earn under his contract with the Sharks to argue that Debtor has sufficient resources to repay his debts. Under a very strained accounting of the Kane's finances, Centennial claims Kane is scheduled to receive upwards of $26 million pursuant to his contract over the next four years, and suggests that this is enough to repay his debts to Centennial and others even though Kane's expenses are allegedly approximately $93,000 per month, or over $1 million per year. Centennial's overly simplistic calculations appear to be based upon gross income and fail to account for taxes or any other deductions from Kane's salary.

Centennial's argument is not tenable. In denying the Motion to Convert, the Court clearly set forth an understanding that Kane's take-home pay is subject to contingencies and is significantly less than his on-paper salary. ECF 101. Moreover, as noted, Kane's ability to continue playing professionally to earn his salary is subject to future uncertainty. *Id*. In fact, the Motion seems to acknowledge this and contradicts its own numbers. *Compare* Motion ¶ 31, *with* ¶ 33. Centennial offers another estimate that Kane earned approximately $635,000 in net income this past season based on his receiving $170,000 from only 15 games, dividing that for $11,333.33 per game, and projecting that amount to the 56 games that Kane ended up playing. While this new amount is still an estimate, it is a far cry from the lofty claims used to support this factor just two paragraphs earlier.

Factor 3: Centennial contends Debtor's schedules and testimony at the meeting of creditors show a lack of candor. Centennial's principal objection is that Kane's schedules stated his monthly income was just over $2,000 from a podcast that ultimately fell through, and Kane explained that he may opt out of his contract this year due to health concerns surrounding COVID-19, even though the deadline to opt out had passed and Kane went on to play all 56 games of the 2020-21 season. Centennial then faults Kane for not amending his schedules to reflect an "accurate" accounting of his monthly income.

Kane has been forthright in this bankruptcy, amending schedules as necessary to provide the clearest financial picture to creditors and to the Court, and responding at lengthy § 341 meetings and a Bankruptcy Rule 2004 exam, and fully cooperating with the Trustee. As Centennial is well aware, Kane is only paid for the games he plays, and the Sharks had not started their 2020-21 season as of the date that Kane filed this bankruptcy case. The Schedule I Attachment provides a clear picture of Kane's anticipated income as a hockey player with the Sharks, which is substantially less than what Centennial believes it to be. BK 1. However, because Kane filed a Chapter 7 petition, the income that Kane earns post-petition does not flow into the bankruptcy estate.

Centennial offers an additional innuendo about some "OnlyFans" charges that appear on Kane's card accounts in an attempt to embarrass Kane. Other than making accusations that these charges appear on several of Kane's card accounts, Centennial does not affirmatively dispute Kane's testimony that he was not a subscriber, much less explain how testimony about these charges would be relevant or material to this bankruptcy case or its Motion.

Factor 4: Centennial argues that Debtor intends to avoid only a single group of creditors. Centennial refers to itself, Zions Bancorporation, N.A., and Professional Bank (collectively, the "Non-Real Estate Bank Creditors"), who all assert security interests in Kane's future salary. As this Court found in its order denying conversion, after Kane defaulted on his loans with his lenders,

> Debtor retained attorney John Fiero of Pachulski Stang Ziehl & Jones to restructure his finances. Mr. Fiero concluded that the lenders' assertion of security interests in Debtor's future salary were ineffective under the Uniform Commercial Code. Mr. Fiero apparently

OPPOSITION TO MOTION TO DISMISS 10

> spent significant time trying to reach a resolution with the lenders, but such efforts eventually failed, resulting in the lenders filing actions against Debtor in Santa Clara County and Baltimore, Maryland. The Santa Clara action was later dismissed, but that lender filed another action against Debtor and the Sharks in Miami District Court. These multi-jurisdiction actions caused Debtor to file this case.

ECF 101, 7:18–25. Centennial's assertion that Kane did not experience any sudden loss of income or incur any unexpected, significant expense in the immediate months leading up to the filing of the petition ignores the multitude of lawsuits (including its own) filed against Kane that precipitated his bankruptcy filing. Furthermore, as Centennial should know, Kane is only paid if he plays, and the COVID-19 pandemic caused the cancellation of several games that resulted in a sharp and unexpected decrease in Kane's income. Nonetheless, Kane tried to reach a resolution with his lenders, but those efforts were unsuccessful. Kane disputes the Non-Real Estate Bank Creditors have valid security interests in his future salary, a position with which this Court has agreed. *Professional Bank v. Kane (In re Kane)*, Adv. Proc. No. 21-5013, Doc. #13 (Bankr. N.D. Cal. July 8, 2021), but that is not the same as avoiding his obligations just to that group of creditors in bankruptcy.

