

**The following constitutes the order of the Court.**
**Signed: October 12, 2021**

_____
**Stephen L. Johnson
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **EVANDER FRANK KANE**,

Debtor.

Case No. 21-50028 SLJ
Chapter 7

**ORDER DENYING MOTION TO DISMISS**

Movant Centennial Bank ("Creditor") asserts Debtor Evander Kane filed the above-captioned Chapter 7[1] bankruptcy case in bad faith and requests the case be dismissed under § 707(a). Creditor points to Debtor's lavish lifestyle, his failure to repay Creditor any of the millions it loaned him, his alleged failure to adequately disclose his significant income from playing professional hockey for the San Jose Sharks, and how the timing of this bankruptcy appears an effort to obtain a "head start" against his creditors rather than the "fresh start"

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

ORDER DENYING MOTION TO DISMISS 1/18

that Chapter 7 is meant to provide those who file such cases. Debtor made identical claims in its prior motion to dismiss under § 707(b), a motion I denied.

I will deny Creditor's motion. I first observe that it is a thinly veiled attempt to relitigate the same facts and arguments Creditor presented in its prior motion to dismiss, suggesting it should fall to preclusion. I then conclude that bad faith is not "cause" to dismiss a Chapter 7 bankruptcy under § 707(a). I also conclude that the facts Creditor alleges show "cause" to dismiss are either provided for by more specific Code provisions, or do not show "cause" under § 707(a) because it deals with procedural or technical violations of the Code, not the substantive problems Creditor alleges.

## I. BACKGROUND

### A. Events Prior to this Motion

Debtor has played professional hockey for more than 11 years, currently for the San Jose Sharks ("Sharks"). He filed this Chapter 7 petition on January 9, 2021.

Creditor loaned Debtor $3,900,000 on September 5, 2018. That loan was purportedly secured by Debtor's salary under his player's contract with the Sharks, and such salary was to be paid directly to Creditor from the Sharks. Debtor also executed a waiver of protection from garnishment under Florida law. That loan was amended three times, resulting in Creditor loaning a total of $8,000,000. Shortly after Debtor executed the third amendment to the loan, he defaulted by requesting the Sharks resume paying his salary to him, rather than paying such salary to Creditor directly under the loan agreement. On the petition date, Debtor owed Creditor $8,435,362.65.

Prior to this motion, Creditor filed a motion to dismiss Debtor's bankruptcy under § 707(b). ECF 83. Creditor alleged that Debtor filed this case just two days after Creditor filed a civil action in the Southern District of Florida that sought, among other things, a judicial determination that Debtor was bound by the agreement to allow his salary to be paid directly to Creditor. Creditor then alleged that Debtor received over $20,000,000 in salary under his player's contract in the last three years, but in his schedules stated his only monthly

income derived from a (now-abandoned) podcast.[2] Next, Creditor noted Debtor's extravagant lifestyle, which included two Mercedes vehicles, three multi-million dollars houses, millions in gambling losses, $8,000 monthly in food and housekeeping supplies, $12,000 in monthly childcare expenses, and $15,000 in monthly support for various family members. Creditor argued these facts showed Debtor had the income to substantially pay off his debts, and his attempt to use Chapter 7 to avoid such payments was an abuse of the bankruptcy process and done in bad faith. I denied that motion on June 1, 2021, concluding that Creditor failed to show Debtor's debts were primarily consumer debts, which is a threshold requirement for dismissing a case under that provision. ECF 152.

B. Creditor's Motion

Creditor filed this motion on June 25, 2021. ECF 172. Creditor first describes the history of its lending relationship with Debtor, which I summarized above. Then, in a section titled "The Debtor's Bad Faith Initiation of this Bankruptcy Case," Creditor copied and pasted the statement of facts it provided in its prior motion to dismiss. *Compare* ECF 172 ¶¶18 *with* ECF 83 ¶¶ 1–7. The sole difference is the Code provisions Creditor cites in the final paragraphs. On this repeated factual record, Creditor again asserts Debtor's case should be dismissed under § 707(a) because Debtor's alleged bad faith shows "cause" to dismiss under that provision.[3] Creditor cites out-of-circuit cases that find "cause" under § 707(a) includes bad faith, and asserts *In re Padilla*, 222 F.3d 1184, 1193 (9th Cir. 2000), which held that bad faith is not "cause" under § 707(a), was superseded by § 707(b)(3) and *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).

