| | |
|---|---|
| 1 | Gregg S. Kleiner, State Bar No. 141311 |
| 2 | RINCON LAW LLP<br>268 Bush Street, Suite 3335 |
| 3 | San Francisco, CA 94104<br>Telephone No.: 415-672-5991 |
| 4 | Facsimile No.: 415-680-1712 |
| 5 | Email: gkleiner@rinconlawllp.com |
| 6 | Counsel for FRED HJELMESET,<br>Trustee in Bankruptcy |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028 SLJ<br>Chapter 7<br>Hon. Stephen L. Johnson<br><br>**DECLARATION OF GEORGE CHIKOVANI IN SUPPORT OF APPLICATION FOR AUTHORITY TO (I) EMPLOY SPECIAL COUNSEL ON CONTINGENCY FEE BASIS, (II) COMPENSATE DEBTOR FOR ASSISTING SPECIAL COUNSEL FROM JUDGMENT AND/OR SETTLEMENT PROCEEDS, AND (III) REIMBURSE DEBTOR FOR EXPENSES DEBTOR HAS ADVANCED<br>(Putterman Yu Wang LLP)**<br><br>[No Hearing Required Unless Requested] |

I, George Chikovani, declare as follows:

1. I am a partner with the law firm of Putterman Yu Wang LLP ("Law Firm").

2. The Trustee seeks to employ the Law Firm as his special counsel to be paid on a contingency fee basis to pursue potential claims against Sure Sports, LLC *fka* Sure Sports Lending, LLC ("Sure Sports") regarding certain pre-petition loans that were entered into between the Debtor and third-party lenders and arranged by Sure Sports.

3. I am informed and believe that prior to the Debtor's January 9, 2021 petition date, Sure Sports and the Debtor were parties to one or more agreements, some of which were entitled "Underwriting Fee Payment Agreement." Through these agreements, Sure Sports provided its "underwriting services" and, commencing in 2018, helped "arrange financing via loans, lines of credit and equity transactions" in excess of $12 million.

4. On April 21, 2021, Sure Sports filed a claim against the Debtor's estate for a "breach of underwriting fee payment agreements." The claim asserts that the estate is obligated to Sure Sports in the amount of $1,187,950.94 ("Claim").

5. I am informed and believe that the agreements between the Debtor and Sure Sports may violate, among other things, provisions of the Miller-Ayala Act (Business and Professions Code §§ 18895, *et seq.*) ("MAAA"). The provisions of the various agreements between the Debtor and Sure Sports state that Sure Sports "provided underwriting services" to the Debtor in connection with various loans, and state that Sure Sports will be compensated for "services rendered" to "arrange financing via loans, lines of credit and equity transactions." As such, these agreements appear to fall under the statutory definition of the MAAA concerning "financial services contracts," which are defined as including "the making or execution of an investment or other financial decision, or counseling as a to a financial decision." Bus. & Prof. Code §18895.2(e). Based on its activities in recruiting or soliciting the Debtor to enter into various loan agreements with lenders Sure Sports appears to be an "athlete agent" as defined by the MAAA. Bus. & Prof. Code §18895.2 (b)(1) ("athlete agent" includes "any person who, directly or indirectly, recruits or solicits an athlete to: enter into any agent contract, endorsement contract, financial services contract.").

6. The MAAA requires any individual or company that is an "athlete agent" as defined in the Act to take various actions, including to file certain information with the California Secretary of State (Bus. & Prof. Code §18896), to maintain an insurance policy or bond as security for potential claims by athletes (Bus. & Prof. Code §18897.87), and to make certain disclosures when dealing with athletes (Bus. & Prof. Code §18897.3). I am informed and believe that Sure Sports has not complied with any of the foregoing requirements.

///

7.     I am informed and believe that the Debtor's estate has claims against Sure Sports, which may include, without limitation: voiding all agreements between Sure Sports and the Debtor; precluding Sure Sports from seeking further payments from the Debtor, including invalidating Sure Sports' Claim; return of money paid by the Debtor to Sure Sports pursuant to the agreements; obtaining statutory damages under the MAAA; and attorneys' fees and court costs incurred in the prosecution of a claim under the MAAA. (Bus. & Prof. Code §18897.8-18897.9).

8.     I am informed and believe that the Trustee seeks to further investigate claims the estate may have against Sure Sports and, if appropriate, pursue affirmative claims it has against Sure Sports in the bankruptcy case, including claims that may arise under MAAA.

