UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>    EVANDER FRANK KANE,<br><br>        Debtor. | Case No. 21-50028 SLJ<br>Chapter 7<br>Hon. Stephen L. Johnson<br><br>**NOTICE AND OPPORTUNITY FOR HEARING ON APPLICATION FOR AUTHORITY TO**<br>**(I) EMPLOY SPECIAL COUNSEL ON CONTINGENCY FEE BASIS**<br>**(II) COMPENSATE DEBTOR FOR ASSISTING SPECIAL COUNSEL FROM JUDGMENT AND/OR SETTLEMENT PROCEEDS AND**<br>**(III) REIMBURSE DEBTOR FOR EXPENSES DEBTOR HAS ADVANCED**<br><br>[No Hearing Required Unless Requested] |

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST:**

**PLEASE TAKE NOTICE THAT** Fred Hjelmeset, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Evander Frank Kane ("**Debtor**"), has filed an application with the United States Bankruptcy Court for an order authorizing him to retain, on a contingency fee basis, the law firm of Putterman Yu Wang LLP ("**Law Firm**") to evaluate, and if appropriate, pursue pre-petition claims against Sure Sports, LLC fka Sure Sports Lending, LLC ("**Sure Sports**") described in detail, below. In addition, the Trustee seeks authorization to compensate the Debtor in an amount equal to ten percent (10%) of the Net Recovery (defined below) received from a judgment and/or settlement and reimburse the Debtor from a judgment and/or settlement for up to $15,000 in expenses he advances to the Law Firm.

**Background**

Prior to the Debtor's January 9, 2021 petition date, Sure Sports and the Debtor were parties to one or more agreements, some of which were entitled "Underwriting Fee Payment Agreement." Through these agreements, Sure Sports provided its "underwriting services" and, commencing in 2018, helped "arrange financing via loans, lines of credit and equity transactions" in excess of $12 million. On April 21, 2021, Sure Sports filed a claim against the Debtor's estate for a "breach of underwriting fee payment agreements." The claim asserts that the estate is obligated to Sure Sports in the amount of $1,187,950.94 ("**Claim**").

The agreements between the Debtor and Sure Sports may violate, among other things, provisions of the Miller-Ayala Act (Business and Professions Code §§ 18895, et seq.) ("**MAAA**"). The provisions of the various agreements between the Debtor and Sure Sports state that Sure Sports "provided underwriting services" to the Debtor in connection with various loans, and state that Sure Sports will be compensated for "services rendered" to "arrange financing via loans, lines of credit and equity transactions." As such, these agreements appear to fall under the statutory definition of the MAAA concerning "financial services contracts," which are defined as including "the making or execution of an investment or other financial decision, or counseling as a to a financial decision." Bus. & Prof. Code §18895.2(e). Based on its activities in recruiting or soliciting the Debtor to enter into various loan agreements with lenders Sure Sports appears to be an "athlete agent" as defined by the MAAA, Bus. & Prof. Code §18895.2 (b)(1) ("athlete agent" includes "any person who, directly or indirectly, recruits or solicits an athlete to: enter into any agent contract, endorsement contract, financial services contract.").

The MAAA requires any individual or company that is an "athlete agent" as defined in the Act to take various actions, including to file certain information with the California Secretary of State (Bus. & Prof. Code §18896), to maintain an insurance policy or bond as security for potential claims by athletes (Bus. & Prof. Code §18897.87), and to make certain disclosures when dealing with athletes (Bus. & Prof. Code §18897.3). The Trustee is informed

and believes, and on that basis alleges, that Sure Sports has not complied with any of the foregoing requirements. As a result, the Debtor's estate has claims against Sure Sports, which may include, without limitation: voiding all agreements between Sure Sports and the Debtor; precluding Sure Sports from seeking further payments from the Debtor, including invalidating Sure Sports' Claim; return of money paid by the Debtor to Sure Sports pursuant to the agreements; obtaining statutory damages under the MAAA; and attorneys' fees and court costs incurred in the prosecution of a claim under the MAAA. (Bus. & Prof. Code §18897.8-18897.9).

