UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH RIVER CAPITAL, LLC,<br><br>    Appellant,<br><br>    v.<br><br>EVANDER KANE,<br><br>    Appellee. | Case No. 21-cv-03493-WHO<br><br>**ORDER ON BANKRUPTCY APPEAL** |

This is one of two appeals from a bankruptcy court order denying a motion to convert debtor Evander Frank Kane's bankruptcy case from Chapter 7 to Chapter 11 under section 706(b) of the Bankruptcy Code. The Code is silent regarding what bankruptcy courts must consider in deciding whether to convert a case. The case law has filled in the gaps, finding that courts have broad discretion in exercising this power based on a determination of what "will most inure to the benefit of all parties in interest."

The bankruptcy court did not abuse its discretion in declining to covert Kane's Chapter 7 case to Chapter 11. It did not, as appellant South River Capital, LLC ("South River") asserts, impose an incorrect legal standard or improperly heightened burden of proof in reaching its decision. And it did not err in its consideration of the facts as they related to the factors governing whether a Chapter 7 case may be converted to Chapter 11. Accordingly, as in the companion appeal, *Zions Bancorporation, N.A. v. Kane*, No. 21-CV-03765-WHO (N.D. Cal. filed May 19, 2021), the bankruptcy court's decision is AFFIRMED.

**BACKGROUND**

**I.     KANE'S CHAPTER 7 PETITION**

Kane is a professional hockey player who, at the time he filed for bankruptcy and the

underlying motion was decided, played for the San Jose Sharks in the National Hockey League ("NHL"). *See* Appellant's App. ("App.") [Dkt. No. 4-1] 461.[1] On January 9, 2021, he filed his Chapter 7 petition in the United States Bankruptcy Court for the Northern District of California, stating that he owned $10,224,743.65 in property and owed $30,191,340 in liabilities.[2] *See id.*; *see also* App. at 021, 026. Kane stated that his debts were not primarily consumer debts. *Id*. at 028. Kane later amended his Schedules A/B, D, E/F, and J. *See id*. at 097, 126.

As amended, Kane reported that his primary assets included three residential properties: one in San Jose, California, valued at $3,000,000; one in Vancouver, British Columbia, valued at $2,860,000; and another in Vancouver valued at $2,400,000. *Id*. at 127-128. He also listed assets including $40,000 in household items, $12,000 in electronics, $8,000 in firearms, $20,000 in clothes, and $1,250 in miscellaneous sports equipment. *Id*. at 129-130.

Kane also listed substantial debt. He reported 10 secured claims to various entities, totaling $23,538,494.87, including a $1,074,494.87 loan from South River. *Id*. at 098-103. He also reported $4,396,525 in unsecured claims. *Id*. at 105-114.

Kane calculated his monthly expenses at $93,214.46, including: $17,990.63 for home ownership expenses; $20,000 for other mortgages; $12,000 for childcare and children's education costs; $8,000 for food and housekeeping supplies; $8,910.83 for two vehicle leases; and $15,000 for support payments to relatives. *Id*. at 135-136.

Significant to this appeal, Kane also reported his monthly income. His Schedule I lists only $2,083.33 in monthly income, from a podcast. *Id*. at 059-060. But he listed his occupation as a professional athlete with the San Jose Sharks and, in an attachment, disclosed that he had a "contract for personal services" with a $3,000,000 salary for 2020-2021. *Id*. at 059, 061. The attachment—filed with Kane's Chapter 7 petition on January 9, 2021—stated that Kane's contract depended on the number of games played, which was uncertain due to the ongoing COVID-19

---

[1] The page numbers reference the last three digits stamped on the bottom right of each page in the Appellant's Appendix.

