1 | ANTHONY & PARTNERS, LLC
2 | JOHN A. ANTHONY (FL SBN 0731013)
  |   janthony@anthonyandpartners.com
3 | ANDREW J. GHEKAS (FL SBN 0119169)
  | *Both Appearing Pro Hac Vice*
  | aghekas@anthonyandpartners.com
4 | 100 S. Ashley Drive, Suite 1600
  | Tampa, Florida 33602
5 | Telephone: 813.273.5616
  | Facsimile: 813.221.4113
6 |
7 | COOPER, WHITE & COOPER LLP
  | PETER C. CALIFANO (CA SBN 129043)
8 |   pcalifano@cwclaw.com
  | 201 California Street, 17th Floor
  | San Francisco, California 94111
9 | Telephone: 415.433.1900
  | Facsimile: 415.433.5530
10 |
11 | Attorneys for Appellant Centennial Bank

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

[San Francisco Division]

| | |
|---|---|
| In re | CASE NO.        21-04597-WHO |
| EVANDER FRANK KANE, | Bankr. Case No.  21-50028-SLJ |
| Debtor. | |
| CENTENNIAL BANK, an Arkansas state chartered bank, | **NOTICE OF APPEAL** |
| Appellant, | |
| vs. | |
| EVANDER FRANK KANE, | |
| Appellee. | |

PLEASE TAKE NOTICE that is hereby given that the Plaintiff and Appellant, Centennial Bank ("Centennial") hereby appeals to the United States Court of Appeals for the Ninth Circuit. This appeal is taken from the final judgment and related order entered in this adversary proceeding by the District Court for the Northern District of California. The judgment was entered on July 25, 2022 (Doc #17), and the related order was entered on July 22, 2022 (Doc #16). Copies of the order and judgment are attached as Exhibits "A" and "B."

## RULE 3-2 REPRESENTATION STATEMENT

Appellant Centennial Bank and Appellee Evander Frank Kane are represented by:

| Party | Attorneys | |
|---|---|---|
| Centennial Bank (Appellant) | John A. Anthony<br>Andrew J. Ghekas<br>Anthony & Partners, LLC<br>100 S. Ashley Drive, Suite 1600<br>Tampa, FL 33602<br>Tel: (813) 273-5616 | Peter C. Califano<br>Cooper, White & Cooper LLP<br>201 California Street, 17th Floor<br>San Francisco, CA 94111-5002<br>Tel: (415) 433-1900 |
| Evander Frank Kane (Appellee) | Stephen D. Finestone<br>Ryan A. Witthans<br>Finestone Hayes LLP<br>456 Montgomery St. 20th Fl.<br>San Francisco, CA 94104<br>Telephone (415) 421-2624 | |

DATED:  August 22, 2022          ANTHONY & PARTNERS, LLC

By:  _/s/ John A. Anthony_

John A. Anthony
Attorneys for CENTENNIAL BANK

DATED:  August 22, 2022          COOPER, WHITE & COOPER LLP

By:  _/s/ Peter C. Califano_

Peter C. Califano
Attorneys for CENTENNIAL BANK

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1528955.1

Case: 21-50028   Doc# 282   Filed: 08/23/22   Entered: 08/23/22 09:42:09   Page 2 of 21

2
APPELLANT CENTENNIAL BANK'S NOTICE OF APPEAL

Case No. 21-04597-WHO

# EXHIBIT A

**CENTENNIAL BANK v. EVANDER KANE**
**U.S. District Court, Northern District of California**
**Case No. 21-cv-04597-WHO**

---

**NOTICE OF APPEAL**

1

2

3

4  UNITED STATES DISTRICT COURT

5  NORTHERN DISTRICT OF CALIFORNIA

6

7  CENTENNIAL BANK,

Case No.  21-cv-04597-WHO

Plaintiffs,

8

**JUDGMENT**

v.

9

10  ZIONS BANCORPORATION DBA
    CALIFORNIA BANK & TRUST,

11

Defendant.

12  Judgment is hereby entered in accordance with the Court's July 22, 2022 Order

13

14  **IT IS SO ORDERED.**

15  Dated: July 25, 2022

16

17

18  _____
    William H. Orrick
    United States District Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# EXHIBIT B

**CENTENNIAL BANK v. EVANDER KANE**
**U.S. District Court, Northern District of California**
**Case No. 21-cv-04597-WHO**

---

**NOTICE OF APPEAL**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTENNIAL BANK, | Case No. 21-cv-04597-WHO |
| Appellant, | |
| v. | **ORDER ON BANKRUPTCY APPEAL** |
| EVANDER KANE, | |
| Appellee. | |

This is an appeal from a bankruptcy court order denying appellant Centennial Bank's motion to dismiss appellee Evander Frank Kane's bankruptcy case as an abuse of the provisions of Chapter 7. Section 707(b) of the Bankruptcy Code allows for the dismissal of a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the chapter. A threshold issue is whether the debts are "primarily consumer debts." The bankruptcy court did not err in the legal standard used or burden of proof imposed in deciding whether Kane's debts were primarily consumer debts. Its well-reasoned conclusion was that they were not consumer debts. Its decision is AFFIRMED.

