CONSTANCE J. YU (SBN 182704)
E-mail: cyu@plylaw.com
GEORGE CHIKOVANI (SBN 254437)
E-mail: gchikovani@plylaw.com
PUTTERMAN YU WANG LLP
345 California Street, Suite 1160
San Francisco, CA 94104-2626
Telephone: (415) 839-8779
Facsimile: (415) 737-1363

Special Counsel for FRED HJELMESET,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028 SLJ<br>Chapter 7<br>Hon. Stephen L. Johnson<br><br>Adversary Proceeding No: _____ |
| FRED HJELMESET,<br>Trustee in Bankruptcy,<br>    Plaintiff,<br>v.<br>SURE SPORTS LLC, FKA SURE SPORTS LENDING LLC,<br>    Defendant. | **COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE MILLER AYALA ATHLETE AGENTS ACT, BUS. & PROF. CODE §§ 18895, *et seq.*; and**<br><br>**(2) DECLARATORY RELIEF** |

For his Complaint against Defendant Sure Sports, LLC, fka Sure Sports Lending, LLC ("Sure Sports"), Plaintiff Fred Hjelmeset, Trustee in Bankruptcy of the estate of the above-named Debtor ("Trustee"), alleges as follows:

## SUMMARY OF COMPLAINT

1. Debtor Evander Kane ("Kane") is a professional hockey player. From February 2018 until January 2022, Kane played for the San Jose Sharks of the National Hockey League, and resided in San Jose, CA. Since January 2022, Kane has played for the Edmonton Oilers of the NHL.

2. Defendant Sure Sports is, in its own description, "a full service company that offers customized underwriting, banking, and financing solutions for professional athletes."

3. Sure Sports itself is not a lender or bank, but acts as an intermediary—in practical effect a loan broker—to arrange loans and other financing products for professional athletes. However, Sure Sports is not a licensed loan broker in either California or in Florida, the situs of Sure Sports' principal place of business.

4. Sure Sports recruited and solicited Kane to enter into a series of agreements for Sure Sports to arrange for a series of loans from third party lenders. Sure Sports subsequently recruited and solicited Kane to enter into loans with third party lenders.

5. In exchange for Sure Sports procuring "customized underwriting, banking, and financing solutions" for Kane, the Agreements provided for Sure Sports to pay variety of fees from Kane. These fees were characterized, variously, as "underwriting fees," "savings fees," and "legal/closing fees." Some of the fees charged by Sure Sports were paid out of the loan proceeds at the time of closing, while some were "deferred," and were paid to Sure Sports by the lender in installments when the lender received installment payments from Kane. In practical effect all these fees were charged by Sure Sports for its services provided in soliciting, arranging, and documenting the loans for Kane.

6. Several of the agreements between Sure Sports and Kane were entered into while Kane was a California resident and playing for the San Jose Sharks ("the Agreements"). The Agreements included at least eight separate loan agreements from five different lenders, totaling

more than $15.5 million in principal.

7. Kane in fact paid more than $452,000.00 in fees to Sure Sports pursuant to Agreements executed while Kane was a San Jose Sharks player and a California resident.

8. Sure Sports has filed a Proof of Claim in this proceeding claiming to be owed $1,187,950.94 in fees and interest pursuant to three of the Agreements.

9. Sure Sports' activities under the Agreements violated California law, namely California's Miller-Ayala Athlete Agents Act (the "Miller-Ayala Act" or "Act"), Bus. & Prof. Code section 18895 *et seq.* Sure Sports is therefore not entitled to recover any additional fees from Kane, and must disgorge all fees collected under the Agreements and pay damages.

10. The Miller-Ayala Act provides that any legal or natural person that directly or indirectly recruits or solicits a California athlete to enter into a financial services contract, is an "athlete agent" and must comply with the requirements of the Act.

11. The Agreements are themselves "financial services contracts" within the meaning of the Act, and also provide that Sure Sports would recruit or solicit Kane to enter into further financial services contracts with lenders. Therefore, Sure Sports is an athlete agent within the meaning of the Act.

12. Any athlete agent who does not comply with the Act is subject to the following penalties: return of any fees or compensation received by the athlete agent pursuant to contracts entered into while agent was in violation of the Act; compensatory and statutory damages; punitive damages; and criminal liability.