<u>Factor 5:</u> Centennial claims Debtor made no effort to repay his obligation to Centennial. As discussed above, Kane defaulted on his loan with Centennial, but Kane then attempted to reach a resolution with Centennial. Centennial can hardly say Kane made no effort to repay even though those efforts ultimately failed.

<u>Factor 6:</u> Centennial argues that Debtor is using Chapter 7 relief unfairly. It appears Centennial objects to the timing of Kane's bankruptcy filing in that he "strategically waited" to file this bankruptcy case at a time when he knew his compensation under his contract with the Sharks would be at its absolute lowest point. Significantly, the Motion does not challenge Kane's statutory eligibility to be a debtor under Chapter 7. Centennial also complains that it is not fair for Kane to be able to keep his significant income and all of his assets while paying nothing to his creditors. This is simply incorrect and shows a misunderstanding about the facts of this case and how Chapter 7 works.

//

As the Supreme Court explained, "Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate. . . . Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing. Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Harris v. Viegelahn*, 575 U.S. 510, 513-14 (2015) (internal citations omitted). For example, Centennial has made much about Kane's $3 million home in San Jose (the "San Jose Property"), but the Trustee has sold the property to liquidate the non-exempt equity for the benefit of the estate. *See* ECF 209, 210, and 216. The Trustee estimates the estate will receive approximately $700,000 from the sale. *Id*.

Factor 7: Centennial alleges Debtor is paying the debts of insiders. This allegation charges Kane is supporting his wife and infant daughter, as well as funding the lifestyles of other family members. However, Centennial's allegation is not clear and appears to be contradicted by its own Motion, which states, "[T]he Debtor has amended his Schedules multiple times in a short period of time – including the Debtor's amendment to remove his mother, father, grandmother, and two (2) uncles as dependents." Motion ¶ 16. Moreover, the argument is made based upon an initial filing and Centennial has not presented any evidence of the current situation.

Factor 8: Centennial asserts Debtor failed to make candid and full disclosure about the source of his income. This factor is inapplicable. The only argument Centennial again presents in support of this factor is the inaccurate allegation that Kane understated the source of his income. Again, as explained above and acknowledged by the Court, the Schedule I Attachment provides a clear picture of Kane's anticipated income as a hockey player with the Sharks, which is substantially less than what Centennial alleges. *See* BK 1, and 101.

Factor 9: Centennial points to lenders' objections to Debtor's homestead exemption claim, ECF 74, and 79, for the allegation that Kane transferred the San Jose Property from a LLC he controlled to Kane and his wife personally the day before filing this petition. To the extent Centennial is suggesting this may have been a fraudulent transfer, Centennial fails to explain

OPPOSITION TO MOTION TO DISMISS 12

how that could be as the LLC had no creditors. More importantly, the issue has been resolved by the Court's ruling on Zions' objection to Kane's homestead and the Trustee's sale of the home.

To the extent Centennial is complaining about Kane's exemption or bankruptcy planning, Ninth Circuit law is clear that bankruptcy planning, including the transfer of nonexempt property into exempt property is allowed. *See Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1043-44 (9th Cir. 2003).

Centennial makes additional vague allegations about transfers of funds on behalf of insiders (presumably, Kane's family members) to allow them to live comfortably in Canada. However, the allegations do not specify whether these were pre-petition transfers, post-petition transfers of property of the estate, or whether those funds came from Kane's post-petition earnings that are not property of the estate. If there are any transactions subject to recovery, the Trustee is capable of dealing with them, and it is not clear how these allegations support a finding of bad faith.

### c. The Motion Does Not Challenge Kane's Statutory Eligibility to be a Debtor Under Chapter 7, and Kane's Filing of This Chapter 7 Case Was Within His Rights and Not in Bad Faith.