---

[2] This is not completely accurate, as I have noted previously. Debtor filed an attachment to his Schedule I that discusses his salary with the Sharks in detail. ECF 1, p. 43. Creditor also took issue with Debtor not amending the Schedule I to reflect his post-petition earnings in 2021, without ever explaining why the Code requires such amendments, especially in a Chapter 7 where post-petition income does not enter the estate.

[3] Creditor also reasserts that Debtor's case is an abuse of the bankruptcy process, despite abuse being relevant under § 707(b) and not appearing anywhere in § 707(a)'s text.

ORDER DENYING MOTION TO DISMISS 3/18

C. Debtor's Opposition

Debtor timely filed his opposition on September 21, 2021.[4] ECF 222. Debtor first disputes that § 707(a) includes bad faith as "cause" to dismiss a Chapter 7 case, arguing *Padilla* explicitly says so and was not overruled by *Marrama* or § 707(b)(3)(A). Debtor notes that *In re Sherman*, 491 F.3d 948 (9th Cir. 2007), which was decided after *Marrama* and the 2005 enactment of § 707(b)(3)(A), applied *Padilla* without reference to those intervening authorities and argues this shows the Ninth Circuit did not believe *Padilla* was affected by those new authorities. Debtor then applies the bad faith factors Creditor identifies anyway, and argues the facts do not show bad faith.

## II. LEGAL STANDARD

Section 707(a) says I "may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee."

"The grounds that § 707(a) lists as providing 'cause' for dismissal are illustrative and not exhaustive." *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (citations omitted). "The three explicit grounds contained in § 707(a) have been described as being 'technical and procedural' violations of the Bankruptcy Code." *Padilla*, 222 F.3d at 1192 (citations omitted). To determine whether cause exists to dismiss a Chapter 7 case, I "must consider whether the circumstances asserted to constitute 'cause' are 'contemplated by any specific Code provision applicable to Chapter 7 petitions.' If the asserted 'cause' is contemplated by a specific Code provision, then it does not constitute 'cause' under § 707(a). If, however, the asserted 'cause'

---

[4] Debtor and Creditor stipulated to continue the original deadline to respond to the motion on July 23, 2021, ECF 183, which I granted on July 26, 2021, ECF 185.

is not contemplated by a specific Code provision, then [I] must further consider whether the circumstances asserted otherwise meet the criteria for 'cause' for discharge under § 707(a)." *In re Sherman*, 491 F.3d 948, 970 (9th Cir. 2007) (cleaned up).

### III. DISCUSSION

#### A. The Conception of this Motion Appears to Conflict with Good Practice

Creditor appears to believe it is entitled to march through each provision of the Code, one at a time, looking for new provisions under which it can deploy arguments that have already failed. Before addressing the points the parties actually dispute, I want to state my belief that this motion, and the iterative legal practice it represents, is inconsistent with the spirit of the Civil Rules and the appropriate use of judicial resources. It may also be barred by the principles of issue preclusion.

The Civil Rules make clear the tactic of successive motions is disfavored. The central goal of litigation in the federal courts is timely adjudication of disputes. The very first Civil Rule says: "These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Civil Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Civil Rule 1. Bankruptcy Rule 1001 provides a nearly identical statement. Creditor's filing of successive motions under different subsections of the same statutory scheme while relying on the very same (in fact copied) facts does not meet either standard.

I think it arguable that this motion fails as a matter of preclusion. Under federal claim preclusion law, litigants are precluded from "from contesting matters that they have had a full and fair opportunity to litigate" to "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Media Rights Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (cleaned up) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Claim preclusion applies if the action involves the same claims or causes of action as a prior action that resulted in a final judgment on the merits and involved the identical

ORDER DENYING MOTION TO DISMISS 5/18

parties or privies. *Media Rights*, 922 F.3d 1020-21. My prior order is final (and, indeed is on appeal), and the two actions may in fact be similar enough for the rule to apply. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

The motion also implicates collateral estoppel. "Collateral estoppel is appropriate when the following elements are met: '(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.'" *Sherman v. Mnuchin*, 2017 WL 1927876, at *4 (C.D. Cal. May 9, 2017) (quoting *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000)). My order denying Creditor's § 707(b) motion may not have decided issues under § 707(a) but I did find that Creditor could not prevail on a motion to dismiss Debtor's case for bad faith because Debtor's debts were not primarily consumer debts, or at least that Creditor failed to present enough contrary evidence.