9.     I am informed and believe that the Debtor's estate is not in a position to employ counsel on an hourly basis to investigate and pursue the claims it may have against Sure Sports and that the Trustee's general counsel is not in a position to pursue these claims on a contingency fee basis. The Law Firm is willing to pursue the claims on behalf of the bankruptcy estate on a contingency fee basis and is willing to advance certain costs discussed below. Under the terms of the proposed engagement agreement with the Law Firm ("Agreement"), a copy of which is attached hereto as **Exhibit A**, the Law Firm will be paid 45% through settlement or judgment of any Net Recovery. The term "Net Recovery" means: (1) the total of all amounts received by settlement, arbitration award, or judgment, including any award of attorney's fees, (2) minus all costs and disbursements paid by the estate, Evander Kane and/or the Law Firm.

10.    In order to pursue the claims against Sure Sports, the Law Firm will need the assistance of the Debtor. I am informed and believe that the Debtor has agreed to assist the Trustee in pursuing claims against Sure Sports in exchange for receipt of 10% of the Net Recovery. I am informed and believe that the Debtor has agreed to advance the sum of $15,000 to pay for costs that the Law Firm may incur related to pursuing the claims against Sure Sports, which sum will be reimbursed from the recovery from a judgment or settlement.

11.    I understand that the Agreement is subject to Bankruptcy Court approval and have requested that the Trustee retain the Law Firm under 11 U.S.C. §§ 327(a) and 328(a). I have no connection to the Debtor, his attorneys or accountants, the Trustee or his attorneys or accountants,

the United States Trustee or any person employed by the Office of the United States Trustee, creditors or parties in interest. As provided by 11 U.S.C. § 327, I believe that the Law Firm is qualified for employment as special counsel for the Trustee subject to the right of other creditors to object to the proposed employment. The Law Firm has pursued multiple claims under the MAAA.

    I declare under penalty of perjury under the laws of the United States of America, that, except for statements made upon information and belief, the statements made herein are true and correct and if called upon as a witness I would testify thereto. Executed this __14th__ day of February 2022 at San Francisco, California.

_____
GEORGE CHIKOVANI

# Putterman | Yu | Wang LLP

345 CALIFORNIA STREET, SUITE 1160
SAN FRANCISCO, CA 94104
TEL. 415.839.8779 | FAX. 415.737.1363

GEORGE CHIKOVANI
gchikovani@plylaw.com
DD. 415.685.0752

February 1, 2022

<u>VIA E-MAIL</u>

Frode "Fred" S. Hjelmeset
Chapter 7 Trustee for the Estate of Evander Kane
P.O. Box 4188
Mountain View, CA 94040
E-mail: fhtrustee@gmail.com
Phone: (650) 386-5634

    Re: *In re Evander Kane*, 21-50028 SLJ ("Debtor"), pending before the United States Bankruptcy Court for the Northern District of California, San Jose Division ("the Bankruptcy Proceeding")

Dear Mr. Hjelmeset:

    This letter and the accompanying Terms and Conditions for Special Counsel Engagement in Bankruptcy Proceeding ("Standard Terms") will serve as the fee agreement among you, solely in your capacity as Chapter 7 Trustee of the Debtor in the above-referenced matter ("You," "Your" or "Client") and Putterman Yu Wang LLP ("PYW," "we," or "Special Counsel") and will confirm the scope and terms of our limited engagement. This agreement may not be changed or modified except by a subsequent document signed by all of us.

**Scope of Representation**

    Subject to the terms of this engagement letter and the Standard Terms, PYW, upon appointment as Special Litigation Counsel approved by the Court in the Bankruptcy Proceeding, will represent Your interests as the acting Chapter 7 trustee in claims to be brought against Sure Sports (and possibly others) relating to the rights of the Evander Kane bankruptcy estate arising out of the Miller Ayala Athlete Agents Act, Bus. & Prof. Code §18895 *et seq.* (the "MAAA Action").

    PYW will provide those legal services reasonably required to represent You in the MAAA Action. We will take reasonable steps to keep You informed of progress and to respond to Your inquiries. If a court action is filed, we will represent You through trial and post-trial motions. This Agreement includes defending You against, or representing You in any claims that may be asserted against You in a cross-claim or counter-claim in the Action we file (but not in

EXHIBIT A

# Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 2

any other litigation in the Bankruptcy Proceeding). This Agreement does not cover representation in any potential arbitration proceeding, on appeal, or in collection proceedings after judgment or proceedings regarding renewal of a judgment. A separate written agreement for these services or services in any other matter not described above will be required.