## Employment of the Law Firm and Payment to the Debtor

The Trustee seeks to further investigate claims the estate may have against Sure Sports and, if appropriate, pursue affirmative claims it has against Sure Sports in the bankruptcy case, including claims that may arise under MAAA, and to seek to disallow the Claim. The Debtor's estate is not in a position to employ counsel on an hourly basis to investigate and pursue the claims it may have against Sure Sports. His general counsel is not in a position to pursue these claims on a contingency fee basis. The Law Firm is willing to pursue the claims on behalf of the bankruptcy estate on a contingency fee basis and is willing to advance certain costs discussed below.

Under the terms of the proposed engagement agreement with the Law Firm ("**Agreement**"), a copy of which is attached to the Declaration of George Chikovani, the Law Firm will be paid 45% through settlement or judgment of any Net Recovery. The term "Net Recovery" means: (1) the total of all amounts received by settlement, arbitration award, or judgment, including any award of attorney's fees, (2) minus all costs and disbursements paid by the estate, Evander Kane and/or the Law Firm. In order to pursue claims against Sure Sports, the Trustee will need the assistance of the Debtor who has personal knowledge about the Sure Sport agreements. The Debtor has agreed to assist the estate in exchange for payment of 10% of the Net Recovery. In addition, the Debtor has agreed to advance the sum of $15,000 to the Law Firm to pay the actual costs that the Law Firm may incur related to pursuing the claims against Sure Sports. In the event of a Net Recovery against Sure Sports, the Debtor will be reimbursed the costs he has advanced, in addition to receiving a sum equal to 10% of the Net Recovery. The Trustee is informed that the Law Firm is well versed in the facts and the law related to this matter, and has pursued multiple claims under the MAAA.

The Trustee is seeking to employ the Law Firm, on a contingency fee basis under 11 U.S.C. §§ 327(a) and 328(a). The estate limited resources and the Trustee is not in a position to employ counsel to prosecute the litigation on an hourly rate basis. Section 328(a) permits contingency fee arrangements. The Trustee predicts that litigation will be expensive and that a contingency fee arrangement is in the best interest of the estate because of the substantial commitment that will be required of counsel and the limited funds in the estate.

**PLEASE TAKE NOTICE THAT** due to the shelter in place requirements caused by the COVID-19 pandemic, all appearances will be by telephone, or, in the Court's sole discretion, by video conference. Instructions on how to file opposition, if any, and how to appear by phone are contained provided at the following link on the Court's website https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak and further detailed in the Court's Eighth Amended General Order 38, effective December 1, 2021.

Information regarding Clerk's office Intake Counter hours of public operation, the electronic submission of documents, mailing addresses and the location of drop-boxes is available on the Court's website home page under the banner "Court Operations during the COVID-19 Outbreak Information about Hearings, Filings, and Operations": https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak.

ECF Registered Participants must continue to file all documents electronically. All other parties may submit documents for filing by mail, electronically via the Court's website, in designated drop-box locations or at the Clerk's office Intake Counter during the posted hours of public operation. Filing fee payments (no cash) may be submitted electronically, by mail or drop-box, or at the Clerk's office Intake Counter during the posted hours of public operation.

In-person hearings may be held in the sole discretion of the presiding judge and in accordance with practices and procedures adopted by each judge. No judge is required to conduct in-person hearings. Each judge will publish their practices and procedures for in-person hearings on their page on the court's website. All counsel, parties and other interested persons shall consult each judge's practices and procedures for in-person hearings (to be

published on each judge's page on the court's website) for information concerning whether a given hearing or calendar will be conducted in-person and for other relevant instructions. All counsel, parties, and other interested persons shall comply with each judge's practices and procedures concerning in person hearings. Any failure to comply with such practices and procedures may result in the imposition of sanctions.

Unless otherwise instructed by the presiding judge in their practices and procedures concerning in-person hearings adopted pursuant to this order, all notices of any motion or application filed with the Court and served on any party which sets a hearing date for the motion or application must state that the hearing will not be conducted in the presiding judge's courtroom but instead will be conducted by telephone or video, and include the following language: "All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about Court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website."

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed employment or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days' written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).

DATED: February 14, 2022    RINCON LAW LLP

By: */s/ Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for FRED HJELMESET, Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com