[2] Kane's initial petition stated that he owed $26,837,340 in liabilities. App. at 028. The bankruptcy court, however, used $30,191,340 as the amount. *Id*. at 461.

pandemic. *Id*. at 061. Kane stated that the 82-game regular season had been reduced to 56 games and that "[t]o the extent some of the games do not go forward because of the pandemic (or any other reason), [his] salary will be further reduced." *Id*. He also noted that under the operative collective bargaining agreement between the players' union and team owners, 20 percent of his salary would be withheld and released to the owners under a "profit sharing" structure. *Id*. Finally, Kane stated that he "may terminate his contract" and "opt out of the season, as allowed under current rules," because of unspecified health concerns related to the birth of his child. *Id*.

## II. THE BANKRUPTCY COURT'S ORDER

On February 26, 2021, one of Kane's creditors, Zions Bancorporation, N.A. ("Zions"), filed a motion to convert Kane's Chapter 7 case to Chapter 11 and appoint a Chapter 11 trustee.[3] *Id*. at 137. Four creditors filed joinders to the motion: Professional Bank, South River, Sure Sports, LLC, and Lone Shark Holdings, LLC. *Id*. at 201, 228, 264, 266.

On April 19, 2021, Judge Stephen L. Johnson of the United States Bankruptcy Court for the Northern District of California denied the motion. *Id*. at 460-461.

The court opened with framework that is also helpful in understanding this appeal: In a Chapter 7 bankruptcy, the debtor keeps his post-petition income, but in Chapter 11, that income belongs to the estate. Order at 1:20-2:1.[4] Given Kane's career as a professional hockey player, the court noted, the creditors "reckon their chances of recovering on their claims would be improved substantially if he were moved to Chapter 11." *Id*. at 2:1-3.

In denying the motion, the bankruptcy court considered a number of factors. First was Kane's ability to pay his creditors. *Id*. at 12:22-13:20. The court noted that although Kane had "substantial income" as a professional hockey player—including $3,000,000 for the 2020-2021 season—the structure of his contract meant 10 percent of his salary would be withheld for three years, and 20 percent withheld depending on whether the NHL met its yearly revenue targets. *See*

---

[3] South River only appeals the court's decision not to convert the case to Chapter 11; it does not challenge the portion of the decision denying the appointment of a trustee. *See* Appellant's Opening Brief [Dkt. No. 4] 8:10-13.

[4] The bankruptcy court's order can be found at pages 460-485 of the Appellant's Appendix. For ease of reference and readability, I will now cite to the order's native page and line numbers.

Case: 21-50028    Doc# 277    Filed: 07/22/22    Entered: 07/25/22 15:08:14    Page 3 of 15

*id*. at 4:8-9, 12:27-13:8.  The court also noted the uncertainty about the number of games that would be played—and thus, that Kane would be paid for—given the COVID-19 pandemic. *Id*. at 4:8-13, 13:6-8.  Although conversion to a Chapter 11 plan would mean additional funds for Kane's creditors, the court concluded that it was "not clear just how much," given these uncertainties surrounding Kane's ability to pay. *Id*. at 13:11-13.

Next, the court considered the possibility of immediate reconversion to Chapter 7. *Id*. at 13:21-14:8.  It held that if Kane's history of gambling and spending, as alleged by the moving parties, continued, it would constitute a mismanagement and diminution of the estate that would support reconversion. *See id.*

Third, the court weighed the likelihood of a Chapter 11 plan's confirmation. *Id*. at 14:9-17:28.  Here, it cited a number of "practical and legal issues" that "will make it difficult for anyone in this case to confirm, let alone consummate, a plan." *Id*. at 14:10-13.  Those factors included: the potential for creditors with non-dischargeable claims to defeat confirmation; Kane's ability to fund a long-term plan; the claimed security interests in Kane's future income; the impact of the absolute priority rule; and the feasibility of a plan given the uncertain nature of Kane's career. *See id*. at 14:10-17:28.