### BACKGROUND

On January 9, 2021, Kane, a professional hockey player who at the time played for the San Jose Sharks, filed for Chapter 7 bankruptcy with the United States Bankruptcy Court for the Northern District of California. *See* Appellant's Excerpts of R. ("ER") [Dkt. No. 10-1] 002-008.[1] In his petition, Kane checked two boxes stating that his debts were not primarily consumer debts and were primarily business debts. *Id*. at 007. He left blank Question 16c, which directed him to "[s]tate the type of debts you owe that are not consumer debts or business debts." *Id*.

---

[1] The page numbers reference the last three digits stamped on the bottom right of each page in the Appellant's Excerpts of Record.

1   On January 28, 2021, Kane filed amended Schedules D and E/F, listing his total debt

2   obligations at $28,191,340. *Id.* at 076, 082, 093. As considered by the bankruptcy court, the total

3   debt consisted of the following:

(1) $4,230,000 to Scotia Bank across two mortgages on two properties Kane owns
    in Vancouver, British Columbia;

(2) $2,320,000 to Pacific Private Holdings, secured by Kane's home in San Jose,
    California;

(3) $486,000 to 1000568 B.C. Ltd., secured by a second mortgage on the Canadian
    properties;

(4) $8,340,000 to Centennial Bank;

(5) $3,740,305 to Zions Bancorporation; $1,354,541.79 to Professional Bank; and
    $1,101,429.87 to South River Capital LLC (which the bankruptcy court referred
    to as the "business loans"); and

(6) $715,000 to Lone Shark Holdings, LLC.

ER at 413-14.

On March 29, 2021, Centennial Bank moved to dismiss Kane's Chapter 7 case under

section 707(b), arguing that granting Kane relief would be an abuse because his debts were

primarily consumer debts. *See id.* at 138-155. In support, Centennial Bank submitted evidence

including portions of its Rule 2004 examination of Kane, during which he testified that the

purpose of the Centennial Bank, Professional Bank, and Zions loans was to pay off preexisting

loans, and that he did not use them to buy real estate, or invest in or purchase a business. *See id.* at

165-167, 172-73, 177, 180-183, 185. Centennial Bank also challenged Kane's statement on his

Chapter 7 petition that his debts were "primarily business debts," saying it was belied by Kane's

testimony and Schedules. *See id.* at 145.

On May 28, 2021, the Hon. Stephen L. Johnson of the United States Bankruptcy Court for

the Northern District of California denied the motion to dismiss. *Id.* at 396. He issued an

amended order on June 1, 2021. *Id.* at 412.[2]

_____

[2] The bankruptcy court's amended order can be found at pages 412-425 of the Appellant's
Excerpts of Record. For ease of reference and readability, I will now cite to the amended order's

United States District Court
Northern District of California

United States District Court
Northern District of California

The bankruptcy court first noted that the Bankruptcy Code "does not provide much help for interpreting the definition of consumer debt."  Am. Order Denying Mot. to Dismiss ("Order") at 5:7-8.  Relying on dictionary definitions, the court determined that "implicit in the concept of 'consumer debt' is the notion that the debt is incurred to buy a good or service that the debtor both intends for personal use—that is, destroying or exhausting the good or service to satisfy personal, family, or household needs—and has no intention of reselling."  *Id*. at 5:17-20.  Conversely, debts "incurred in profit-seeking activities" are "incurred to effect a transaction that results in more revenue than expense, or an increase in economic value."  *Id*. at 5:20-22.

Next, the court adopted the rational set forth in *In re Garcia*, 606 B.R. 98 (Bankr. D.N.M. 2019), which recognized a "gray area" of debt that was not clearly consumer and not clearly non-consumer.  *Id*. at 6:1-22.  It determined that when debt fell into this gray area, to determine whether that debt is consumer or non-consumer, a court must examine the "totality of the circumstances to determine whether the debtor's purpose in incurring the debt was for consumption, or some other purpose."  *Id*. at 7:17-20.  Those circumstances include the "possibility of reselling whatever the debt was used to purchase" and whether the transaction "resulted in an economic benefit to the debtor."  *Id*. at 7:20-22.