13. Sure Sports did not comply with the Act by filing the required disclosures with the California Secretary of State, and did not obtain the insurance or security bond required by the Act. Nor did Sure Sports provide to Kane the disclosures required by the Act.

14. Trustee is entitled to restitution of all money paid by Kane to Sure Sports while Kane was a California athlete—a minimum of $452,414. Trustee is further entitled to recover compensatory and statutory damages, reasonable attorneys' fees and costs, and prejudgment and post-judgment interest.

15. Additionally, the Trustee is entitled to a declaration that Sure Sports may not

recover any funds from the Estate pursuant to its Statement of Claim.

## PARTIES

16. Defendant Sure Sports is a Pennsylvania limited liability company with its principal place of business registered at 1926 Hollywood Boulevard, #308, Hollywood, Florida.

17. Debtor Evander Kane is an individual. From on or about February 2018 until January 2022, Kane played for the San Jose Sharks. During this time, Kane was a resident of San Jose, California.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334, and related provisions.

19. This Court has jurisdiction to determine whether this is a core proceeding pursuant to 28 U.S.C. § 157(b)(3) and related provisions.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1409 and related provisions.

21. The Trustee consents to the entry of a final judgment by the Bankruptcy Court in this Adversary Proceeding.

## FACTUAL ALLEGATIONS

**The Miller-Ayala Act**

22. The Miller-Ayala Act was passed in 1997 with the stated intention by its primary drafter of providing "the nation's toughest laws relating to athlete agents."

23. The Act covers both professional and student athletes. Cal. Bus. & Prof. Code §18897 (Professional Athletes); §18897.6 (Student Athletes).

24. The Act defines "athlete agent," in relevant part, as "any person who, directly *or* indirectly, recruits *or* solicits an athlete to: enter into any agent contract, endorsement contract, *financial services contract*, or professional sports services contract." Cal. Bus. & Prof. Code § 18895.2 (b)(1) (emphasis added).

25. The Act defines "financial services" as "the making or execution of an investment or other financial decision, or counseling as to a financial decision." Cal. Bus. & Prof. Code § 18895.2(e).

26. The Act requires that any athlete agent file certain disclosures with the California Secretary of State and provide certain prescribed information "prior to engaging in or carrying on the business of an athlete agent." Cal. Bus. & Prof. Code § 18896.

27. The Act requires "[e]very athlete agent shall provide security for claims against the athlete agent or the athlete agent's representatives or employees based upon acts, errors, or omissions arising out of the business of the athlete agent through either one or an aggregate of both of" an insurance policy or bond totaling at least $100,000. Cal. Bus. & Prof. Code § 18897.87.

28. The Act requires that "[u]pon making first contact, direct or indirect, with a professional athlete…an athlete agent, or his or her employee or representative, shall provide that person with a written notification stating" that the "athlete agent has current public-disclosure information on file with the California Secretary of State as required by the Miller-Ayala Athlete Agents Act, Chapter 2.5 (commencing with Section 18895) of Division 8 of the Business and Professions Code, which also includes other protections for athletes." Cal. Bus. & Prof. Code § 18896.6.

29. The Act provides that "[n]o person shall owe an athlete agent any money or other consideration pursuant to a… financial services contract… negotiated by the athlete agent if the athlete agent fails to comply with this chapter… The athlete agent shall refund any money or other consideration paid pursuant to that contract." Cal. Bus. & Prof. Code § 18897.9(b).

30. The Act provides for a right to a civil action for recovery of damages from an athlete agent who fails to comply with the Act and provides for remedies including recovery of "actual damages, or fifty thousand dollars ($50,000), whichever is higher; punitive damages; court costs; and reasonable attorney's fees." Cal. Bus. & Prof. Code § 18897.8(a). "It is the intent of the Legislature in enacting this section to encourage enforcement of this chapter through private civil actions." Cal. Bus. & Prof. Code § 18897.8(c)

31. An athlete agent who violates any provision of the Act is guilty of a misdemeanor, "and shall be punished by a fine of not more than fifty thousand dollars ($50,000), or imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment." Cal.

Bus. & Prof. Code § 18897.93(a).

**<u>Sure Sports' Business Model</u>**

32. In legal filings submitted to this Court, Sure Sports says that it is "a full service company that offers customized underwriting, banking, and financing solutions for professional athletes."