The Motion does not allege that any of the enumerated grounds in § 707(a) are present in this case. While the list in § 707(a) is illustrative and not exhaustive, the Ninth Circuit has made clear that "bad faith" cannot provide "cause" for dismissing a Chapter 7 petition pursuant to § 707(a). *Padilla*, 222 F.3d at 1193; *Sherman*, 491 F.3d at 970. Moreover, Centennial does not challenge Kane statutory eligibility to be a debtor under Chapter 7. *See Alvarado*, 496 B.R. at 207-08 (failure to obtain credit counseling within 180 days of the petition date was cause for dismissal because an individual may not be a debtor without fulfilling that requirement); *see also In re Dunn*, 2010 Bankr. LEXIS 3070, at *5 (B.A.P. 9th Cir. Feb. 4, 2010) (failure of debtors to comply with their duties under § 343 was not contemplated by a specific Code provision and constituted cause for dismissal under § 707(a)).

As this Court recognized in its *Order Denying Motion to Convert*, "Debtor filed this case of his own accord to stay multiple cases brought against him by creditors. . . . He filed a Chapter 7, not a Chapter 11, because he wanted to obtain a discharge of as many debts as possible." ECF

OPPOSITION TO MOTION TO DISMISS 13

Case: 21-50028 Doc# 222 Filed: 09/21/21 Entered: 09/21/21 16:32:44 Page 17 of 19

101, 23:11–13. However, "[t]he bargain a Chapter 7 debtor strikes is to turn over all of his non-exempt assets to a Chapter 7 trustee for administration and payment of creditors' claims. In Chapter 7, a debtor's postpetition income is not subject to creditors' claims and animates a debtor's discharge following the conclusion of the case." *Id*. at 18:17–20 (citing *Viegelahn*, 575 U.S. at 513-14) (internal citations omitted)). "Debtor's primary, and most obvious interests, are to see that his post-petition income does not become entangled in his bankruptcy estate and that he obtains a timely discharge of his debts. Debtor's choice of filing Chapter 7 is not improper from a statutory standpoint. Chapter 7 is designed to allow every debtor [] a quick discharge of his debts and a fresh start." *Id*. at 19:1–5 (citing *In re Takano*, 771 Fed. App'x. 805, 806 (9th Cir. 2019)).

The Ninth Circuit in *Padilla* found the language of the Code and the different post-filing relationship between the debtor and his creditors in Chapter 7 to be significant in its decision not to read good faith or bad faith into dismissal under § 707(a). 222 F.3d 1192-93. Chapters 11 and 13 are reorganization chapters that permit the debtor to retain his assets and reorder his contractual obligations to his creditors, but in return the debtor must approach his new relationship with the creditors in good faith. *Id*. at 1193 (citation omitted). Thus, the Code specifically mentions good faith in Chapters 11 and 13 when it permits a court to confirm a payment plan only if it is proposed in good faith. *Id*. By contrast, no mention of good faith or bad faith is made in Chapter 7. *Id*. Chapter 7 is a liquidation chapter that requires no ongoing relationship between the debtor and his creditors and should be available to any debtor willing to surrender all of his nonexempt assets, regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith. *Id*. (citation omitted).

Because bad faith is not "cause" for dismissal of this case under § 707(a) and Kane has not engaged in bad faith in any event. The Motion does not dispute Kane's statutory eligibility to be a debtor under Chapter 7, and Kane has cooperated with the Trustee and fulfilled his duties under the Code. Accordingly, Kane "has a statutory right to discharge and fresh start and to receive his future income free from financial encumbrances." *See* ECF 101, 19:8–10.

OPPOSITION TO MOTION TO DISMISS 14

## IV. CONCLUSION

As discussed above, the Motion to dismiss this case for bad faith under § 707(a) cannot be granted as a matter of law. Ninth Circuit authority is clear that "bad faith" cannot constitute "cause" for dismissal of a Chapter 7 petition under § 707(a). Employing the applicable two-part test followed in the Ninth Circuit, it is clear that to the extent Centennial believes Kane committed misconduct in filing or during the pendency of this case, the Code specifically contemplates remedies to which Centennial has already availed itself by filing an adversary proceeding for nondischargeability of its claim against Kane under § 523, and denial of Kane's discharge under § 727. Because any alleged misconduct by Kane was contemplated by a specific Code provision, the alleged misconduct cannot constitute cause under § 707(a). In any case, Centennials' list of objections about Kane's finances that it finds offensive do not evince bad faith. Moreover, the Motion does not challenge Kane's statutory eligibility to be a debtor under Chapter 7. Evander Kane respectfully requests that the Court deny the Motion.

Dated September 21, 2021                FINESTONE HAYES LLP

                                        */s/ Stephen D. Finestone*
                                        Stephen D. Finestone
                                        Attorneys for Debtor, Evander Frank Kane

OPPOSITION TO MOTION TO DISMISS                                          15