I think it important to note that my order denying Creditor's § 707(b) motion is on appeal. It is hard not to think that appeal bears on my jurisdiction to decide this motion. The timely filing of a notice of appeal to either a district court or bankruptcy appellate panel will typically divest a bankruptcy court of jurisdiction "over those aspects of the case involved in the appeal." *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000); *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). The bankruptcy court retains jurisdiction over all other matters that it must undertake to implement or enforce the judgment or order but it "may not alter or expand upon the judgment." *Padilla*, 222 F.3d at 1190. Because this motion is brought under § 707(a), as a formal matter that appeal is not a jurisdictional issue. But as a matter of substance I think it a serious problem that Creditor is: (1) currently appealing an order that prevented it from arguing Debtor's bad faith merits dismissing this case; and (2) still thought it proper to file a different motion with no new allegations that sidesteps the

prior motion's defects by arguing under a different provision, when nothing prevented it from asserting that provision in the first motion.

I do not fault Creditor, or the other creditors in this case, for aggressively litigating to protect their claims against Debtor from discharge. Much is at stake here. But I think it improper to repeatedly throw the same arguments at the wall, without even the suggestion of new facts or law. Relevant law, good practice and the efficient deployment of judicial resources call such motions into question. However, because the parties have not had the benefit of briefing or arguing these points, I will not decide them now.

### B. Bad Faith is not "Cause" for Dismissal Under § 707(a)

Creditor argues "cause" to dismiss a Chapter 7 case under § 707(a) includes bad faith, citing numerous decisions by other circuits. *See Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018) ("For the most part, courts have recognized that a debtor's bad faith in filing may constitute cause for dismissal under § 707(a).") (citations omitted); *In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) ("This circuit joins those courts that have held a debtor's bad faith in the bankruptcy process can serve as the basis of a dismissal 'for cause,' even if the bad faith conduct is arguably encompassed by other provisions of the Code."); *In re Schwartz*, 799 F.3d 760, 765 (7th Cir. 2015) ("[W]e agree that an unjustified refusal to pay one's debts is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts."); *In re Piazza*, 719 F.3d 1253, 1260–61 (11th Cir. 2013) ("We conclude that, based on the ordinary meaning of the statutory language and relevant principles of statutory construction, the power to dismiss 'for cause' in § 707(a) includes the power to involuntarily dismiss a Chapter 7 case based on prepetition bad faith."); *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) ("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing.") (citation omitted); *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991) ("Having been persuaded that lack of good faith is a basis for dismissal under § 707(a) . . . ."). These cases justify their conclusions in two ways. First, allowing bad faith to suffice as "cause" to dismiss under § 707(a) "is the most helpful in preventing serious abuses of the bankruptcy process." *Janvey*, 883 F.3d at 412; *see Piazza*, 719 F.3d at 1262 (reasoning

ORDER DENYING MOTION TO DISMISS 7/18

that the hundreds of thousands of Chapter 7 petitions filed per year "indicate we should not artificially limit the tools Congress has given bankruptcy courts to protect their 'jurisdictional integrity.'") (citations omitted). Second, the ordinary meaning of "for cause" is broad, and in other parts of the Code does include bad faith, so "[i]nterpreting 'for cause' in § 707(a) to mean something different than what it means elsewhere in the Bankruptcy Code would create unnecessary incoherence." *Piazza*, 719 F.3d at 1264; *see also Krueger*, 812 F.3d at 370–71; *Zick*, 931 F.2d at 1126–27. Not all courts explained their reasoning. *See Tamecki*, 229 F.3d at 207 (citing *Zick* without explaining its reasoning, or the panel's reasons for adopting it).