      PYW acknowledges You are a Chapter 7 bankruptcy trustee and we are representing You solely in your capacity as the Chapter 7 bankruptcy trustee of the Evander Kane estate. As such, any obligations under this Agreement are obligations of the bankruptcy estate only and not obligations of You individually. PYW must be employed by order of the Court and any payment to us will be made only after entry of an order by the Court approving such fees and expenses.

### Attorneys' Fees for Services Rendered

      PYW will be compensated for legal services rendered and costs incurred only if a recovery is obtained on Your behalf. PYW agrees, understands and acknowledges that (i) payment of any of fees and costs is subject approval of the Court and (ii) it has reviewed and must comply with the "Court's Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees."

      The fee to be paid PYW will be a percentage of the "Net Recovery." The term "Net Recovery" means: (1) the total of all amounts received by settlement, arbitration award, or judgment, including any award of attorney's fees, (2) minus all costs and disbursements paid by the Estate, Evander Kane and/or PYW.

      **Attorney's fee will be forty-five percent (45%) of the Net Recovery.**

      In the event of Attorney's discharge, or withdrawal with justifiable cause, You agree that, subject notice and approval of the Court, upon payment of the settlement, arbitration award or judgment in Your favor in this matter, we will be entitled to be paid by You a reasonable fee for the legal services provided. Such fee will be determined by considering the following factors:

1) The amount of the fee in proportion to the value of the services performed;
2) The relative sophistication of the Attorney and the Client;
3) The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
4) The likelihood, if apparent to the Client, that the acceptance of the particular employment will preclude other employment by the Attorney;
5) The amount involved and the results obtained;
6) The time limitations imposed by the Client or by the circumstances;
7) The nature and length of the professional relationship with the Client;
8) The experience, reputation, and ability of the Attorney;



**EXHIBIT A**

# Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 3

9) The time and labor required;
10) The informed consent of the Client to the fee.

**Negotiability of this Agreement**

You understand and agree that the legal fees set forth above are not set by law, but are negotiable between Attorney and Client.

**Binding Agreement**

Please carefully review this letter, as well as the accompanying Standard Terms. In the event there is a conflict between or among the Court's order authorizing you to employ us, this letter agreement and the Standard Terms, such conflict shall be resolved in the same order.

You hereby acknowledge and represent that you have received independent counsel to review and advise you regarding the terms, obligations, and consequences of this agreement, including the accompanying Standard Terms, and you acknowledge that you have done so.

If the foregoing terms, including the accompanying Standard Terms, meet with your approval, please execute this agreement, date and return to me the executed letter by .pdf. Once you have done so, and the terms of employment have been approved by Court order in the Bankruptcy Proceeding, all terms in this letter, as well as the accompanying Standard Terms will become part of a binding fee agreement. If you have any questions regarding our representation or this letter, I will be happy to discuss them.

In closing, I want to express our appreciation for your confidence in us.

Very truly yours,

George Chikovani

I confirm that I have read, understand, and agree to all terms and conditions as set forth above and in the Standard Terms.

AGREED:
FRED HJELMESET, Chapter 7 Trustee
for the Estate of Evander Kane

DATED: 2-1-2022

EXHIBIT A

Case: 21-50028    Doc# 263-1    Filed: 02/14/22    Entered: 02/14/22 10:55:22    Page 7 of 14

# Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 4

## TERMS AND CONDITIONS FOR SPECIAL COUNSEL
## ENGAGEMENT IN BANKRUPTCY PROCEEDING

Except as modified in writing by the accompanying engagement agreement or in another writing signed by Putterman | Yu | Wang LLP ("PYW" or "Special Counsel") and the Client (as set forth in the accompanying engagement agreement ("Agreement")), the following provisions shall apply to the relationship between Special Counsel and the Client. This agreement is subject to the approval of the United States Bankruptcy Court for the Northern District of California, San Jose Division ("Court"), in the pending Chapter 7 case of *In re Evander Kane*, 21-50028 SLJ.