Finally, the court considered the benefits of conversion to the parties in interest. *Id*. at 18:1-19:22.  It determined that the benefits to the creditors was unproven, given the "significant challenges" facing a Chapter 11 plan ("including challenges to priority and enforceability of security interests, non-dischargeable claims, and the cost and expense of the trustee and professionals") along with the uncertainty surrounding the amount of Kane's post-petition income that would actually come into the estate. *Id*.  Conversely, the court held, Chapter 7 would allow Kane to retain that income, more quickly discharge his debt, and, by avoiding the appointment of a trustee, retain his ability to make decisions about his career. *See id*. at 18:15-20:19.

Taken together, the court held, "each factor weighs at least somewhat against converting this case." *Id*. at 18:10.  It then denied the motion. *Id*. at 26:18-20.

South River filed its notice of appeal on May 3, 2021.  Dkt. No. 1.  Zions separately appealed the court's decision not to convert the case. *See Zions Bancorporation, N.A. v. Kane*,

No. 21-CV-03765-WHO (N.D. Cal. filed May 19, 2021).

## LEGAL STANDARD

A district court has jurisdiction to hear appeals from a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a)(1); *see also Decker v. U.S. Tr.*, 548 B.R. 813, 815 (D. Alaska 2015) (holding that the district court had jurisdiction to hear the appeal of a section 706(b) conversion order). A bankruptcy court's order denying conversion to Chapter 11 under section 706(b) is reviewed for an abuse of discretion. *See In re Parvin ("Parvin II")*, 549 B.R. 268, 271 (W.D. Wash. 2016); *In re LaFountaine*, 2016 WL 3344003, at *2 (9th Cir. BAP 2016). "A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Plyam*, 530 B.R. 456, 461-62 (9th Cir. BAP 2015) (citations omitted).

## DISCUSSION

Under section 706(b) of the Bankruptcy Code, upon request of a party in interest, the court may convert a Chapter 7 case to Chapter 11 without the debtor's consent. 11 U.S.C. § 706(b); *see also Decker*, 548 B.R. at 816 (holding that "there is no debtor consent requirement").

But section 706(b) "does not provide guidance on what (or what not) to consider when reaching a decision." *Decker*, 548 B.R. at 817. Courts have therefore concluded that the bankruptcy court has "broad discretion in exercising this power based on a determination of what 'will most inure to the benefit of all parties in interest.'" *Parvin II*, 549 B.R. at 271. "Since there are no specific grounds for conversion, a court should consider anything relevant that would further the goals of the Bankruptcy Code." *Id.* (citation omitted). Courts traditionally consider factors including: (1) the debtor's ability to repay the debt; (2) whether there are immediate grounds for reconversion; (3) the likelihood of a Chapter 11 plan's confirmation; and (4) whether the parties in interest would benefit from conversion. *Decker*, 548 B.R. at 817 (citation omitted); *see also Parvin II*, 549 B.R. at 271-72 ("the debtor's ability to pay his creditors is typically the first consideration"). "The burden is on the movant to show that the case should be converted." *In re Parvin ("Parvin I")*, 538 B.R. 96, 101 (Bankr. W.D. Wash. 2015) (citations omitted).

## I. LEGAL STANDARD

First, South River argues that the bankruptcy court abused its discretion by applying the wrong legal standard and exceeding the scope of the Bankruptcy Code when it considered Kane's interests in conversion. Appellant's Opening Brief at 14:9-11. It asserts that the court went beyond the Code's purpose when it stated that Kane had a "statutory right" to discharge without contributing post-petition wages, implied that he had a right to keep nonexempt properties, and considered the particulars of his professional hockey career. *See id*. at 19:1-23:12. In doing so, South River contends, the court "clearly raises the interests of the debtor above the interests of his creditors." *Id*. at 19:20-21.