The court then found that Centennial Bank had not met its burden of proof in establishing the requisites of section 707(b)—specifically, that Kane's debts were primarily consumer debts. *Id*. at 8:1-9:14.  At most, it wrote, Centennial Bank's evidence only shows that Kane's debts were not incurred for a business or profit-seeking purpose—a non-consumer category of debt.  *Id*. at 8:24-27.  That did not, however, "affirmatively place the Centennial debt or business loans in the consumer debt category."  *Id*. at 9:1.

In any case, the court held, the Centennial debt and business loans were not consumer debt. *Id*. at 10:20-13:11.  The court found that Centennial Bank had not proffered evidence showing that Kane's purpose in incurring the debt was consumer, and inferred from the evidence available— including that these debts were used to pay off prior, high-interest loans, that no good or service

---

native page and line numbers.

was consumed, and that the documents for the Zions and South River loans characterized them as business loans—that they were non-consumer debt. *See id*.

Centennial Bank filed its notice of appeal on June 8, 2021. Dkt. No. 1. For the purposes of this Order, I will focus on the bankruptcy court's amended order denying the motion to exist, though my findings apply with equal weight to both the original and amended orders.

## LEGAL STANDARD

A district court has jurisdiction to hear appeals from a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a)(1); *see also In re Cherrett ("Cherrett II")*, 873 F.3d 1060, 1065 (9th Cir. 2017) (confirming that a bankruptcy court's denial of a motion to dismiss under section 707(b) is a final and appealable order). On appeal, a bankruptcy court's conclusions of law are reviewed de novo and its findings of fact according to a "clearly erroneous" standard. *Continental Cas. Co. v. Chatz*, 591 B.R. 396, 409-10 (N.D. Cal. 2018) (citations omitted). Mixed questions of law and fact are generally reviewed de novo, but may be reviewed under the more deferential clear error standard "depending on the nature of the inquiry involved." *Cherrett II*, 873 F.3d at 1066 (citation omitted).

## DISCUSSION

Under section 707(b) of the Bankruptcy Code, a court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). The moving party must therefore show that (1) the debtor owes primarily consumer debts and (2) granting Chapter 7 relief would represent a substantial abuse of the chapter. *See In re Price*, 280 B.R. 499, 501 (9th Cir. BAP 2002).

Only the first element is at issue here. The bankruptcy court denied Centennial Bank's section 707(b) motion after finding that Kane's debt was primarily non-consumer debt; it did not reach the question of abuse. *See* Order at 14:12-15.

"Consumer debt" is defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The statute does not define what is not consumer debt, but the Ninth Circuit has held that debt "incurred for business ventures or other

United States District Court
Northern District of California

profit-seeking activities is plainly not consumer debt for purposes of section 707(b)." *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988).

The Ninth Circuit has also held that the "key factor" in determining whether debt is consumer debt is the debtor's purpose in incurring that debt. *In re Cherrett ("Cherrett I")*, 523 B.R. 660, 670 (9th Cir. BAP 2014). If the debt was incurred for more than one purpose, "the primary purpose of the debt will determine its nature." *Id.* "Courts determine the debtor's purpose as of the time the debt was incurred." *Cherrett II*, 873 F.3d at 1067.

Centennial Bank's appeal presents three primary issues. First, did the bankruptcy court apply the wrong legal standard in evaluating whether Kane's debts were primarily consumer debts? Appellant's Opening Brief [Dkt. No. 10] 6. Next, did the court impose the correct burden of proof in so deciding? *Id.* And third, did the court err in determining that the Centennial, Zions, and Professional Bank loans were primarily not consumer debts? *Id*. at 5.

## I.     LEGAL STANDARD

When a bankruptcy court "must settle on a legal test" to make a determination, "an appellate panel reviews such a legal conclusion without the slightest deference." *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S.Ct. 960, 965 (2018). In other words, the bankruptcy court's decision is reviewed de novo.

Centennial Bank argues that the bankruptcy court erred in relying upon the analysis set forth in *Garcia* in determining that Kane's debts were primarily non-consumer debts. *See* Appellant's Opening Brief at 21. It contends that in doing so, the court "applied the incorrect legal rule" and ignored Ninth Circuit precedent stating that a debtor's purpose in incurring debt is the key factor in determining the nature of the debt. *See id*. at 23. Regardless, Centennial Bank asserts that even the debt in *Garcia* did not fit into the gray area that court recognized, rendering its "experimental exercise" of determining whether the debt was consumer or non-consumer unnecessary. *See id.* at 21-23. Kane only summarily responds, arguing that the "bankruptcy court's adoption of *Garcia* was appropriate, as it provided a useful guideline for analyzing" the motion to dismiss and "did not result in the court ignoring Ninth Circuit precedent." Appellee's Brief [Dkt. No. 14] 25.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The analysis articulated in *Garcia* is not the same as that set forth by the Ninth Circuit.