33. On its website, Sure Sports describes its business and services as follows:

- Sure Sports, established in 2009, ***offers customized banking solutions*** for professional athletes in the NFL, NBA, MLB, NHL, WNBA, and MLS.
- We specialize in Contract-Based Financing but ***offer a wide range of financial products***, including Pre-Draft Loans and McKenzie Mortgages®, designed exclusively for professional athletes.
- Our mission is to ***provide better banking for athletes***.
- Sure Sports ***handles all aspects of the financing process***.
- Established in 2009, Sure Sports ***specializes in low-interest, unsecured loans and contract advances*** to Professional Athletes in the National Football League (NFL), Major League Baseball (MLB), National Basketball Association (NBA), Women's National Basketball Association (WNBA), National Hockey League (NHL), and Major League Soccer (MLS) based on their player contracts.
- We ***customize these loans*** to meet the needs of each individual Borrower.
- Sure Sports ***offers sports loans*** to Pre-Draft players, players entering Free Agency or Arbitration and athlete mortgages.
- Sure Sports ***offers the fastest, cheapest loans to athletes***, and we can ***complete and fund a loan*** within 48 hours.
- Due to our experience and expertise, Sure Sports is able to ***provide athletes with loans and contract advances*** that are low-cost and customized to the individual player, with no payments during the off-season.

(Emphasis added; true and correct printouts of website pages are attached as Exhibit A hereto.)

34. In a legal filing seeking payment of fees from Kane, Sure Sports described its "underwriting services" as follows, in relevant part:

    a. Underwrite prospective loans and provide various services relating thereto, including, without limitation, (a) provide an underwriting memo that provides a summary of transaction recommendations and addresses frequently asked questions, (b) recommend underwriting guidelines, (c) review necessary underwriting materials, including, without limitation, a prospective borrower's Personal Financial Statement, and (d) other professional recommendations necessary in order to determine a potential borrower's financial condition;

    b. Research, evaluate, and assess degree of risk regarding a potential borrower's ability to repay the Loan, including, without limitation, (a) provide a contract analysis, market analysis, and/or salary analysis for the potential borrower and/or

request an independent analysis relating thereto, (b) analyze potential borrower's professional history, including, without limitation, statistical performance and media projections, in order to project long-term career scenarios, (c) review the potential borrower's cash flow position throughout the entire proposed length of a loan and proposing repayment structures in order to meet financial needs of the parties, and (d) recommend mitigation factors in order to protect the potential lender from various risks of default while ensuring the potential borrower has sufficient cash flow for current obligations and expenses;

    c. Review potential borrower's credit history in order to review all active trade lines, any late payments, and any other information contained thereon for research and analytical purposes, background reports, and/or other necessary factors and/or due diligence materials, while also providing monitoring services (as needed, on a case by case basis);

    d. Obtain and/or handle insurance requirements;

    e. Monitor and/or handle banking accounts and/or payment obligations (pursuant to prior written approval);

    f. Assisting in the enforcement of payment obligations upon events of default and/or other material breaches of documents;

    g. Draft, review, finalize, and/or recommend necessary documents; and

    h. Coordinate closing for quality assurance and record keeping purposes.

35. Trustee is informed and believes, and on that basis alleges, that Sure Sports is not licensed as a bank, lender, or broker-dealer by any local, state, or federal agency.

36. Trustee is informed and believes, and on that basis alleges, that Sure Sports has not complied with the disclosure requirements and filed the requisite information with the California Secretary of State as an athlete agent pursuant to the Miller Ayala Act, Bus. & Prof. Code § 18896. Trustee submitted a public records request to the Office of the Secretary of State for any materials filed pursuant to an athlete agent disclosure under the Miller Ayala Act by Sure Sports, LLC, Sure Sports Lending, LLC, its founder and CEO Leon McKenzie, its Director of Operations, Joleen Matte, its client services associate Bryan Estevez, and its Legal Counsel Darren Heitner. The Secretary of State, Dr. Shirley N. Weber, confirmed that she had no records for any of these entities or individuals. Certificates of No Record from the Secretary of State's office are attached as Exhibit B hereto.

**Relationship Between Kane and Sure Sports**

37. Sure Sports and Kane entered into certain financial arrangements in approximately 2015 when Kane was introduced to Sure Sports to assist Kane in resolving significant financial issues.