But, as Creditor notes, the Ninth Circuit disagreed in *Padilla*. In *Padilla*, the Ninth Circuit held "that bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)." 222 F.3d at 1191. The panel first noted that four provisions of the Code allowed Chapter 7 creditors and trustees to oppose discharges of debt: (1) §§ 523(a) and (c)(1), where specific debts were obtained by a debtor's tortious or fraudulent acts; (2) §727(a) and (c)(1), where a debtor's conduct prior to, or in a bankruptcy case merits their discharge being revoked entirely; (3) §707(b), where a debtor's debts are primarily consumer debts and granting them relief would be a substantial abuse of the Code; and (4) § 707(a), for "cause," with examples of technical or procedural violations of the Code. The panel noted that "statutory construction canons require that where both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." *Padilla*, 222 F.3d at 1192 (cleaned up). Applying this canon meant that "a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct." *Id.* (citation omitted). Because the first three provisions are so specific, "they can be used only in particular circumstances." "Therefore, debtor misconduct falling within the particular circumstances addressed by one of the three provisions must be analyzed under that provision." *Id.* (internal citations omitted).

Addressing § 707(a) directly, the panel noted: "No provision that protects Chapter 7 creditors and the public explicitly uses the words 'good faith' or 'bad faith.' Therefore, the

ORDER DENYING MOTION TO DISMISS 8/18

question of whether a Chapter 7 debtor's bad faith can provide 'cause' for dismissal or grounds for preventing discharge under §§ 523(a)(2)(A), 727(a)(2), 707(b) or 707(a) necessarily depends on the nature of the debtor's actions or inactions that have given rise to the 'bad faith' label and whether they are within the contemplation of specific Code provisions." *Padilla*, 222 F.3d at 1192. The panel admitted "that Chapters 11 and 13 of the Bankruptcy Code each contain a 'dismissal for cause' provision that is structured like § 707(a) and includes the same or similar examples of 'cause' as § 707(a)." *Padilla*, 222 F.3d at 1192 (citing §§ 1112(b), 1307(c)). But while the Ninth Circuit has "held that bad faith does provide 'cause' to dismiss Chapter 11 and Chapter 13 bankruptcy petitions," the panel identified two important distinctions that showed why § 707(a)'s "cause" is different.

First, Chapters 11 and 13 explicitly require a plan be proposed in good faith for such plan to be confirmed, *see* §§ 1129(a)(3), 1325(a)(3), while no express mention of good or bad faith appeared anywhere in Chapter 7. Second, Chapters 11 and 13 allow a debtor to keep his assets and reorder her relationship with creditors, while Chapter 7 does not require any continued relationship between a debtor and her creditors. Instead, the debtor gives up all non-exempt assets and, if the Code does not say otherwise, receives a discharge of any debts such assets cannot repay. So in addition to Chapter 7 not referencing good or bad faith at the time, the very nature of Chapter 7 proceedings makes good faith somewhat irrelevant. Under principles of *stare decisis* I am bound by *Padilla* unless higher authority has abrogated it since its publication. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a body competent to do so.").

Creditor contends *Padilla* was implicitly overruled by *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). I disagree. *Marrama* held that a debtor's pre-petition bad faith conduct bars her from converting a Chapter 7 case to Chapter 13 under § 706(a) because: (1) § 706(d) bars bankruptcy cases from being converted to other Chapters "unless the debtor may be a debtor under such chapter"; and (2) the "virtually unanimous" decision by bankruptcy courts to treat a debtor's pre-petition bad faith as "cause" for dismissing or converting a Chapter 13 case "is tantamount to a ruling that the individual does not qualify

ORDER DENYING MOTION TO DISMISS 9/18

as a debtor under Chapter 13." *Marrama*, 549 U.S. at 367, 373. Section 109(b) provides the only conditions the Code expressly places on being a Chapter 7 debtor: anyone can be a debtor under Chapter 7, so long as they are not: (1) a railroad; or (2) various types of banks, insurance companies, or investment firms. And while § 707(b)(3)(A) – enacted after *Padilla* – does require a bankruptcy court to consider whether a debtor filed a petition in bad faith under certain circumstances, the substantial requirements a § 707(b) motion must meet for this inquiry to arise prevents it from implying a good faith requirement in all Chapter 7s.