**These provisions are important and should be reviewed carefully by the Client prior to executing the accompanying engagement agreement.**

1. <u>Fees</u>. Fees for Special Counsel's services shall be based on a contingency basis, as provided in the Agreement. In the event of Special Counsel's discharge, or withdrawal with justifiable cause, upon payment of a settlement, arbitration award or judgment to Client, Special Counsel may seek hourly compensation subject to the terms set forth in the Agreement. Such compensation shall be subject to the fee guidelines of the Court ("Fee Guidelines") and Court approval. In support of such a request, Special Counsel shall provide billing records based on time spent and the hourly billing rates in effect at the time that the services are performed. By retaining Special Counsel, the Client is agreeing to each of the following billing practices:

    (a) Block Billing. Special Counsel's customary practice is for each timekeeper (including attorneys, paralegals, legal assistants and clerks) to aggregate the activities performed on a given matter during a particular day and to provide only a general description of those activities without identifying how much time was spent on each particular task (i.e., time is not broken out for individual tasks where more than one task is performed in a block of time). Notwithstanding the foregoing practice, Special Counsel shall make reasonable efforts to increment their time entries in conformity with the Fee Guidelines.

    (b) Minimum Time Increments. Unless otherwise specifically agreed in writing, Special Counsel's attorneys, paralegals, legal assistants, clerks, and other timekeepers shall bill their time in minimum increments of one-tenth of an hour.

    (c) Billing Rate Increases. The billing rates of Special Counsel's attorneys, legal assistants, clerks, and other timekeepers vary, depending generally on the experience and capabilities of the persons involved, and Special Counsel adjusts these rates from time to time. However, PYW will not change its billing rates on this matter, if at all, until January 1, 2024 at the earliest.

    (d) The Client specifically agrees that Special Counsel shall not be required to provide the Client with any notice of such increases beyond setting forth the applicable hourly rates in the monthly invoices that are provided to the Client.

**EXHIBIT A**

## Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 5

(e) Tasks That Will Be Billed to the Client. The time for which the Client will be charged includes all time spent by Special Counsel's personnel on behalf of the Client including, but not limited to, in telephone and office conferences with the Client and with other attorneys, witnesses, consultants, court personnel, and others; in conferences among Special Counsel's legal personnel; performing factual investigation; performing legal research; drafting letters, emails, agreements, pleadings, briefs and other documents; traveling; waiting in court; and on depositions and other discovery proceedings. Consistent with a "team approach," Special Counsel may use multiple personnel, including multiple attorneys, on the same or similar activities and may charge for each individual involved in such activities, including but not limited to (i) preparing for and attending depositions, (ii) preparing for and attending court hearings, (iii) preparing for and attending meetings with the Client or others, or in conversations with the Client or others, and (iv) engaging in intra-office conferences among attorneys, paralegals, and others.

2. <u>Costs and In-House Services</u>. To the extent there is a recovery in the Action, subject to the approval of the Court, the Client agrees Special Counsel is entitled to reimbursement for actual costs and expenses advanced by Special Counsel and in addition to Special Counsel's legal fees. The costs and expenses commonly include, but are not limited to, computer research time (including among others Westlaw or Lexis), process servers' fees, fees fixed by law or assessed by courts or other agencies, photocopying costs, messenger fees, delivery service fees, travel expenses (including mileage, parking, airfare, lodging, meals, and ground transportation), long-distance telephone charges, and filing fees. Such items will be charged at Special Counsel's direct (actual) cost. Special Counsel understands and acknowledges that there are currently limited funds in the bankruptcy estate to pay expenses and costs and that Client's ability to pay expenses and costs is extremely limited. In acknowledgment of the limited resources, subject to the Court's approval, the Debtor, Evander Kane, has agreed to advance up to $15,000.00 in litigation costs. This amount shall be subject to reimbursement to Mr. Kane, if recovery is achieved in the Action that is the subject of this Agreement. Special Counsel agrees to advance all costs beyond $15,000, including paying fees and expenses of third parties (such as, for example, court reporters and videographers).

3. <u>Estimates Not Binding</u>. Although Special Counsel may furnish estimates of fees or costs that are anticipated to be incurred, these estimates are not binding, are subject to unforeseen circumstances, and are by their nature inexact. Accordingly, the Client shall remain obligated to pay Special Counsel's fees and costs, pursuant to the terms of this Agreement, irrespective of whether they exceed any estimates or budgets that Special Counsel may provide, unless otherwise agreed in a signed document. For purposes of clarification, in the event that no sums are actually collected by the Client in the MAAA Action, Special Counsel shall not be entitled to receive any compensation from the Debtor's estate or reimbursed any costs (other than the $15,000 in costs advanced by Mr. Kane).