The court did not impose an incorrect legal standard in weighing these impacts, which fall within the broad consideration of what "will most insure to the benefit of all parties in interest" and, more specifically, whether a party in interest (here, Kane) would benefit from conversion. *See Parvin II*, 549 B.R. at 271; *Decker* 548 B.R. at 817. South River overreads the bankruptcy court's opinion as establishing certain rights where it does not. It asserts that the order somehow grants Kane a right to retain non-exempt assets, namely the three houses that the court supposes "may have non-exempt equity." *See* Appellant's Opening Brief at 20:13-24, 21:19-21; *see also* Order at 16 n.10. But nowhere does the court state—or even suggest—that Kane has a right to keep non-exempt assets. *See generally* Order. Rather, the court considers Kane's interest in keeping the properties and whether any non-exempt equity would hinder confirmation of a plan. *See id*. at 16:5-21. This falls squarely within the factors courts consider in deciding whether to convert a case to Chapter 11.

Nor does the court suggest that Kane has "the right to have peculiarities of his sports career considered." *See* Appellant's Opening Brief at 22:3-4. Some of the court's discussion of Kane's hockey career came in the context of whether to appoint a Chapter 11 trustee—an issue that is not before me on appeal. *See* Order at 19:11-20:2. Otherwise, the court considered Kane's career in terms of (1) his ability to pay his creditors and (2) the likelihood of plan confirmation (including feasibility). *See id*. at 12:23-13:13, 15:6-14, 17:15-28. Rather than expand Kane's rights under the Bankruptcy Code, the court weighed facts related to his career that either supported or cut

against conversion.

Finally, South River takes issue with the court's statement that Kane "has a statutory right to discharge and fresh start and to receive his future income free from financial encumbrances." Appellant's Opening Brief at 19:4-21 (citing Order at 19:7-10). South River reads this as the court holding that Kane can "defeat any motion to convert the case under section 706(b)" absent failing a statutory technicality. *Id.* at 19:16-19. This not only ignores the context of the court's statement (which came at the end of a discussion over whether Kane improperly filed Chapter 7 "from a statutory standpoint") but ignores the entirety of the order. If, as South River argues, the court recognized a debtor's "right" to a discharge that would singlehandedly defeat any motion to convert, the court would have written a one-page order articulating just that. There would be no need for the court to analyze what would most inure to the benefit of all interested parties and weigh the individual factors that it did. Put plainly, South River's argument is belied by the order itself. Even if the court did err in declaring that Kane had this right, any error was harmless, as the court obviously weighed several factors—including the ability to pay, the possibility of immediate reconversion, the likelihood of confirmation, and the benefit to creditors—in deciding the motion. *See generally* Order.

South River's final comment on the purportedly improper legal standard is worth noting. It admits that the court "does not state that the order is based entirely on any one of these unsupported 'rights' of Kane as a Chapter 7 debtor." Appellant's Opening Brief at 23:7-8. And for good reason. The bankruptcy court did not improperly consider any "rights" beyond the Bankruptcy Code, elevate Kane's rights above other interested parties, or otherwise apply an incorrect legal standard. Rather, it evaluated case-specific facts and applied them according to the standard that courts use in determining a conversion motion. There was no error.

II. **BURDEN OF PROOF**

South River next argues that the bankruptcy court abused its direction by imposing a heightened burden of proof on the moving parties. *Id.* at 23:13-15. It contends that the bankruptcy court required that these parties prove "with certainty" the amount that could be recovered under a proposed Chapter 11 plan, and "guarantee" that such a plan be confirmed. *Id.* at

24:7-25:22.

Again, South River overreads the bankruptcy court's decision, this time more egregiously. It does not cite to any line in the court's order that uses the words "with certainty." *See id*. at 24:20-25:10. Nor could it—nowhere does the court use this phrase. *See generally* Order. Instead, South River cites the following passages as evidence of this purportedly heightened burden of proof: "It is uncertain just how much of debtor's salary will be available to fund a plan" and that Kane's salary "may not be as impactful as Zions asserts." *See* Appellant's Opening Brief at 24:20-25:1 (citing Order at 13:8-12). It also points to the court's statement that there was "serious uncertainty regarding how much income to expect" from Kane. *See id*. at 25:3-4 (citing Order at 18:10-11).