2  Facts aside, the *Garcia* court held that although some debts "clearly are consumer debts" (i.e.,

3  "debts incurred to buy or improve a home" or those arising from a divorce judgment) and others

4  "plainly are not consumer debts" (i.e., debts "incurred with a profit motive" or for business

5  ventures and commercial transactions) there also exists a gray area of debt that does not fall neatly

6  into either category. 606 B.R. at 105. The court then set forth several factors to consider in

7  deciding how "gray area" debts should be classified, including whether the debt was incurred for

8  consumption or profit motive, the debtor's purpose, the voluntariness of the debt, whether the

9  debtor obtained a financial advantage like a tax benefit, and whether the debt related to any

10  guaranty obligations. *Id.* at 105-106.

11    With regard to purpose, the *Garcia* court wrote:

12    "[T]he key factor in determining whether secured debt is consumer debt lies in the
13    *debtor's* purpose in incurring" it. In determining a debtor's purpose, for incurring a
      debt, the court must examine the totality of the circumstances as they existed at the
14    time that the obligation was incurred.

15  606 B.R. 98 (citing in part *Cherrett I*, 523 B.R. at 670). Although *Garcia* articulated the Ninth

16  Circuit's rule, purpose is but one of several factors it considered in evaluating the debt at issue.

17    Here, the bankruptcy court did not stray from Ninth Circuit precedent while also adopting

18  *Garcia*'s reasoning. It acknowledged that although certain debts can clearly be identified as

19  consumer or non-consumer, "there is a middle ground between these poles, and determining where

20  debts in this 'gray area' fall requires examining the totality of the circumstances to determine

21  *whether the debtor's purpose* in incurring the debt was for consumption, or some other purpose."

22  Order at 7:14-20. The court then described the factors relevant to determining that purpose,

23  including the "possibility of reselling whatever the debt was used to purchase" and whether the

24  transaction economically benefited the debtor. *Id.* at 7:20-22. As articulated above and

25  throughout the order, the bankruptcy court's focus in analyzing Kane's debt was on his purpose in

26  incurring that debt. Its recognition of the gray area articulated in *Garcia* did not change the

27  standard that it utilized.

28    Accordingly, the court did not err in the legal standard that it used to evaluate whether

6

1    Kane's debt was consumer debt; it looked to Kane's purpose in incurring the debt at issue.

2    **II.      BURDEN OF PROOF**

3            Whether the bankruptcy court identified and applied the correct burden of proof is a

4    question of law reviewed de novo.  *In re RS Air, LLC*, 638 B.R. 403, 408 (9th Cir. BAP 2022)

5    (citation omitted).  The Ninth Circuit has made clear the burden of proof on a motion brought

6    under section 707(b): The moving party must support the motion by a preponderance of the

7    evidence.  *Cherrett I*, 523 B.R. at 668.

8            Centennial Bank argues that the bankruptcy court erred by placing the burden of proof

9    solely upon Centennial Bank.  Appellant's Opening Brief at 31.  Instead, it contends, the burden

10   was on Kane to demonstrate that his debt was non-consumer.  *See id.*  It relies on *In re Ferreira*,

11   549 B.R. 232, 237 (Bankr. E.D. Cal. 2016), which stated that although the moving party bears the

12   burden of proof to support a 707(b)(1) motion by a preponderance of the evidence, "[t]he debtor,

13   however, bears the burden of demonstrating a profit motive in order to establish that a debt is non-

14   consumer or a business debt."  *See id.*  The *Ferreira* court held that because the debtor failed to

15   carry her burden of proof on the question of whether her student loan debt was a non-consumer or

16   business debt, the debt was "excluded from the definition of consumer debt under § 101(8) for

17   purposes of § 707(b)(1)."  549 B.R. at 238.  It then concluded that the debt was a consumer debt

18   and granted the motion to dismiss the Chapter 7 case, in part on these grounds.  *See id.* at 241.

19           *Ferreira* cited two cases in asserting the debtor's burden: *In re Palmer ("Palmer I")*, 542

20   B.R. 289, 297 (Bankr. D. Colo. 2015) and *In re Liegey*, 2009 WL 3817902, at *4 (Bankr. M.D. Pa.

21   2009).  *See id.* at 237.  Neither of these cases offer *Ferreira* firm footing.  *Liegey* held that once

22   the United States Trustee ("UST") established that the debtor and his wife obtained the loan at

23   issue "to address their personal financial difficulties, the burden shifted to debtor to demonstrate

24   that the loan was at least partially used for business purposes."  2009 WL 3817902, at *4.  But it