38. Sure Sports, throughout its relationship with Kane, has engaged in one business activity on behalf of Kane, that is, it has solicited and recruited Kane to enter into loan agreements with various lenders identified by Sure Sports, with the expectation that Sure Sports would be paid to arrange or attempt to arrange offers to fund a loan of money, or assist or advise Kane in obtaining or attempting to obtain a loan of money.

39. In the beginning of their relationship, Sure Sports procured loans for Kane with high interest rates. Over the next few years, Sure Sports engaged in a practice of procuring loan after loan for Kane, with the subsequent loans paying off or down the prior loans. These loans were often only months or weeks apart.

40. In connection with each contemplated loan, Sure Sports solicited Kane to enter into an "Underwriting Agreement," which required that Kane pay tens or hundreds of thousands of dollars to Sure Sports in fees.

41. In connection with each of these Underwriting Agreements, Sure Sports solicited and recruited Kane to enter into a loan agreement with a lender. In each instance, Sure Sports identified the lender, negotiated the terms of the loan agreement, and handled communications with the lender.

42. Sure Sports insisted that Kane hire a "business manager" recommended by Sure Sports, Tony Chiricosta of Pro Management Resources, Inc. ("PMR, Inc."). Kane had no previous relationship with Chiricosta, and hired Chiricosta at the insistence of Sure Sports.

43. Chiricosta nominally represented Kane's interests in dealings with Sure Sports. Correspondence and documents relating to the relevant Agreements was regularly addressed to Kane "c/o, PMR Inc. 8012 Wiles Road Coral Springs, FL 33067."

44. At the insistence of Sure Sports, Chiricosta had access and control of Kane's bank accounts, and the ability to directly authorize payments to Sure Sports and to lenders under the loans brokered by Sure Sports.

**The Relevant Agreements Between Kane and Sure Sports**

45. On March 22, 2018 Sure Sports and Kane entered into a Fee Agreement, (the "Fee Agreement," attached hereto as Exhibit C) that governs the terms and conditions under which

Sure Sports provided services, and charged fees, to Kane in connection with the relevant Underwriting Agreements. The Fee Agreement states in relevant part, as follows:

> WHEREAS, APPLICANT wishes to arrange financing via loans, lines of credit and equity transactions … in consideration of services rendered, APPLICANT agrees to pay Sure Sports a service fee equal to 4% percent of the gross amount of the loan or line commitment (not to be less than $3,000) at the time of funds being transferred from Lender to the Applicant.

46. Sure Sports solicited Kane to enter into the following Underwriting Agreements with Sure Sports during the time Kane was a California resident.

47. <u>California Bank and Trust Loan</u>. On or around August 17, 2018, Sure Sports and Kane entered into and executed an Underwriting Fee Payment Agreement regarding Underwriting Services provided by Sure Sports for and on Kane's behalf for the purpose of Kane receiving a loan from ZB, N.A. d/b/a California Bank and Trust (the "CB&T Underwriting Fee Payment Agreement," attached hereto as Exhibit D) in the principal amount of $4,250,000.00 (the "CB&T Loan").

48. <u>Professional Bank Loan</u>. On or around March 26, 2019, Sure Sports and Kane entered into and executed an Underwriting Fee Payment Agreement regarding services provided by Sure Sports for and on Kane's behalf for the purpose of Kane receiving a loan from Professional Bank (the "Professional Bank Underwriting Fee Payment Agreement," attached hereto as Exhibit E) in the principal amount of $1,500,000.00 (the "Professional Bank Loan").

49. <u>Centennial Bank Loan and Amendments</u>. On or around September 5, 2018 Sure Sports and Kane entered into and executed an Underwriting Fee Payment Agreement regarding services provided by Sure Sports for and on Kane's behalf for the purpose of Kane receiving a loan from Centennial Bank, for a principal amount of $3,900,000. Kane and Sure Sports subsequently entered into three amendments to the underwriting agreements, each of which increased the principal of the Centennial loan: October 17, 2018 amendment for an additional $2 million; February 28, 2019 amendment for an additional $715,000; and April 30, 2019 amendment for an additional $2,460,000 (collectively, the "Centennial Bank Loan"). Sure Sports charged additional fees in connection with each of these amendments. The Underwriting Agreements for the Centennial Bank Loan are attached hereto as Exhibit F.