The plain text of § 707 shows that this bad faith inquiry only applies to § 707(b) motions. Creditor argues it makes little sense to allow bad faith as grounds to dismiss Chapter 7 cases where a debtor's debts are primarily consumer debts, but not cases where a debtor's debts are primarily non-consumer, citing *In re Watson*, 2010 WL 4497477, at *4 (Bankr. N.D.W. Va. Nov. 1, 2020). In addition to being unpublished and not binding, I am not persuaded by *Watson*'s reasoning. I note first that *Watson* in part relied on *Carolin Corporation v. Miller*, 886 F.2d 693, 698–700, which held that all debtors are subject to a general good faith requirement. To the extent *Watson* believed its decision was compelled by *Miller*, I have no such issue because *Padilla* is still the law in the Ninth Circuit.

Setting that aside, *Watson* says § 707(b)(3)(A) including an inquiry into a Chapter 7 debtor's bad faith means § 707(a) must include that inquiry too. In *Watson*'s view, allowing a debtor to remain in Chapter 7 despite her pre-petition bad faith solely because her debts are primarily non-consumer[5] debts – meaning § 707(b) does not apply to her – "contravenes the principal purpose of the Bankruptcy Code"; that is, to grant a fresh start to the honest but unfortunate debtor. *Watson*, 2010 WL 4497477, at *4.

I agree that *Padilla* was partially superseded by BAPCPA promulgating § 707(b)(3)(A). *In re Alvarado*, 496 B.R. 200, 204 (N.D. Cal. 2013) (noting *Padilla* was partially superseded by § 707(b)(3)(A)). That provision requires courts consider whether a debtor filed a petition in bad faith when deciding whether granting a debtor Chapter 7 relief would be a substantial

---

[5] *Watson* conflates non-consumer debts with business debts. I explained why this is wrong in my order denying Creditor's prior § 707(b) motion to dismiss this case. ECF 151.

ORDER DENYING MOTION TO DISMISS 10/18

abuse of the code under § 707(b)(1). But *In re Sherman*, 491 F.3d 948 (9th Cir. 2007), which was decided months after *Marrama* and years after § 707(b)(3)(A), applied *Padilla* without reference to either. I think it reasonable to infer from this that the Ninth Circuit concluded neither *Marrama* nor § 707(b)(3)(A) fully displaced *Padilla*.

In any event, *Watson* turns *Padilla*'s statutory interpretation on its head. Remember, *Padilla* applied the statutory canon that, where two statutes address similar subject matter, the more specific one controls, meaning courts should analyze a debtor's bad acts under the most specific provision addressing that conduct. So under *Padilla*, when I assess whether a debtor's pre-petition bad faith merits dismissing their Chapter 7 case, § 707(b)(3)(A) is the provision I must turn to. This makes sense for two reasons.

First, Congress decided to add an explicit bad faith analysis to § 707(b)(3)(A), which implies that statute did not call for such an analysis previously. If § 707(a)'s "cause" included bad faith, then adding bad faith to § 707(b)'s inquiry appears superfluous. It is unclear why a creditor would ever assert bad faith under § 707(b) to request dismissal[6] when § 707(a) does not require the creditor show the debtor's debts are primarily consumer to obtain relief. By including this new bad faith inquiry into § 707(b), Congress conditioned the possibility of a debtor's Chapter 7 case being dismissed or converted for bad faith on such debtor's debts being primarily consumer debts. I sympathize with *Watson*'s confusion about the purpose of this choice, but waving away the express text of the Code is not a proper response.

Second, adding this analysis to § 707(b) shows implicit support for distinction *Padilla* draws between §§ 707(a) and (b): Section 707(a)'s examples of "cause" show procedural or technical grounds for dismissing a Chapter 7, so it is a remedy for a debtor's procedural or

---

[6] Because § 707(a)'s text does not provide for conversion, while § 707(b) does, a creditor might elect to argue bad faith under § 707(b) despite its extra requirements because she wants a debtor's case converted from a Chapter 7. But under *Marrama*, conversion to Chapter 13 on bad faith grounds is barred. It is unclear whether the same is true for Chapter 11, but this gap in remedies between §§ 707(a) and (b) show why *Watson's* claim that it makes no sense to treat bad faith debtors differently under these provisions is flawed. Why should a debtor be saved from conversion because the "cause" against her is only procedural or technical? The answer is the same for both discrepancies: because Congress said so.