**EXHIBIT A**

# Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 6

    4.    <u>Termination by the Client</u>. The Client has the right at any time, in the Client's sole discretion, to terminate Special Counsel's services and representation, provided that any court in which Special Counsel is representing the Client allows Special Counsel's withdrawal from such representation. Upon termination, the Client will remain obligated to pay for all services rendered and costs incurred on the Client's behalf prior to the date of such termination or which are reasonably necessary thereafter, as ordered by the Court, with such payment to be delivered only from proceeds from the MAAA Action.

    5.    <u>Termination by Special Counsel</u>. Special Counsel reserves the right to withdraw from representing the Client for any reason, including among other things the Client's failure to honor the terms of this engagement agreement, the Client's failure to cooperate or follow Special Counsel's advice on a material matter, in the event of currently unforeseen procedural complications that, in Special Counsel's view, renders the representation economically impracticable, or if any fact or circumstance arises that, in Special Counsel's view, renders our continuing representation unlawful or unethical. If Special Counsel elects to withdraw, the Client will take all steps necessary to free Special Counsel of any obligation to perform further services, including the execution of any documents necessary to complete Special Counsel's withdrawal and/or the substitution of other attorneys in place of Special Counsel. Special Counsel will be entitled to be paid immediately at the time of withdrawal for all services rendered and costs incurred on the Client's behalf, as ordered by the Court, with such payment to be delivered only from proceeds from the MAAA Action.

    6.    <u>Date of Termination</u>. Special Counsel's representation of the Client will be considered terminated at the earlier of (i) the substantial completion of Special Counsel's substantive work for the Client, (ii) the Client's termination of the representation, provided Special Counsel's withdrawal is allowed by each court in which Special Counsel is representing the Client, or (iii) Special Counsel's withdrawal from the representation.

    7.    <u>No Guarantee of Outcome</u>. Special Counsel does not and cannot guarantee any outcome in a matter. Rather, any expressions on Special Counsel's part concerning the potential outcome of the Client's legal matters are expressions of Special Counsel's best professional judgment. Such opinions are necessarily limited by Special Counsel's knowledge of the facts and are based upon the state of the law at the time they are expressed. Special Counsel does not guarantee the outcome of the matter on which Special Counsel is representing the Client. As required by this Agreement and ordered by the Court, the Client agrees to pay Special Counsel's fees and costs regardless of any outcome, absent a specific written agreement to the contrary signed by the Client and Special Counsel.

**EXHIBIT A**

# Putterman | Yu | Wang LLP

    8.    <u>Identity of the Client</u>. Special Counsel's client for the purpose of its representation is only the person or entity identified as the Client in the engagement agreement accompanying these Standard Terms of Retention. Unless expressly agreed in a signed document, Special Counsel is not undertaking the representation of any related or affiliated person or entity, nor any parent, sister, subsidiary, or affiliated corporation or entity, nor any of their or the Client's officers, directors, agents, partners, or employees (except that Special Counsel may elect to represent, at the Client's request, certain of the Client's officers, directors, or employees solely in their representative capacities as constituents of the Client, and not in their individual capacities, without a further signed document.)

    9.    <u>Client's Duty of Cooperation/Notice of Material Client Events</u>. The Client will cooperate fully in Special Counsel's efforts on the Client's behalf. Moreover, the Client will cooperate with Special Counsel in efforts to comply with Special Counsel's professional responsibilities relating to the representation, including responsibilities relating to conflicts of interest as well as other matters. Communications between Client, Special Counsel, and anybody assisting Special Counsel with this matter, are and will be protected by the privilege for attorney-client communications. Consequently, Special Counsel expect Client to be forthright and truthful at all times in Client's communications with Special Counsel, to provide all pertinent information within Client's control or knowledge upon Special Counsel's request and to otherwise cooperate fully in order to enable Special Counsel to represent Client to the best of Special Counsel's abilities. Top quality representation depends on counsel having full information, whether perceived by the client to be good or bad, to enable counsel to anticipate and counter any issues which might be raised by an adverse party; in particular, Special Counsel emphasizes that we *must* know about any potentially harmful facts in order to both deal with those facts and in order to provide Client with our best professional judgment. Should Special Counsel determine that Client is not providing Special Counsel with complete and forthright information, Special Counsel reserves the right to withdraw from the representation.