In no way did the court require the moving parties to show "with certainty" the amount that could be recovered under a Chapter 11 plan. Rather, it used the above-cited phrases to underscore that Kane's "substantial income"—his multi-million dollar hockey contract—was not wholly guaranteed, and thus, his ability to pay his creditors was not as obvious as the moving parties argued. *See* Order at 12:23-13:13. Read in context, it is clear that the court used these phrases to explain its thinking—not to impose any burden of proof on the moving parties.

The same is true for the second "burden" that South River contends was improperly placed on the moving parties: that they "guarantee" that a Chapter 11 plan be confirmed. *See* Appellant's Opening Brief at 25:11-17. The order uses the word "guarantee" exactly once, at the end of a paragraph discussing the potential impacts of secured claims on a Chapter 11 plan's confirmation. *See* Order at 15:15-16:4. At the end of the paragraph, the court writes: "The interests of the unsecured creditors and the secured creditors obviously diverge. Creditors suggest these matters are subject to easy resolution, but cannot guarantee this is so." *Id*. at 16:2-4. The court did not require the parties to guarantee that a Chapter 11 plan be confirmed. It merely commented that disputes among creditors might be difficult to resolve, therefore complicating the confirmation of a plan. The burden of proof that South River contends was improperly imposed was nothing more than a turn of phrase.

South River argues that the bankruptcy court "did not acknowledge that the burden of

proof is by a preponderance of the evidence, but instead repeated its insistence of proof with 'certainty' and a 'guarantee' of confirmation." Appellant's Opening Brief at 25:18-20. To the extent that there was doubt over the burden of proof that the bankruptcy court imposed, the final sentence of the order offers clarity: "Because Zions and the joining parties fail to show *by a preponderance of the evidence* that it is appropriate here to convert the case to Chapter 11 or appoint a trustee, Zions' motion must be denied." *See id*. at 26:18-20 (emphasis added). The court used the correct burden of proof. Again, there was no error.

### III. THE BANKRUPTCY COURT'S DECISION

Finally, South River argues that had the bankruptcy court applied the correct legal standard and burden of proof, it would have granted the motion to convert. Appellant's Opening Brief at 26:1-11. As explained above, the court did not err in the legal standard it adopted or the burden of proof imposed. Nor did the court otherwise abuse its discretion in denying conversion.

To reiterate: a bankruptcy court has broad discretion in deciding whether to convert a Chapter 7 case to Chapter 11 under section 706(b). *Parvin II*, 549 B.R. at 271. In deciding what will most inure to the benefit of the interested parties, it "should consider *anything* relevant that would further" the Bankruptcy Code's goals. *Id*. (emphasis added). Courts typically consider: (1) the debtor's ability to repay the debt; (2) whether there are immediate grounds for reconversion; (3) the likelihood of a Chapter 11 plan's confirmation; and (4) whether the parties in interest would benefit from conversion. *Decker*, 548 B.R. at 817 (citation omitted). The bankruptcy court took all of this into account when weighing the motion to convert.

#### A. Kane's Ability to Repay the Debt

First, the court acknowledged that although Kane had "substantial income," certain contingencies made it unclear just how much of his salary would be available to fund a Chapter 11 plan in both the short- and long-term. Order at 12:22-23:13. Specifically, the court points to Kane's gross earnings, as reflected in his first paycheck in January 2021, and the structure of his contract, under which 10 percent of his income was withheld over three years, and 20 percent of was dependent on whether the NHL met its yearly revenue target. *Id*. at 12:25-13:6. The court noted that under this structure, "significant amounts" of Kane's salary "will only be available to

the estate years after it was earned." *Id*. at 13:9-10. It also considered the COVID-19 pandemic and resulting uncertainty around how many games would be played. *See id*. at 4:9-13, 13:5-8. "Obviously, converting the case will mean additional funds for creditors," the court wrote, "but it is not clear just how much." *Id*. at 13:12-13.