25   cited no authority supporting this burden-shifting.  *See id.*

26           And the district court reversed and remanded *Palmer I* in *Palmer v. Laying ("Palmer II")*,

27   559 B.R. 746 (D. Colo. 2016).  Importantly, in *Palmer II* the court wrote the following about the

28   burden of proof the *Palmer I* court had imposed:

> In applying the profit motive test, the bankruptcy court required that Mr. Palmer demonstrate that the student loan debt was primarily incurred for a profit motive. This seems the correct way to proceed, given that it is the party incurring the debt who will, at least initially, be in the best position to explain why he or she incurred that debt. However, at most, the debtor's burden in this regard is one of persuasion. It still remains the UST's burden to show that the debtor's Chapter 7 case should be dismissed, which, means that it remains the UST's burden to show that the debtor's debts are primarily consumer debts.

559 B.R. at 756.

In the matter at hand, although the bankruptcy court wrote that it was "unclear . . . how a debtor can have the burden of persuasion on an issue where the moving party still bears the burden of proof," it declined to depart from the relevant authority placing the burden on the moving party. Order at 8:13-15. Moreover, the court held, "even under *Ferreira* Centennial must present evidence that such debts are consumer debts sufficient to shift the burden to debtor." *Id.* at 9:5-7.

The bankruptcy court applied the correct burden of proof. As an initial matter, *Ferreira* is undercut by its reliance on one case that cited no authority for the debtor's burden and another that was reversed and remanded after *Ferreira* was published. And all three cases—*Ferreira*, *Palmer I*, and *Liegey*—are at most persuasive. The bankruptcy court was obligated to follow the burden of proof articulated by the Ninth Circuit.

Even assuming that *Ferreira* and *Palmer I* apply, the bankruptcy court imposed the correct burden of proof. In reversing *Palmer I*, the district court held that on a section 707 motion to dismiss, it remained the moving party's burden to show that the debtor's debts were primarily consumer debts. *See Palmer II*, 559 B.R. at 756. That burden must be met before any burden shifts to the debtor. *Ferreira* and *Palmer* do not change the burden of proof on a section 707(b) motion to dismiss. It is ultimately up to the movant to show that the debt at issue is consumer debt, before any burden regarding non-consumer debt shifts to the debtor.

For these reasons, I find that the bankruptcy court did not err when it placed upon Centennial Bank the burden to show that Kane's debts were consumer debts. Nor did it err in determining that Centennial Bank failed to meet this burden, as explained below.

### III.    CONSUMER DEBTS

The final question is whether the bankruptcy court erred in classifying the Centennial,

1   Zions, and Professional Bank loans as non-consumer debts.

2          In *Cherrett II*, the Ninth Circuit held that "the purpose of a debt is a factual finding

3   reviewed for clear error." 873 F.3d at 1067 n.3. But the question is not quite so simple. True, the

4   debtor's purpose in incurring a debt is the key factor in determining whether that debt is consumer.

5   *See Cherrett I*, 523 B.R. at 670. But here, the bankruptcy court's task was to determine whether

6   the facts found satisfied the statutory standard for consumer debt. The Supreme Court has

7   described such questions as mixed questions of law and fact. *See U.S. Bank Nat'l Ass'n*, 138 S.Ct.

8   at 966. In *U.S. Bank*, the Court cautioned that "[m]ixed questions are not all alike," and the

9   applicable standard of review—de novo or clear error—depends on the nature of the question and

10  "whether answering it entails primarily legal or factual work." *Id*. at 966-67. When "applying the

11  law involves developing auxiliary legal principles of use in other cases," appellate courts should

12  review a decision de novo. *Id*. at 967. But when mixed questions "immerse courts in case-

13  specific factual issues—compelling them to marshal and weigh evidence, make credibility

14  judgments, and otherwise address . . . special, narrow facts that utterly resist generalization,"

15  appellate courts should review only for clear error. *Id*.

16         The question at hand falls into the latter category. To determine whether Kane's debt was

17  consumer debt, the bankruptcy court marshaled and weighed evidence, made credibility

18  judgments, and addressed narrow facts related to the purpose behind the loans and whether that

19  qualified them as consumer debt. It mirrors the question that the Supreme Court determined was

20  subject to review for clear error in *U.S. Bank*: Were the basic facts found sufficient to make a

21  person a non-statutory insider under the law? *See id*. at 967. Accordingly, I will review the

22  bankruptcy court's findings here for clear error: whether they were "illogical, implausible or

23  without support in the record." *See In re Ezra*, 537 B.R. 924, 929 (9th Cir. BAP 2015) ("A

24  bankruptcy court's factual findings are not clearly erroneous unless they are illogical, implausible

25  or without support in the record.").