50. <u>South River Capital Loan</u>. On or around March 22, 2018 Sure Sports and Kane entered into and executed an Underwriting Fee Payment Agreement regarding services provided by Sure Sports for and on Kane's behalf for the purpose of Kane receiving a loan from South River Capital, for a principal amount of $1,850,000 (the "South River Capital Loan"). The loan documents for the South River Capital Loan are attached hereto as Exhibit G.

51. <u>Thrivest Specialty Funding Loan</u>. On or around December 30, 2018 Sure Sports and Kane entered into and executed an Underwriting Fee Payment Agreement regarding services provided by Sure Sports for and on Kane's behalf for the purpose of Kane receiving a loan from Thrivest Specialty Funding, for a principal amount of $405,000 (the "Thrivest Specialty Funding Loan"). The loan documents for the Thrivest Specialty Funding Loan are attached hereto as Exhibit H.

52. Each of the Underwriting Agreements states that "SSL provided underwriting services to and for the Borrower for the purpose of the Borrower receiving the Loan."

53. Sure Sports was aware of Kane's status as a California resident and San Jose Sharks player at the time each of the relevant Agreements was entered. By its own admission part of the service provided by Sure Sports was to "Research, evaluate, and assess degree of risk regarding a potential borrower's ability to repay the Loan, including… analyze potential borrower's professional history, including, without limitation, statistical performance and media projections, in order to project long-term career scenarios." This process would necessarily have caused Sure Sports to learn of Kane becoming a Sharks player as of February 2018, an event that was widely reported in the sports press.

54. Sure Sports did not, at any point after Kane became a California athlete in February 2018, make to Kane the written disclosure required by Section § 18896.6 of the Act.

**Fees Paid by Kane to Sure Sports Under the California Agreements**

55. Kane paid the following amounts to Sure Sports pursuant to the Relevant Agreements:

56. Zions Bank/CB&T loan ($4,250,000 loan principal):

   a. Underwriting fee: $63,750 paid from loan proceeds

|   |     | b.   | Legal/closing fees: $3,333.33 paid from loan proceeds |
|---|-----|------|---|

1.       b.    Legal/closing fees: $3,333.33 paid from loan proceeds
2.       c.    Deferred underwriting and savings fees: $28,973, paid in monthly installments from November 15, 2018 through April 15, 2019.
3. 57.  Professional Bank loan ($1,500,000 loan principal):
4.       a.    Underwriting fee: $48,750 paid from loan proceeds
5.       b.    Legal/closing fees: $5,000 paid from loan proceeds
6. 58.  Centennial Bank Loans:
     a. Initial loan ($3,900,000 loan principal)
        i. Service/Underwriting Fee $58,500
        ii. Legal/closing fee: $3000
     b. First amendment to loan ($2,000,000 loan principal)
        i. Legal/closing  $8000
        ii. Underwriting (partial) $30,000
        iii. Deferred underwriting and savings fees paid from November 15, 2018 through April 15, 2019: $51,496
     c. Second Amendment ($715,000 loan principal)
        i. Service/Underwriting Fee $23,280.04
        ii. SSL Savings Fee $19,344.04
        iii. Legal/closing  $5,200.00
     d. Third Amendment ($2,460,000 loan principal)
        i. Legal/closing fees $7500
7. 59.  South River Capital ($1,850,000 loan principal)
     a. Underwriting   $74,000.00
     b. Legal/closing   $7,500.00
8. 60.  Thrivest Specialty Funding ($405,000 loan principal)
     a. Underwriting $13,162.50
     b. Legal/closing $1,625.90

61. In total, Kane paid at least $452,414.31 in fees to Sure Sports pursuant to the Agreements, during the time Kane was a California resident and played for the San Jose Sharks.

**Additional Fees Claimed by Sure Sports**

62. Sure Sports has filed a Proof of Claim in this Court, seeking payment of $1,187,950.94 based on additional fees and penalties purportedly due to Sure Sports pursuant to the Underwriting Agreements relating to the CB&T Loan, Professional Bank Loan, and Centennial Bank Loans.

63. Each of the Underwriting Agreements pursuant to which Sure Sports seeks to recover funds in its Proof of Claim is a "financial agreement" within the meaning of the Act, was entered into while Kane was a San Jose Sharks player and a California resident. Therefore Sure Sports is not entitled to recover any compensation pursuant to these agreements. Bus. & Prof. Code § 18897.9(b).