ORDER DENYING MOTION TO DISMISS 11/18

technical violations. *Padilla*, 222 F.3d at 1192 (citations omitted). Section 707(b) – which is mainly concerned with whether a case is an abuse of Chapter 7 – focuses on the substance of the debtor and her case. Seen this way, Congress's decision to include a bad faith analysis in § 707(b) alone makes sense because it upholds the distinction between substance and procedure that caused Congress to create two different Chapter 7 dismissal provisions in the first place. One can question the merits of this choice, but I am required to enforce it.

It is true that *Padilla*'s statement that Chapter 7 does not expressly reference good or bad faith is no longer entirely correct. But *Padilla*'s distinction between Chapter 7 on one end, and Chapter 11 and 13 on the other, remains true. Chapters 11 and 13 expressly contemplate a continuing relationship between the debtor and her creditors. The substance of that relationship is the plan, so it is no surprise the express good faith requirements in those Chapters appears in connection with proposing a plan. Because those provisions require a debtor propose her plan in good faith, and the goal of substantially all cases under those Chapters is to confirm and complete a plan, those good faith requirements effectively condition every case under such Chapters on the debtor acting in good faith. That is, every debtor who wants relief under Chapter 11 and 13 must file a plan. If a debtor does so in bad faith, the bankruptcy court will reject it, preventing the debtor from obtaining any relief.[7]

In my view, § 707(b)(3)(A) is materially different. While the good faith requirements of Chapters 11 and 13 will be relevant in substantially all cases filed under those Chapters, the same is not true for § 707(b)(3)(A) and Chapter 7. For good faith to become an issue in a Chapter 7 someone must move under that provision; the Code does nothing to compel such motions. The movant must also show that the debtor's debts are primarily consumer debts.

---

[7] Of course, that debtor will benefit from the automatic stay's protection while the case remains pending, but "[t]here is nothing problematic about an individual filing a legitimate bankruptcy petition with the intention of taking advantage of the automatic stay provisions." *Sherman*, 491 F.3d at 971. "While it is troubling to allow an individual filing an *illegitimate* bankruptcy petition, such as one based on misrepresentations, to take advantage of automatic stay provisions, the viability of such a bankruptcy petition is addressed under the provisions of the Bankruptcy Code that protect against illegitimate filings of petitions (such as § 727) and under the 'cause' provision of § 362(d)(1)." *Sherman*, 491 F.3d at 971.

Finally, the § 707(b)(2)(A)(i) presumption of abuse must either be rebutted or not arise in the first place. These layers of prerequisites confirm two things for me: (1) a debtor's good faith will never become an issue in the majority of Chapter 7 cases; and (2) reading "cause" under § 707(a) to include bad faith rewrites this statute so completely it becomes unrecognizable.

The bargain a Chapter 7 debtor strikes is to turn over all her non-exempt assets to a Chapter 7 trustee for administration and payment of creditors' claims. In Chapter 7, the debtor's post-petition income is not subject to creditors' claims and animates the debtor's discharge following the conclusion of the case. Were it otherwise no debtor would receive a proper fresh start after relinquishing their assets. *See Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015) ("Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate . . . . Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing. Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions.") (internal citations omitted). A shorter way of restating the analysis above is that the "clean break" described in *Viegelahn* explains why a general good faith requirement in Chapter 7 is unnecessary: the only "good faith" a Chapter 7 debtor need show is that she discloses her assets and complies with her other duties under the Code. Pre-petition bad faith may show her case is an abuse of Chapter 7 under § 707(b), but if no one argues that—or if they lose such a motion—then *Padilla* provides that pre-petition bad faith is no bar to Chapter 7 relief. *Marrama* did not change this, as confirmed by *Sherman*. Bad faith is not "cause" for dismissal under § 707(a), so Creditor's motion is denied to the extent it argues otherwise.