    10.    <u>Electronic Communication</u>. Our clients generally expect us to communicate electronically with them or with outside parties during the course of our representation. While e-mail is a fast and convenient way to communicate, e-mail travels over the public Internet, which is not a secure means of communication. This means that confidentiality could be compromised. Unless you direct us to not communicate electronically, you agree that we may use e-mail and other electronic methods to transmit and receive information, including confidential information, in communications with you and with other parties in connection with our services.

    11.    <u>Client's Duty To Preserve Evidence</u>. Client is the chapter 7 Trustee of the Debtor's estate. In his capacity as Trustee, he has instructed the Debtor to preserve all records. Client will provide such further instructions to the Debtor as may be requested by Special Counsel.

# Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 8

    12.    <u>Special Counsel's Document Retention and Destruction Policy</u>. Special Counsel will maintain necessary documents relating to this matter in electronic form in your "Client File." Upon termination of our engagement, for whatever reason, Client is entitled to obtain from Special Counsel the Client File created for this engagement. However, Client agrees that Special Counsel is entitled to make and retain a copy set of such Files at Client's expense. Client and Special Counsel agree that "Client Files" includes client documents and all attorney end products, and are your property. "Attorney end products" include, but are not limited to, pleadings, settlement agreements, trusts and finalized contracts. Attorney work product remains Special Counsel's property. "Attorney work product" includes, but is not limited to, attorney notes, internal memos and drafts. In addition, administrative files, such as Special Counsel's accounting records, conflicts checks and file-opening materials are not included within "Client Files" and remain Special Counsel property. Once the matter has been concluded, Special Counsel will contact Client and give Client the opportunity to retrieve or direct Special Counsel to forward Client's files to Client, at Client's expense. In the case of original physical documents provided by Client to Special Counsel, absent other arrangements, Special Counsel will not retain such documents for a period of more than forty-give (45) days. In the case of your electronic Client File, absent other arrangements, Special Counsel will retain Client's electronic Client File for two (2) years. Thereafter, unless Client retrieves the files or give Special Counsel other disposition instructions, Special Counsel will be authorized to destroy the files, including client materials and attorney work product, without further notice to Client.

    13.    <u>Disqualification of Other Counsel</u>. It is a serious matter to seek to disqualify an attorney or law firm from representing another party in a legal proceeding or transaction. The Client agrees that Special Counsel shall have the discretion to decide, in its sole judgment, whether to seek to disqualify an attorney or law firm from representing another party in a legal proceeding or transaction, irrespective of the basis on which disqualification could be sought. If Special Counsel declines to seek to disqualify an attorney or law firm from representing another party in a legal proceeding or transaction, the Client shall remain entitled to engage alternative counsel to undertake such work.

    14.    <u>Claims Against Other Attorneys</u>. Unless otherwise specifically agreed in writing, Special Counsel does not, and will not, undertake to advise the Client with respect to any claims or potential claims that the Client may have against other law firms or attorneys who either currently represent, or have previously represented, the Client. The Client hereby agrees and acknowledges that unless Special Counsel specifically agrees in writing to undertake such a duty, Special Counsel shall have no duty to advise the Client concerning such matters, even if Special Counsel actually knows or should know of the existence of such claims or potential claims. The Client further agrees that unless otherwise specifically agreed in writing, to the extent the Client wishes to consider any claims or potential claims against any other law firms or attorneys who either currently represent, or have previously represented, the Client, the Client shall consult with other counsel of its own choosing concerning such claims or potential claims. Further, the Client acknowledges that the statute of limitations in California for bringing claims against attorneys is generally one year from the date the Client suffers any injury, though that period may be tolled or extended under certain circumstances as provided by law.

**EXHIBIT A**

# Putterman | Yu | Wang LLP

Fred Hjelmeset
February 1, 2022
Page 9

    15.    <u>Attorneys' Lien; Security Interest.</u> The Client hereby grants to PYW (i) a contractual lien pursuant to California Civil Code section 2881 on any and all claims or causes of action (and all proceeds thereof) that are the subject of PYW's representation of the Client and (ii) a security interest in any retainer paid to PYW in connection with PYW's representation of the Client (and all interest thereon and other proceeds thereof). This attorneys' lien, as well as this security interest in any such advance, will each be for any sums due and owing to PYW for its services and any amounts advanced by PYW on the Client's behalf. This attorneys' lien will attach to any recovery that the Client may obtain, whether by arbitration, mediation, judgment, settlement or otherwise. If requested by PYW, and authorized by the Court, the Client agrees to execute a financing statement (UCC-1) and/or an appropriate deposit account or securities account control agreement in connection with the attorneys' lien and/or the security interest granted to us hereby.