South Bank argues that the court erred because the facts "clearly establish that Kane is more likely than not to be able to fund a Chapter 11 plan," including a provision in Kane's contract providing for a $7,000,000 salary during the 2021-2022 NHL season.[5] *See* Appellant's Opening Brief at 27:6-15. It also contends that additional funds would be available in a converted Chapter 11 case "should Kane reduce the extraordinary monthly expenses" described in the amended Schedule J. *See id*.

Although the court did not mention Kane's expenses in its evaluation of his ability to fund a Chapter 11 plan, it did account for his contract. *See* Order at 12:23-13:13. It specifically considered how Kane's salary was paid out—the percentage withheld and the duration of the withholding—and determined that his ability to fund a Chapter 11 plan was not as clear-cut as the moving parties asserted. *See id*. The court conceded that a Chapter 11 plan would generate additional funds for creditors. *Id*. at 13:12-13. But it was Kane's ability to pay that was the consideration at hand.

**B. Grounds for Immediate Reconversion**

Next, in weighing the possibility of reconversion to Chapter 7, the court focused on Kane's "history of gambling and spending." *Id*. at 13:21-14:8. The law directs courts to convert Chapter 11 cases to Chapter 7 for "cause," including when there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(A)-(B). The court noted Zions's argument that Kane could not be trusted to manage the estate because of his history of gambling and spending. Order at 13:22-14:1. But, the court held, if that spending and gambling continued after

---

[5] South River cites "the provision in the NHL contract providing for a $7 million salary in the 2020-2021 season." Appellant's Opening Brief at 27:8-9. It appears this is a typographical error; the contract provides for $3,000,000 during the 2020-2021 season and $7,000,000 in 2021-2022.

any conversion, causing mismanagement and diminution of the estate, "[t]hose facts would then support reconverting the case." *Id*. at 14:1-6.

South River argues that this is undermined by the bankruptcy court's decision not to appoint a Chapter 11 trustee, even if it were to convert the case. Appellant's Opening Brief at 27:16-28:6. In doing so, it contends, the court confirmed that the case would not immediately be reconverted. *Id*.

The bankruptcy court did state that even if it did order conversion, it would not appoint a trustee. Order at 23:21. But it did not state that it would *never* do so. Rather, after acknowledging Kane's "ill-considered" financial decisions before filing his Chapter 7 petition, the court noted that he brought in outside experts, attempted to restructure his affairs, and complied with the Bankruptcy Code. *Id*. at 24:14-23. To the court, this showed "at least some understanding of his mistakes, and the need to correct them." *Id*. at 24:18-19. The court ultimately concluded that "even if [Kane's] prior conduct was gross mismanagement, his recent conduct shows marked improvement" and that "were this case to be converted to Chapter 11, [Kane] has shown he should at least have the opportunity to prosecute it himself." *Id*. at 24:20-23.

Notably, this portion of the order was silent about Kane's spending and history of gambling. And it only stated that Kane should have the *opportunity* to manage his own bankruptcy. It follows, then, that if Kane squandered that opportunity and his gambling and spending continued, the court could find that a trustee and reconversion were necessary. The court's decisions on the possibility of reconversion and whether a Chapter 11 trustee was needed were not mutually exclusive. One does not preclude the other.

**C. The Likelihood of Confirming a Chapter 11 Plan**

Next, the court determined that there were both practical and legal issues that would "make it difficult for anyone in this case to confirm, let alone consummate, a plan." *Id*. at 14:10-13. It noted that some of Kane's creditors asserted non-dischargeable claims, meaning they would "have an interest in defeating confirmation" of a Chapter 11 plan, either because it did not provide for their payment in full or extended the amount of time before payment was complete. *Id*. at 14:14-21. The court also took Kane's career into his account—specifically, his "ability to perform for

years under [a] hypothetical Chapter 11 plan," given Kane's age (29), the number of years he already played (11), and the nature of the sport ("physically demanding"). *Id*. at 15:6-14. The court further noted that Kane would not necessarily be compensated if he were unable to play. *Id*. at 15:12-13. The court then considered legal issues that it determined would complicate the confirmation of a plan, including more than $23,500,000 in secured claims (and diverging interests of secured and unsecured creditors); the absolute priority rule's impact on Kane's ability to keep non-exempt property; the ability of creditors to collect non-dischargeable claims outside of any plan; and feasibility concerns, given the uncertain nature of Kane's career. *Id*. at 15:15-17:28.