26         Although the bankruptcy court considered several of Kane's debts in deciding the motion

27  to dismiss, on appeal Centennial Bank focuses on what it collectively describes as the "non-real

28  estate bank debt" or "non-residential bank debt": the Centennial debt ($8,340,000), the Zions debt

United States District Court
Northern District of California

9

($3,740,305), and the Professional Bank debt ($1,354,541.79).[3]  *See* Appellant's Opening Brief at 11, 13, 30.  When properly classified, Centennial Bank argues, Kane's debt is primarily consumer, warranting dismissal under section 707(b).  *See id*. at 35.

Turning first to the Centennial debt, the bankruptcy court noted that the parties agreed that Kane incurred the debt "to pay off prior high interest loans" and that Kane did not personally receive any funds from Centennial Bank, as the proceeds were disbursed directly to his existing lenders. Order at 9:16-20.  This was supported by a declaration Kane submitted in support of his opposition to the motion, where he testified that "the vast majority of these loans were used to pay off existing lenders and proceeds were disbursed directly from loan escrows to the existing lenders."[4]  *See* ER at 245 ¶ 12.  This, the bankruptcy court held, placed the Centennial debt in the gray area articulated in *Garcia*, as it was not clearly consumer or non-consumer.  Order at 9:20-21.

The court then noted that the parties' "constant reference to the prior loans being high interest" allowed it to infer that Kane "refinanced for better terms"—or, in other words, "effected a transaction that increased his economic value."  Order at 9:23-27.  This, the court wrote, indicated that the debt was not incurred for a consumer purpose.  *Id*.  So did the fact that Kane did not consume any of the Centennial debt, as he "'received' funds in exchange for a promise to repay such funds back over time."  *Id*. at 10:1-6.  The court ultimately held that the Centennial debt was non-consumer debt, because the limited evidence showed that it was "incurred with a

---

[3] Centennial Bank places the Centennial debt slightly higher than the amount considered by the bankruptcy court: $8,360,000 compared to $8,340,000.  *See* Appellant's Opening Brief at 10; Order at 2:18.  I will rely on the same figure the bankruptcy court used, although the $20,000 difference does not make a difference regarding my findings.

[4] Centennial Bank argues that the court also erred in its analysis of the South River loan, which it too classified as non-consumer debt as part of the "business loans."  *See* Appellant's Opening Brief at 26; Order at 11:3-13:11.  It points to Kane's declaration, where he stated that the proceeds from the South River loan "did not go from escrow directly to existing lenders."  *See* Appellant's Opening Brief at 27 (citing ER at 245-246).  Rather, Kane testified that about $520,000 of that loan was deposited into his bank account and used to pay the mortgage debt on his Canadian properties, credit card bills, and individual loans.  *See* ER at 245-246.  If the bankruptcy court erred in considering this non-consumer debt, any error was harmless.  The court found that $19,776,276.66 of Kane's total debts of $28,191,340 were non-consumer debt.  *See* Order at 14:6-10.  Even without the $1,101,429.87 South River loan, nearly $18,675,000 of Kane's total debt—roughly 66 percent—would still be considered non-consumer debt.  *See Kelly*, 841 F.2d at 913 (holding that when "more than half" of the amount owed is consumer debt, the debt is "primarily consumer debt" for the purposes of section 707(b)).

10

1 │ purpose not related to consumption and with an eye toward economic gain, and that [Kane] could

2 │ resell this debt again in the future, all of which show a non-consumer purpose." [5]  *Id*. at 10:20-22.

3 │       Centennial Bank argues that the bankruptcy court ignored Kane's stated purpose in

4 │ incurring the Centennial debt: "to pay off or down other preexisting debt obligations."

5 │ Appellant's Opening Brief at 16.  It notes that although Kane referred to those prior debt

6 │ obligations as "business loans," he later stated that he did so "[b]ecause that's what the documents

7 │ said" and could not remember why he took out those loans.  *Id*. (citing ER at 176-178).  But,

8 │ Centennial Bank contends, "[t]he act of voluntarily incurring a debt in order to deal with

9 │ preexisting personal financial difficulties is a quintessential consumer purpose that not only

10 │ benefits the debtor, but ultimately his family and household."  *Id*.

11 │       As the bankruptcy court noted (and Centennial Bank apparently agrees), Kane testified that

12 │ he could not recall why he took out the initial loans that he used the Centennial debt to pay off.

13 │ *See* Order at 10:9-10; *see also* ER at 177-178.  Regardless, the court stated, the relevant inquiry

14 │ was Kane's purpose in incurring the Centennial debt, not the preexisting debt.  Order at 10:10-12.