## FIRST CAUSE OF ACTION

**(Violation of The Miller-Ayala Act, Bus. & Prof. Code §§ 18895, *et seq.*)**

64. Trustee realleges and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

65. Under the Miller Ayala Athlete Agents Act (the "Act"), any person or entity acting as an "athlete agent" must register with the California Secretary of State. Bus. & Prof. Code § 18895 *et seq.*

66. An "athlete agent" means "any person who, directly or indirectly, recruits or solicits an athlete to enter into any agent contract, endorsement contract, financial services contract, or professional sports services contract, or for compensation procures, offers, promises, attempts, or negotiates to obtain employment for any person ... as a professional athlete." Cal. Bus. & Prof. Code § 18895.2(b)(1).

67. "Financial services" means "the making or execution of an investment financial decision, or counseling as to a financial decision." Cal. Bus. & Prof. Code § 18895.2(e).

68. Each of the Underwriting Agreements is a "financial services contract" within the meaning of the Act because it is a contract for the "execution of an investment financial decision." Sure Sports directly or indirectly solicited Kane to enter into the Agreements.

69. Additionally, each of the Underwriting Agreements provides for Sure Sports to recruit or solicit Kane to enter into further "financial services contracts" with third parties—namely, the lender for the loan contemplated in the Underwriting Agreement. Sure Sports in fact recruited and solicited Kane to enter into loan agreements with third party lenders in connection with each of the Underwriting Agreements.

70. The Act requires that any athlete agent register with the California Secretary of State and provide certain prescribed information "prior to engaging in or carrying on the business of an athlete agent." Cal. Bus. & Prof. Code § 18896.

71. Neither Sure Sports nor any of its principals is registered with the California Secretary of State as an athlete agent, and has not filed with the Secretary of State any of the information required by § 18896.

72. The Act requires "[e]very athlete agent shall provide security for claims against the athlete agent or the athlete agent's representatives or employees based upon acts, errors, or omissions arising out of the business of the athlete agent through either one or an aggregate of both of" an insurance policy or bond totaling at least $100,000. Cal. Bus. & Prof. Code § 18897.87.

73. Neither Sure Sports nor any of its principals provided the security required by § 18897.87.

74. The Act requires that "[u]pon making first contact, direct or indirect, with a professional athlete…an athlete agent, or his or her employee or representative, shall provide that person with a written notification stating" that the "athlete agent has current public-disclosure information on file with the California Secretary of State as required by the Miller-Ayala Athlete Agents Act, Chapter 2.5 (commencing with Section 18895) of Division 8 of the Business and Professions Code, which also includes other protections for athletes." Cal. Bus. & Prof. Code § 18896.6.

75. Sure Sports did not provide Kane with the written notification required by § 18896.6.

76. Because Sure Sports has failed to comply with the requirements of the Act, Trustee owes Sure Sports no money or other consideration, and pursuant to Cal. Bus. & Prof. Code § 18897.9(b) Sure Sports must refund all funds and other consideration paid to Sure Sports pursuant to the Agreement, an amount that is at minimum $452,414,31.

77. As a result of Sure Sports' conduct as alleged herein, Trustee has been harmed and seeks actual and statutory damages of not less than $50,000, punitive damages, attorney's fees and costs, and such other relief as the court deems proper, pursuant to Cal. Bus. & Prof. Code § 18897.8.

## **SECOND CAUSE OF ACTION**

**(Declaratory Relief)**

78. Trustee realleges and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

79. Sure Sports has filed a Proof of Claim in this action.

80. Trustee seeks a declaration that Sure Sports has no right to recover any amounts from the estate related to or in connection with the Agreements, and may recover nothing from its Proof of Claim.

**PRAYER FOR RELIEF**

WHEREFORE, Trustee prays for an award as follows:

1. For disgorgement of all amounts paid by Kane to Sure Sports during the time Kane was a California resident, according to proof but no less than $452,414.31;

2. For statutory damages against Sure Sports according to proof, but not less than $50,000;

3. For a declaration that Sure Sports has no right to recover any amounts from the estate related to or in connection with the Agreements, and may recover nothing from its Proof of Claim;

4. For an award of the Trustee's attorneys' fees and costs;

5. For pre-judgment and post-judgment interest; and

6. For such other and further relief as the Court deems just and proper.

DATED: September 13, 2022        PUTTERMAN YU WANG LLP

By: _____
GEORGE CHIKOVANI
Special Counsel for FRED HJELMESET,
Trustee in Bankruptcy