### C. Creditor Fails to Show "Cause" for Dismissal Under § 707(a)

Finally, I conclude that under *Padilla* and *Sherman* Creditor's allegations are either already provided for by other Code provisions, or do not show "cause" to dismiss Debtor's case under § 707(a). I note first that Creditor does not argue any of the explicit grounds for

ORDER DENYING MOTION TO DISMISS 13/18

"cause" under § 707(a) apply. I see no argument Debtor has unreasonably delayed this case in a manner prejudicial to creditors, failed to pay fees or charges, or failed to file information required by § 521(a)(1). Creditor's descriptions of Debtor's conduct can be grouped into a few categories: pre-petition transfer of assets to thwart creditors, Debtor's alleged failure to adequately disclose his income, Debtor having sufficient resources to pay his debts, Debtor making no adjustments to his lavish lifestyle, and that Debtor intended to avoid a single group of creditors through this Chapter 7.

*Sherman* is helpful here. Richard Sherman represented Whitworth Energy Resources, Inc. and other entities in a Securities Exchange Commission civil action against them. The district court ordered those entities' assets frozen and appointed a permanent receiver. Later, after the SEC won a partial motion for summary judgment asserting such entities violated § 17(a) of the 1933 Securities Act, Sherman violated the freeze order by withdrawing $54,890 from the entities' litigation trust account. That violation resulted in a contempt order requiring Sherman disgorge those funds to the receiver. Concurrently, Sherman represented subsidiary entities of Whitworth on a contingency basis. The receiver settled those actions, and later moved for Sherman to disgorge funds he had received and kept, but did not earn in representing those subsidiaries. The district court found Sherman entitled to $300,000 of the $881,313.43 he received in advances, and ordered the remainder disgorged.

But four days prior to the hearing on that disgorgement motion, and instead of filing any response to the motion, Sherman filed a Chapter 7 case. The SEC moved to dismiss that case under § 707(a), and the receiver joined the motion. The bankruptcy court denied the motion, finding Sherman's case was a run of the mill bankruptcy case. The SEC appealed that decision, but in the interim the receiver and Sherman executed a settlement that stipulated the contempt order and disgorgement order against Sherman were excepted from discharge under § 523(a). On appeal the district court disagreed with the bankruptcy court, concluding under *Padilla* that the Code did not provide the SEC a specific remedy, and the timing of Sherman's bankruptcy, along with misrepresentations he made in it, showed "cause" under § 707(a) to dismiss his case.

ORDER DENYING MOTION TO DISMISS 14/18

The Ninth Circuit reversed the district court. The Ninth Circuit held that the *Padilla* analysis asks "whether other specific Code provisions address the *type* of misconduct alleged, not whether other specific provisions covering the *actual* misconduct alleged would give rise to relief under the Code. If another Code provision addresses the general type of misconduct but does not cover the actual misconduct, that omission is best understood as demonstrating that Congress did not mean to reach the actual misconduct at issue." *Sherman*, 491 F.3d at 970 (emphasis in original). The SEC alleged Sherman's conduct showed "cause" in three ways: (1) he used the bankruptcy court as a refuge from the district court's jurisdiction; (2) he used his bankruptcy as a scorched earth tactic to disfavor the SEC; and (3) he exaggerated his liabilities and expenses to mislead others into thinking his finances were in dire straits and in need of bankruptcy relief.

Assuming the record supported the SEC's allegations, the Ninth Circuit went on to conclude that each of these forms of misconduct were already covered by other Code provisions. The first was covered by § 362(b), which excepts from the automatic stay certain judicial actions, and § 362(d), which allows parties to seek relief from the stay where § 362(b) does not apply. As for the "scorched earth" argument, § 547(b) covered such misconduct by making avoidable certain prepetition transfers of interests in property by a debtor. The Ninth Circuit admitted such avoidance claims can normally only be asserted by a trustee, but concluded this meant the Code contemplates such misconduct, but chose to restrict those who may assert the claim to address it. As for Sherman's alleged misrepresentations, the Ninth Circuit looked to § 727(a)(4)(A), which provides for revoking a debtor's discharge on a showing that debtor made a false oath or account. The Ninth Circuit concluded: "*Padilla* does not . . . permit a free-floating concept of cause for dismissal to substitute for careful application of the bankruptcy scheme Congress devised, including the multitude of remedies for abusive behavior or behavior harmful to the public interest." *Sherman*, 491 F.3d at 975.