    16.    <u>Scope of Representation; Application to Subsequent Matters</u>. The scope of Special Counsel's representation of the Client is limited to the specific matter or matters identified in the accompanying engagement agreement and such additional matters as to which the Client and Special Counsel may in their mutual discretion agree from time to time. In each case, Special Counsel's agreement to any expansion of the scope of its representation of the Client will be subject, among other things, to such additional conflict checks, waivers, retainers, approvals, and other arrangements as Special Counsel may in its professional judgment deem necessary or appropriate in the circumstances. Except as otherwise expressly provided in any written engagement agreement (or a written amendment of a prior engagement agreement) between Special Counsel and Client entered into in connection with such expansion of the scope of Special Counsel's representation, the agreement reflected in these Standard Terms of Retention, and in the accompanying engagement agreement, applies to Special Counsel's current representation of the Client and to any subsequent matters that Special Counsel agrees to undertake on the Client's behalf.

    17.    <u>Client's Responsibility for Prevailing Party or Court Ordered Fees and Costs to Other Party</u>. Client understands that if Client's case proceeds to court action or arbitration and Client loses or is not the prevailing party, the court may award Attorney fees as well as some or all of the type of costs enumerated in this Paragraph 17 to the winning or prevailing party or parties. Payment of such attorney fees and costs will be the sole responsibility of Client. If an award of fees and/or costs to be paid by another party is sought on Client's behalf in this action, Client understands that the amount which the court may order as fees and/or costs is the amount the court believes the party is entitled to recover, and does not determine what fees and/or costs Attorney is entitled to charge Client or that only the fees and/or costs which were allowed were reasonable.

**EXHIBIT A**

      18.    <u>Allocation of Court Award for Statutory or Contract Fees and Costs</u>. Client agrees that any award of fees and costs that may be awarded pursuant to contract or statute will belong exclusively to Attorney. Client further agrees that, whether or not attorney's fees or costs are awarded by the court in Client's case, if there is a recovery other than an award of fees and costs pursuant to contract or statute Client will remain responsible for the payment, in full, of the attorney's fees and costs in accordance with this Agreement. However, any payment of court-awarded fees and/or costs by a third party will be credited against the amount of fees and/or costs owed by Client under this Agreement. Therefore, Client agrees that the attorney's fees and costs payable to Attorney pursuant to this Agreement shall be the greater of: (i) the amount otherwise owed to Attorney under this Agreement if the award of attorney's fees and costs were disregarded; or (ii) the amount of the court ordered award of attorney's fees and costs.

      19.    <u>Responsibility For and Allocation of Sanctions</u>. Client agrees that any award of fees and costs that may be awarded as discovery or other sanctions shall not be considered part of the Client's recovery and shall belong exclusively to Attorney as additional compensation for extraordinary time and effort. The court may assess monetary sanctions, (including attorney fees and costs) against Client for bad faith conduct, including of discovery proceedings prior to trial, or inappropriate conduct during or even after trial. Any such award will be entirely the responsibility of Client.

      20.    <u>No Modification Except by Signed Writing</u>. No provision of the engagement agreement or the Standard Terms of Retention can be waived, modified, amended, or supplemented except in a writing that is signed by authorized representatives of both Special Counsel and the Client.

      21.    <u>Integrated Agreement</u>. The engagement agreement and these Standard Terms of Retention constitute the entire understanding and contract between the Client and Special Counsel with respect to the subject matter referred to herein. Any and all other representations, understandings, or agreements, whether oral, written, or implied, are merged into and superseded by the terms of the engagement letter and the Standard Terms of Retention.

      22.    <u>Dispute Resolution</u>. ALL DISPUTES SHALL BE RESOLVED BY THE COURT.

      23.    <u>Severability</u>. If any provision of these Standard Terms of Retention of Special Counsel is held invalid, void or unenforceable, the balance of the provisions shall, nevertheless, remain in full force and effect and shall in no way be affected, impaired or invalidated. The waiver of any one provision shall not be deemed a waiver of any other provision herein.

**EXHIBIT A**