South River argues that the bankruptcy court erred here in several ways, first by speculating that creditors might seek non-dischargeable claims sufficient in number and amount to defeat a plan, then by considering Kane's "physically demanding profession." Appellant's Opening Brief at 29:11-30:20. Neither argument is persuasive.

Again, the bankruptcy court considered whether any non-dischargeable claims might thwart confirmation, as creditors with non-dischargeable claims "may not support a lengthy repayment period if they conclude it would delay or reduce their recoveries." Order at 16:22-17:1. South River argues that no claim had been established as non-dischargeable as of the order's issuance and that the joinder of four creditors to the motion to convert undermined the bankruptcy court's concerns. Appellant's Opening Brief at 29:17-20. But as the court noted, two creditors had already filed adversary proceedings seeking non-dischargeability determinations. Order at 14 n.8. The record showed that the court's concern was plausible and that it was not erroneous for it to consider the impact that any non-dischargeable claims would have on confirmation, even if those claims had not yet been established as such.

Nor did the court err in considering Kane's career in the context of confirmation. South River wonders if the court "will deny confirmation to any individual working in a physically demanding profession as too speculative, or whether the consideration is limited to sports professionals in particular." Appellant's Opening Brief at 30:10-13. Once again, South River misstates the court's findings. The court questioned Kane's long-term ability to play professional hockey, given his age, the number of years he had already played, and, yes, the "physically

Case: 21-50028   Doc# 277   Filed: 07/22/22   Entered: 07/25/22 15:08:14   Page 12 of 15

1 demanding" nature of hockey. *See* Order at 15:6-14. The court concluded that this, along with the
2 possibility of an injury disrupting Kane's career, raised concerns about the feasibility of a Chapter
3 11 plan. *See id*. at 17:15-25.

In deciding whether to confirm a Chapter 11 plan, courts are required to consider its feasibility—whether confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." *See* 11 U.S.C. § 1129(a)(11); *see also In re Beyond.com Corp.*, 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003) ("The feasibility requirement requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable."). If, as the court noted, Kane's ability to play hockey diminished—because of injury, the COVID-19 pandemic, or any other reason—it would threaten a plan's reasonable prospect of success. *See* Order at 17:15-28. Given the ongoing uncertainty around the pandemic's impact on the number of games that would be played, along with the inherent unpredictability of a professional sports career, this was not an illogical, implausible, or unsupported finding.

Of South River's stronger arguments, one relates to potentially non-discharged claims. *See* Appellant's Opening Brief at 31:4-25. Relying largely on *In re Hamilton*, 803 F. App'x 123 (9th Cir. 2020), the court determined that even if a plan were confirmed, "if creditors are successful in having their claims declared non-dischargeable, nothing in the Code will prevent them from continuing to collect from debtor outside the plan." *See* Order at 16:22-17:14. According to South River, this assertion "is directly contrary to the Bankruptcy Code" and does not mean a feasible plan could not be proposed. *See* Appellant's Opening Brief at 31:1-6.

South River is correct in that it appears that the court overlooked the possibility that the automatic stay provided for in section 362(c)(2) might bar creditors from collecting any non-dischargeable claims until a discharge was granted or denied, or the case closed or dismissed. *See id*. at 31:9-22; *see also* 11 U.S.C. § 362(c)(2). The court's order did not mention the stay, let alone whether it might apply to Kane's case. *See generally* Order. And the majority in *Hamilton* held that a bankruptcy court erred in approving a plan provision that enjoined creditors from collecting non-dischargeable debt during the plan period—it did not discuss the automatic stay. *See* 803 F.