15 │ Given the limited evidence before it—namely, a lack of evidence showing that Kane incurred the

16 │ Centennial debt was for a personal, family, or household purpose—the court logically and

17 │ plausibly inferred that the debt was non-consumer.  It determined that Kane effected a transaction

18 │ that increased his economic value and did not consume a good or service in the process, and

19 │ therefore that the Centennial debt was not incurred for a consumer purpose.  The same holds true

20 │ for the Zions and Professional Bank loans.  *See* Order at 13:3-6.

21 │       This brings me to the heart of Centennial Bank's argument: that because the Centennial,

22 │ Zions, and Professional Bank debts were not primarily business debts, they were consumer debts,

23 │ and the bankruptcy court erred in deciding otherwise.  *See* Appellant's Opening Brief at 19-23.  It

24 │ points to Kane's 2004 examination, where he testified that he did not use the Centennial, Zions, or

25 │ Professional Bank loans to buy property, purchase or fund a new business, or invest in ongoing

26 │ business ventures.  *See id*. at 19-20 (citing ER at 172-173, 180-183).  It also cites Kane's sworn

---

[5] The court made a similar finding regarding the Zions and Professional Bank loans, determining that they too were "taken out to refinance already-existing loans."  *See* Order at 13:3-6.

United States District Court
Northern District of California

1    Schedules, which state in part that he did not own or have any interest in any business-related

2    property; did not receive any net income from rental property or from operating a business,

3    profession or farm; and did not own or have any connection to a business within four years before

4    filing for bankruptcy.  *See id.* (citing ER at 017, 041, 054).  This, Centennial Bank argues, shows

5    that Kane's debts were not "primarily business debts" as stated on his Chapter 7 petition.  *See*

6    Appellant's Opening Brief at 19-21.

7         There is an inherent flaw in Centennial Bank's argument, which the bankruptcy court

8    correctly recognized.  Centennial Bank primarily relied on evidence showing that Kane did not

9    incur the Centennial, Zions, or Professional Bank loans for a business or investment purpose.  But

10   that "is only part of the question."  *See* Order at 10:22-24.  Centennial Bank bore the burden of

11   showing that Kane's debt was consumer debt—in other words, that it was incurred for a personal,

12   family, or household purpose.  *See* 11 U.S.C. § 101(8).  It was not enough to simply show that

13   Kane did not incur the debt for a business purpose.  Centennial Bank's binary argument—that if

14   debt is not business debt, it is consumer debt—is akin to arguing that if a piece of fruit is not an

15   apple, then it must be an orange.

16        In a vein similar to *Garcia*, courts have recognized that although business debts are not

17   consumer debts, "there are other types of debt that are not business debts, but which also fall

18   outside the category of consumer debt."  *Liegey*, 2009 WL 3817902, at *3 n.3 (citing *In re*

19   *Westberry*, 215 F.3d 589, 593 (6th Cir. 2000)).  A Ninth Circuit Bankruptcy Appellate Panel

20   acknowledged this recently, noting that "an inability to classify a particular debt as a business debt

21   does not automatically relegate it to the status of a consumer debt."  *In re Tinajero*, 2020 WL

22   4673235, at *7 (9th Cir. BAP 2020) (citing *In re Marshalek*, 158 B.R. 704, 708 (Bankr. N.D. Ohio

23   1993)).  Although *Tinajero* is an unpublished memorandum disposition and therefore not binding,

24   it is persuasive, particularly given the similar findings by other courts.

25        As the bankruptcy court noted, Centennial Bank did not provide evidence affirmatively

26   showing that Kane incurred the Centennial, Zions, or Professional Bank debts for a consumer

27   purpose.  *See* Order at 10:22-24, 11:20-22.  At best, the evidence it presented showed that Kane

28   did not incur the debt for a business purpose.  It did not show that he incurred the debt for a

United States District Court
Northern District of California

1   consumer purpose.

2          Considering this lack of evidence, the bankruptcy court's finding that the Centennial,

3   Zions, or Professional Bank debts were non-consumer debts was not illogical, implausible, or

4   without support in the record.  It looked to the stated purpose in incurring the debts—to pay off

5   other loans—and weighed evidence showing that the loans went straight to Kane's creditors and

6   were not used to consumer any good or service.  It also considered the debt as effectively

7   refinancing Kane's existing loans for better terms—a "transaction that increased his economic

8   value."  *See* Order at 9:25-27, 13:3-6.  And in the case of the Zions debt, it also relied on

9   documents characterizing it as a business loan.  *Id.* at 11:5-6.  There was no clear error in

10  classifying these loans as non-consumer debt.