Creditor's claim that Debtor transferring assets pre-petition shows "cause" to dismiss is dealt with by *Sherman*: § 547(b) provides a remedy for this misconduct, and the fact that Creditor may not be able to assert such claims itself changes nothing. Section 727(a)(2) also

ORDER DENYING MOTION TO DISMISS 15/18

Case: 21-50028   Doc# 233   Filed: 10/12/21   Entered: 10/12/21 14:00:50   Page 15 of 18

provides a remedy for such transfers. As for Debtor allegedly failing to disclose his actual income, § 727(a)(4) provides a remedy for this, as *Sherman* recognized.

Creditor also says Debtor has sufficient funds to pay his creditors, or at least would if one includes his post-petition income. This argument seems self-defeating, as a fundamental feature of Chapter 7 is that post-petition income is not part of the estate; it makes no sense to argue an express feature of Chapter 7 shows "cause" to dismiss a case under that Chapter. Setting that aside, I see two obvious remedies under the Code for this problem: seeking conversion to Chapter 11 under § 706(b), or moving to dismiss under § 707(b) on grounds the case is an abuse of Chapter 7. True, I have already denied motions brought under both provisions, but what matters is that the Code contemplates the problem Creditor alleges here and provided remedies. What matters is whether the Code addresses the type of misconduct alleged, not whether the actual misconduct will support a claim. *Sherman*, 491 F.3d at 970.

Debtor's failure to adjust his claimed lavish lifestyle is not expressly contemplated by any provision of the Code. The reason should be obvious. In a Chapter 7 case, a debtor's post-petition income is not property of the estate and is in fact debtor's property free of any claim from the estate. In this sense, a debtor's fresh start is her right to make future choices free of past mistakes, restricted only by the contours of §§ 523 and 727. And of course, in the case of a debtor with primarily consumer debts, there are limits to access to Chapter 7 as well as statute-mandated expense regimes.

Finally, Creditor's argument that Debtor's intent to use Chapter 7 to avoid a specific group of creditors shows "cause" is meritless because it misunderstands how Chapter 7 works. Once Debtor filed his petition, the rights of his creditors were set by the Code. At that point, Debtor's only input in his bankruptcy was to disclose his assets and defend himself against motions to dismiss or convert the case, motions to limit or eliminate his exemptions, or complaints brought under §§ 523(a) and 727(a). I appreciate Creditor would prefer its claim not be impacted by this bankruptcy, but any harm it suffers because of this case is a result of the Code, regardless of Debtor's intent.

I also find Creditor's arguments fail under § 707(a) for a more fundamental reason: as *Padilla* says, § 707(a) deals with technical or procedural violations of Chapter 7. 222 F.3d at 1192, 1193. As in *Padilla*, Creditor provides no evidence Debtor "violated any technical or procedural requirements of Chapter 7. The record reveals no failure to pay filing fees or to file necessary information. [Debtor] did not falsify bankruptcy forms or cause delays during the administration of bankruptcy proceeding." *Id.* at 1193. In my view, this shows Creditor's allegations are just not meant to be covered by § 707(a). So even if I found that the Code does not contemplate the misconduct described in this motion, I would still deny the motion because Creditor does not show any violation by Debtor of the Chapter 7 *process*.

Instead, Creditor is concerned—and rightly so—with the possible effect of that process on its claim against Debtor. This reenforces my impression that this motion is a collateral attack on my decision to deny Creditor's § 707(b) motion. That provision provides the remedy for the substantive problems Creditor asserts plague Debtor's Chapter 7 case, and Creditor's failure to show it was entitled to such relief in the § 707(b) motion forecloses its efforts here to get the same relief by other means.

## IV.  CONCLUSION

Bad faith is not "cause" for dismissal under § 707(a) and Creditor fails to show that the misconduct by Debtor it alleges shows "cause" to dismiss under § 707(a). Accordingly, it is hereby ordered that Creditor's motion be denied.

IT IS SO ORDERED.

**END OF ORDER**

**COURT SERVICE LIST**

[ECF recipients only]