App'x at 124-25.

But even if the court erred in asserting that nothing in the Bankruptcy Code would keep creditors with non-dischargeable claims at bay, any error was harmless. The court's primary point was that creditors with non-dischargeable claims would have competing interests that could thwart the confirmation of a Chapter 11 plan. *See* Order at 16:22-17:14. Regardless of whether such creditors would actually be able to collect from Kane outside the plan, the court's concern was legitimate. At minimum, the court recognized that creditors with non-dischargeable claims might object to a plan that would delay or reduce their recoveries. *Id*. at 16:22-17:1. While the court's specific statement about the Code might have been inaccurate, any error was harmless considering the context in which it was made.

Finally, South River argues that the court erred in considering whether certain creditors' claimed security interests in Kane's post-petition income could jeopardize confirmation. *See* Appellant's Opening Brief at 32:1-11. The bankruptcy court declined to determine whether such interests were valid or enforceable, despite citing a Ninth Circuit Bankruptcy Appellate Panel decision holding that they were not. *See* Order at 15:15-16:4 (citing in part *In re Skagit Pac. Corp.*, 316 B.R. 330, 336 (9th Cir BAP 2004)).[6]

It is not clear why the court weighed the potential impact of security interests in Kane's post-petition income when it acknowledged that the Ninth Circuit had held that such interests were invalid. But again, any error was harmless. The court's consideration of any pre-petition security interests on post-petition salary was but one of several factors (explained in greater detail above) it took into account in assessing whether a Chapter 11 plan was likely to be confirmed. As explained, the court did not err in contemplating how the divergent interests of creditors with non-dischargeable claims and the particulars of Kane's career might thwart confirmation. These two factors on their own support the court's findings, regardless of any errant consideration of security

---

[6] The bankruptcy court later cited *Skagit* in deciding that Professional Bank did not hold a valid pre-petition lien against Kane's post-petition income—a decision I will take judicial notice of, per South River's request, as the fact can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Appellant's Request for Judicial Notice [Dkt. No. 11] Ex. A at 12:1-13; Fed. R. Evid. 201(b).

14

interests on Kane's post-petition income.

### D. Whether the Interested Parties Would Benefit from Conversion

Finally, the court considered a Chapter 11 plan's benefits to Kane and his creditors. *Id*. at 18:1-20:19. It determined that Chapter 7 would not only allow Kane the opportunity to keep his post-petition income and obtain a more timely discharge of his debt, but also the ability to make contract-related decisions about his career, which the court determined would be made by a trustee if one were appointed. *See id*. at 19:1-20:19.

Turning to Kane's creditors, the court first found that there was uncertainty concerning the amount of income that would flow to the estate. *Id*. at 18:2-4. Moreover, the court noted "significant challenges" would arise under Chapter 11, "including challenges to priority and enforceability of security interests, non-dischargeable claims, and the cost and expense of the trustee and professionals." *Id*. at 18:5-9.

Taken together, the court found that "each factor weighs at least somewhat against converting this case," noting "serious uncertainty regarding how much income to expect from debtor, how long a plan capable of confirmation will need to last, and whether debtor's career can be sustained over the lengthy period required to fund a plan in compliance with the Code." *Id*. at 18:10-14. The court came to this conclusion after applying the correct legal standard and burden of proof, and making factual findings that were logical, plausible, and supported by the record. In other words, it did not abuse its discretion in denying the motion to convert. Its order denying the motion to convert Kane's Chapter 7 case to Chapter 11 is therefore AFFIRMED.

## CONCLUSION

The bankruptcy court's order is AFFIRMED.

**IT IS SO ORDERED.**

Dated: July 22, 2022

William H. Orrick
United States District Judge