11         In sum, the bankruptcy court did not err in denying Centennial Bank's motion to dismiss

12  under section 707(b).  It applied the correct legal standard in determining whether the debts at

13  issue—the Centennial, Zions, and Professional Bank loans—were primarily consumer, by looking

14  to his purpose for incurring those debts.  It imposed the correct burden of proof, requiring

15  Centennial Bank to show by a preponderance of the evidence that Kane's debts were consumer

16  debts.  And it did not clearly err in determining not only that Centennial Bank failed to meet its

17  burden, but that the evidence available showed that Kane's debts were primarily non-consumer

18  debt.  The bankruptcy court's denial of the motion to dismiss is AFFIRMED.

19                                    **CONCLUSION**

20         The bankruptcy court's order is AFFIRMED.

21         **IT IS SO ORDERED.**

22  Dated: July 22, 2022

23

24

25                                    William H. Orrick
                                      United States District Judge

26

27

28

United States District Court
Northern District of California

13

ANTHONY & PARTNERS, LLC
JOHN A. ANTHONY (FL SBN 0731013)
  janthony@anthonyandpartners.com
ANDREW J. GHEKAS (FL SBN 0119169)
*Both Appearing Pro Hac Vice*
aghekas@anthonyandpartners.com
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813.273.5616
Facsimile: 813.221.4113

COOPER, WHITE & COOPER LLP
PETER C. CALIFANO (CA SBN 129043)
  pcalifano@cwclaw.com
201 California Street, 17th Floor
San Francisco, California 94111
Telephone: 415.433.1900
Facsimile: 415.433.5530

Attorneys for Appellant Centennial Bank

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

[San Francisco Division]

| | |
|---|---|
| In re | CASE NO.        21-04597-WHO |
| EVANDER FRANK KANE, | Bankr. Case No.  21-50028-SLJ |
| Debtor. | |
| CENTENNIAL BANK, an Arkansas state chartered bank, | **CERTIFICATE OF SERVICE** |
| Appellant, | |
| vs. | |
| EVANDER FRANK KANE, | |
| Appellee. | |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1538953.1

Case No. 3:21-cv-04597-WHO
Appellant Centennial Bank's Certificate Of Service

Case: 21-50028   Doc# 282   Filed: 08/23/22   Entered: 08/23/22 09:42:09   Page 19 of
21

1    At the time of service, I was over 18 years of age and not a party to this action.  I am
2  employed in the County of San Francisco, State of California.  My business address is 201
   California Street, Seventeenth Floor, San Francisco, CA 94111-5002.

3    **On August 22, 2022**, I served true copies of the following document(s) described as
4  **APPELLANT CENTENNIAL BANK'S NOTICE OF APPEAL** on the interested parties in this
   action as follows:

5    **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the
   document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case
6  who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case
   who are not registered CM/ECF users will be served by mail or by other means permitted by the
7  court rules.

8    **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
   persons at the addresses listed in the Service List and placed the envelope for collection and
9  mailing, following our ordinary business practices.  I am readily familiar with the practice of
   Cooper, White & Cooper LLP for collecting and processing correspondence for mailing.  On the
10 same day that correspondence is placed for collection and mailing, it is deposited in the ordinary
   course of business with the United States Postal Service, in a sealed envelope with postage fully
11 prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope was
   placed in the mail at San Francisco, California.

12

13                          **SEE ATTACHED SERVICE LIST**

14    I declare under penalty of perjury under the laws of the United States of America that the
   foregoing is true and correct and that I am employed in the office of a member of the bar of this
   Court at whose direction the service was made.

15

16    Executed on August 22, 2022, at San Francisco, California.

17

18                                        _____
                                          Mercedes Stuefen

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1538953.1                                              2                    Case No. 3:21-cv-04597-WHO
Case: 21-50028   Doc# 282   Filed: 08/23/22   Entered: 08/23/22 09:42:09   Page 20 of
                              Appellant Centennial Bank's Certificate Of Service
                                                    21

1

**SERVICE LIST**

2

In re EVANDER FRANK KANE

3

CENTENNIAL BANK VS. EVANDER FRANK KANE
Case No. 3:21-cv-04597-WHO

4

5

6   Stephen D. Finestone                    Attorney for Appellee
    Ryan Andrew Witthans                    Evander Frank Kane
7   FINESTONE HAYES LLP                     **VIA ECF AND REGULAR MAIL**
    456 Montgomery Street, 20th Floor
8   San Francisco, CA 94104

9   Gregg S. Kleiner                        Attorney for Chapter 7 Trustee
    Rincon Law LLP                          **VIA REGULAR MAIL ONLY**
10  268 Bush St. #3335
    San Francisco, CA 94104
11

12  Marta Villacorta                        Office of the U.S. Trustee
    Office of the U.S. Trustee              **VIA REGULAR MAIL ONLY**
    280 South 1st Street
13  Suite 268
    San Jose, CA 95113
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1538953.1

Appellant Centennial Bank's Certificate Of Service

3

Case No. 3:21-cv-04597-WHO